### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | **Case No.: 24-70418-JAD** |
| **POTTSVILLE OPERATIONS, LLC,** *et al.,*[1] | **Chapter 11** |
| Debtors. | *Jointly Administered* |
| | **Doc. No.:** |
| **POTTSVILLE OPERATIONS, LLC,** *et al.,*[2] | **Related to Document No. 12**, 246 and 434 |
| Movants, | **Hearing Date: December 17, 2024** |
| v. | **Hearing Time: 2:00 p.m.** |
| **NO RESPONDENTS,** | **Response Deadline: December 13, 2024** |
| Respondents. | |

---

[1] Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

[2] The applicable Debtors in the Motion are the Care Pavilion Cases.

**FINAL DIP ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS'
USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion dated November 18, 2024 [Doc. No. 12] (the "DIP Motion")[3] of the Care

Pavilion Debtors in the Care Pavilion Cases, seeking entry of an order on an interim basis (the

"Interim DIP Order") and then final basis (this "Final DIP Order") pursuant to sections 105, 361,

362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for

the United States Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules"),

*inter alia*:

i.      Accessing the DIP Facility:  authorizing the Care Pavilion Debtors to obtain senior

secured postpetition financing on a superpriority basis in the aggregate principal amount of up to

$9,700,000 (the "DIP Loan"), in an interim amount of $4,000,000 and subject to the terms and

conditions of the Interim DIP Order entered at Docket Entry [*] and the DIP Facility Term Sheet

(the "DIP Facility Term Sheet"), by and among the Care Pavilion Debtors, as borrowers, and Argnt

---

[3]Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms as
set forth in the Motion.

Holdings, LLC, as the DIP Lender (the "DIP Lender"), substantially in the form of **Exhibit A-1** attached hereto;

ii.     Entry into DIP Loan Documents:  authorizing the Debtors to execute and deliver the DIP Facility Term Sheet and any other agreements, instruments, pledge agreements, control agreements and other documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Facility Term Sheet, the "DIP Documentation") and to perform such other acts as may be necessary or desirable in connection with the DIP Documentation;

iii.    Use of DIP Loan:  authorizing the Care Pavilion Debtors to use proceeds of the DIP Facility as permitted in the DIP Documentation and in accordance with this Interim DIP Order;

iv.    Superpriority Administrative Expense Claim: granting to the DIP Lender on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documentation (collectively, the "DIP Obligations") an allowed superpriority administrative expense claim status in each of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases (as defined herein), subject only to the Carve-Out (as defined herein);

v.     DIP Liens:  granting to the DIP Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash

collateral" as defined in section 343(a) of the Bankruptcy Code, which liens shall be on the terms and subject to the relative priorities set forth in the DIP Documentation and this Interim DIP Order;

vi.      <u>Other Expenses</u>:  authorizing and directing the Care Pavilion Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documentation as such become earned, due and payable, including, without limitation, continuing commitment fees, closing fees, upfront fees, the reasonable fees and disbursements of the DIP Lender's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documentation;

vii.     <u>Use of Cash Collateral</u>:  authorizing the Care Pavilion Debtors to use the all assets of the Care Pavilion Debtors existing as of the Petition Date, including cash collateral (the "<u>Prepetition Collateral</u>"), and providing adequate protection to any entity having an interest in the Prepetition Collateral for any and all diminution in value of the Prepetition Collateral from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from (i) the use of cash collateral, (ii) the priming of any security interests in and liens on any of the Prepetition Collateral (including by the Carve-Out) by the DIP Liens (as defined herein) pursuant to the DIP Documentation and this Interim DIP Order, (iii) the use, sale, or lease of the Prepetition Collateral, including cash collateral, and (iv) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), 364(d)(1), and 507(b) of the Bankruptcy Code ("<u>Diminution in Value</u>");

viii.      <u>Modification of the Automatic Stay</u>:  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documentation and this Interim DIP Order;

ix.      <u>Section 506(c) Waiver</u>:  subject to and effective upon entry of the Final DIP Order, waiving the Care Pavilion Debtors' ability to surcharge any DIP Collateral or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Care Pavilion Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

x.      <u>Scheduling a Final Hearing</u>:  scheduling a final hearing (the "<u>Final Hearing</u>") within 28 days of the Petition Date to consider the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing;

xi.      <u>Waiver of Stay</u>:  waiving any applicable stay with respect to effectiveness and enforceability of this Interim DIP Order (including under Bankruptcy Rule 6004); and

xii.      <u>Additional Relief</u>:  granting the Care Pavilion Debtors such other and further relief as is just and proper.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Motion for Interim and Final DIP Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying*

*the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "<u>DIP</u>
<u>Declaration</u>") and the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in*
*Support of Chapter 11 Petitions and Various First Day Applications and Motions* (the "<u>First Day</u>
<u>Declaration</u>"), the DIP Documentation, and the evidence submitted and argument made at the
interim hearing held on November 20, 2024 (the "<u>Interim Hearing</u>") and the final hearing held
December 17, 2024 (the "<u>Final Hearing</u>"); and notice of the Interim Hearing and Final Hearing
having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all
applicable Local Rules; and the Interim Hearing and Final Hearing having been held and
concluded; and all objections, if any, to the interim and final relief requested in the DIP Motion
having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the
relief requested in the DIP Motion on a final basis is necessary to avoid harm to the Care Pavilion
Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Care
Pavilion Debtors, their estates, their creditors and equity holders, and all parties-in-interest, and is
essential for the continued operation of the Care Pavilion Debtors' businesses and the preservation
of the value of the Care Pavilion Debtors' assets; and it appearing that the Care Pavilion Debtors'
entry into the DIP Facility Term Sheet is a sound and prudent exercise of the Care Pavilion
Debtors' business judgment; and after due deliberation and consideration, and good and sufficient
cause appearing therefor;

6

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.  **Petition Date**. On November 18, 2024 (the "Petition Date"), each of the Care Pavilion Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

B.  **Debtors in Possession**. The Care Pavilion Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed for any Debtor.

C.  **Jurisdiction and Venue**. This Court has jurisdiction over the Care Pavilion Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Care Pavilion Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  **Committee Formation**. As of entry of the Interim Order, the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee") has not yet appointed

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

an official committee of unsecured creditors in these Care Pavilion Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").  Subsequently, on December 4, 2024, the U.S. Trustee filed an amended notice of appointment pursuant to which the members of the official committee of unsecured creditors of Pottsville Operations, LLC et al. were established as the Committee with respect to the estates of the Pottsville Debtors and Care Pavilion Debtors.

   E.  **Notice**.  Notice of the DIP Motion and Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final DIP Order shall be required.

   F.  **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Committee or other  parties-in interest as set forth in paragraph 36 herein, the Care Pavilion Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(v) below are referred to herein, collectively, as the "Debtor Stipulations"):

   i.  As of the Petition Date, the Care Pavilion Debtors granted security interests in the Prepetition Collateral to Dime Community Bank ("Dime Bank"), Metropolitan Commercial Bank ("Metropolitan Bank"), BankFinancial, N.A., ("BankFinancial") and Specialty RX Inc. ("Specialty RX" and

together with Dime Bank, Metropolitan Bank, [5] and BankFinancial, the
"<u>Prepetition Secured Lenders</u>"). There is an intercreditor agreement
between the Prepetition Secured Lenders and Ventas Inc. ("<u>Ventas</u>") that
sets out the rights and priorities of each secured lender to specific
Prepetition Collateral.

ii.    As of the Petition Date, the Care Pavilion Debtors granted security interests
to Ventas. However, Ventas did not perfect its security interests before the
Petition Date. Ventas is the beneficiary of certain letters of credit..

iii.   As of the Petition Date, the aggregate outstanding principal balance owed
to Dime Bank and Metropolitan Bank was $18,575,000.00 and the
aggregate outstanding principal balance owed to Specialty RX was
$948,439.45 (collectively, the "<u>Prepetition Loan Obligations</u>").

iv.    Pursuant to the applicable loan documents and/or recorded UCC financing
statements, the Prepetition Secured Lenders have valid and perfected first
priority liens on all of the Care Pavilion Debtors' assets to secure repayment
of Prepetition Loan Obligations (the "<u>Prepetition Liens</u>").

---

[5] The claims and interest of Dime Bank and Metropolitan Bank have been sold to SAPIRA1 LLC.

v.      The Care Pavilion Debtors shall not challenge or use any of the DIP Facility proceeds to challenge the Prepetition Liens of the Prepetition Secured Lenders.

G.      **Prepetition Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged prepetition lien or security interest is valid, senior, enforceable, prior, perfected, or non-avoidable.

H.      **Cash Collateral**.  As of the Petition Date, the Prepetition Secured Lenders had security interest in all of the Care Pavilion Debtors' assets and cash collateral, as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

I.      **Findings Regarding Corporate Authority**.  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documentation to which it is a party and to perform its obligations thereunder.

J.      **Findings Regarding the DIP Loans**.

i.      *Request for Postpetition Financing*. The Care Pavilion Debtors seek authority to (a) upon entry of a final postpetition financing order (the "Final DIP Order"), enter into the DIP Facility on terms described herein and in the DIP Documentation; and (b) use the Cash Collateral on the terms described herein to administer their Care Pavilion Cases and fund their operations.  At the Final Hearing, the Care Pavilion Debtors sought final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to this Final

DIP Order, which is in form and substance reasonably acceptable to the DIP Lender.  Notice of the Final Hearing and Final DIP Order was provided in accordance with this Interim DIP Order.

ii.       *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Care Pavilion Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  Each Prepetition Secured Lender is entitled to receive adequate protection, as set forth in this Final DIP Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral.

iii.      *Need for Postpetition Financing and Use of Cash Collateral*. The Care Pavilion Debtors had an immediate and ongoing need to use the Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer and preserve the value of their estates. The Care Pavilion Debtors have a need for use of Cash Collateral and to obtain credit on a final basis pursuant to the DIP Facility to fund their cases.  The ability of the Care Pavilion Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of the Cash Collateral, the absence of either of which would irreparably harm the Care Pavilion Debtors, their estates, and parties-in-interest. The Care Pavilion Debtors do not have

sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business in the Interim Period without the DIP Facility and authorized use of the Cash Collateral.

iv.     *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Care Pavilion Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Care Pavilion Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Care Pavilion Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Care Pavilion Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Care Pavilion Debtors and their estates that is subject to a lien. As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Care Pavilion Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) superpriority claims and liens against all assets of the Care Pavilion Debtors; and (3) the other protections set forth in this Interim DIP Order.

v.        *Use of Proceeds of the DIP Facility*. As a condition to entry into the DIP Facility Term Sheet, the extension of credit under the DIP Facility and the authorization to use the Cash Collateral, the DIP Lender and the Care Pavilion Debtors have agreed that proceeds of the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of this Final DIP Order and the DIP Documentation and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documentation and subject to such variances as permitted in the DIP Facility Term Sheet, and as set forth in paragraph 17 hereof, the "Budget"),[6] solely for (a) working capital; (b) permitted payment of costs of administering the Care Pavilion Cases; (c) payment of such other prepetition obligations as set forth in the Budget or otherwise approved by the DIP Lender in its reasonable discretion, and as approved by the Court; (d) payment of interest, fees, expenses and other amounts (including legal and other professionals' fees and expenses of the DIP Lender) owed under the DIP Documentation; and (e) other general corporate purposes of the Care Pavilion Debtors permitted by the Budget, the DIP Documentation, and applicable law.  The DIP Lender is relying upon the Budget in entering into the DIP Facility Term Sheet and the other DIP Documentation and providing the DIP Facility in consenting to the terms of this Final DIP Order.  All references in this Final DIP Order restricting the use of the Cash Collateral to payment of amounts consistent with the Budget

---

[6]A copy of the Budget is attached hereto as **Exhibit A-2**.

