**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: <br><br> POTTSVILLE OPERATIONS, LLC, *et al*, <br><br> Debtors. | Case No.: 24-70418-JAD <br><br> Chapter 11 <br><br> Jointly Administered <br><br> Related to Docket Nos. 357 & 439 |
| POTTSVILLE OPERATIONS, LLC, *et al*, <br><br> Movant, <br><br> vs. <br><br> THE ESTATE OF FREEMAN RICHARD JONES, JR. & DELORES JONES; <br><br> and <br><br> THE ESTATE OF ROSELEE MINGO & RODNEY MINGO; <br><br> and <br><br> THE ESTATE OF CHRYSTAL IRENE MIDDLETON, LISA M. MIDDLETON & LINDSEY R. MIDDLETON; <br><br> and <br><br> THE ESTATE OF JAMES EDWARD MCDANIELS, SR. & DIANE GERMAN MCDANIELS <br><br> Respondents. | Hearing Date: February 18, 2025 <br><br> Hearing Time:  10:00 a.m. <br><br> Objection Deadline: January 31, 2025 |

**OMNIBUS OBJECTIONS OF CREDITORS,**
**THE ESTATE OF FREEMAN RICHARD JONES JR. & DELORES JONES; THE ESTATE**
**OF ROSELEE MINGO & RODNEY MINGO;**
**THE ESTATE OF CHRYSTAL IRENE MIDDLETON, LISA M. MIDDLETON &**
**LINDSEY R. MIDDLETON; and, THE ESTATE OF JAMES EDWARD MCDANIELS SR.**
**& DIANE GERMAN MCDANIELS TO NOTICE OF PROPOSED SALE OF**
**SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,**
**<u>BIDDING PROCEDURES, AUCTION, AND SALE ORDER HEARING</u>**

Creditors, THE ESTATE OF FREEMAN RICHARD JONES, JR. & DELORES JONES;

THE ESTATE OF ROSELEE MINGO & RODNEY MINGO; THE ESTATE OF CHRYSTAL

1

IRENE MIDDLETON, LISA M. MIDDLETON & LINDSEY R. MIDDLETON; and, THE ESTATE OF JAMES EDWARD MCDANIELS, SR. & DIANE GERMAN MCDANIELS, hereby collectively object to the proposed sale of substantially all of the Care Pavilion Debtors' assets and hereby request that the Court impose conditions on the sale as detailed within. In support of their objections, the Creditors represent the following:

1. Creditor, Freeman Richard Jones, Jr. was a resident of the Care Pavilion Operating, LLC, a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 6212 Walnut Street, Philadelphia, PA 19139.

2. Freeman Richard Jones, Jr. died on October 7, 2020.

3. Delores Jones is the surviving spouse of Freeman Richard Jones, Jr.

4. The Register of Wills of Philadelphia County appointed Delores Jones to serve as the Administrator of the Estate of Freeman Richard Jones, Jr. on September 13, 2021.

5. In her capacity as the Administrator of the Estate of Freeman Richard Jones, Jr., Delores Jones filed a lawsuit (hereinafter, "personal injury lawsuit") against Care Pavilion Operating, LLC and other Defendants alleging that Freeman Richard Jones, Jr. was caused to die as a consequence of a fall which he sustained while in the Defendants' care due to professional care failures.

6. Creditor, Roselee Mingo, was a resident of Cliveden Operating, LLC, a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 6400 Greene Street, Philadelphia, PA 19119.

7. Roselee Mingo died on April 11, 2022.

8. Rodney Mingo is the surviving son of Roselee Mingo.

9. The Register of Wills of Philadelphia County appointed Rodney Mingo to serve as the Administrator of the Estate of Roselee Mingo on March 14, 2023.

10. In his capacity as the Administrator of the Estate of Roselee Mingo, Rodney Mingo filed a lawsuit (hereinafter, "personal injury lawsuit") against Cliveden Operating, LLC and other

Defendants alleging that Roselee Mingo was caused to die as a consequence of a pressure wound which she developed and/or which worsened while in the Defendants' care due to professional care failures.

