IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------- x
In Re:                                                           :   Case No. 24-70418 (JAD)
                                                                 :
POTTSVILLE OPERATIONS, LLC, *et al.*,[1]                         :   Chapter 11
                                                                 :
        Debtors,                                                     :   (Jointly Administered)
                                                                 :
----------------------------------------------------------------  :
                                                                 :
LOCAL 262, RETAIL, WHOLESALE AND                                 :
DEPARTMENT STORE UNION, UNITED FOOD                              :
AND COMMERCIAL WORKERS and RETAIL,                               :
WHOLESALE AND DEPARTMENT STORE                                   :
UNION, UNITED FOOD AND COMMERCIAL                                :
WORKERS                                                          :
                                                                 :
        Creditors and/or                                             :
        parties in interest.                                         :
                                                                 :
---------------------------------------------------------------- x

**CONDITIONAL OBJECTION AND RESERVATION OF RIGHTS OF RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, UNITED FOOD AND COMMERCIAL WORKERS AND ITS LOCAL 262 IN RESPONSE TO THE CARE PAVILION DEBTORS' MOTION FOR ENTRY OF ORDERS (A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE CARE PAVILION DEBTORS' ASSETS, OTHER THAN ACCOUNTS, (B) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE CARE PAVILION DEBTORS' ASSETS, OTHER THAN ACCOUNTS, (C) APPROVING STALKING HORSE BID PROTECTIONS, (D) SCHEDULING AUCTION FOR AND HEARING TO APPROVE THE SALE OF THE CARE PAVILION DEBTORS' ASSETS, (E) APPROVING FORM AND MANNER OF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

**NOTICE OF SALE, AUCTION, AND SALE ORDER HEARING, (F) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (G) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES, AND (H) GRANTING RELATED RELIEF</u>**

Local 262, Retail, Wholesale and Department Store Union, United Food and Commercial Workers ("Local 262") and Retail, Wholesale and Department Store Union, United Food and Commercial Workers (the "RWDSU") (collectively, the "Unions") respectfully submit this Conditional Objection and Reservation of Rights in Response to the *Care Pavilion Debtors' Motion for Entry of Orders (a) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other Than Accounts, (B) Approving Bidding Procedures for Sale of Substantially All of the Care Pavilion Debtors' Assets, Other Than Accounts, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve the Sale of the Care Pavilion Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* (the "Sale Motion") [Docket No. 357] and state as follows:

## INTRODUCTION

1.  The course of this case is unclear. The Bidding Deadline, February 7, 2025, has not yet passed and thus it is not yet known whether there are alternative bidders, whether an auction will take place on February 10, and the position of any potential alternative bidder on assumption of Local 262's collective bargaining agreements (the "Local 262 CBAs") with the Care Pavilion Debtors (the "Debtors"). The Operations Transfer Agreement filed with the proposed Asset Purchase Agreement with the Stalking Horse Bidder provides that the Stalking Horse Bidder will not assume any collective bargaining agreements, including the Local 262 CBAs. Counsel for Local 262 has reached out to counsel for the Stalking Horse Bidder to

1

open up a line of communication about the proposed sale and the Local 262 CBAs, but counsel for the Stalking Horse Bidder confirmed that the Stalking Horse Bidder will not assume the CBAs, without specifying any specific areas of concern, and apparently will only commence any discussions after the sale is approved.

2. It is, however, clear that: (1) Local 262's CBAs with the Debtors plainly and unequivocally *require that the Debtors* require any purchaser to assume the Debtors' CBAs with Local 262 , hire all employees, and recognize past service with the Debtors ; (2) Bankruptcy Code Section 1113, and consistent case law interpreting Section 1113, provide that a sale cannot be approved absent compliance with such a successorship clause or bankruptcy court approval of a motion pursuant to the exacting standards of Section 1113; and (3) approval of a motion pursuant to Section 1113 would leave Local 262 with the right to strike and leave any buyer with uncertainty about its work force.

3. It is also clear that the purchaser of the Pottsville assets agreed, through a Memorandum of Agreement filed with this court, to enter into new CBAs with Local 262 that provided the same terms as the current CBAs between Local 262 and the Debtors, as well as agreeing to hire all employees, recognize seniority with the Debtors, and assume PTO accrued before the sale,[2] thereby establishing a template that could serve as a basis for the resolution of relevant issues here.

4. Local 262 hopes that the Stalking Horse Bidder and any other potential bidders recognize that assumption of the Local 262 CBAs is in the interest of all parties, and files

---

[2] *See* Order (a) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [Docket No. 557] ¶ 39, Ex. 2.

this Objection to make clear that it objects to any sale not meeting the relevant contractual and statutory requirements.

