# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No.: 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al*, | Chapter 11 |
| Debtors. | Jointly Administered |
| POTTSVILLE OPERATIONS, LLC, *et al*, | Related to Docket Nos. 357, 439 |
| Movant, | Hearing Date: February 18, 2025, 10:00 a.m. |
| vs. | Objection Deadline: January 31, 2025 |
| THERESA ARMSTRONG, AS ATTORNEY-IN-FACT FOR ANTHONY AMES; | |
| and | |
| MALISSA GAMBLE, AS ADMINISTRATOR OF THE ESTATE OF MICHAEL ROBINSON; | |
| and | |
| ODETTE NOEL, AS ADMINISTRATOR OF THE ESTATE OF KATHLEEN COLLINS-SMITH; | |
| and | |
| LISA HARGIS; | |
| and | |
| SHAYKHIA WILLIAMS AS ATTORNEY-IN-FACT OF GLORIA WILLIAMS; | |
| and | |
| KENETHA GUYER, AS ADMINISTRATRIX | |

OF THE ESTATE OF JEFFREY C. MARKLE;

and

JANIE KEISER, AS EXECUTRIX OF THE
ESTATE OF EARNEST LEE KEISER;

and

MATTHEW SHADE, AS ADMINISTRATOR
OF THE ESTATE OF SAMUEL SHADE;

and

MICHELLE LINCOLN, AS EXECUTRIX
OF THE ESTATE OF STELLA WALKER;

and

DEBRA PHELPS AND LISA A. FOGLE,
AS CO-EXECUTRIX OF THE ESTATE
OF KATHRYN HERMAN;

and

CATHY FALCK, AS EXECUTRIX OF
THE ESTATE OF BESSIE GROVE;

and

KEITH MARTIN AND KARL MARTIN,
AS CO-EXECUTORS OF THE ESTATE
OF RICHARD MARTIN;

and

MARILYN RODARMEL, AS
ADMINISTRATRIX OF THE ESTATE
OF MARGARET KEISER;

and

LISA HOLLENBACH AND KEVIN
YEAGER, AS CO-EXECUTORS OF
THE ESTATE OF MARION YEAGER;

and

ELAINE BILLHIME, AS
ADMINISTRATRIX OF THE ESTATE
OF ALLEN SHOWERS;

    and

JAMES ROVENOLT, II, AS
ADMINISTRATOR OF THE ESTATE
OF JAMES ROVENOLT, SR.;
    and

TERRY NAPP, AS EXECUTOR OF
THE ESTATE OF GRACE NAPP;

    and

SANDRA MINNICH AND DONNA J.
BROWN, AS CO-EXECUTRIX OF
THE ESTATE OF CHARLES BAKER;

    and

LOIS STETTLER, INDIVIDUALLY
AND AS ADMINISTRATRIX OF
THE ESTATE OF MARY ERB;

    Respondent

---

**OBJECTIONS OF CREDITORS, THERESA ARMSTRONG, AS ATTORNEY-IN-FACT FOR ANTHONY AMES; MALISSA GAMBLE, AS ADMINISTRATOR OF THE ESTATE OF MICHAEL ROBINSON; ODETTE NOEL, AS ADMINISTRATOR OF THE ESTATE OF KATHLEEN COLLINS-SMITH; LISA HARGIS; SHAYKHIA WILLIAMS AS ATTORNEY-IN-FACT OF GLORIA WILLIAMS; KENETHA GUYER, AS ADMINISTRATRIX OF THE ESTATE OF JEFFREY C. MARKLE; JANIE KEISER, AS EXECUTRIX OF THE ESTATE OF EARNEST LEE KEISER; MATTHEW SHADE, AS ADMINISTRATOR OF THE ESTATE OF SAMUEL SHADE; MICHELLE LINCOLN, AS EXECUTRIX OF THE ESTATE OF STELLA WALKER; DEBRA PHELPS AND LISA A. FOGLE, AS CO-EXECUTRIX OF THE ESTATE OF KATHRYN HERMAN; CATHY FALCK, AS EXECUTRIX OF THE ESTATE OF BESSIE GROVE; KEITH MARTIN AND KARL MARTIN, AS CO-EXECUTORS OF THE ESTATE OF RICHARD MARTIN; MARILYN RODARMEL, AS ADMINISTRATRIX OF THE ESTATE OF MARGARET KEISER; LISA HOLLENBACH AND KEVIN YEAGER, CO-AS EXECUTORS OF THE ESTATE OF MARION YEAGER; ELAINE BILLHIME, AS ADMINISTRATRIX OF THE ESTATE OF ALLEN SHOWERS; JAMES ROVENOLT,**