13

shall mean the most recent approved Budget, subject to the permitted variances set forth in paragraph 17 hereof.

vi.      *Application of Proceeds of the DIP Collateral*. As a condition to entry into the DIP Facility Term Sheet, the extension of credit under the DIP Facility and authorization to use the Cash Collateral, the Care Pavilion Debtors and the DIP Lender have agreed that as of and commencing on the date of the Final Hearing, the Care Pavilion Debtors shall apply the proceeds of the DIP Collateral (as defined herein) in accordance with this Final DIP Order and as provided in the DIP Documentation.

K.      **Adequate Protection**. Subject to the provisions of paragraph 36 hereof and the Carve-Out (defined below), the Prepetition Secured Lenders are entitled to receive adequate protection to the extent of any Diminution in Value of its respective interests in the Prepetition Collateral. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the DIP Lender will receive replacement liens on all assets of the Care Pavilion Debtors arising or created after the Petition Date with such liens having the same validity, enforceability, perfection, and priority as any liens held by the Prepetition Secured Lenders in the Prepetition Collateral (the "Replacement Liens"). Nothing in this Final DIP Order shall constitute a finding that any other creditor has any interest in any of the Prepetition Collateral. In the event any creditor is ultimately found to have had an interest in any of the Prepetition Collateral and to the extent not otherwise

14

provided with adequate protection in this Final Order, each will receive adequate protection to the extent of any Diminution in Value of its respective interests in the Prepetition Collateral in the form of Replacement Liens having the validity, enforceability, perfection, and priority as such creditor's interest in Prepetition Collateral.

L.        **Sections 506(c) and 552(b)**.  In light of: (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to the Carve-Out; and (ii) the payment of expenses as set forth in the Budget in accordance with and subject to the terms and conditions of this Final DIP Order and the DIP Documentation, (a) upon entry of a Final DIP Order, the DIP Lender is entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final DIP Order, the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.        **Good Faith of the DIP Lender**.

i.        *Willingness to Provide Financing*.    The DIP Lender has indicated a willingness to provide financing to the Care Pavilion Debtors subject to (a) entry of this Final DIP Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documentation; (c) satisfaction of the closing conditions set forth in the DIP Documentation; and (d) findings by this Court that the DIP Facility is essential to the Care Pavilion Debtors' estates, that the DIP Lender is extending credit to the Care Pavilion Debtors pursuant to the DIP

Documentation in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final DIP Order and the DIP Documentation will have the protections provided by section 364(e) of the Bankruptcy Code. Based upon the record presented at the Final Hearing, the DIP Facility has been negotiated in good faith and at arm's length between the Care Pavilion Debtors, on the one hand, and the DIP Lender, on the other hand.  All of the DIP Obligations and all other liabilities and obligations of the Care Pavilion Debtors under this Final DIP Order and the DIP Documentation owing to the DIP Lender shall be deemed to have been extended the DIP Lender in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.  The DIP Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final DIP Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

   ii.  *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The extensions of credit under the DIP Facility and the DIP Documentation, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Care Pavilion Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Care Pavilion Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in

16

good faith and at arms' length among the Care Pavilion Debtors and the DIP Lender, with the assistance and counsel of their respective advisors. Use of the Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Lender within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim DIP Order.

N.     **Jurisdiction and Venue; Core Proceeding**.  This Court has jurisdiction over these Care Pavilion Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).  Venue for these Care Pavilion Cases and the proceedings on the DIP Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105, 361, 362, 263, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the applicable Local Rules.

O.     **Immediate Entry**.  Sufficient cause existed for immediate entry of the Interim DIP Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent the immediate grant by the Court of the interim relief sought by the DIP Motion, each Debtor's estate would have been immediately and irreparably harmed pending the Final Hearing.  The Care Pavilion Debtors' obtaining the DIP Facility in accordance with the terms of this Interim

DIP Order and the DIP Documentation was in the best interests of each Debtor's estate and is consistent with each Debtor's exercise of its fiduciary duties.

      P.    **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Care Pavilion Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee"); (ii) the Care Pavilion Debtors; (iii) the DIP Lender; (iv) all secured creditors; (v) the Office of the Attorney General of the State of Pennsylvania; (vi) the thirty (30) largest unsecured creditors for the Care Pavilion Debtors on a consolidated basis; (vii) the Care Pavilion Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (viii) the Care Pavilion Debtors' identified, interested government and regulating entities; (ix) other interested parties as identified by the Care Pavilion Debtors; (x) the Committee and (xi) any known counsel for (i)-(xi) (collectively, the "Notice Parties").  The Care Pavilion Debtors have made reasonable efforts to afford the best notice possible under the circumstances in compliance with Bankruptcy Rules 4001(b) and (c) and applicable Local Rules and no other notice is required in connection with the relief set forth in this Final DIP Order. Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declaration, the First Day Declaration, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Financing Approved on a Final Basis</u>.  The DIP Motion is granted as set forth herein, the financing as set forth in this Final DIP Order is authorized and approved, and the use of the Cash Collateral on an is authorized, in each case subject to the terms and conditions set forth in the DIP Documentation and this Final DIP Order.  The Care Pavilion Debtors are authorized to borrow up to $9,700,000 of DIP Loans on a final basis. All objections to this Final DIP Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits in their entirety.

## Authorization of the DIP Facility

2.      <u>Authorization of the DIP Facility</u>.  The DIP Facility is hereby approved on a final basis as set forth herein.  The Care Pavilion Debtors are hereby authorized to enter into and perform under the DIP Documentation subject paragraph 36 herein.  The Care Pavilion Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documentation, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final DIP Order and the DIP Documentation, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Care Pavilion Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Final DIP Order and the DIP Documentation.  The Care Pavilion Debtors are hereby authorized and directed to pay, in

accordance with this Final DIP Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documentation as such amounts become earned, due and payable and without need to obtain further Court approval, including closing fees, unused line fees, and the reasonable fees and disbursements of the DIP Lender's attorneys, advisors, accountants, and other consultants incurred in connection with the DIP Loan, whether or not such fees arose before or after the Petition Date, to the extent provided in this Final DIP Order or the DIP Documentation.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be applied as required by this Final DIP Order and the DIP Documentation.  Upon execution and delivery, the DIP Documentation shall represent valid and binding obligations of the Care Pavilion Debtors, enforceable against each of the Care Pavilion Debtors and their estates in accordance with their terms.

3.      <u>Authorization to Borrow</u>.  The Debtors are authorized to borrow under the DIP Facility Term Sheet and the terms of this Final DIP Order.

4.      <u>DIP Obligations</u>.  The DIP Documentation and this Final DIP Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Care Pavilion Debtors, their estates and any successors thereto, including any trustee appointed in the Care Pavilion Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Care Pavilion Cases, or in any other proceedings superseding or related

to any of the foregoing (collectively, the "Successor Cases").  Upon entry of this Final DIP Order, the DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Care Pavilion Debtors to the DIP Lender under, or secured by, the DIP Documentation or this Final DIP Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documentation. The Care Pavilion Debtors shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date (as defined herein), except as provided in paragraph 30 herein.  To the fullest extent permissible under the Bankruptcy Code, no obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documentation, including any DIP Obligation or DIP Liens (as defined below) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 36 below.

5.      DIP Liens.   As security for the DIP Obligations, effective and perfected

immediately upon entry of this Interim DIP Order, pursuant to sections 361, 362, 364(c)(2),

364(c)(3), and 364(d) of the Bankruptcy Code, and without the necessity of the execution by the

Care Pavilion Debtors (or recordation or other filing) of security agreements, control agreements,

pledge agreements, financing statements, mortgages or other similar documents, or the possession

or control by the DIP Lender of any property, the DIP Lender is hereby granted continuing, valid,

binding, enforceable, non-avoidable, and automatically and properly perfected postpetition liens

on, and security interests in (collectively, the "DIP Liens"), all tangible and intangible prepetition

and postpetition property in which the Care Pavilion Debtors have an interest, whether now

existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected, and

unavoidable liens in existence immediately prior to the Petition Date, which explicitly include the

Prepetition Secured Liens (the "DIP Collateral").   The DIP Collateral shall include, without

limitation, (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other

receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever

located), instruments, documents, securities (whether or not marketable) and investment property

(including all of the issued and outstanding capital stock of each of its subsidiaries), hedge

agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights,

trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property,

general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the

payment of money (excluding tax refunds and any other extraordinary or supplemental payments),

supporting obligations, guarantees, letter of credit rights, and all substitutions, indemnification

rights, fee interests in real property owned by the Care Pavilion Debtors, books and records related

to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance

or other proceeds; (b) all owned real property interests, leased real property (including, for the

avoidance of doubt, any ground leases), and all proceeds of all of such real property or other

interests; (c) all Prepetition Collateral, whether or not subject to valid, perfected, enforceable, and

unavoidable liens on the Petition Date; (e) controllable electronic records, controllable accounts,

and controllable payment intangibles; and (f) to the extent not otherwise included, all proceeds,

insurance claims and other rights to payments not otherwise included in the foregoing and proceeds

and products of the foregoing and all accessions to, substitutions and replacements for, and rent

and profits of, each of the foregoing.