11. Creditor, Chrystal Irene Middleton, was a resident of Parkhouse Operating, LLC, a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 1600 Black Rock Road, Royersford, PA 19468.

12. Chrystal Irene Middleton died on January 13, 2021.

13. LINDSEY R. MIDDLETON and LISA M. WILLIAMS are the surviving children of Chrystal Irene Middleton.

14. The Register of Wills of Philadelphia County appointed LINDSEY R. MIDDLETON and LISA M. WILLIAMS to serve as the co-Administrators of the Estate of Chrystal Irene Middleton on June 30, 2022.

15. In their capacity as the co-Administrators of the Estate of Chrystal Irene Middleton, Lindsey R. Middleton and Lisa M. Williams filed a lawsuit (hereinafter, "personal injury lawsuit") against Parkhouse Operating, LLC and other Defendants alleging that Chrystal Irene Middleton was caused to die as a consequence of an airway obstruction which she sustained while in the Defendants' care due to professional care failures.

16. Creditor, James Edward McDaniels, Sr., was a resident of Maplewood Operating, LLC, a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 125 West Schoolhouse Lane, Philadelphia, PA 19144.

17. James Edward McDaniels, Sr. died on October 30, 2021.

18. Diane German McDaniels is the surviving spouse of James Edwards McDaniels, Sr.

19. The Register of Wills of Philadelphia County appointed Diane German McDaniels to serve as the Administrator of the Estate of James Edward McDaniels, Sr. on April 25, 2023.

20. In her capacity as the Administrator of the Estate of James Edward McDaniels, Sr., Diane German McDaniels filed a lawsuit (hereinafter, "personal injury lawsuit") against

Maplewood Operating, LLC and other Defendants alleging that James Edward McDaniels, Sr., was caused to suffer a broken hip and to die as a consequence of a fall which he sustained while in the Defendants' care due to professional care failures.

21. All of the above identified Creditors are separately represented by Attorney Ronald Lebovits[1] in their respective personal injury lawsuits.

22. As each of the Creditors represented by Attorney Lebovits has the same essential objection to file in this matter, they have decided to file a single omnibus Objection in order to promote efficiency and reduce the burden on all interested parties as well as upon the Court itself.[2]

23. At all times material hereto, Care Pavilion Operating, LLC, Cliveden Operating, LLC, Parkhouse Operating, LLC, & Maplewood Operating, LLC were among roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

24. In apparent coordination with many of the other Bedrock Care nursing homes, Care Pavilion Operating, LLC, Cliveden Operating, LLC, Parkhouse Operating, LLC, & Maplewood Operating, LLC filed for Chapter 11 Bankruptcy Protection.[3]

25. The bankruptcy petitions of the Care Pavilion homes have been consolidated with the matter of **In Re: POTTSVILLE OPERATIONS, LLC,** *et al*.

26. The Creditors' respective separate personal injury lawsuits were filed in the Pennsylvania Courts of Common Pleas for Philadelphia County (Jones, Mingo and McDaniels lawsuits) and Mongomery County (Middleton lawsuit).

27. The Creditors' personal injury lawsuits are still pending but have all been stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.[4]

---

[1] By Order entered on January 8, 2025 (Document #506), this Court granted admission to Attorney Lebovits *Pro Hoc Vice*.
[2] Creditors' Attorney has already filed a similar Objection on behalf of Creditor Carrie Williams with regard to the proposed sale of the Bedrock nursing homes known collectively as "Pottsville."
[3] Referred hereafter, as this Court has grouped them, as "Care Pavilion."
[4] A settlement had actually been negotiated in the Jones lawsuit against the Care Pavilion weeks before the Defendants' financial condition was effectively disclosed by the Defendants. In that settlement, the Care

4

28. As discussed and explained in more detail within, the Care Pavilion homes were required by the laws of the Commonwealth of Pennsylvania to maintain minimal levels of professional liability insurance at all times material hereto.

29. During the course of the Creditor's personal injury lawsuits, it was disclosed that the Care Pavilion homes named as Defendants in those lawsuits had secured professional liability insurance in the statutorily minimum mandatory amount of $500,000.00.