## BACKGROUND

5. Local 262 is a labor union that represents two bargaining units of the Debtors' employees at Milton Rehabilitation and Nursing Center ("Milton Rehab") and Watsontown Rehabilitation and Nursing Center ("Watsontown Rehab"), and is a party to two CBAs with the Debtors, one for each location, establishing the terms and conditions of employment for the bargaining unit employees. The RWDSU is the parent organization of Local 262.

6. Each of the two Local 262 CBAs is in effect until mid-December 2025. *See Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* [Care Pavilion Docket No. 3] ¶ 34;[3] *Debtors' Motion for Entry of Order (I) Authorizing the Debtors to Pay Certain Prepetition Wages, Benefits, and Other Compensation Obligations, (II) Authorizing Financial Institutions to Honor All Related Obligations, and (III) Granting Related Relief* [Care Pavilion Docket No. 4] (the "Wage Motion") ¶ 12 (describing the CBAs with Local 262 and other unions).[4]

7. Each of the Local 262 CBAs has an identical successorship clause, which reads:

> This Agreement shall be binding on all signatories hereto, and their successors and assigns, whether such status is created by sale, lease, assignment or any other type transfer transaction. In consideration

---

[3] "Care Pavilion Docket" refers to the docket for case number 24-70473, which was used before the Care Pavilion and Pottsville cases were consolidated for joint administration. "Docket" will otherwise refer to the docket for case number 24-70418 as jointly administered.

[4] These papers state that the expiration date for each Local 262 CBA is December 31, 2025, but Local 262's records indicate that the correct date is December 18, 2025.

3

>of the Union's execution of this Agreement, **the Employer promises that its operations covered by this Agreement or any part thereof shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the Agreement of the successor to assume the Employer's obligation under this Agreement and to offer employment subject to the terms of this Agreement, to all of the Employer's then current employees, recognizing their accrued seniority for all purposes**. Provided, that the Employer shall not be a guarantor or be held liable for any breach by the successor or assignee of its obligations, and the Union will look exclusively to the successor or assignee for compliance with the terms of this Agreement.

(emphasis added).[5] Under these successorship clauses, the Debtors must ensure that any buyer of Milton Rehab or Watsontown Rehab assumes the obligations of the location's CBA.

8. Further, unlike an ordinary executory contract, a CBA cannot be rejected pursuant to Section 365. Section 1113 provides the *exclusive* means for modifying or rejecting a CBA, and contains specific, stricter substantive and procedural requirements. *See* 11 U.S.C. Sec. 1113; *see also Chi. Dist. Council of Carpenters Pension Fund v. Cotter*, 914 F. Supp. 237, 242 (N.D. Ill. 1996) (rejecting arguments that CBA can be rejected through § 365, disclosure statement, or plan of reorganization).

9. The Debtors have not made any attempt to modify or reject the Local 262 CBAs under Section 1113. However, the sale documents provide that the Stalking Horse Bidder does not intend to assume the Local 262 CBAs in their current form, as confirmed by counsel for the Stalking Horse Bidder, without any proposal for modification or explanation of its concerns. Meanwhile, since the Bid Deadline falls after the Sale Objection Deadline, Local 262 has no information about whether any other bidders would intend to assume the Local 262 CBAs.

---

[5] Attached hereto as Exhibits 1 and 2 are the relevant CBAs.

4

10.  Therefore, the RWDSU and Local 262 submit this Conditional Objection and Reservation of Rights in response to the Sale Motion, because no sale can be approved if the Debtors do not meet their binding obligations under the Local 262 CBAs, including ensuring that a purchaser assumes the Local 262 CBAs, or else first obtain consensual modification or rejection of the Local 262 CBAs under Section 1113 of the Bankruptcy Code.

## **CONDITIONAL OBJECTION**

11.  The Bankruptcy Code's general provisions for rejecting executory contracts do not apply to CBAs. Unlike other executory contracts, CBAs cannot be rejected pursuant to Section 365 of the Bankruptcy Code. Rather, Section 1113 provides the exclusive means for rejecting a CBA. *See* 11 U.S.C. § 1113(a) ("The debtor in possession, . . . may assume or reject a collective bargaining agreement **only** in accordance with the provisions of this section.") (emphasis added).