**II, AS ADMINISTRATOR OF THE ESTATE OF JAMES ROVENOLT, SR.; TERRY NAPP, AS EXECUTOR OF THE ESTATE OF GRACE NAPP; SANDRA MINNICH AND DONNA J. BROWN, AS CO-EXECUTRIX OF THE ESTATE OF CHARLES BAKER; AND LOIS STETTLER, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF MARY ERB TO NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, BIDDING PROCEDURES, AUCTION, AND SALE ORDER HEARING**

Creditors, Theresa Armstrong, as Attorney-in-Fact for Anthony Ames; Malissa Gamble, as Administrator of the Estate of Michael Robinson; Odette Noel, as Administrator of the Estate of Kathleen Collins-Smith; Lisa Hargis; Shaykhia Williams as Attorney-in-Fact of Gloria Williams; Kenetha Guyer, as Administratrix of the Estate of Jeffrey C. Markle; Janie Keiser, as Executrix of the Estate of Earnest Lee Keiser; Matthew Shade, as Administrator of the Estate of Samuel Shade; Michelle Lincoln, as Executrix of the Estate of Stella Walker; Debra Phelps and Lisa A. Fogle, as Co-Executrix of the Estate of Kathryn Herman; Cathy Falck, as Executrix of the Estate of Bessie Grove; Keith Martin and Karl Martin, as Co-Executors of the Estate of Richard Martin; Marilyn Rodarmel, as Administratrix of the Estate of Margaret Keiser; Lisa Hollenbach and Kevin Yeager, Co-as Executors of the Estate of Marion Yeager; Elaine Billhime, as Administratrix of the Estate of Allen Showers; James Rovenolt, II, as Administrator of the Estate of James Rovenolt, Sr.; Terry Napp, as Executor of the Estate of Grace Napp; Sandra Minnich and Donna J. Brown, as Co-Executrix of the Estate of Charles Baker; and Lois Stettler, Individually and as Administratrix of the Estate of Mary Erb hereby object to the proposed sale of substantially all of the Debtors' assets and hereby request that the Court impose conditions on the sale as detailed within. In support of their objections, the Creditors represent the following:

I. **CREDITORS**

a. **Creditor, Theresa Armstrong, as Attorney-in-Fact for Anthony Ames**

1. Creditor, Anthony Ames, is a resident of Care Pavilion Operating, LLC d/b/a Care Pavilion Nursing and Rehabilitation Center (hereinafter "Care Pavilion"), a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 6212 Walnut Street, Philadelphia, Pennsylvania 19139.

2. Creditor, Theresa Armstrong is the daughter and Power of Attorney of Anthony Ames.

3. In her capacity as the Power of Attorney of Anthony Ames, Theresa Armstrong filed a lawsuit (hereinafter, "personal injury lawsuit") against Care Pavilion, and other Defendants, alleging that Debtors' negligence, recklessness, and neglect caused Anthony Ames to develop a Stage IV pressure ulcers leading to double amputation, maggot infestation of pressure ulcer, osteomyelitis, necrotizing fasciitis (flesh eating bacteria), sepsis, UTI's, poor diabetic control, poor hygiene, malnutrition, dehydration, weight loss, and severe pain.