6.      <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations are valid,

automatically perfected, non-avoidable, senior in priority, and superior to any other security,

mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens

shall be subject to the Carve-Out as set forth in this Final DIP Order.  The DIP Liens shall consist

of:

i.      <u>Priming DIP Liens on Prepetition Collateral</u>.  Valid, binding, continuing,

enforceable, and fully perfected, first priority security interests and liens upon all DIP

23

Collateral that is the Prepetition Collateral, which security interests in and liens upon, pursuant to section 364(d)(1) of the Bankruptcy Code, shall be prior and senior in all respects to (i) the security interests and liens in favor of the Prepetition Secured Lenders and any other creditor ultimately found to have an interest in the Prepetition Collateral; and (ii) the Prepetition Adequate Protections Liens (as defined herein) with respect to the DIP Collateral.

ii.      <u>Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, and fully perfected, first priority security interests and liens upon all prepetition and postpetition property of the Care Pavilion Debtors, whether existing on the Petition Date or thereafter acquired that, on or as of the Petition Date (or perfected thereafter as permitted by section 546(b) of the Bankruptcy Code) or the date acquired (if acquired after the Petition Date) is not subject to a properly perfected, valid, enforceable and unavoidable lien (collectively, the "<u>Unencumbered Property</u>").

iii.      <u>DIP Liens Not Subordinate</u>. Other than as set forth herein or in the DIP Documentation, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Care Pavilion Cases or any Successor Cases, and shall be valid and enforceable against any trustee or other estate representative appointed in the Care Pavilion Cases or any Successor Cases, upon the

conversion of any of the Care Pavilion Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Care Pavilion Cases or Successor Cases; provided that adequate protection on account of pre-petition liens shall be subject paragraph 36 hereof.  The DIP Liens shall not be subject to sections 506(c) (subject to entry of a Final DIP Order), 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.  In no event shall any person who pays (or through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or priorities granted to or in favor of, or conferred upon, the DIP Lender by the terms of any DIP Documentation or this Interim DIP Order unless and until the DIP Obligations owed to the DIP Lender have been indefeasibly paid in full in cash. Notwithstanding the foregoing (inclusive of paragraph 5 hereof), the DIP Lender shall not have a security interest in the following or proceeds thereof: (i) any claims or causes of action against the DIP Lender or any affiliates of the DIP Lender; (ii) any claims or causes of action against the Care Pavilion Debtors' owners (whether direct or indirect), managers, employees, affiliates, or affiliates of affiliates; or (iii) claims or causes of action arising under chapter arising under chapter 5 of the Bankruptcy Code (collectively, the "Excluded Collateral").

7.      <u>DIP Superpriority Claims</u>. Upon entry of this Interim DIP Order, in addition to the DIP Liens granted herein, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases for any of the Care Pavilion Debtors (collectively, the "<u>DIP Superpriority Claim(s)</u>") for all DIP Obligations: (a) subject only to the Carve-Out, having priority over any and all administrative expense claims and unsecured claims against the Care Pavilion Debtors or their estates in any of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases for any of the Care Pavilion Debtors, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of a Final DIP Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; (b) which shall at all times be senior to the rights of the Care Pavilion Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; and (c) shall be payable, to the extent such DIP Superpriority Claims arise, solely from the assets of the Care Pavilion Debtors.  The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition property of the Care Pavilion Debtors; provided, however, that the DIP

Superpriority Claims shall be subordinate to the Carve Out and shall not be payable from the Excluded Collateral.

8. <u>No Obligation to Extend Credit</u>. The DIP Lender shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documentation, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Documentation and this Interim DIP Order have been satisfied in full or waived by the DIP Lender in accordance with the terms of the DIP Facility Term Sheet and this Interim DIP Order.

9. <u>Use of Proceeds of DIP Facility</u>. From and after the Petition Date, the Care Pavilion Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as are permitted under the DIP Facility Term Sheet), only for the purposes specifically set forth in this Final DIP Order and the DIP Documentation, and in compliance with the terms and conditions in this Interim DIP Order and the DIP Documentation.

**<u>Authorization to Use Cash Collateral</u>**

10. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final DIP Order, the DIP Facility, and the DIP Documentation and in accordance with the Budget (subject to such variances as permitted in the DIP Facility Term Sheet), the Care Pavilion Debtors are authorized to use the Cash Collateral until the earlier of the Carve-Out Effective Date or the

27

Maturity Date (both as defined in the DIP Documentation); *provided, however*, that during the Remedies Notice Period (as defined herein), the Care Pavilion Debtors may use the Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Care Pavilion Debtors' estates or as otherwise agreed by the DIP Lender in its sole discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph 33 of this Final DIP Order.  Nothing in this Final DIP Order shall authorize the disposition of any assets of the Care Pavilion Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final DIP Order, the DIP Facility, the DIP Documentation, and in accordance with the Budget or by subsequent order of this Court.

11.     Adequate Protection Payments and Liens.

i.      *Adequate Protection Payments to Prepetition Secured Lenders.*  The Prepetition Secured Lenders may, on an interim basis, apply any payments provided for under the Budget to interest or principal for internal accounting purposes in the manner in which the Prepetition Secured Lenders determine appropriate.  However, such internal application by any of the Prepetition Secured Lenders is not binding on this Court, the Debtors' estates, or the Committee.  For all purposes in these Care Pavilion Cases, all such

payments as well as any payments of professional fees for Prepetition Secured Lenders shall be applied in accordance with applicable provisions of the Bankruptcy Code, including section 506(b) of the Bankruptcy Code, such that payments shall not be applied to interest or loan related fees in the event that any of the Prepetition Secured Lenders are determined, as applicable, to be undersecured.   The Court retains jurisdiction to fashion any appropriate relief, including recharacterization of payments received by the Prepetition Secured Lenders.

ii.        *Prepetition Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Lenders, including against any Diminution in Value of such interests in the Prepetition Collateral, the Care Pavilion Debtors hereby grant Replacement Liens to the Prepetition Secured Lenders (the "Prepetition Adequate Protection Liens").   In the event any other creditor is ultimately found to have had an interest in any of the Prepetition Collateral, each will receive adequate protection to the extent of any Diminution in Value of its respective interests in the Prepetition Collateral in the form of Replacement Liens having the priority set forth herein on all of the DIP Collateral, other than Avoidance Actions (as defined herein) (the "Junior Prepetition Adequate Protection Liens").

12.     <u>Priority of Prepetition Adequate Protection Liens</u>.

i.       The Prepetition Adequate Protection Liens shall be subject to the Carve-Out
and the provisions of paragraph 36 as set forth in this Final DIP Order and shall otherwise
be junior only to the DIP Liens and DIP Superpriority Claims but shall be senior to any
Junior Prepetition Adequate Protection Liens.

ii.       Subject to paragraph 36 and except as provided herein or in the DIP Facility
Term Sheet, the Prepetition Adequate Protection Liens shall not be made subject to or *pari
passu* with any lien or security interest heretofore or hereinafter in the Care Pavilion Cases
of the Care Pavilion Debtors or any  Successor Cases for any of the Care Pavilion Debtors,
and shall be valid and enforceable against any trustee or other estate representative
appointed in any of the Care Pavilion Cases of the Care Pavilion Debtors or any Successor
Cases for any of the Care Pavilion Debtors, or upon the dismissal of any of the Care
Pavilion Cases of the Care Pavilion Debtors or any Successor Cases for any of the Care
Pavilion Debtors.  The Prepetition Adequate Protection Liens shall not be subject to
sections 506(c) (subject to entry of a Final DIP Order), 510, 549, 552(b) (subject to entry
of a Final DIP Order) or 550 of the Bankruptcy Code.  No lien or interest avoided and
preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code
shall be *pari passu* with or senior to the Prepetition Adequate Protection Liens.

iii.      For the avoidance of doubt, other than expressly set forth in this order, nothing is intended to confer additional rights on the Prepetition Secured Lenders.

13.    <u>Adequate Protection Superpriority Claims</u>.  As further adequate protection of the interests of the Prepetition Secured Lenders  in the Prepetition Collateral against any Diminution in Value of its interests in such Prepetition Collateral, the Prepetition Secured Lenders are hereby granted an allowed superpriority administrative expense claim in each of the Care Pavilion Cases of the Care Pavilion Debtors or any Successor Cases for any of the Care Pavilion Debtors under sections 503 and 507(b) of the Bankruptcy Code (the "<u>Prepetition Superpriority Claim</u>").  The Prepetition Superpriority Claim shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition property of the Care Pavilion Debtors and shall be junior to the DIP Superpriority Claims.

14.    <u>Priority of the Adequate Protection Superpriority Claims</u>. Subject to paragraph 36 hereof, the Prepetition Superpriority Claim shall be subject to the Carve-Out as set forth in this Final DIP Order and shall otherwise be junior only to the DIP Superpriority Claims.  The Prepetition Superpriority Claim shall have priority over all other administrative expense claims and unsecured claims against the Care Pavilion Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry

31

of a Final DIP Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy

Code.

15.     <u>Adequate Protection Reservation</u>. Nothing herein shall impair or modify the

application of section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Prepetition Secured Lenders hereunder is insufficient to compensate for any

Diminution in Value of their respective interests in the Prepetition Collateral during the Care

Pavilion Cases of the Care Pavilion Debtors or any  Successor Cases for any of the Care Pavilion

Debtors.   The receipt by the Prepetition Secured Lenders of the adequate protection provided

herein shall not be deemed an admission that its interests are adequately protected.  This paragraph

shall be subject to paragraph 36 and further adequate protection shall not by payable from

Excluded Collateral.

### Provisions Common to DIP Financing and use of the Cash Collateral

16.     <u>Amendment of the DIP Documentation</u>.  The DIP Documentation may from time

to time be amended, modified, or supplemented by the parties thereto without further order of the

Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the

Care Pavilion Debtors and their estates, subject to consultation with the Committee; and (b) in

accordance with the DIP Documentation.  In the case of a material amendment, modification, or

supplement to the DIP Documentation that is adverse to the Care Pavilion Debtors' estates, the

Care Pavilion Debtors shall provide notice (which shall be provided through electronic mail) to

the Notice Parties, each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement. If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Care Pavilion Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; *provided* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 16 shall be filed with the Court.

17.    Budget. All borrowings under the DIP Facility and all use of the Cash Collateral shall be in compliance with the Budget attached as **Exhibit A-2**, as the same may be modified from time to time by the consent of the DIP Lender and the Care Pavilion Debtors in consultation with the Committee, subject to the following (the "Permitted Variance"): (a) the actual total cash receipts, determined on a cumulative rolling four-week basis, shall not be less than 90% of the projected total cumulative cash receipts as set forth in the approved Budget for the relevant period of determination, and (b) the actual total disbursements, determined on a cumulative rolling four-week basis, shall not be greater than 110% of the projected disbursements as set forth in the

approved Budget for the relevant period of determination.  The Care Pavilion Debtors shall not use any portion of the proceeds of the DIP Facility or any Cash Collateral, directly or indirectly, in excess of the Permitted Variance to the Budget.  Any amendment to the Budget shall be filed promptly with the Court, and no such Budget shall authorize any payments on account of any prepetition claim except in accordance with the Budget or as otherwise permitted or required by an order of this Court.  With respect to the Allowed Professional Fees (as defined herein) incurred by Case Professionals (as defined herein), each Case Professional shall use commercially reasonable efforts to record time entries, in accordance with the requirements of the Bankruptcy Code and shall differentiate between time billed in the Care Pavilion Cases and the Pottsville Cases,.  Services rendered by Case Professionals to and for the benefit of the Care Pavilion Debtors shall be subject to the Budget approved in this Final DIP Order.