30. Each of the Debtors' professional liability insurance policies included a provision obligating the Care Pavilion homes to use their own funds to pay the first portion of that $500,000.00, a condition commonly known as self-insured retention (SIR).

31. Based upon documents produced in discovery, these objecting Creditors have been advised by the nursing homes that the professional liability insurance for Care Pavilion Operating, LLC, included an SIR in the amount of $200.000.00.

32. Based upon documents produced in discovery, these objecting Creditors have been advised by the nursing homes that the professional liability insurance for Cliveden Operating, LLC, Parkhouse Operating, LLC, & Maplewood Operating, LLC each included an SIR in the amount of $150,000.00.

33. Upon information and belief, none of the Bedrock Care facilities, including the Debtors herein, ever segregated or preserved any funds to be used to fulfil their SIR obligations and duties under Commonwealth of Pennsylvania's medical malpractice insurance laws.

34. Upon information and belief, the Bedrock Care facilities, including the Debtors herein, periodically took money out of their general operating funds to pay their SIR commitments as they arose.

35. Upon information and belief, a significant number of other residents from nursing homes owned, operated and managed by these same Bedrock Care facilities have pending

---

Pavilion had actually pledged to pay its full S.I.R. in the amount of $200,000.00 as part of a larger settlement.

professional liability lawsuits against the same and other Bedrock Care facilities as well.

36. Upon information and belief, the Bedrock Care facilities in those other lawsuits also involve professional liability insurance policies with SIR provisions.

37. A discharge of the debts and liabilities of the Care Pavilion Debtors herein and their sister facilities will effectively negate the Debtors' affirmative statutory duties established by the Commonwealth of Pennsylvania's medical malpractice insurance laws to maintain minimal levels of professional liability insurance.

38. A discharge of the debts and liabilities of the Care Pavilion Debtors herein and their sister facilities will effectively strip nursing home residents like the Creditors herein of the important protections established by the Commonwealth of Pennsylvania's medical malpractice insurance laws.

39. A discharge of the debts and liabilities of the Care Pavilion Debtors herein and their sister facilities jeopardizes the long-standing and strong social policies and objectives of the Commonwealth of Pennsylvania as expressly set forth in the Medical Care Availability and Reduction of Error (MCARE) Act. ***Title 40 P.S. "Insurance" § 1303.101. et seq.***

40. A review of the comprehensive statutory provisions demonstrates that the Pennsylvania General Assembly recognized that the establishment of insurance coverage was inextricably intertwined with assuring quality health care for Pennsylvanians.

41. By logical extension, any action or outcome that undermines or negates the availability of insurance coverage inherently impairs the availability of quality health care for Pennsylvanians.

42. "It is the purpose of this act to ensure that medical care is available in this Commonwealth through a comprehensive and high-quality health care system." ***Title 40 P.S. "Insurance" §1303.102(1).***

43. The availability of liability insurance to compensate persons injured by medical negligence is a core component of that statutory scheme.

6

44. "A person who has sustained injury or death as a result of medical negligence by a health care provider *must be afforded* a prompt determination and **fair compensation**." *Title 40 P.S. "Insurance" §1303.102(4).*

45. "Recognition and furtherance of **all of these elements** *is essential to the public health, safety and welfare of all the citizens of Pennsylvania." Title 40 P.S. "Insurance" §1303.102(6)*.

46. Indeed, "The General Assembly finds and declares that it is the purpose of this chapter *to ensure* a fair legal process and **reasonable compensation for persons injured due to medical negligence in this Commonwealth**. Ensuring the future availability of and access to quality health care is a fundamental responsibility that the General Assembly must fulfill as a promise to our children, our parents and our grandparents." *Title 40 P.S. Insurance § 1303.502.*

47. And in furtherance of that goal, the General Assembly established mandatory minimum insurance coverage levels. *Title 40 P.S. Insurance § 1303.711.*

48. The General Assembly authorized health care facilities and professionals to satisfy those requirements through "self-insurance." *Title 40 P.S. Insurance § 1303.711.*

49. Importantly, the General Assembly set requirements for such self-insurance, including a duty to submit a plan of self-insurance to the Commonwealth for approval --

> **(f) Self-insurance. --**
>
> (1) If a health care provider self-insures its medical professional liability, the health care provider shall submit its self-insurance plan, such additional information as the department may require and the examination fee to the department for approval.
>
> (2) The department shall approve the plan if it determines that the plan constitutes protection equivalent to the insurance required of a health care provider under subsection (d).