12.  Therefore, to reject a CBA, a debtor must seek court approval and follow the more rigorous requirements of Section 1113. Under Section 1113, to obtain court approval to reject a CBA, a debtor bears the burden of proving, *inter alia*, that (1) it submitted a proposal to modify the CBA; (2) the proposed modifications are directly related to the debtor's financial condition and strictly "necessary" to avoid short-term liquidation, as opposed to merely "desirable" or necessary for the company's long-term health; (3) the union rejected the proposal without good cause; and (4) equity "clearly favors" rejection of the CBA. *See* 11 U.S.C. § 1113(c); *Wheeling-Pittsburgh Steel Corp. v. United Steelworkers,* 791 F.2d 1074 (3d Cir. 1986); *In re Nat'l Forge Co.*, 279 B.R. 493 (Bankr. W.D. Pa. 2002).[6]

---

[6] Courts have observed that there are nine separate procedural and substantive requirements that must be met before relief can be granted pursuant to Section 1113:

5

13. Section 1113 provides the sole means of modifying or rejecting a CBA. *See* § 1113(f) ("No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.").

> The intent behind section 1113 is to preclude debtors or trustees in bankruptcy from unilaterally terminating, altering, or modifying the terms of a collective bargaining agreement without following its strict mandate. Moreover, the provision operates to preclude the application of other bankruptcy code provisions to the advantage of debtors and trustees to permit them to escape the terms of a collective bargaining agreement without complying with the requirements of section 1113.

*In re Cont'l Airlines*, 125 F.3d 120, 137 (3d Cir. 1997) (*citing In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989–90 (2d Cir. 1990); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d at 990–91.

---

1. DIP must make a proposal to the Union to modify the CBA. 11 U.S.C. § 1113(b)(1)(A).
2. Proposal must be based on the most complete and reliable information available. 11 U.S.C. § 1113(b)(1)(A).
3. Proposed modifications must be *necessary* to permit the reorganization of the DIP. 11 U.S.C. § 1113(b)(1)(A).
4. "Proposed modifications must assure that the DIP and all affected parties are treated fairly and equitably. 11 U.S.C. § 1113(b)(1)(A).
5. DIP must provide the Union such relevant information as is necessary to evaluate the proposal. 11 U.S.C. § 1113(b)(1)(B).
6. Between the time of the making of the proposal and the time of the hearing, the DIP must meet at reasonable times with the Union. 11 U.S.C. § 1113(b)(2).
7. At the meeting, the DIP must confer in good faith in attempting to reach mutually satisfactory modifications of the CBA. 11 U.S.C. § 1113(b)(2).
8. Union must have refused to accept the proposal without good cause. 11 U.S.C. § 1113(c)(2).
9. The balance of the equities must clearly favor rejection. 11 U.S.C. § 1113(c)(3).

*Nat'l Forge*, 279 B.R. at 498–99 (citing *In re American Provision Co.,* 44 B.R. 907, 909 (Bankr.D.Minn.1984); *In re Bowen Enterprises, Inc.,* 196 B.R. 734 (Bankr.W.D.Pa.1996))

6

14. Thus, a debtor cannot abrogate or reject collectively bargained obligations, including relevant successorship protections, without invoking and meeting the requirements of Section 1113. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81–82 (3d Cir. 1999) (debtor could not, under Section 1113(f), contractually bind itself to obtain a change in a collective bargaining agreement as a condition precedent to asset sale closing; any such change required compliance with the Section 1113 procedures); *In re Nat'l Forge Co.*, 289 B.R. 803, 808 (Bankr. W.D. Pa. 2003) (prior to gaining approval of sale of assets, debtor "compelled" to seek rejection of CBA "[b]ecause of the successor language"); *see also In re Agripac, Inc.*, No. 699-60001 (Bankr. D. Or. Apr. 2, 1999) (where proposed sale would breach CBA's successorship clause, "the sale cannot go forward until § 1113 is complied with, or an agreement between the Union and the new buyer renders compliance moot"); *In re Stein Henry Co., Inc.*, 1992 WL 122902, No. 91-15491S, at *2 (Bankr. E.D. Pa. June 1, 1992) (refusing to confirm plan which would result in asset sale without satisfaction of CBA's successorship clause, which stated that the contract applied to "successors" and "assigns," because " [o]nly through the medium of 11 U.S.C. § 1113(f) can a collective bargaining agreement be terminated or modified in any way" and " [r]ights provided in the agreement as to successor-entities must be preserved unless there is, unlike here, compliance with the procedures of 11 U.S.C. § 1113" ); *In re Bruno's Supermarkets, LLC*, 2009 WL 1148369, No. 09-00634 (Bankr. N.D. Ala. Apr. 27, 2009) (debtor seeking rejection of collective bargaining agreement with successorship clause prior to seeking approval of sale of assets).