4. At all times material hereto, Care Pavilion was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

5. In apparent coordination with many of the other Bedrock Care nursing homes, Care Pavilion filed for Chapter 11 Bankruptcy Protection.

6. The bankruptcy petition of Care Pavilion has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

7. Creditor Theresa Armstrong's personal injury lawsuit was filed in the Pennsylvania Court of Common Pleas for Philadelphia County, Docket No. 220100785.

8. On August 15, 2024, the Creditor Theresa Armstrong and Debtors reached an agreement to settle the respective personal injury lawsuit.

9. Payment pursuant to the agreement to settle was due to Creditor Theresa Armstrong from Debtors on September 16, 2024.

10. However, full and complete payments have not been paid to Creditor Theresa Armstrong by Debtors.

11. On September 27, 2024, Creditor Theresa Armstrong filed a motion to enforce the settlement, requesting assistance from the Court in obtaining the agreed-upon payment.

12. Prior to the Court issuing an order on Creditor Theresa Armstrong's motion to enforce, the respective personal injury lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**b. Creditor, Malissa Gamble, as Administrator of the Estate of Michael Robinson**

13. Michael Robinson, was a resident of Cliveden Nursing and Rehabilitation Center (hereinafter "Cliveden Center"), a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 6400 Greene Street, Philadelphia, PA 19119.

14. On March 26, 2021, Michael Robinson succumbed to his injuries and passed away at the age of 70.

15. Creditor, Malissa Gamble was named Administrator of the Estate of Michael Robinson on June 4, 2021, by the Register of Wills for Philadelphia County.

16. In her capacity as the Administrator of the Estate of Michael Robinson, Malissa Gamble filed a lawsuit (hereinafter, "personal injury lawsuit") against Cliveden Center, and other Defendants, alleging that Debtors' negligence, recklessness, and neglect caused Michael Robinson to suffer the development and worsening of pressure ulcers, sepsis, septic shock, hypernatremia, acute kidney injury, fecal impaction, pneumonia, UTI, poor hygiene, malnutrition, dehydration, severe weight loss, severe pain, and death.

17. At all times material hereto, Cliveden Center was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

18. In apparent coordination with many of the other Bedrock Care nursing homes, Cliveden Center filed for Chapter 11 Bankruptcy Protection.

19. The bankruptcy petition of Cliveden Center has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

20. Creditor Malissa Gamble's personal injury lawsuit was filed in the Pennsylvania Court of Common Pleas for Philadelphia County, Docket No. 221002173.

21. On June 13, 2024, the Creditor Malissa Gamble and Debtors reached an agreement to settle the respective personal injury lawsuit.

22. Payment pursuant to the agreement to settle was due to Creditor Malissa Gamble from Debtors on August 16, 2024.

23. However, full and complete payments have not been paid to Creditor Malissa Gamble by Debtors.

24. On August 26, 2024, Creditor Malissa Gamble filed a motion to enforce the settlement, requesting assistance from the Court in obtaining the agreed-upon payment.

25. Prior to the Court issuing an order on Creditor Malissa Gamble's motion to enforce, the respective personal injury lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**c. Creditor, Odette Noel, as Administrator of the Estate of Kathleen Collins-Smith**

26. Kathleen Collins-Smith, was a resident of York Operating, LLC d/b/a York Nursing and Rehabilitation Center (hereinafter "York Center"), a long-term care facility duly licensed in

the Commonwealth of Pennsylvania, which is located at 7101 Old York Road, Philadelphia, PA 19126.

27. On March 28, 2021, Kathleen Collins-Smith succumbed to her injuries and passed away at the age of 63.

28. Creditor, Odette Noel Odette Noel was named Administrator of the Estate of Kathleen Collins-Smith on March 21, 2021, by the Register of Wills for Philadelphia County.