18.     <u>Budget Compliance</u>. The Care Pavilion Debtors shall at all times comply with the Permitted Variance to the Budget.  The first test to confirm whether the Care Pavilion Debtors are within the Permitted Variance shall occur after the Interim DIP Order has been in place for four full weeks, and tests shall continue weekly thereafter, based on the Care Pavilion Debtors' performance against Budget during the most recent four-week period.  The Care Pavilion Debtors shall provide a variance report to the DIP Lender and Committee by Friday of each week comparing the previous week's budget-to-actuals and shall provide backup information upon request.   The Care Pavilion Debtors shall provide all reports and other information as required in

the DIP Credit Letter Agreement (subject to any grace periods provided therein).   The Care

Pavilion Debtors' failure to comply with the Permitted Variance to the Budget or to provide the

reports and other information required in the DIP Facility Term Sheet shall constitute an Event of

Default (as defined herein), following the expiration of any applicable grace period.

19.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section

362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms

and provisions of this Final DIP Order, including to (a) permit the Care Pavilion Debtors to grant

the DIP Liens and the DIP Superpriority Claims; (b) permit the Care Pavilion Debtors to perform

such acts as the DIP Lender may reasonably request to assure the perfection and priority of the

liens granted herein; (c) permit the Care Pavilion Debtors to incur all liabilities and obligations

to the DIP Lender under the DIP Documentation, the DIP Facility, and this Final DIP Order, as

applicable; and (d) authorize the Care Pavilion Debtors to pay, and the DIP Lender to retain and

apply, payments made in accordance with the terms of this Final DIP Order and the DIP

Documentation.

20.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final DIP Order shall

be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens

granted herein, including the DIP Liens and the Prepetition Adequate Protection Liens, without

the necessity of filing or recording any financing statement, mortgage, notice, or other instrument

or document which may otherwise be required under the law or regulation of any jurisdiction or

the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Prepetition Adequate Protection Liens, or to evidence or entitle the DIP Lender to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender is authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Interim DIP Order, and (ii) such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Prepetition Adequate Protection Liens.  The Care Pavilion Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, notices, and other documents as the DIP Lender may reasonably request. The DIP Lender, in its discretion, may file a photocopy of this Final DIP Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

21.     <u>Protections of Rights of the DIP Lender</u>.

i.      Unless the DIP Lender shall have provided their prior written consent, or all DIP Obligations have been indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, there shall not be entered in any of the Care Pavilion Cases of the Care Pavilion Debtors or any Successor Cases for any of the Care Pavilion Debtors any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or the Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, or the DIP Superpriority Claims; (ii) the use of the Cash Collateral for any purpose other than as permitted in the DIP Documentation and this Final DIP Order; or (iii) any modification of any of the DIP Lender's rights under this Final DIP Order or the DIP Documentation, as applicable, with respect any DIP Obligations owed to the DIP Lender.

ii.      Until the DIP Obligations have been indefeasibly paid in full in cash, the Care Pavilion Debtors shall (i) maintain books, records, and accounts; (ii) reasonably cooperate with, consult with, and provide to the DIP Lender all such information and documents that any or all of the Care Pavilion Debtors are obligated to provide under the

DIP Documentation or the provisions of this Interim DIP Order; (iii) upon reasonable advance notice, permit the DIP Lender and its non-legal advisors to visit and inspect any of the Care Pavilion Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour (upon reasonable advance notice and on commercially reasonable terms) the Care Pavilion Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel); and (iv) permit the DIP Lender and its non-legal and advisors to consult with the Care Pavilion Debtors' management and advisors on matters concerning the Care Pavilion Debtors' businesses, financial condition, operations, and assets.

22.     Credit Bidding. Subject to entry of the Final DIP Order and subject to Section 363(k) of the Bankruptcy Code, in connection with any sale process authorized by the Court, the DIP Lender (either directly or through an acquisition vehicle) may credit bid up to the full amount of the applicable outstanding DIP Obligations, in each case including any accrued and unpaid interest and expenses (each a "Credit Bid") in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or

otherwise, subject to the provision of consideration sufficient to pay in full in cash any senior liens on the Prepetition Collateral that is subject to the Credit Bid. The DIP Lender shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

23.     _Proceeds of Subsequent Financing_. Except as otherwise ordered by the Court, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases of the Debtors or any Successor Cases for any of the Debtors, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documentation at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied to the DIP Obligations and following indefeasible payment in full in cash of the DIP Obligations and then for application against the obligations owed to the Prepetition Secured Lenders.

24.     _Cash Collection_. Unless otherwise agreed to in writing by the DIP Lender, the Care Pavilion Debtors shall maintain no deposit accounts except those identified in any cash management order entered by the Court (a "_Cash Management Order_").

25.   <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations, and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Care Pavilion Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order, or as otherwise required by the DIP Documentation or the Final DIP Order.

26.   <u>Disposition of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations, the Care Pavilion Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Lender, except as otherwise provided for in the DIP Documentation or otherwise ordered by the Court.

27.   <u>DIP Termination Date</u>.  On the DIP Termination Date: (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 33 with respect to the Carve-Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Care Pavilion Debtors continue to have authority to use Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the

40

Care Pavilion Debtors' estates or as otherwise agreed by the DIP Lender in its sole discretion; *provided further* that following delivery of the Carve-Out Trigger Notice (as defined herein), the Care Pavilion Debtors shall be entitled to fund the Carve-Out in accordance with paragraph 33 of this Interim DIP Order; and (c) upon the expiration of the Remedies Notice Period, the DIP Lender shall be entitled to exercise rights and remedies under the DIP Documentation in accordance with this Final DIP Order. For the purposes of this Final DIP Order, "DIP Termination Date" shall mean the earliest of: (1) 150 days from the Petition Date; (2) conversion of the bankruptcy cases of the Care Pavilion Debtors to ones under chapter 7 or dismissal of the case of the Care Pavilion Debtors; or (3) the expiration of the Remedies Notice Period after an uncured Event of Default.

28.    Events of Default.  The occurrence of any of the following events, unless waived by the DIP Lender in writing shall constitute an event of default (an "Event of Default"): (a) Any order authorizing the Care Pavilion Debtors to obtain the DIP Facility, whether on an interim or final basis, is not in a form satisfactory to the DIP Lender or is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the DIP Lender; (b) the Care Pavilion Debtors' Care Pavilion Cases are either dismissed or converted to cases under  chapter 7 pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (c) a chapter 11 trustee is appointed such that the Care Pavilion Debtors are no longer debtors-in-possession, pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (d) the Care Pavilion Debtors fail to achieve any of the

41

Milestones (the "Milestones") set forth in paragraph 29; (e) the Care Pavilion Debtors fail to operate in accordance with the Budget (after taking into account Permitted Variances); or (f) the Care Pavilion Debtors fail to make any required payment to the DIP Lender, including but not limited to failure of the Care Pavilion Debtors to repay in full the DIP Facility at the Maturity Date.

29.   Case Milestones.  The failure of the Care Pavilion Debtors to comply with any of the Milestones set forth in the DIP Facility Term Sheet, as modified pursuant to this Final DIP Order, shall (a) constitute an immediate Event of Default under the DIP Facility Term Sheet and this Final DIP Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Care Pavilion Debtors' authority to use the Cash Collateral under this Interim DIP Order; and (c) permit the DIP Lender, subject to paragraph 33, to exercise the rights and remedies provided for in this Interim DIP Order and the DIP Documentation.  The Milestones are amended as set forth as follows:

a)   On or before November 18, 2024, the Debtors will file voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

b)   On or before November 20, 2024, the Debtors will obtain approval of the Interim DIP Order acceptable to the DIP Lender;

c)   On or before December 9, 2024, the Debtors will file a sale and bidding procedures motion acceptable to the DIP Lender;

d)   On or before December 18, 2025, the Debtors will obtain approval of bidding procedures which shall require a sale no later than March 18, 2025;

e)   On or before December 18, 2024, the Debtors will obtain approval of the Final DIP Order acceptable to the DIP Lender;

f)    On or before February 7, 2025, the bid deadline shall occur;

g)    On or before February 10, 2025, the auction (if any) shall occur;

h)    On or before February 12,, 2025, if no other bids are received or no objections to the sale have been timely filed and served, the Bankruptcy Court shall have entered an order approving the sale; and

i)    In the event of multiple bids and/or objections to sale having been filed, on or before February 18, 2025, the Bankruptcy Court shall have entered an order approving the sale; and

j)    On or before March 5, 2025, the Debtors shall have closed on the transactions authorized under the sale order, subject to any regulatory approval that may be required and the absence of which shall be cause to extend such deadline.

30.    Rights and Remedies Upon Event of Default. Upon the occurrence of an Event of Default, the DIP Lender shall give written notice of such Event of Default (the "Default Notice") to counsel for the Care Pavilion Debtors, counsel to the Committee (if any), and to the Office of the United States Trustee (the "Notice Parties") (which notice shall be given by e-mail transmission, the automatic stay being deemed lifted for such purpose to the extent necessary). Upon the delivery of a Default Notice, the Care Pavilion Debtors and the DIP Lender consent to a hearing on an expedited basis to consider whether: (i) an Event of Default has occurred; and (ii) any other appropriate relief or remedies on not less than five (5) business days' notice. During the five (5) business days following the date a Default Notice is delivered (such five (5) business day period before referred to as the "Remedies Notice Period"), the Care Pavilion Debtors shall continue to have authority to use Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order authorizing granting the DIP Motion, solely to

43

pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Care Pavilion Debtors' estates. At the end of the Remedies Notice Period, unless and until the Bankruptcy Court has entered an order to the contrary or as otherwise agreed between the Care Pavilion Debtors, in consultation with the Committee, and the DIP Lender, the Care Pavilion Debtors' rights to use the DIP Facility or cash collateral of the DIP Lender shall immediately cease and all cash collateral or proceeds of the DIP Facility shall be held pending further order of the Bankruptcy Court, except as necessary to fund the Carve-Out. The automatic stay in the Care Pavilion Cases otherwise applicable to the DIP Lender is hereby terminated five (5) business days after the date a Default Notice is delivered (the "Remedies Notice Period"). Unless the Court orders otherwise, the automatic stay, as to the DIP Lender shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Except as may be ordered by the Court, upon expiration of the Remedies Notice Period, the DIP Lender shall be permitted to exercise all remedies against the Care Pavilion Debtors as set forth herein or in the DIP Documentation, as applicable, and as otherwise available at law without further order of or application or motion to the Court consistent with this paragraph of this Final DIP Order, provided however, that the DIP Lender shall not have any right to the Carve-Out or Excluded Collateral. Upon the occurrence and during the continuation of an Event of Default and the expiration of the Remedies Notice Period, the DIP Lender and any liquidator or other professional will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property to

the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP

Collateral, including pursuant to any Court approved sale process.  The DIP Lender shall also have

the right to seek emergency relief from the Court shortening the Remedies Notice Period and

seeking other relief upon the occurrence of an Event of Default.