*Title 40 P.S. Insurance § 1303.711.*

50. The Care Pavilion Debtors' plans to sale their nursing homes and to discharge their debts through the bankruptcy process will effectively leave injured nursing home residents like the objecting Creditors herein without compensation for their injuries and will effectively negate the

7

Debtors' unmistakable duties thoughtfully imposed by the carefully crafted legislative scheme of the Pennsylvania General Assembly.

51. The Debtors were granted the privilege and benefits to operate the subject nursing homes (and other such facilities) in the Commonwealth of Pennsylvania only because they pledged to obey and comply with all applicable laws.

52. The MCARE Act is undoubtedly one such law which the Debtors pledged to obey.

53. The consequences of the Debtors' apparent violation of the MCARE Act need not occur and are avoidable.

54. This Court is authorized by 11 U.S.C. §105 of the United States Bankruptcy Code to exercise authority to "prevent an abuse of process."

55. In the matter at hand, this Court can take steps to "prevent an abuse of process" without stopping the proposed sale and without undermining the larger goal of ensuring the ongoing operation of the subject nursing homes.

56. In the matter at hand, the Court can take steps to uphold the important public policies of the Commonwealth of Pennsylvania without stopping the proposed sale and without undermining the larger goal of ensuring the ongoing operation of the subject nursing homes.

57. As a preliminary step, this Court should immediately order the Debtors to produce and distribute to all affected creditors all documentation showing that the Debtors secured approval from the Commonwealth of Pennsylvania to operate as self-insured healthcare facilities during any and all periods of time when the Debtors purchased insurance that included self-insured retention provisions.[5]

---

[5] Counsel for these Creditors has already filed a "Right to Know" request with the Commonwealth of Pennsylvania Department of Insurance and anticipates receiving a substantive response from the Commonwealth on or before February 5, 2025. Counsel for these Creditors submitted a similar request by email dated January 16, 2025, to the Counsel for the Debtors, Attorney Jimmy Parrish and Attorney Benjamin Taylor. Indeed, Debtors' Counsel gave assurances in phones calls of their intention to cooperate with such a request. To date, the Debtors have not produced the requested documents. The confirmation of self-insured eligibility through the Department of Insurance is a crucial issue which this Court must explore.

58. Furthermore, this Court must direct that a portion of the proceeds from the sale of the subject facility be set aside and preserved in trust to be used to pay the SIR obligations of the Debtor facility.

59. After all, those SIR funds were *never* intended to be part of the Debtors' general operating funds.

60. Had those SIR funds been properly segregated as required by law, the SIR funds would not now be part of the Debtors' bankruptcy Estate and would not be subject to any claims other than the lawsuits of Debtors' nursing home residents.

61. Restoring the money to the SIR funds where it belongs would simply ensure that the Debtors' financial status is restored to the intended position and state required by the laws of the Commonwealth of Pennsylvania.

62. In contrast, leaving those SIR funds in the Debtor's bankruptcy Estate allows general creditors to demand payment from funds which were never intended for their benefit.

63. It would be simple and quick to identify and calculate those SIR obligations.

64. Upon information and belief, the Debtors' have never disclosed a sale price in the Petition to Approve Sale.[6]

65. Nonetheless, it is reasonable to anticipate that the ultimate sale price will be an amount that is many tens of millions of dollars, likely approaching (and perhaps exceeding) $100,000,000.00.

66. As such, a fund adequate to pay the SIR obligations of the Debtor facility constitutes a very small sum compared to the probable purchase price.

67. Upon information and belief, all portions of the proposed purchase price are subject to claims of the Debtors' creditors.

68. Upon information and belief, no portion of the sale is subject to any exemption

---

[6] Debtors' Attorney, Benjamin Taylor, confirmed the absence of a disclosed sale price in an email exchange with the objecting Creditors' attorney on January 28, 2025, writing, "There is no specific sale price listed in the Motion." It is unclear to the objecting Creditors how this Court can evaluate the adequacy of the proposed sale with out disclosure of a specific sale price. Therefore, it is unclear how the sale can be approved.