15. As the court emphasized in *In re Journal Register Co.*, 488 B.R. 835, 840 (Bankr. S.D.N.Y. 2013):

> [A] debtor's intentional breach of a material provision of the collective bargaining agreement is tantamount to a rejection, or

7

alternatively, a unilateral alteration of its provisions in violation of Bankruptcy Code § 1113(f).  Thus, as a general proposition, a sale under Bankruptcy Code § 363 cannot circumvent the condition imposed under a successor clause absent compliance with § 1113.

16. Under the proposed Operations Transfer Agreement, the Stalking Horse Bidder is agreeing to hire all or substantially all of the Debtors' employees, *but on terms and conditions set exclusively by the Stalking Horse Bidder*.  It is therefore refusing to assume any collective bargaining agreements including the Local 262 CBAs.  *See* Milton, Parkhouse, Watsontown Operations Transfer Agreement [Docket No. 357-2, at 2–56] (the "Operations Transfer Agreement") § 8.1(b)–(c).  Counsel for Local 262 has contacted counsel for the Stalking Horse Bidder to open a line of communication about these issues, but the Stalking Horse Bidder counsel has related that the Stalking Horse Bidder will not assume the CBAs and will not enter into discussions until, at minimum, the sale is approved.  This would, in effect, authorize the nullification of the Debtor's contractual obligations to Local 262 as well as binding requirements of Section 1113.

17. A sale to the Stalking Horse Bidder according to such terms cannot be approved under current circumstances, because the Local 262 CBAs have not been complied with or rejected pursuant to Section 1113.  Similarly, although no other Bids have been submitted yet, the Participation Requirements of the Bidding Procedures require Bidders to indicate which CBAs they intend to assume.  If any Successful Bid does not indicate agreement to assume the Local 262 CBAs, a sale according to such terms cannot be approved because the Local 262 CBAs have not been rejected pursuant to Section 1113.

18. No sale can be approved if the Debtors do not meet their binding obligations under the Local 262 CBAs and Section 1113 of the Bankruptcy Code, including ensuring that all purchasers assume the Local 262 CBAs (as well as hire all employees, and

8

recognize service with the Debtors) or reach a consensual agreement with Local 262 and the RWDSU to modify the Local 262 CBAs.[7]

19. Here, the Local 262 CBAs contain successorship clauses expressly requiring the Debtors to require any purchaser to agree to assume the Local 262 CBAs. Therefore, selling the facilities to the Stalking Horse Bidder without such an agreement would violate the Local 262 CBAs. Such a sale cannot go forward without the Debtors first complying with § 1113. *See supra* ¶¶ 14–15.

20. In addition, the consequences of the Debtors abrogating or rejecting the Local 262 CBAs under Section 1113 would be substantial. Each Local 262 CBA contains a no-strike clause forbidding a strike or other work stoppage during the term of the agreement. These no-strike clauses benefit the Debtors by ensuring stable operations and revenue. If a Local 262 CBA is rejected pursuant to Section 1113, the employees would be free to strike or engage in

---

[7] Debtors cannot defer pursuing rejection of the Local 262 CBAs, and their relevant and binding successorship provisions, under § 1113 until after the sale. Although, as the Pottsville Debtors noted in previous pleadings, *see* Debtors' Omnibus Reply to Objections to Sale Motion and Objection to Notice of Executory Contracts That May Be Assumed or Assigned in Connection With Debtors' Sale Transaction [Docket No. 547] ¶ 27, the Eighth Circuit has held that rejection of a CBA can in some circumstances occur after a sale, that decision involved rejection of a CBA on the basis of attempting to terminate the CBA when the debtor had no further operations. *See In re Family Snacks, Inc.*, 257 B.R. 884, 887–89, 896 n.8 (B.A.P. 8th Cir. 2001). That decision did not involve a successorship clause, and the Court expressly emphasized that a debtor must comply with relevant provisions of a CBA provision if it has not first rejected them—"[A] debtor may not, however, fail to take steps to reject the CBA under § 1113 and, at the same time, fail to comply with the terms of the CBA. A debtor remains bound by the terms of the CBA until it takes affirmative steps to reject that agreement." *Id*.