29. In her capacity as the Administrator of the Estate of Kathleen Collins-Smith, Malissa Gamble filed a lawsuit (hereinafter, "personal injury lawsuit") against York Center, and other Defendants, alleging that Debtors' negligence, recklessness, and neglect caused Kathleen Collins-Smith to suffer the development and worsening of pressure ulcers, wound infections, UTI, poor feeding tube care, stool impaction, poor hygiene, malnutrition, dehydration, severe pain, and death.

30. At all times material hereto, York Center was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

31. In apparent coordination with many of the other Bedrock Care nursing homes, York Center filed for Chapter 11 Bankruptcy Protection.

32. The bankruptcy petition of York Center has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

33. Creditor Odette Noel's personal injury lawsuit was filed in the Pennsylvania Court of Common Pleas for Philadelphia County, Docket No. 221102310.

34. During the pendency of Creditor Odette Noel's personal injury lawsuit, the respective personal injury lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**d. Creditor, Lisa Hargis**

35. Lisa Hargis, is a resident of Yeadon Operations, LLC d/b/a Yeadon Rehabilitation and Nursing Center (hereinafter "Yeadon Center"), a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 14 Lincoln Ave., Yeadon, PA 19050.

36. Lisa Hargis filed a lawsuit (hereinafter, "personal injury lawsuit") against York Center, and other Defendants, alleging that Debtors' negligence, recklessness, and neglect caused Lisa Hargis to suffer falls with severe injury including hip fracture, infections, poor hygiene, dehydration, malnutrition, and severe pain.

37. At all times material hereto, Yeadon Center was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

38. In apparent coordination with many of the other Bedrock Care nursing homes, Yeadon Center filed for Chapter 11 Bankruptcy Protection.

39. The bankruptcy petition of Yeadon Center has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

40. Creditor Lisa Hargis' personal injury lawsuit was filed in the Pennsylvania Court of Common Pleas for Philadelphia County, Docket No. 240302632.

41. During the pendency of Creditor Lisa Hargis' personal injury lawsuit, the lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**e. Creditor, Shaykhia Williams as Attorney-in-Fact of Gloria Williams**

42. Creditor, Gloria Williams, was a resident of Care Pavilion, a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 6212 Walnut Street, Philadelphia, Pennsylvania 19139.

43. Creditor, Shaykhia Williams is the daughter and Power of Attorney of Gloria Williams.

44. In her capacity as the Power of Attorney of Gloria Williams, Shaykhia Williams filed a lawsuit (hereinafter, "personal injury lawsuit") against Care Pavilion, and other Defendants, alleging that Debtors' negligence, recklessness, and neglect caused Gloria Williams to suffer falls with severe injury including hip fracture, infections, UTI's, toxic encephalopathy, poor hygiene, dehydration, malnutrition, and severe pain.

45. At all times material hereto, Care Pavilion was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

46. In apparent coordination with many of the other Bedrock Care nursing homes, Care Pavilion filed for Chapter 11 Bankruptcy Protection.

47. The bankruptcy petition of Care Pavilion has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

48. Creditor Shaykhia Williams' personal injury lawsuit was filed in the Pennsylvania Court of Common Pleas for Philadelphia County, Docket No. 240403497.

49. During the pendency of Creditor Shaykhia Williams' personal injury lawsuit, the respective personal injury lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**f. Milton Creditors**

50. Jeffrey C. Markle, Earnest Lee Keiser, Samuel Shade, Stella Walker, Kathryn Herman, Bessie Grove, Richard Martin, Margaret Keiser, Marion Yeager, Allen Showers, James Rovenolt, Sr., Grace Napp, Charles Baker, and Mary Erb (hereinafter "Milton Decedents"), were

all residents of Milton Operating, LLC d/b/a Milton Rehabilitation and Nursing Center (hereinafter "Milton Center"), a long-term care facility duly licensed in the Commonwealth of Pennsylvania, which is located at 743 Mahoning St, Milton, PA 17847.