31.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay
of this Interim DIP Order.  The DIP Lender has acted in good faith in connection with this Interim

DIP Order and is entitled to rely upon the protections granted herein and by section 364(e) of the

Bankruptcy Code. Based on the findings set forth in this Interim DIP Order and the record made

during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the

event any or all of the provisions of this Interim DIP Order are hereafter reargued, reconsidered,

reversed, modified, amended, or vacated by a subsequent order of this Court or any other court,

the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code to

the maximum extent set forth therein.  Any such modification, amendment or vacatur shall not

affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of

any advances previously made or made hereunder, or lien, claim or priority granted, perfected,

authorized or created hereby, unless such modification, amendment or vacatur pertains to an

authorization to obtain credit or incur debt, or to the granting of a priority or lien, that is stayed

pending appeal. Any liens or claims granted to the DIP Lender hereunder arising prior to the

effective date of any such modification, amendment or vacatur of this Interim DIP Order shall be

45

governed in all respects by the original provisions of this Final DIP Order, including to all rights, remedies, privileges and benefits granted herein.

32.    <u>DIP and Other Expenses</u>.  The Care Pavilion Debtors are authorized and directed to pay (a) all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses due and outstanding as of the Petition Date of the DIP Lender related to the DIP Facility and the Care Pavilion Cases. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Lender shall not be required to submit invoices in any particular format, however any time that such professionals seek payment of fees and expenses from the Care Pavilion Debtors, each professional shall provide copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Care Pavilion Debtors. Any objections raised by the Care Pavilion Debtors, the U.S. Trustee or a Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court. Pending such

resolution, the undisputed portion of any such invoice will be paid promptly by the Care Pavilion Debtors. Notwithstanding the foregoing, the Care Pavilion Debtors are authorized and directed to pay on the Effective Date (as defined in the DIP Facility Term Sheet) all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Lender related to the DIP Facility incurred on or prior to such date without the need for any professional engaged by the DIP Lender to first deliver a copy of its invoice to any other party as provided for herein; *provided*, *however*, that payment of any origination fee or exit fee shall be subject to entry of the Final DIP Order. No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

33.    <u>Carve-Out</u>.

i.       As used in this Final DIP Order, the "<u>Carve-Out</u>" means, after delivery of a written notice, delivered by email or U.S. Mail by the DIP Lender to the Care Pavilion Debtors, their counsel, the U.S. Trustee, and counsel to the Committee and any committees, or any default under the DIP Loan or of the occurrence of the Maturity Date (the "<u>Carve-Out Trigger Notice</u>"), the sum of the following amounts as of the earlier of (a) the day the DIP Lender issues a Carve-Out Trigger Notice, or (b) the Maturity Date: (i) all unpaid professional fees and disbursements incurred by the Care Pavilion Debtors and the Committee for any of their respective professionals retained by final order of the Court, which order has not been reversed, vacated or stayed, unless such stay has been vacated

(the "Case Professionals") at any time prior to the delivery of the Carve-Out Trigger Notice to the extent allowed by this Court (the "Allowed Professional Fees"), in an aggregate amount not to exceed the amounts set forth in the Budget for Professional Fees prior to the delivery of a Carve-Out Trigger Notice; and (ii) the payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $125,000 (the "Wind-Down Carve-Out Amount"), plus (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court for the Care Pavilion Debtors for the time period beginning on the petition date and ending on the Carve-Out Effective Date, which fees shall not be limited to amounts that may be set forth in the Budget.

ii.      Notwithstanding the foregoing, so long as no Carve-Out Trigger Notice has been issued by the DIP Lender, the Care Pavilion Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code but solely to the extent the same are reflected as estimated professional fees and disbursements in the most recent Budget approved by the DIP Lender prior to the delivery of a Carve-Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve-Out Amount. The Carve-Out shall not be deemed

increased if actual fees of Case Professionals are higher in fact than the estimates provided

on the Budget. No portion of the Carve-Out may be used in contravention of the restrictions

or the limitations on the use of the Carve-Out set forth in this Interim DIP Order.

iii.        *No Direct Obligation to Pay Professional Fees*. Other than in accordance

with the Budget, the DIP Lender shall not be responsible for the direct payment or

reimbursement of any fees or disbursements of any Case Professionals incurred in

connection with the Care Pavilion Cases or any Successor Cases under any chapter of the

Bankruptcy Code. Nothing in this Final DIP Order or otherwise shall be construed to

obligate the DIP Lender in any way to pay compensation to or to reimburse expenses of

any Case Professional, or to guarantee that the Care Pavilion Debtors have sufficient funds

to pay such compensation or reimbursement.

iv.        *Payment of Carve-Out After Carve-Out Trigger Notice*.  Any payment or

reimbursement made for services rendered on or after the delivery date of the Carve-Out

Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the

Wind-Down Carve-Out Amount on a dollar-for-dollar basis. Any funding of the Carve-

Out shall be added to and made a part of the DIP Obligations and secured by the DIP

Collateral and otherwise entitled to the protections granted under this Interim DIP Order,

the DIP Documentation, the Bankruptcy Code and applicable law.

v.        If the Debtor cures the Event of Default giving rise to a Carve-Out Trigger Notice, within five business (5) days of the receipt thereof, such Carve-Out Trigger Notice shall no longer be of force and effect.  This Final DIP Order does not cap compensation allowed or allowable under sections 327, 330, or 363 of the Bankruptcy Code and is not a waiver of any rights or obligations under section 1129(a)(9) of the Bankruptcy Code. The Carve-Out and Wind Down Carve-Out Amount shall be exclusively for the benefit of Case Professionals whose retentions have been approved by the Court prior to appointment of a chapter 11 trustee or entry of an order converting these cases to cases under chapter 7 of the Bankruptcy Code.

vi.        As of entry of this Final DIP Order, the Committee has applications pending for the Committee's Case Professionals at Docket Entry [*] and [*] (the "Committee Retention Applications").  The Committee's Case Professionals shall be entitled to the benefits of the Carve Out and Carve Out Wind Down Amounts for payment of Allowed Professional Fees incurred prior to delivery of a Carve Out Trigger Notice even if retention of such Committee Case Professionals is authorized after issuance by the DIP Lender of a Carve Out Trigger Notice.  If a Carve Out Trigger Notice is issued prior to entry of an order granting the Committee Retention Applications, then and all amounts in the Budget budgeted for the Committee's Case Professionals up to the date a Carve Out Trigger Notice shall be placed in a separate deposit account, and the Committee's Case

50

Professionals shall be entitled to payment from such funds for their Allowed Professional

Fees incurred prior to delivery of a Carve Out Trigger Notice.

34.     <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out</u>.  The DIP

Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve-Out may

not be used in connection with: (a) except to contest the occurrence of an Event of Default,

preventing, hindering, or delaying the DIP Lender's enforcement or realization upon any of the DIP

Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Final DIP Order

and the DIP Documentation; (c) except as permitted in the DIP Documentation, selling or otherwise

disposing of DIP Collateral outside of the ordinary course without the consent of the DIP Lender;

(d) except as permitted in the DIP Documentation, using or seeking to use any insurance proceeds

constituting DIP Collateral without the consent of the DIP Lender; (e) except as permitted in the

DIP Documentation, incurring any indebtedness without the prior consent of the DIP Lender; (f)

seeking to amend or modify any of the rights granted to the DIP Lender under this Final DIP Order

or the DIP Documentation, including seeking to use the Cash Collateral and/or DIP Collateral on

a contested basis; (g) objecting to or challenging in any way the DIP Liens, the DIP Obligations,

the DIP Collateral (including the Cash Collateral) or any other claims or liens, held by or on behalf

of the DIP Lender related to the DIP Obligations; (h) asserting, commencing, or prosecuting any

claims or causes of action whatsoever related to the DIP Obligations, including any actions under

Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or

51

disgorge payments, against the DIP Lender or any of its affiliates, or their respective agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, and/or the Prepetition Secured Liens (subject to the below); or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations; *provided, however*, that, notwithstanding any other provision herein, the Carve-Out and Wind-Down Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings, or other litigation related to the DIP Obligations against the DIP Lender or any affiliates of any of the DIP Lender, or any of their respective officers, directors, employees, agents, advisors, and counsel, including but not limited to challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the DIP Obligations and DIP Liens or the DIP Lender; *provided further*, *however*, that up to $30,000 shall be budgeted for investigating the validity and extent of the Prepetition Secured Liens.

35.   Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses. The Care Pavilion Debtors shall be permitted to pay fees and expenses allowed and payable by interim compensation procedures or

by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, in accordance with the terms of this Interim DIP Order.

36.     <u>Effect of Stipulations on Third Parties</u>.

i.      The Debtors' Stipulations contained in this Final Order shall be binding upon the estates and all other parties in interest unless:

A.      a party-in-interest (including the Committee, if any, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) (each, a "<u>Challenge Party</u>") has timely filed an adversary proceeding, contested matter, or motion seeking derivative standing concerning the validity, extent, perfection, priority, or enforceability of the Prepetition Loan Obligations or Prepetition Liens ("<u>Lien Challenge Issues</u>" and, as to a filed document initiating a proceeding, a "<u>Lien Challenge Complaint</u>") (subject to the limitations contained herein, including in this paragraph) by February 1, 2025 (the "<u>Lien Challenge Deadline</u>");

B.      a Challenge Party has timely filed an adversary proceeding, contested matter, or motion seeking derivative standing concerning any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections,

contests, or defenses (other than the Lien Challenge Issues) as to the Prepetition Secured Parties (the "Non-Lien Challenge Issues" and, as to a filed document initiating a proceeding, a "Non-Lien Challenge Complaint") (subject to the limitations contained herein, including this paragraph) by the earlier of (i) sixty (60) calendar days after completion of a sale of substantially all of the Debtors' assets or (ii) twenty-one (21) days after the filing by the Debtors of disclosure statements (the "Non-Lien Challenge Deadline");

C.      *provided* that if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to chapter 7 prior to the expiration of Lien Challenge Deadline or the Non-Lien Challenge Deadline, the chapter 11 trustee or chapter 7 trustee, as applicable shall have an additional fourteen (14) days to file a Lien Challenge Complaint or Non-Lien Challenge Complaint, as applicable, subject to any further extension by order of the Court;

D.      *provided* further that any such period is subject to extension as may be specified by this Court for cause shown, or if the Prepetition Secured Parties or any one of them, as applicable, agrees in writing to such an extension with respect to any Lien Claims Issues or Non-Lien Challenge Issues (collectively, "Challenge Issues" and any proceeding initiated by a

54

Lien Challenge Complaint or Non-Lien Challenge Complaint being a "Challenge Proceeding"); or

E.      an order is entered and becomes final in favor of the Challenge Party sustaining any such Challenge Proceeding duly made in accordance with the foregoing.

ii.      The filing of a motion for derivative standing or other similar relief by the Committee (a "Derivative Standing Motion") shall toll the Lien Challenge Deadline and Non-Lien Challenge Deadline until such time as the Court enters a final order with respect to the Derivative Standing Motion or as the Court may otherwise order.

iii.      If no Challenge Proceeding is timely filed in respect of the Prepetition Loan Obligations or Prepetition Liens, then (x) the Prepetition Loan Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, recovery, for all purposes in the Care Pavilion Cases and any subsequent chapter 7 case, (y) the Prepetition Liens on the Prepetition Collateral securing the Prepetition Loan Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in herein [(subject to the Intercreditor Agreement)], not subject to setoff, subordination [(subject to the Intercreditor Agreement)], defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery, and (z)

the Prepetition Loan Obligations, Prepetition Secured Lenders, and the Prepetition Liens

on the Prepetition Collateral granted to secure the Prepetition Loan Obligations shall not

be subject to any other or further challenge by any party- in-interest (including the

Committee), and every party-in-interest shall be enjoined from seeking to exercise the

rights of the Debtors' estates, including any successor thereto (including any estate

representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).

iv.      In the event of a successful Challenge Proceeding, the Court may fashion

any appropriate remedy in accordance with applicable law.