9

under the Bankruptcy Code which would exempt those proceeds from the claims of the Debtor's creditors.

69. Any amounts that remain in the proposed trust fund after all of the Debtor's SIR obligations have been completely fulfilled or otherwise concluded can be returned to the Debtor's bankruptcy Estate for distribution to other creditors.

**WHEREFORE**, the objecting Creditors hereby request the following: (1) that the Debtors shall produce and distribute to all affected creditors all documentation showing that the Debtors secured approval from the Commonwealth of Pennsylvania to operate as self-insured healthcare facilities during any and all periods of time when the Debtors purchased insurance that included self-insured retention provisions; &, (2) that adequate proceeds from the Debtor's proposed sale be set aside and preserved in trust to be used to pay the SIR obligations of Care Pavilion Operating, LLC, Cliveden Operating, LLC, Parkhouse Operating, LLC, & Maplewood Operating, LLC for the claims of the objecting Creditors herein.

Respectfully submitted,

ZARWIN, BAUM, DEVITO, KAPLAN
SCHAER & TODDY
By:/s/ *Ronald Lebovits*
RONALD LEBOVITS, ESQUIRE
Pa. I.D. No.: 65979
2005 Market Street
One Commerce Square
16th Floor
Philadelphia, PA 19103
267/765-9612
RLebovits@Zarwin.com

Dated: January 29, 2025

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br><br> POTTSVILLE OPERATIONS, LLC, *et al*, <br><br> Debtors. | Case No.: 24-70418-JAD <br><br> Chapter 11 <br><br> Jointly Administered <br><br> Related to Docket Nos. 357 & 439 |
| POTTSVILLE OPERATIONS, LLC, *et al*, <br><br> Movant, <br><br> vs. <br><br> THE ESTATE OF FREEMAN RICHARD JONES, JR. & DELORES JONES; <br><br> and <br><br> THE ESTATE OF ROSELEE MINGO & RODNEY MINGO; <br><br> and <br><br> THE ESTATE OF CHRYSTAL IRENE MIDDLETON, LISA M. MIDDLETON & LINDSEY R. MIDDLETON; <br><br> and <br><br> THE ESTATE OF JAMES EDWARD MCDANIELS, SR. & DIANE GERMAN MCDANIELS <br><br> Respondents. | Hearing Date: February 18, 2025 <br><br> Hearing Time: 10:00 a.m. <br><br> Objection Deadline: January 31, 2025 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2025, a true and correct copy of the Omnibus Objections of Creditors Jones, Mingo, Middleton and McDaniels) regarding the Proposed Sale of the Care Pavilion Nursing Homes was served electronically through the Court's CM/ECF filing system and/or via electronic mail upon the following:

11

Kate Bradley, Esq.
kate.m.bradley@usdoj.gov
Federal Building
1000 Liberty Avenue, Suite 1316
Pittsburgh, PA 15222
**U.S. Trustee**

Daniel R. Schimizzi, Esq.
dschimizzi@raineslaw.com
Raines Feldman Littrell LLP
11 Stanwix Street, Suite 1100
Pittsburgh, PA 15222
**Bankruptcy Attorney for Debtor**

David K. Boydstun, Jr
david.boydstun@dentons.com
Dentons Bingham
Greenebaum LLP
101 South Fifth Street,
Suite 3500
Louisville, KY 40202
**Attorney for Creditor Committee**

AND ALL OTHER PARTIES REQUESTING NOTICE PURSUANT BANKRUPTCY RULE 2002

Respectfully submitted,

ZARWIN, BAUM, DEVITO, KAPLAN
SCHAER & TODDY

By:/s/ *Ronald Lebovits*
RONALD LEBOVITS, ESQUIRE
Pa. I.D. No.: 65979
2005 Market Street
One Commerce Square
16th Floor
Philadelphia, PA 19103
267/765-9612
RLebovits@Zarwin.com

EXECUTED ON: January 29, 2025