Similarly, in *In re CCX, Inc.*, 654 B.R. 680, 687–88 (D. Del. 2023), rejection of a collective bargaining agreement occurred after a § 363 sale in which the purchaser declined to assume the agreement, *but no successorship clause was involved and the union consented to the sale and termination of the agreement.*

other forms of self-help and economic action. *See Nw. Airlines Corp. v. Ass'n of Flight Attendants (Nw. Airlines Corp.)*, 483 F.3d 160, 173 (2d Cir. 2007) ("If successful procurement of a § 1113 order permits an employer to abrogate a CBA, it follows that a union subject to the NLRA would become free to strike consistent with *In re Royal Composing Room* precisely because it would no longer be bound by any contractual no-strike clause to which it might at one point have agreed.");[8] *In re Trump Ent. Resorts, Inc.*, 534 B.R. 93 (Bankr. D. Del. 2015) (after rejection of CBA under Section 1113, union free to organize customer boycott of debtor); *cf. Wheeling-Pittsburgh Steel Corp.*, 791 F.2d at 1078 (describing union's strike after rejection of CBA under Section 1113).

21. Rejection of any of the Local 262 CBAs would be disastrous for all parties. The Debtors acknowledge the importance of their employees in their Wage Motion, where they emphasize the key role that their employees play in maintaining the continuity and stability of operations necessary for any successful sale. *See* Wage Motion ¶¶ 7, 36, 49. Similarly, in the Operations Transfer Agreement, both the Debtors and Stalking Horse Bidder "agree and acknowledge" that the Debtors' employees "provide valuable services that are crucial to the success of the Facility" and that the "New Operator's decision to serve as the certified operator of the Facility is based on the skills and qualifications of such employees." Operations Transfer Agreement § 14. Indeed, the Stalking Horse Bidder plans to rehire all or substantially all of the Debtors' employees under the Operations Transfer Agreement. Under these circumstances, any resort to Section 1113 could spell catastrophe for all constituencies. It could

---

[8] The NLRA is the National Labor Relations Act, 29 U.S.C. §§ 151–169, which governs labor relations in private industry outside the rail and airline industries.

10

lead to uncertainty and chaos in the nursing homes' operations, and one impact of the rejection of any CBA under Section 1113 would be leaving Local 262 free to strike.[9]

22. The negative consequences of rejection of the Local 262 CBAs would be an important factor in determining the "highest and best" bid in this sale process, such as if some bidders intend to assume the Local 262 CBAs, while others such as the Stalking Horse Bidder intend to reject them.

## RESERVATION OF RIGHTS

23. Local 262 and the RWDSU reserve their right to supplement this Objection and make further arguments, both substantive and procedural, if and when the Debtors announce a successful bidder and file sale documents with the Court.[10]

## CONCLUSION

24. The Sale Motion Should Only be Approved if Consistent With the Contractual and Statutory Requirements Reviewed in This Conditional Objection.

Dated:    New York, New York
          January 31, 2025

                                    Respectfully submitted,

                                    /s/ Richard M. Seltzer

---

[9] Local 262 and the RWDSU would prefer to achieve a consensual sale that recognizes the importance of the Debtor's workers and the applicable protections for collective bargaining agreements, as was achieved in the Pottsville proceedings. However, it is important that all parties, including the Debtors and any bidder, understand the legal and factual framework of remedies available to employees and Local 262.

[10] We note now, preliminarily, that even in the absence of the protections of Section 1113 and the successorship provisions in the Local 262 CBAs, a debtor cannot, through the Section 363 asset sale process, obtain an order adjudicating the future statutory obligations of a purchaser, based on its post-sale actions, under the National Labor Relations Act. *See Erica, Inc. v. NLRB,* 200 F. App'x 344, 347 (5th Cir. Sep. 19, 2006); *In re Carib-Inn of San Juan Corp.,* 905 F.2d 561, 563–64 (1st Cir. 1990); *In re CCX, Inc.,* 654 B.R. 680, 696–98 (D. Del. 2023)

Richard M. Seltzer *(pro hac vice)*
Matthew Stolz *(pro hac vice)*
K. Jeff Wang *(pro hac vice)*
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022
Tel: (212) 563-4100
Fax: (212) 563-6527
rseltzer@cwsny.com
mstolz@cwsny.com
jwang@cwsny.com

and

*/s/ Michael J. Healey*
Michael J. Healey *(local counsel)*
PO Box 81918
Pittsburgh, PA 15217
Tel: (412) 760-0342
mike@unionlawyers.net

*Attorneys for Local 262, Retail, Wholesale and Department Store Union, United Food and Commercial Workers, and Retail Wholesale and Department Store Union, United Food and Commercial Workers*

## **CERTIFICATE OF SERVICE**

      I certify that on January 31, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Western District of Pennsylvania on all parties registered to receive electronic notices.

                                                      */s/ K. Jeff Wang*
                                                      K. Jeff Wang