51. The administrators of the estates of the above Milton Decedents filed lawsuits (hereinafter, "personal injury lawsuits") against Milton Center, and other Defendants, alleging that the Milton Decedents were caused to develop wounds including, *inter alia*, COVID-19 and ultimately death in and around August 2020 due to Debtors' negligence, recklessness, and neglect, specifically in allowing nursing staff who had contracted COVID-19 to continue working at the Milton Center.

52. At all times material hereto, Milton Center was one of roughly 15 long-term care facilities which were owned, operated and/or managed by a parent company called MAPA Operating LLC d/b/a Bedrock Care (https://bedrockcare.com/directory.php).

53. In apparent coordination with many of the other Bedrock Care nursing homes, Milton Center filed for Chapter 11 Bankruptcy Protection.

54. The bankruptcy petition of Milton Center has been consolidated with the matter of In Re: POTTSVILLE OPERATIONS, LLC, *et al*.

55. The Milton Creditors' personal injury lawsuits were filed in the Pennsylvania Court of Common Pleas for Northumberland County, Consolidated under Docket No. 2020-1851.

56. During the pendency of Mifflin Creditors' personal injury lawsuits, the respective personal injury lawsuit was stayed as a result of the Debtors' Chapter 11 Bankruptcy Petition.

**II.   OBJECTIONS**

57. All of the above identified Creditors are separately represented by Anapol Weiss in their respective personal injury lawsuits.

58. As each of the Creditors represented by Anapol Weiss has the same essential objection to file in this matter, they have decided to file a single omnibus Objection in order to promote efficiency and reduce the burden on all interested parties as well as upon the Court itself

59. As discussed and explained in more detail within, Care Pavilion, Cliveden Center, York Center, Yeadon Center, and Milton Center were required by the laws of the Commonwealth of Pennsylvania to maintain minimal levels of professional liability insurance at all times material hereto.

60. During the course of the Creditors' personal injury lawsuits, it was disclosed that Care Pavilion secured professional liability insurance in the statutorily minimum mandatory amount of $500,000.00.

61. The Debtors' professional liability insurance included a provision obligating the Debtor Facilities to use its own funds to pay the first portion of that $500,000.00, a condition commonly known as self-insured retention (SIR).

62. Based upon documents produced in discovery, these objecting Creditors have been made aware that the professional liability insurance for these debtors, included SIRs ranging from the amount of $150,000.00 to $200.000.00.

63. Upon information and belief, none of the Bedrock Care facilities, including the Debtors herein, never segregated or preserved any funds to be used to fulfil their SIR obligations and duties under Commonwealth of Pennsylvania's medical malpractice insurance laws.

64. Upon information and belief, the Bedrock Care facilities, including the Debtors herein, periodically took money out of their general operating funds to pay their SIR commitments as they arose.

65. Upon information and belief, a significant number of other residents from nursing homes owned, operated and managed by these same Bedrock Care corporate entities have pending professional liability lawsuits against the same and other Bedrock Care facilities as well.

66. Upon information and belief, the Bedrock Care facilities in those other lawsuits also involve professional liability insurance policies with SIR provisions.

67. A discharge of the debts and liabilities of the Debtors herein will effectively negate the Debtors' affirmative statutory duties established by the Commonwealth of Pennsylvania's medical malpractice insurance laws to maintain minimal levels of professional liability insurance.

68. A discharge of the debts and liabilities of the Debtors herein will effectively strip nursing home residents like the Creditors herein of the important protections established by the Commonwealth of Pennsylvania's medical malpractice insurance laws.

69. A discharge of the debts and liabilities of the Debtors herein jeopardizes the long-standing and strong social policies and objectives of the Commonwealth of Pennsylvania as expressly set forth in the Medical Care Availability and Reduction of Error (MCARE) Act. Title 40 P.S. "Insurance" § 1303.101. et seq.

70. A review of the comprehensive statutory provisions demonstrates that the Pennsylvania General Assembly recognized that the establishment of insurance coverage was inextricably intertwined with assuring quality health care for Pennsylvanians.

71. By logical extension, any action or outcome that undermines or negates the availability of insurance coverage inherently impairs the availability of quality health care for Pennsylvanians.