37.     Indemnification. The Care Pavilion Debtors shall indemnify and hold harmless the

DIP Lender each of their respective shareholders, directors, members, managers, principals,

agents, advisors, officers, subsidiaries and affiliates in such capacity (each, an "Indemnified

Person") from and against any and all damages, losses, settlement payments, obligations,

liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered,

sustained or required to be paid by an Indemnified Person by reason of or resulting from the DIP

Facility, the transactions contemplated thereby or hereby, or any claim, action, litigation,

investigation or proceeding relating to any of the foregoing, whether or not any of such

Indemnified Person is a party thereto and whether or not brought by the Borrowers or any other

person or entity, except to the extent resulting from the fraud, gross negligence or willful

56

misconduct of such Indemnified Person, as determined by a final non-appealable order of a court of competent jurisdiction.

38.    No Third-Party Rights. Except as explicitly provided for herein, this Final DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

39.    Section 506(c) Claims. Subject to entry of a Final DIP Order, no costs or expenses of administration which have been or may be incurred in the Care Pavilion Cases at any time shall be charged against the DIP Lender or any of its respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

40.    No Marshaling/Applications of Proceeds. Subject to entry of a Final DIP Order, the DIP Lender and the Pre-Petition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral and proceeds shall be received and applied pursuant to this Final DIP Order and the DIP Documentation notwithstanding any other agreement or provision to the contrary.

41.    Section 552(b). Subject to entry of a Final DIP Order, the DIP Lender and the Pre-Petition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy

Code shall not apply to the DIP Lender or Pre-Petition Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Pre-Petition Collateral.

42.    <u>Limits on Lender Liability</u>. Nothing in this Final DIP Order, any of the DIP Documentation, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any activities by the Care Pavilion Debtors in the operation of their businesses or in connection with the administration of these Care Pavilion Cases. The DIP Lender shall not, solely by reason of having made loans under the DIP Facility, be deemed in control of the operations of the Care Pavilion Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Care Pavilion Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final DIP Order or the DIP Documentation, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Care Pavilion Debtors. The DIP Lender is not a control person or insider of the Care Pavilion Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility and/or the DIP Documentation.

43.     <u>Insurance Proceeds and Policies</u>. Upon entry of this Final DIP Order and to the fullest extent provided by applicable law, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and lender loss payee on each insurance policy maintained by the Care Pavilion Debtors that in any way relates to the DIP Collateral.

44.     <u>Joint and Several Liability</u>. Nothing in this Final DIP Order shall be construed to constitute a substantive consolidation of any of the Care Pavilion Debtors' estates, it being understood, however, that the Care Pavilion Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documentation.

45.     <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the DIP Documentation, as applicable: (a) the DIP Lender's right to seek any other or supplemental relief in respect of the Care Pavilion Debtors; (b) any of the rights of any of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Care Pavilion Cases or Successor Cases, conversion of any of the Care Pavilion Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan

or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender. Notwithstanding anything herein to the contrary, the entry of this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Care Pavilion Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final DIP Order. Entry of this Final DIP Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final DIP Order.

46.    <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final DIP Order, the DIP Documentation, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender, a Committee (if appointed), or any party in interest.

47.    <u>Binding Effect of Final DIP Order</u>. Immediately upon entry by this Court, the terms and provisions of this Final DIP Order shall become valid and binding upon and inure to the benefit of the Care Pavilion Debtors, the DIP Lender, all other creditors of any of the Care Pavilion Debtors, any Committee (or any other court appointed committee) appointed in the Care Pavilion Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Care Pavilion Cases of the Care Pavilion Debtors, any Successor Cases of the Care Pavilion Debtors, or upon dismissal of any Case or Successor Case.

48.     <u>No Modification of Final DIP Order</u>. Until and unless the DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility have been terminated,  the Care Pavilion Debtors shall be in default of the DIP Facility , directly or indirectly, if: (a) without the prior written consent of the DIP Lender, (i) any modification, stay, vacatur or amendment is made to this Final DIP Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Care Pavilion Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) is applied for and/or allowed, in any of the Care Pavilion Cases of the Care Pavilion Debtors or Successor Cases of the Care Pavilion Debtors, equal or superior to the DIP Superpriority Claims, other than the Carve-Out and Excluded Collateral; (b) without the prior written consent of the DIP Lender, application is made for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens is granted or attaches to the DIP Collateral, except as specifically provided in the DIP Documentation; or (d) without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Secured Liens (other than the DIP Liens) is granted or attaches to the DIP Collateral. The Care Pavilion Debtors irrevocably waive any right to seek any amendment, modification or extension of this

Final DIP Order without the prior written consent, as provided in the foregoing, of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

49. <u>Final DIP Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Documentation and of this Final DIP Order, the provisions of this Final DIP Order shall govern and control.

50. <u>Discharge</u>. The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Care Pavilion Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, unless each of the DIP Lender has otherwise agreed in writing.

51. <u>Survival</u>. The provisions of this Final DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Care Pavilion Cases of the Care Pavilion Debtors; (b) converting any of the Care Pavilion Cases of the Care Pavilion Debtors to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Care Pavilion Cases of the Care Pavilion Debtors or any Successor Cases of the Care Pavilion Debtors; or (d) pursuant to which this Court abstains from hearing any of the Care Pavilion Cases of the Care Pavilion Debtors or Successor Cases of

the Care Pavilion Debtors. The terms and provisions of this Final DIP Order, including the claims, liens, security interests, and other protections granted to the DIP Lender granted pursuant to this Final DIP Order and/or the DIP Documentation, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Care Pavilion Cases of the Care Pavilion Debtors, in any  Successor Cases of the Care Pavilion Debtors, or following dismissal of the Care Pavilion Cases of the Care Pavilion Debtors or any Successor Cases of the Care Pavilion Debtors, and shall maintain their priority as provided by this Final DIP Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documentation and this Final DIP Order, have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated.

52.    _Extension of Maturity Date and Wind Down Budget_. The Maturity Date under the DIP Facility Term Sheet is extended through and until May 1, 2025 (the "_Maturity Date_"). The parties shall work together to create a wind down budget (the "_Wind Down Budget_") through the Maturity Date.

53.    _Retroactive Effect of this Final DIP Order_. This Final DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable retroactive to the Petition Date immediately upon execution thereof.

54.    Notwithstanding anything to the contrary in this Final DIP Order or the DIP Documentation, nothing herein or in the DIP Documentation shall alter or impact the rights of the

Official Committee of Unsecured Creditors of Pottsville Operations, LLC, *et al.* (the "Pottsville

Committee") and references to the "Committee" and the "Chapter 11 Cases" shall not include the

Pottsville Care Pavilion Debtors or the Pottsville Cases.

      55.    Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce the

terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim DIP

Order.

BY THE COURT:

Date:     December 19  , 2024
       Pittsburgh, PA

The Honorable Jeffery A. Deller
United States Bankruptcy Court

FILED
12/19/24 5:33 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## EXHIBIT A-1

**DIP Facility Term Sheet**

*ARGNT HOLDINGS, LLC - PA8 GROUP DIP FACILITY*
*SUMMARY OF INDICATIVE TERMS AND CONDITIONS*
*NOVEMBER 19, 2024*

**This DIP Facility Term Sheet describes the terms and conditions of the proposed DIP Facility. This DIP Facility Term Sheet is incorporated into the Letter Agreement.**

| | |
|---|---|
| **Facility Structure** | Senior debtor-in-possession loan facility in the amount of the sum of a new money loan facility (the "<u>DIP Facility</u>") in the Chapter 11 Cases, in the aggregate principal amount of up to $9,700,000 (the "<u>DIP Loan</u>"). The DIP Loan shall be senior to the liens of the Debtors' primary secured creditors Metropolitan Commercial Bank and Dime Bank. No funds under the DIP Loan shall be available until entry of an order by the Bankruptcy Court granting approval of the DIP Motion, *provided that* the form and substance of the Order must be acceptable to the DIP Lender in its sole discretion (the "<u>DIP Order</u>"). After entry of the interim or final DIP Order, the DIP Loan proceeds shall be available to the Debtors within one (1) business day after Debtors submit a draw request stating (i) that the "Conditions Precedent" set forth below shall have been satisfied or waived by DIP Lender, (ii) there is no default or Event of Default under the DIP Documentation (defined below), and (iii) that the Debtors are operating in accordance with the Budget; provided however, that the DIP Lender and the Debtors will work together to coordinate an immediate draw on the DIP Loan immediately after entry of the interim DIP Order. |
| **Borrowers/Debtors** | Care Pavilion Operating, LLC; MAPA Operating, LLC; Maplewood Operating, LLC; York Operating, LLC; Tucker Operating, LLC; Cliveden Operating, LLC; Milton Operating, LLC; Watsontown Operating, LLC; and Parkhouse Operating, LLC (the "<u>Debtors</u>" or "<u>Borrowers</u>"), which filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "<u>Bankruptcy Code</u>") on November 18, 2024 (the "<u>Petition Date</u>") in the United States Bankruptcy Court for the Western District of Pennsylvania at Case No. 24-70473-JAD (the "<u>Chapter 11 Cases</u>"). |
| **DIP Lender** | Argnt Holdings LLC (the "<u>DIP Lender</u>"). |
| **DIP Loan Guarantor** | Ben Landa (the "<u>Guarantor</u>"). |
| **Use of Cash Collateral** | In addition to the DIP Loan proceeds, the Debtors will have the right to use cash collateral until the earlier of (i) the Carve-Out Effective Date, or (ii) the Maturity Date, in accordance with the Budget. |