72. "It is the purpose of this act to ensure that medical care is available in this Commonwealth through a comprehensive and high-quality health care system." Title 40 P.S. "Insurance" §1303.102(1).

73. The availability of liability insurance to compensate persons injured by medical negligence is a core component of that statutory scheme.

74. "A person who has sustained injury or death as a result of medical negligence by a health care provider must be afforded a prompt determination and fair compensation." Title 40 P.S. "Insurance" §1303.102(4).

75. "Recognition and furtherance of **all of these elements is essential to the public health, safety and welfare of all the citizens of Pennsylvania**." Title 40 P.S. "Insurance" §1303.102(6) (emphasis added).

76. Indeed, "The General Assembly finds and declares that it is the purpose of this chapter to **ensure a fair legal process and reasonable compensation for persons injured due to medical negligence in this Commonwealth**. Ensuring the future availability of and access to quality health care is a fundamental responsibility that the General Assembly must fulfill as a promise to our children, our parents and our grandparents." Title 40 P.S. Insurance § 1303.502 (emphasis added).

77. In furtherance of that goal, the General Assembly established mandatory minimum insurance coverage levels. Title 40 P.S. Insurance § 1303.711.

78. The General Assembly authorized health care facilities and professionals to satisfy those requirements through "self-insurance." Title 40 P.S. Insurance § 1303.711.

79. Importantly, the General Assembly set requirements for such self-insurance, including a duty to submit a plan of self-insurance to the Commonwealth for approval:

>   (f) Self-insurance. --
>
>   (1)   If a health care provider self-insures its medical professional liability, the health care provider shall submit its self-insurance plan, such additional information as the department may require and the examination fee to the department for approval.
>   (2)   The department shall approve the plan if it determines that the plan constitutes protection equivalent to the insurance required of a health care provider under subsection (d).

Title 40 P.S. Insurance § 1303.711.

79. The Debtors' plans to sell their nursing homes and to discharge their debts through the bankruptcy process will effectively leave injured nursing home residents without compensation for their injuries and will effectively negate the Debtors' unmistakable duties thoughtfully imposed by the carefully crafted legislative scheme of the Pennsylvania General Assembly.

80. The Debtors were granted the privilege and benefits to operate the subject nursing home (and other such facilities) in the Commonwealth of Pennsylvania only because they pledged to obey and comply with all applicable laws.

81. The MCARE Act is undoubtedly one such law which the Debtors pledged to obey.

82. The consequences of the Debtors' apparent violation of the MCARE Act need not occur and are avoidable.

83. This Court is authorized by 11 U.S.C. §105 of the United States Bankruptcy Code to exercise authority to "prevent an abuse of process."

84. In the instant consolidated matters, this Court can take steps to "prevent an abuse of process" without stopping the proposed sale and without undermining the larger goal of ensuring the ongoing operation of the subject nursing homes.

85. In the instant consolidated matters, the Court can take steps to uphold the important public policies of the Commonwealth of Pennsylvania without stopping the proposed sale and without undermining the larger goal of ensuring the ongoing operation of the subject nursing homes.

86. As a preliminary step, this Court should immediately order the Debtors to produce and distribute to all affected creditors all documentation showing that the Debtors secured approval from the Commonwealth of Pennsylvania to operate as self-insured healthcare facilities during any and all periods of time when the Debtors purchased insurance that included self-insured retention provisions.

87. Furthermore, this Court should direct that a portion of the proceeds from the sale of the subject facility be set aside and preserved in trust to be used to pay the SIR obligations of the Debtor Facilities.

88. After all, those SIR funds were never intended to be part of the Debtors' general operating funds.

89. Had those SIR funds been properly segregated as required by law, the SIR funds would not now be part of the Debtors' bankruptcy Estate and would not be subject to any claims other than the lawsuits of Debtors' nursing home residents.