| | |
|---|---|
| **Maturity Date** | The DIP Facility shall mature and be payable in full on the "<u>Maturity Date</u>", which shall mean the earliest of the following dates (unless extended by the Debtors and the DIP Lender):<br><br>(i)    150 days from the Petition Date;<br><br>(ii)    Acceleration of the DIP loans upon or following an Event of Default (as defined below); and<br><br>(iii)    Conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Cases. |
| **Carve-Out** | The sum of the following amounts as of the earlier of (i) the day the DIP Lender issues a of Carve-Out Trigger Notice, or (ii) the Maturity Date ("<u>Carve-Out Effective Date</u>"):<br><br>(i)    All unpaid professional fees and disbursements incurred by the Debtors and any statutory committees appointed in the Chapter 11 Cases, including any third party CRO or similar officers working on behalf of the Debtors, pursuant to sections 327, 328 and 1103 of the Bankruptcy Code for any of their respective professionals retained by final order of the Court, which order has not been reversed, vacated or stayed, unless such stay has been vacated (the "<u>Case Professionals</u>") at any time prior to the delivery of the Carve-Out Trigger Notice to the extent allowed by this Court (the "<u>Allowed Professional Fees</u>"), in an aggregate amount not to exceed the amounts set forth in the Budget for Professional Fees prior to the delivery of a Carve-Out Trigger Notice; and<br><br>(ii)    The payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $125,000 (the "<u>Wind-Down Carve Out Amount</u>"), plus<br><br>(iii)    The payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court for the Debtors for the time period beginning on the petition date and ending on the Carve-Out Effective Date, which fees shall not be limited to amounts that may be set forth in the Budget.  "<u>Carve-Out Trigger Notice</u>" means a written notice, delivered by email or U.S. Mail by the |

|  | DIP Lender to the Debtors, their counsel, the U.S. Trustee, and counsel to any committees, of any default hereunder or of the occurrence of the Maturity Date.<br><br>Notwithstanding any other provision herein, the Carve-Out and Wind-Down Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Debtors, the DIP Lender, or any affiliates of any of the foregoing entities, or any of their respective officers, directors, employees, agents, advisors, and counsel, including but not limited to challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the obligations and liens and security interests in favor of the Debtors or the DIP Lender. |
|---|---|
| **Interest Rate & Unused Facility Fee** | A per annum rate equal to 13%, which shall be calculated on the basis of the actual days elapsed in a year of 360 days from the Closing date to the Maturity Date.  Upon an event of default or if the DIP Facility is not paid in full at the Maturity Date, interest shall continue to accrue at 18% thereafter. |
| **Fees** | The DIP Lender shall be paid a 1% origination fee upon the entry of the DIP Order and a 1% exit fee upon repayment of the DIP Loan. Debtors shall reimburse the DIP Lender for all its professional fees related its role as DIP Lender from the proceeds of the DIP Loan. |
| **Use of Proceeds** | The proceeds of the DIP Facility and Cash Collateral shall be used in accordance with the Budget. |
| **Security and Priority of DIP Facility** | The claims of the DIP Lender in the Debtors' Chapter 11 Cases, with respect to the DIP Facility, shall at all times:<br><br>(i)    Pursuant to section 364(c)(1) of the Bankruptcy Code constitute allowed super-priority administrative expense claims in each of the Debtors' Chapter 11 cases, having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all expenses and claims of the Debtors, including but not limited to the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, 1114, and any other provision of the |

| | |
|---|---|
| | Bankruptcy Code or otherwise (the "<u>Super-Priority DIP Claim</u>"); and <br><br> (ii) Pursuant to section 364(d)(1) of the Bankruptcy Code, be secured by an automatically perfected senior security interest in and lien on all assets belonging to the Debtors (the "<u>DIP Collateral</u>") ahead of the perfected first priority liens and security interests in all assets of the Debtor held by Metropolitan Bank and Dime Bank. This lien includes a lien on the proceeds of all avoidance actions. |
| **Documentation** | This DIP Facility Term Sheet and the DIP Order shall constitute the definitive DIP documents (the "<u>DIP Documentation</u>"). The DIP Documentation shall conform to this DIP Facility Term Sheet and otherwise shall be in form and substance reasonably acceptable to the Parties. In the event of any inconsistency between this Term Sheet and the DIP Order, the DIP Order shall control. |
| **Representations and Warranties** | The Debtors hereby represent and warrant that: <br><br> (i) The DIP Motion and DIP Order shall be consistent with this DIP Facility Term Sheet and in all other respects in form and substance reasonably satisfactory to the DIP Lender; <br><br> (ii) The execution and delivery of all agreements, instruments, and other documents evidencing or securing the DIP Facility consistent with this DIP Facility Term Sheet and in all other respects in form and substance reasonably satisfactory to the DIP Lender; and <br><br> (iii) All necessary governmental, shareholder, and third-party approvals and/or consents have been obtained by the Debtors and remain in effect. |
| **Conditions Precedent to Closing** | The obligation of the DIP Lender to fund the DIP Loan shall be subject to the condition precedent that on the date of such release, the following statements shall be true: <br><br> (i) The DIP Documentation shall be in form and substance reasonably satisfactory to the DIP Lender; <br><br> (ii) The Bankruptcy Court has entered the DIP Order, in form and substance acceptable to the DIP Lender, authorizing the Debtors to enter the DIP Facility, and |

|  | such DIP Order has not been otherwise stayed or reversed; |
|---|---|
|  | (iii) The DIP Lender shall have received and shall have approved the Budget; |
|  | (iv) No Event of Default (defined below) shall have occurred prior to entry of, or after giving effect to, the DIP Order; |
|  | (v) The DIP Order provides that the DIP Lender has at all times acted in good faith and is entitled to the protections of section 364(e) of the Bankruptcy Code; |
|  | (vi) Upon the entry of the DIP Order, the DIP Lender shall have as collateral the Super-Priority DIP Claim and valid and perfected first priority liens on the DIP Collateral; and |
|  | (vii) The Loan Fee shall have been paid to the DIP Lender. |
|  | Subject to the foregoing conditions being satisfied, the DIP Lender shall release funds to the Debtors under the terms set forth herein. For the avoidance of doubt, the DIP Lender may waive any of the conditions precedent at any time via a signed writing. |
| **DIP Budget** | The use of cash collateral and proceeds from the DIP Facility shall be subject to the Budget attached hereto as <u>Schedule I</u> subject to the following (the "<u>Permitted Variance</u>"): (i) the actual total cash receipts, determined on a cumulative rolling four-week basis, shall not be less than 90% of the projected total cumulative cash receipts as set forth in the approved Budget for the relevant period of determination, and (ii) the actual total disbursements, determined on a cumulative rolling four-week basis, shall not be greater than 110% of the projected disbursements as set forth in the approved Budget for the relevant period of determination.  The first test to confirm whether the Debtors are within the Permitted Variance shall occur after the Interim DIP Order has been in place for four full weeks, and tests shall continue weekly thereafter, based on the Debtors' performance against Budget during the most recent four-week period.  Any modifications to the Budget must be approved by the DIP Lender in its sole and absolute discretion.  Beginning on the Petition Date, the Debtors shall provide a variance report to the DIP Lender by Friday of each week comparing the previous week's budget-to-actuals and shall provide backup information upon request. |

| | |
|---|---|
| **Budget Covenants** | The Debtors shall be obligated to comply with the Budget, subject to the Permitted Variance. The Debtors' failure to comply with this requirement shall constitute an immediate Event of Default. |
| **Mandatory Prepayment** | Upon the occurrence of an Event of Default or the Maturity Date, the Debtors shall repay to the DIP Lender the aggregate outstanding principal amount under the DIP Facility and all accrued but unpaid interest thereon (collectively, the "DIP Facility Obligations"). The Debtors may prepay without penalty all or any portion of the DIP Facility. |
| **Events of Default** | The following shall be events of default (collectively "Events of Default" and each individually an "Event of Default"):<br><br>(i)    The Debtors fail to operate in accordance with the Budget (after taking into account Permitted Variances) or any reporting requirement;<br><br>(ii)    The Debtors fail to make any required payment, including but not limited to the payment of the full balance of the DIP Facility upon default or at the Maturity Date;<br><br>(iii)    Any order authorizing the Debtors to obtain the DIP Facility, whether on an interim or final basis, is not in a form satisfactory to the DIP Lender or is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the DIP Lender;<br><br>(iv)    The Debtors' Chapter 11 Cases are either dismissed or converted to cases under Chapter 7 pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed;<br><br>(v)    A Chapter 11 trustee is appointed such that the Debtors are no longer debtors-in-possession, pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; or<br><br>(vi)    The Debtors fail to achieve any of the Milestones (the "Milestones") set forth below, unless extended by written consent of the DIP Lender. |
| **Milestones** | The Milestones required under the DIP Facility consist of the following: |

| | |
|---|---|
| | a) On or before November 18, 2024, the Debtors will file voluntary petitions for relief under chapter 11 of the Bankruptcy Code;<br><br>b) On or before November 20, 2024, the Debtors will obtain approval of the Interim DIP Order acceptable to the DIP Lender;<br><br>c) On or before December 9, 2024, the Debtors will file a sale and bidding procedures motion acceptable to the DIP Lender;<br><br>d) On or before December 18, 2025, the Debtors will obtain approval of bidding procedures which shall require a sale no later than February 15, 2025;<br><br>e) On or before December 18, 2024, the Debtors will obtain approval of the Final DIP Order acceptable to the DIP Lender;<br><br>f) On or before January 16, 2025, the bid deadline shall occur;<br><br>g) On or before January 21, 2025, the auction (if any) shall occur;<br><br>h) On or before January 24, 2025, the Bankruptcy Court shall have entered an order approving the sale; and<br><br>i) On or before February 15, 2025, the Debtors shall have closed on the transactions authorized under the sale order. |
| **Remedies** | Upon the occurrence of an Event of Default, the DIP Lender shall give written notice of such Event of Default (the "Default Notice") to counsel for the Debtors, counsel to the Official Committee of Unsecured Creditors (if any), and to the Office of the United States Trustee (the "Notice Parties") (which notice shall be given by e-mail transmission, the automatic stay being deemed lifted for such purpose to the extent necessary). Upon the delivery of a Default Notice, the Debtors and the DIP Lender consent to a hearing on an expedited basis to consider whether (i) an Event of Default has occurred; and (ii) any other appropriate relief or remedies on not less than five (5) business days' notice.  During the five (5) business days following the date a Default Notice is delivered (such five (5) business day period before referred to as the "Remedies Notice Period"), the Debtors shall continue to have authority to use Cash |

| | |
|---|---|
| | Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order authorizing granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Debtors' estates.