90. Restoring the money to the SIR funds where it belongs would simply ensure that the Debtors' financial status is restored to the intended position and state required by the laws of the Commonwealth of Pennsylvania.

91. In contrast, leaving those SIR funds in the Debtors' bankruptcy Estate allows general creditors to demand payment from funds which were never intended for their benefit.

92. It would be simple and quick to identify and calculate those SIR obligations.

93. Upon information and belief, the Debtors' have never disclosed a sale price in the Petition to Approve Sale.[1]

94. Nonetheless, it is reasonable to anticipate that the ultimate sale price will be an amount that is many tens of millions of dollars.

95. As such, a fund adequate to pay the SIR obligations of the Debtor Facilities constitutes a very small sum compared to the probable purchase price.

96. Upon information and belief, a fund adequate to pay the SIR obligations of the Debtor Facilities constitutes a very small sum compared to the proposed purchase price.

97. Upon information and belief, all portions of the proposed purchase price are subject to claims of the Debtors' creditors.

98. Upon information and belief, no portion of the sale is subject to any exemption under the Bankruptcy Code which would exempt those proceeds from the claims of the Debtors' creditors.

99. Any amounts that remain in the proposed trust fund after all of the Debtors' SIR obligations have been completely fulfilled or otherwise concluded can be returned to the Debtors' bankruptcy Estate for distribution to other creditors.

**WHEREFORE**, the objecting Creditors hereby request the following: (1) that the Debtors shall produce and distribute to all affected creditors all documentation showing that the Debtors secured approval from the Commonwealth of Pennsylvania to operate as self-insured healthcare facilities during any and all periods of time when the Debtors purchased insurance that included self-insured retention provisions; &, (2) that adequate proceeds from the Debtors' proposed sale

---

[1] It is unclear to the objecting Creditors how this Court can evaluate the adequacy of the proposed sale without disclosure of a specific sale price. Therefore, it is unclear how the sale can be approved.

be set aside and preserved in trust to be used to pay the SIR obligations of Debtor Facilities for the claims of the objecting Creditors herein.

                                                    Respectfully submitted,
                                                    **ANAPOL WEISS**

DATED:  1/30/2025            BY:     /s Paola Pearson
                                                                Paola Pearson, Esquire
                                                                 *Attorney for Plaintiff*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No.: 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al*, | Chapter 11 |
| Debtors. | Jointly Administered |
| | Related to Docket Nos. 357, 439 |
| POTTSVILLE OPERATIONS, LLC, *et al*, | Hearing Date: February 18, 2025, at 10:00 a.m. |
| Movant, | Objection Deadline: January 31, 2025 |
| vs. | |
| THERESA ARMSTRONG, AS ATTORNEY-IN-FACT FOR ANTHONY AMES; et al. | |
| Respondent. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2025, a true and correct copy of the Notice of Hearing and Response Deadline regarding Motion of the above Creditors, for Creditors' Objections to Proposed Sale was served electronically through the Court's CM/ECF filing system and/or via electronic mail upon the following:

Kate Bradley, Esq.
kate.m.bradley@usdoj.gov
Federal Building
1000 Liberty Avenue, Suite 1316
Pittsburgh, PA 15222
**U.S. Trustee**

Daniel R. Schimizzi, Esq.
dschimizzi@raineslaw.com
Raines Feldman Littrell LLP
11 Stanwix Street, Suite 1100
Pittsburgh, PA 15222
**Bankruptcy Attorney for Debtor**

David K. Boydstun, Jr
david.boydstun@dentons.com
Dentons Bingham
Greenebaum LLP
101 South Fifth Street,
Suite 3500
Louisville, KY 40202
**Attorney for Creditor
Committee**

AND ALL OTHER PARTIES REQUESTING NOTICE PURSUANT
BANKRUPTCY RULE 2002

**ANAPOL WEISS**

DATED: 1/31/2025　　　　　　　　　　BY:　/s Paola Pearson
　　　　　　　　　　　　　　　　　　　　　Paola Pearson, Esquire
　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*