At the end of the Remedies Notice Period, unless and until the Bankruptcy Court has entered an order to the contrary or as otherwise agreed between the Debtors and the DIP Lender, the Debtors' rights to use the DIP Facility or cash collateral shall immediately cease and all cash collateral or proceeds of the DIP Facility shall be held pending further order of the Bankruptcy Court, except as necessary to fund the Carve-Out. |
| **Indemnity** | The Debtors agree to indemnify and hold harmless the DIP Lender, and each of its respective shareholders, directors, members, managers, principals, agents, advisors, officers, subsidiaries and affiliates in such capacity for the DIP Lender (each, an "Indemnified Person") from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an Indemnified Person by reason of or resulting from the DIP Facility, the transactions contemplated thereby or hereby, or any claim, action, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such Indemnified Person is a party thereto and whether or not brought by the Borrowers or any other person or entity, except to the extent resulting from the fraud, gross negligence or willful misconduct of such Indemnified Person as determined by a final non-appealable order of a court of competent jurisdiction. |
| **Amendment and Waiver** | No waiver, modification, or amendment of the terms of this DIP Facility Term Sheet shall be valid unless such waiver, modification, or amendment is in writing and has been signed by the Debtors and the DIP Lender.  No waiver of any of the provisions of this DIP Facility Term Sheet shall be deemed or constitute a waiver of any other provisions of this DIP Facility Term Sheet, whether or not similar, nor shall any waiver be deemed a continuing waiver. |
| **Other Terms** | Adequate Protection.  Except for adequate protection payments as provided in the final Budget and for replacement liens for Dime Bank and Metropolitan Bank, no adequate protection shall be provided to any prepetition creditor, except on terms acceptable to the DIP Lender in its reasonable discretion. |

|  | § 506(c) and 510 Waiver.  All rights to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code or to seek equitable subordination of the DIP Loan under Section 510 of the Bankruptcy Code shall be waived in the Final DIP Order.<br><br>§ 552(b)(1) Entitlement.  The DIP Lender shall be entitled to all of the rights and benefits of section 522(b)(1) of the Bankruptcy Code and the "equities of the case" exception therein shall not apply in the Final DIP Order. |
|---|---|

**THE TERMS AND CONDITIONS AS SET FORTH HEREIN ARE INTENDED TO BE A PROPOSAL TO ENTER INTO THE CREDIT FACILITY AND SHALL NOT BE CONSTRUED AS A LEGAL OR BINDING CONTRACT UNTIL THE INITIAL PAYMENT IS RECEIVED BY THE LENDER, AND SUBSEQUENTLY THE CREDIT FACILITY IS EXECUTED BY THE LENDER AND THE COMPANY, WHICH INCLUDE SEPARATE LOAN DOCUMENTS TO BE PREPARED. LENDER RESERVES THE RIGHT IN LENDER'S SOLE DISCRETION TO DETERMINE THE SUFFICIENCY OF DILIGENCE AND WHETHER TO PROCEED IN EXECUTING THE CREDIT FACILITY AND RELATED DOCUMENTS BASED ON SUCH DILIGENCE.**

**If the foregoing is acceptable to you, please so indicate by signing a copy of this proposal in the space provided below and return an executed copy at your earliest convenience.**

| CARE PAVILION OPERATING, LLC | MAPA OPERATING, LLC |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| MAPLEWOOD OPERATING, LLC | YORK OPERATING, LLC |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| TUCKER OPERATING, LLC | CLIVEDEN OPERATING, LLC |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| MILTON OPERATING, LLC | WATSONTOWN OPERATING, LLC |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| PARKHOUSE OPERATING, LLC | |
| By: _____ | |
| Name: _____ | |
| Title: _____ | |

## EXHIBIT A-2

**Budget**

| ($ in 000s) | F 1 11/22 | F 2 11/29 | F 3 12/6 | F 4 12/13 | F 5 12/20 | F 6 12/27 | F 7 1/3 | F 8 1/10 | F 9 1/17 | F 10 1/24 | F 11 1/31 | F 12 2/7 | F 13 2/14 | Total Forecast 13 Week Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PA8 DIP BUDGET** | | | | | | | | | | | | | | |
| **Description** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| Govt. (Medicaid & Medicare) [A] | $3,888 | $926 | $951 | $4,518 | $1,006 | $3,974 | $949 | $4,489 | $1,000 | $3,952 | $949 | $4,128 | $917 | $31,647 |
| Non-Govt. (Cmrcl. & Priv. Pay) [A] | $175 | $550 | $146 | $344 | $165 | $534 | $146 | $344 | $165 | $534 | $146 | $344 | $165 | $3,757 |
| **Total Receipts** | $4,063 | $1,476 | $1,097 | $4,862 | $1,171 | $4,508 | $1,095 | $4,833 | $1,165 | $4,486 | $1,095 | $4,472 | $1,082 | $35,404 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll Wages | ($1,255) | ($1,045) | ($1,255) | ($1,057) | ($1,255) | ($1,045) | ($1,255) | ($1,045) | ($1,255) | ($1,045) | ($1,255) | ($1,045) | ($1,255) | ($15,069) |
| Payroll Taxes | ($470) | ($382) | ($470) | ($385) | ($470) | ($394) | ($470) | ($382) | ($382) | ($470) | ($382) | ($470) | ($382) | ($5,598) |
| Emp. Bens / Insur. | ($367) | $0 | ($167) | ($365) | ($2) | $0 | ($167) | ($365) | ($2) | $0 | ($2) | ($365) | ($2) | ($1,807) |
| Payroll Wages / Tax / Benefits [B] | ($2,092) | ($1,427) | ($1,892) | ($1,808) | ($1,727) | ($1,440) | ($1,892) | ($1,792) | ($1,727) | ($1,427) | ($1,727) | ($1,792) | ($1,727) | ($22,474) |
| Temporary Employees (Agency) | ($189) | ($188) | ($189) | ($188) | ($189) | ($110) | ($189) | ($188) | ($189) | ($188) | ($189) | ($188) | ($189) | ($2,371) |
| Outsourced Services | ($132) | ($292) | ($179) | ($23) | ($132) | ($292) | ($179) | ($23) | ($132) | ($292) | ($179) | ($23) | ($132) | ($2,011) |
| Property Exp., Insurance, Real Estate Taxes | ($150) | ($18) | ($2,257) | $0 | ($192) | $0 | ($2,256) | ($4) | ($192) | $0 | ($289) | ($4,601) | ($150) | ($10,109) |
| Supplies | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($174) | ($2,262) |
| Overhead (Acctg / Rev. Cycle) | ($20) | ($20) | ($20) | ($78) | ($20) | ($20) | ($20) | ($20) | ($20) | ($20) | ($20) | ($78) | ($20) | ($434) |
| **Total Operating Expenses** | ($2,758) | ($2,119) | ($4,712) | ($2,271) | ($2,435) | ($2,035) | ($4,710) | ($2,259) | ($2,435) | ($2,101) | ($2,579) | ($6,856) | ($2,393) | ($39,661) |
| **Net Cash Flow b/f Non-Op Disb.** | $1,305 | ($643) | ($3,614) | $2,592 | ($1,264) | $2,473 | ($3,615) | $2,574 | ($1,270) | $2,385 | ($1,484) | ($2,384) | ($1,311) | ($4,257) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| *Professional Fees:* | | | | | | | | | | | | | | |
| *Baker Hostetler - Debtors' Legal Counsel* | $0 | $0 | ($550) | $0 | $0 | $0 | ($550) | $0 | $0 | $0 | ($550) | $0 | $0 | ($1,650) |
| *Raines - Debtors' Local Counsel* | $0 | $0 | ($90) | $0 | $0 | $0 | ($90) | $0 | $0 | $0 | ($90) | $0 | $0 | ($270) |
| *SOLIC - Debtors' Financial Advisor* | $0 | $0 | ($250) | $0 | $0 | $0 | ($250) | $0 | $0 | $0 | ($250) | $0 | $0 | ($750) |
| *UCC Legal Counsel & Financial Advisor* | $0 | $0 | ($350) | $0 | $0 | $0 | ($200) | $0 | $0 | $0 | ($100) | $0 | $0 | ($650) |
| *Pre-Petition Sr. Lender Counsel* | $0 | $0 | ($75) | $0 | $0 | $0 | ($75) | $0 | $0 | $0 | ($75) | $0 | $0 | ($225) |
| *Debtors' Regulatory Counsel* | $0 | $0 | ($100) | $0 | $0 | $0 | ($100) | $0 | $0 | $0 | ($100) | $0 | $0 | ($300) |
| *Ombudsman* | $0 | $0 | ($10) | $0 | $0 | $0 | ($10) | $0 | $0 | $0 | ($10) | $0 | $0 | ($30) |
| *Stretto (Claims Agent)* | $0 | $0 | ($70) | $0 | $0 | $0 | ($50) | $0 | $0 | $0 | ($50) | $0 | $0 | ($170) |
| *U.S. Trustee Quarterly Fee* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($250) | $0 | $0 | ($250) |
| **Professional Fees** | $0 | $0 | ($1,495) | $0 | $0 | $0 | ($1,325) | $0 | $0 | $0 | ($1,475) | $0 | $0 | ($4,295) |
| Capex | $0 | $0 | ($100) | $0 | $0 | $0 | ($100) | $0 | $0 | $0 | ($100) | $0 | $0 | ($300) |
| Sale Brokerage Fee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($200) | ($200) |
| Metropolitan (1797 & 2343) Loan Principal | $0 | ($61) | $0 | $0 | $0 | $0 | ($61) | $0 | $0 | $0 | ($61) | $0 | $0 | ($182) |
| Metropolitan (1797 & 2343) Loan Interest | $0 | ($32) | $0 | $0 | $0 | $0 | ($32) | $0 | $0 | $0 | ($32) | $0 | $0 | ($95) |
| Dime (2172) Loan Principal | ($101) | $0 | $0 | $0 | $0 | ($101) | $0 | $0 | $0 | ($101) | $0 | $0 | $0 | ($302) |
| Dime (2172) Loan Interest | ($48) | $0 | $0 | $0 | $0 | ($48) | $0 | $0 | $0 | ($48) | $0 | $0 | $0 | ($145) |
| **Other Non-Operating Disbursements** | ($149) | ($92) | ($100) | $0 | $0 | ($149) | ($192) | $0 | $0 | ($149) | ($192) | $0 | ($200) | ($1,224) |
| **Total Non-Operating Disbursements** | ($149) | ($92) | ($1,595) | $0 | $0 | ($149) | ($1,517) | $0 | $0 | ($149) | ($1,667) | $0 | ($200) | ($5,519) |
| **Net Cash Flow** | $1,156 | ($735) | ($5,209) | $2,592 | ($1,264) | $2,324 | ($5,133) | $2,574 | ($1,270) | $2,236 | ($3,151) | ($2,384) | ($1,511) | ($9,776) |
| **Cash Balance** | | | | | | | | | | | | | | |
| Beginning Book | $0 | $1,156 | $421 | ($4,788) | ($2,197) | ($3,461) | ($1,137) | ($6,270) | ($3,696) | ($4,966) | ($2,730) | ($5,881) | ($8,265) | $0 |
| Net Cash Flow | $1,156 | ($735) | ($5,209) | $2,592 | ($1,264) | $2,324 | ($5,133) | $2,574 | ($1,270) | $2,236 | ($3,151) | ($2,384) | ($1,511) | ($9,776) |
| **Ending Book Balance** | $1,156 | $421 | ($4,788) | ($2,197) | ($3,461) | ($1,137) | ($6,270) | ($3,696) | ($4,966) | ($2,730) | ($5,881) | ($8,265) | ($9,776) | ($9,776) |

**Notes:**

[A] Budget does not include the collection of revenue to be billed in January and February

[B] Budget does not include any accrued payroll wages, taxes, and benefits