**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Case No.: 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

### PLAN OF LIQUIDATION SUBMITTED BY
### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
### <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**By and through**:

Andrew C. Helman
**DENTONS BINGHAM
GREENEBAUM LLP**
One City Center, Suite 11100
Portland, ME 04101
andrew.helman@dentons.com

Lauren M. Macksoud
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
lauren.macksoud@dentons.com

Thomas D. Maxson
**DENTONS COHEN & GRIGSBY, P.C.**
625 Liberty Avenue
Pittsburgh, PA 15222-3152
thomas.maxson@dentons.com

*Counsel to the Official Committee of Unsecured
Creditors of Pottsville Operations, LLC, et. al.*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "<u>Pottsville Debtors</u>" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "<u>Pottsville Cases</u>") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "<u>Care Pavilion Debtors</u>" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "<u>Care Pavilion Cases</u>"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

# TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND CONSTRUCTION OF TERMS ........................................... 1

ARTICLE II: DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN
        COMPROMISES ............................................................................. 15

    2.1.    Deemed Consolidation for Limited Purposes under the Plan .............................. 15
    2.2.    No Substantive Consolidation; Reservation of Rights ......................................... 16

ARTICLE III: CONFIRMATION PROCEDURES .............................................................. 16

    3.1.    Confirmation Procedures ..................................................................... 16
    3.2.    Procedure for Objections; Objection Deadline .............................................. 16
    3.3.    Procedures for Voting; Voting Deadline .................................................... 17
    3.4.    Cramdown Confirmation ..................................................................... 18

ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS ....................................... 18

    4.1.    Summary of Claims, Classes, Voting, and Projected Recoveries for the
            Pottsville Debtors .......................................................................... 18
    4.2.    Identification and Treatment of Unclassified Claims ...................................... 19
    4.3.    Identification of Classes of Claims and Interests .......................................... 21
    4.4.    Treatment of Classified Claims and Interests .............................................. 22
    4.5.    Reservation of Rights; No Allowance of Claims ........................................... 25
    4.6.    Elimination of Vacant Classes .............................................................. 26
    4.7.    Voting Classes, Presumed Acceptance by Non-Voting Classes ........................... 26

ARTICLE V: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....... 26

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 27

    6.1.    Plan Funding ................................................................................ 27
    6.2.    Vesting and Sale or Other Disposition of Liquidating Trust Assets;
            Liquidating Trust Expenses ................................................................ 27
    6.3.    Liquidating Trustee ......................................................................... 29
    6.4.    Liquidating Trustee's Counsel ............................................................. 29
    6.5.    Dissolution .................................................................................. 29
    6.6.    Release of Liens and Security Instruments ................................................ 29
    6.7.    Cancellation of Notes and Instruments .................................................... 30
    6.8.    Purpose of Liquidating Trust .............................................................. 30
    6.9.    Preservation of All Causes of Action and Standing ....................................... 30
    6.10.   Effectuating Documents and Further Transactions ........................................ 30
    6.11.   D&O Insurance Policies; Employment Practice Liability Policies; Similar
            Policies ..................................................................................... 31
    6.12.   Dissolution of Creditors' Committee ..................................................... 31
    6.13.   Reserved .................................................................................... 31
    6.14.   Records ..................................................................................... 31
    6.15.   Final Decree ................................................................................ 31

6.16.  Interim Distributions; Disputed Claim Reserve .................................... 31
6.17.  Intercompany Claims .................................................................. 32

ARTICLE VII: EXECUTORY CONTRACTS ................................................ 32

7.1.  Rejection of Executory Contracts and Unexpired Leases .................. 32
7.2.  Bar Date for Rejection Damages Claims ...................................... 32
7.3.  Insurance Policies ................................................................ 33

ARTICLE VIII: PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
          DISTRIBUTION OF LIQUIDATING TRUST ASSETS .................................... 34

8.1.  Right to Object to Claims ........................................................ 34
8.2.  Disallowance of Claims. ......................................................... 34
8.3.  Distribution Provisions .......................................................... 35

ARTICLE IX: EXCULPATION, RELEASES AND INJUNCTION ......................... 36

9.1.  Exculpation and Limitation of Liability ...................................... 36
9.2.  Debtor Releases .................................................................. 37
9.3.  Injunction ........................................................................ 38

ARTICLE X: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ............ 39

10.1.  Conditions Precedent to Confirmation ....................................... 39
10.2.  Conditions Precedent to the Effective Date ................................. 39
10.3.  Effect of Failure of Conditions ............................................... 40
10.4.  Filing of Notice of the Effective Date ....................................... 40

ARTICLE XI: MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ........ 40

11.1.  Modification and Amendments ................................................ 40
11.2.  Effect of Confirmation on Modifications .................................... 40
11.3.  Revocation or Withdrawal of the Plan ....................................... 40

ARTICLE XII: JURISDICTION ................................................................ 41

ARTICLE XIII: MISCELLANEOUS ........................................................... 42

13.1.  Exemption from Taxes .......................................................... 42
13.2.  Compliance with Tax Requirements .......................................... 42
13.3.  Defenses and Setoff ............................................................. 42
13.4.  Governing Law ................................................................... 43
13.5.  Successors and Assigns ......................................................... 43
13.6.  Debtors' Post-Confirmation Management .................................... 43
13.7.  Immediate Binding Effect ...................................................... 43
13.8.  Severability of Plan Provisions ............................................... 43
13.9.  Exhibits ........................................................................... 44
13.10. No Admissions ................................................................... 44
13.11. Conflicts Among Plan Documents ............................................. 44

ii

13.12. Recommendation ................................................................................................ 44

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | **Care Pavilion Liquidating Trust Agreement** |
| B | **Pottsville Liquidating Trust Agreement** |

#129262223v9<US_ACTIVE> - Pottsville/CP- Plan of Liquidation
129262223\V-9

## INTRODUCTION

The Official Committee of Unsecured Creditors hereby proposes this Plan of Liquidation, to all of the Debtors'[2] known Holders of Claims and Interests, as authorized by section 1121(a) of the Bankruptcy Code.

## ARTICLE I:
## DEFINITIONS AND CONSTRUCTION OF TERMS

As used in this Plan, the following terms have the following meanings:

1.1.   "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Cases as it relates to a Debtor under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under sections 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtor's Estate under section 1930 title 28 of the United States Code, all taxes that arose after the Petition Date, and all other Claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court.

1.2.   "**Allowed**" shall mean, with respect to any Claim, the amount of such Claim against a Debtor or an Interest in a Debtor: (a) that has been listed by a Debtor in its Schedules as liquidated in amount and not "Disputed" or "Contingent;" (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection deadline under this Plan; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed: (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors prior to the Effective Date, or the Liquidating Trustee after the Effective Date, or (iii) pursuant to the terms of this Plan.  For purposes of computing Distributions, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as otherwise expressly set forth in this Plan.

1.3.   "**Ballot**" shall mean the Ballot accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

1.4.   "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

1.5.   "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Western District of Pennsylvania.

1.6.   "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United

---

[2]   Capitalized terms used, but not defined at the time of initial use, shall have the meaning set forth in Article I of the Plan.

129262223\V-9

States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court and/or the District Court associated with the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.7.    "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

1.8.    "**Care Pavilion Asset Purchase Agreement**" shall mean that Operations Transfer Agreement dated as of December 9, 2024 by and among the Care Pavilion Debtors, as sellers, and the Care Pavilion Buyers (defined below), as buyers.  A true correct copy of the Care Pavilion Asset Purchase Agreement is attached as Exhibit 1 to the Care Pavilion Sale Order at Docket No. 906.

1.9.    "**Care Pavilion Assessment Claim**" shall mean any monetary assessments or other amounts asserted by or owed to the Pennsylvania Department of Human Services, or any other governmental unit, pursuant to 62 P.S. Sections 801-A, et seq., with respect to any of the Care Pavilion Debtors or their respective Estates.

1.10.    "**Care Pavilion Bar Date Order**" shall mean that certain *Order Establishing Deadlines For (A) Submitting Proofs of Claim and (B) Commencing Dischargeability Proceedings, (II) Approving Manner of Notice Thereof* entered by the Bankruptcy Court on January 10, 2025 [Docket No. 529], which established April 16, 2025 as the General Bar Date for the Care Pavilion Debtors.

1.11.    "**Care Pavilion Buyers**" shall mean MI Operating, LLC, PA Operating LLC, WA Operating, LLC, CP Operating, LLC, CL Operating LLC, MA Operating LLC, TH Operating LLC, and YO Operating, LLC.

1.12.    "**Care Pavilion Debtors**" shall mean, collectively, Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571).

1.13.    "**Care Pavilion DIP/Cash Collateral Order**" shall mean the *Final DIP Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 438].

1.14.    "**Care Pavilion Estate(s)**" shall mean, singularly or collectively, the estates of the Care Pavilion Debtors, or an estate of a Care Pavilion Debtor, created pursuant to section 541 of the Bankruptcy Code.

129262223\V-9

1.15. "**Care Pavilion General Unsecured Claim**" shall mean any unsecured Claim against a Care Pavilion Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, not to be: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Priority Unsecured Non-Tax Claim.

1.16. "**Care Pavilion Insider Avoidance Action**" shall mean that certain Cause of Action to be commenced by the Creditors' Committee or the Liquidating Trustee, as applicable, against the Non-Released Parties, and any other to be named defendant, as deemed appropriate or necessary.

1.17. "**Care Pavilion Insured Claim**" means a medical malpractice or tort claim against any of the Care Pavilion Debtors, their respective Estates, assets, or properties arising from any incident or occurrence that is covered by an applicable and available Insurance Policy. For the avoidance of doubt, no medical malpractice or tort claim against any of the Care Pavilion Debtors, their respective Estates, assets, or properties arising as a matter of applicable law following the Care Pavilion Petition Date shall be a Care Pavilion Insured Claim.

1.18. "**Care Pavilion Intercompany Claim**" shall mean any Claim held by a Care Pavilion Debtor against another Care Pavilion Debtor.

1.19. "**Care Pavilion Interests**" shall mean the equity or equivalent ownership interests of any Person or Entity in a Care Pavilion Debtor.

1.20. "**Care Pavilion Liquidating Trust**" shall mean the liquidating trust established under this Plan and the Care Pavilion Liquidating Trust Agreement.

1.21. "**Care Pavilion Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Care Pavilion Liquidating Trust and governs the powers, duties, and responsibilities of the Care Pavilion Liquidating Trustee, which shall be in substantially the form as attached hereto as **Exhibit A**.

1.22. "**Care Pavilion Liquidating Trust Assets**" means all assets of the Care Pavilion Debtors that (i) exist immediately prior to the Effective Date and are not otherwise used by the Care Pavilion Debtors to make Distributions on the Effective Date to or for the benefit of Holders of Allowed Administrative Claims, Care Pavilion Priority Unsecured Non-Tax Claims, Professional Claims and Care Pavilion Secured Lenders' Claims against the Care Pavilion Debtors, and (ii) are not Care Pavilion Purchased Assets. The Care Pavilion Liquidating Trust Assets also include, without limitation, to the extent not otherwise expressly excluded by this definition: (i) the Care Pavilion Remaining Cash; (iii) all Causes of Action the Care Pavilion Debtors hold or may hold against any Person or Entity as of the Effective Date (except to the extent they are the subject of any of the Releases set forth in the Plan), including the Care Pavilion Insider Avoidance Action; (iv) all Claims and rights of the Care Pavilion Debtors under any Insurance Policies; (v) any and all other non-Cash assets, interests, rights, claims and defenses of the Care Pavilion Debtors or the Care Pavilion Estates, including, without limitation, all rights under any order of the Bankruptcy Court; (vi) any and all tax refunds to which the Care Pavilion Debtors may be entitled; and (vii) any and all proceeds of any of the foregoing.

129262223\V-9

1.23.  "**Care Pavilion Liquidating Trust Beneficiaries**" shall mean Holders of Care Pavilion General Unsecured Claims entitled to receive a Distribution pursuant to the terms of the Plan and the Care Pavilion Liquidating Trust Agreement, whether or not such Claims are Allowed as of the Effective Date; provided that the Holder of a Care Pavilion General Unsecured Claim shall cease being a Care Pavilion Liquidating Trust Beneficiary upon its Claim becoming a Disallowed Claim.

1.24.  "**Care Pavilion Liquidating Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Care Pavilion Liquidating Trust (including, but not limited to, payment of statutory fees, compensation of the Care Pavilion Liquidating Trustee, and the reasonable fees and expenses of professionals or other persons retained by the Care Pavilion Liquidating Trustee) in connection with carrying out the duties and responsibilities set forth in the Care Pavilion Liquidating Trust Agreement and the Plan, which duties and responsibilities shall be funded solely from the Care Pavilion Liquidating Trust Assets.

1.25.  "**Care Pavilion Liquidating Trust Interests**" means the uncertificated beneficial interests in the Care Pavilion Liquidating Trust, which represent the right of the Care Pavilion Liquidating Trust Beneficiaries to receive Distributions from the Care Pavilion Liquidating Trust in accordance with the Plan and the Care Pavilion Liquidating Trust Agreement.

1.26.  "**Care Pavilion Net Cash Proceeds**" means the aggregate cash consideration paid to or retained by the Care Pavilion Debtors at closing of the Care Pavilion Sale.

1.27.  "**Care Pavilion Other Secured Claim**" shall mean any Secured Claim against the Care Pavilion Debtors, other than the Secured Claim of the Care Pavilion Secured Lenders, including any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Care Pavilion Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code. For the avoidance of doubt, each and every Care Pavilion Other Secured Claim shall be a Disputed Claim, and no Care Pavilion Other Secured Claim shall be Allowed other than pursuant to a Final Order of the Bankruptcy Court.

1.28.  "**Care Pavilion Petition Date**" shall mean November 18, 2024, the date on which the Care Pavilion Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

1.29.  "**Care Pavilion Priority Tax Claim**" shall mean the Care Pavilion Assessment Claim.

1.30.  "**Care Pavilion Priority Unsecured Non-Tax Claim**" shall mean any and all Claims against the Care Pavilion Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.31.  "**Care Pavilion Purchased Assets**" shall mean those certain assets of a Care Pavilion Debtor purchased by the Care Pavilion Buyers pursuant to the Care Pavilion Sale Order and the Care Pavilion Asset Purchase Agreement.

1.32.  "**Care Pavilion Remaining Cash**" means the actual sum of Cash that constitutes Care Pavilion Liquidating Trust Assets after: (i) the payment of Cash necessary to satisfy all

Allowed Unclassified Claims that are Allowed against the Care Pavilion Debtors on or prior to the Effective Date; (ii) the funding of reserves for disputed Unclassified Claims against the Care Pavilion Debtors to the extent required by the Bankruptcy Court on or prior to the Effective Date; and (iii) the payment of all Allowed Claims against the Care Pavilion Debtors payable on the Effective Date as set forth in Classes 1CP-2CP.

1.33. "**Care Pavilion Remaining Estate Funds**" means the actual sum of Cash held by the Care Pavilion Debtors on the Effective Date.

1.34. "**Care Pavilion Sale**" shall mean the sale of the Care Pavilion Purchased Assets to the Care Pavilion Buyers pursuant to the Care Pavilion Asset Purchase Agreement and the Care Pavilion Sale Order, which closed on June 1, 2025.

1.35. "**Care Pavilion Sale Order**" shall mean the *Order (A) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 906].

1.36. "**Care Pavilion Secured Lenders**" shall mean Dime Community Bank, Metropolitan Commercial Bank, Bank Financial, N.A., and Ventas, Inc.

1.37. "**Care Pavilion Secured Lenders' Claims**" shall mean the Secured Claim of the Care Pavilion Secured Lenders.

1.38. "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

1.39. "**Causes of Action**" shall mean all Claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other similar state law claims and causes of action, Liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action shall also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.40. "**Chapter 11 Cases**" shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 24-70418 in the Bankruptcy Court. All citations herein to the docket shall refer to the Chapter 11 Cases, unless otherwise stated.

**1.41.** "**Claim(s)**" shall mean a claim or claims against a Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.42.** "**Claims and Noticing Agent**" shall mean Stretto, Inc., the claims and noticing agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

**1.43.** "**Claims Register**" means the official register of Claims maintained by the Claims and Noticing Agent.

**1.44.** "**Claims Objection Deadline**" shall mean ninety (90) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee or the Debtors may File one or more motions with the Bankruptcy Court to extend the Claims Objection Deadline.  The Claims Objection Deadline shall also constitute the deadline for the Debtors or Liquidating Trustee to object to Priority Claims and Administrative Claims (other than Professional Fee Claims).

**1.45.** "**Class**" shall mean a class of Claims or Interests as set forth in Article IV hereof pursuant to section 1122(a) of the Bankruptcy Code.

**1.46.** "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article X of the Plan having been satisfied.

**1.47.** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, unless otherwise stated in the Confirmation Order.

**1.48.** "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.49.** "**Confirmation Order**" shall mean the Final Order of the Bankruptcy Court confirming the Plan.

**1.50.** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.51.** "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.52.** "**Creditors' Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, pursuant to the *Notice of Appointment of Creditors' Committee* [Docket No. 108] and the *Second Amended Appointment of Official Committee of Unsecured Creditors* [Docket No. 330].

**1.53.** "**Debtors**" shall mean, collectively, the Pottsville Debtors and the Care Pavilion Debtors, including each in its capacities prior to, respectively, the Care Pavilion Petition Date and

6

the Pottsville Petition Date, as a debtor in possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

1.54.    "**Dentons**" shall mean Dentons Bingham Greenebaum, LLP; Dentons US LLP; Dentons Cohen & Grigsby, P.C. and any other business unit of or within Dentons Group.

1.55.    "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor that: (i) has been disallowed, waived, or released, in whole or part, by a Final Order (including, but not limited to, the Confirmation Order); (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and a Debtor or the Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if identified in the Schedules and listed as zero or as Disputed, Contingent, and/or unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order or other applicable law or as otherwise agreed; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest; or (vi) is not listed in the Schedules and as to which no timely and proper Proof of Claim or Proof of Interest has been Filed in accordance with the Care Pavilion Bar Date Order and the Pottsville Notice of Commencement or any other applicable Final Order establishing a bar date in the Chapter 11 Cases, including as to any Rejection Damages Claim.

1.56.    "**Disclosure Statement**" shall mean that certain disclosure statement Filed by the Creditors' Committee with respect to this Plan, as the same may be amended, supplemented, revised, or modified from time to time, and approved as containing adequate information pursuant to a Final Order, including, without limitation, all exhibits, appendices, and schedules attached thereto.

1.57.    "**Disputed**" shall mean any Claim or Interest that has not yet been Allowed or Disallowed.

1.58.    "**Distribution**" shall mean any distribution made pursuant to the Plan by the Liquidating Trustee or the Debtors to the Holder of an Allowed Claim or Allowed Interest.

1.59.    "**Effective Date**" shall mean the first Business Day after the Confirmation Order becomes a Final Order.  If the Confirmation Order has been stayed and that stay remains in place after the Effective Date would have occurred, the Effective Date shall mean the first Business Day following the date upon which any stay of the Confirmation Order is no longer effective.

1.60.    "**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.61.    "**Exculpated Parties**" shall mean collectively, and in each case, solely in the capacities as such: (a) the Debtors; (b) the Creditors' Committee and the members of the Creditors' Committee; (c) with respect to each of the foregoing Entities, all Professionals who acted on their behalf in connection with the matters as to which exculpation is provided herein; and (d) the Post-Petition Officers.

**1.62.**    "**Executory Contract**" shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.63.**    "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases; *provided, however*, that with respect to Proofs of Claim and Proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by and consistent with the Care Pavilion Bar Date Order and the Pottsville Notice of Commencement or as otherwise established by a Final Order.

**1.64.**    "**Final Administrative Claim Bar Date**" shall mean the date that is thirty (30) days after the Effective Date, which shall also be the deadline for Filing requests for payment of Administrative Claims (other than Professional Fee Claims) that: (i) arose after the Petition Date; and (ii) were not paid as of the Effective Date.

**1.65.**    "**Final Order**" shall mean an unstayed order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, re-argument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidating Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.66.**    "**Governmental Unit**" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.67.**    "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.68.**    "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.69.**    "**Insider**" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

**1.70.**    "**Insurance Policy**" shall mean any insurance policy maintained by or for the benefit of any of the Care Pavilion Debtors or the Pottsville Debtors, as applicable, or for the benefit of their directors and officers or employees (with respect to the latter, solely related to their employment), as of the Care Pavilion Petition Date or the Pottsville Petition Date, as applicable,

and all agreements, documents, or instruments relating thereto not sold or otherwise transferred pursuant to either the Care Pavilion Sale Order or the Pottsville Sale Order, as applicable.

1.71.    '**Insured Deficiency Claim**" has the definition set forth in <u>Article 4.4(d)</u>.

1.72.    "**Insurer**" shall mean any Entity (and its successors) that is an issuer of an Insurance Policy.

1.73.    "**IRS**" shall mean the Internal Revenue Service and/or assigns.

1.74.    "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code.

1.75.    "**Liquidating Trustee**" means the person appointed, by the Committee in consultation with the Debtors, to administer the Care Pavilion Liquidating Trust and the Pottsville Liquidating Trust with such rights, duties, and obligations as set forth herein and in the Care Pavilion Liquidating Trust Agreement and the Pottsville Liquidating Trust Agreement.

1.76.    "**Local Rules**" shall mean the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania.

1.77.    "**Non-Released Parties**" shall mean any and all past or present members of the Debtors, any past or present officers of the Debtors (excluding the Post-Petition Officers), past or present affiliates of the Debtors, or past or present Insiders of the Debtors.  For the avoidance of doubt, the Post-Petition Officers are excluded from the definition of Non-Released Parties.

1.78.    "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any Filing seeking payment of any Administrative Claim).

1.79.    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.80.    "**Plan**" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, and including all exhibits and schedules hereto.

1.81.    "**Post-Petition Officers**" shall mean, collectively, Neil Luria as Chief Restructuring Officer of the Debtors, Matthew Rubin as Assistant Chief Restructuring Officer of the Debtors, and all employees of SOLIC Capital Advisors LLC who performed work on behalf of the Debtors.

1.82.    "**Pottsville Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement dated as of October 15, 2024, by and among the Pottsville Debtors, as sellers, and the Pottsville Buyers (defined below), as buyers.  A true and correct copy of the Pottsville Asset Purchase Agreement is attached as Exhibit 1 to the Pottsville Sale Order at Docket No. 557.

**1.83.** "**Pottsville Buyers**" shall mean Hampton SNF Realty, LLC, Kingston SNF Realty, LLC, Pottsville Realty, LLC, Williamsport North SNF Realty, LLC, Williamsport South SNF Realty, LLC, Yeadon SNF Realty, LLC, Hampton Operations, LLC, Kingston SNF Operations, LLC, Pottsville SNF Operations, LLC, Williamsport North SNF Operations, LLC, Williamsport South SNF Operations, LLC, and Yeadon SNF Operations, LLC, each a Pennsylvania limited liability company pursuant to the Pottsville Asset Purchase Agreement and the Pottsville Sale Order.

**1.84.** "**Pottsville Buyers Note**" shall mean the promissory note of Buyers attached as Exhibit C to the Asset Purchase Agreement in the initial principal amount of Ten Million Dollars ($10,000,000), which has a term of two (2) years, bearing 0% interest, and provides for the payment of $3,000,000 on the first anniversary of the closing date, and the remaining balance of the note shall be paid at maturity.

**1.85.** "**Pottsville Debtors**" shall mean, collectively, Pottsville Operations, LLC; Pottsville Propco, LLC; Hampton House Operations, LLC; Hampton House Propco, LLC; Kingston Operations, LLC; Kingston Propco, LLC; Williamsport North Operations, LLC; Williamsport Propco, LLC; Williamsport South Operations, LLC; Yeadon Operations, LLC; Yeadon Propco, LLC, including each in its capacities prior to the Pottsville Petition Date, as a debtor in possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

**1.86.** "**Pottsville DIP/Cash Collateral Order**" shall mean the *Final Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 216].

**1.87.** "**Pottsville Estate(s)**" shall mean, singularly or collectively, the estates of the Pottsville Debtors, or an estate of a Pottsville Debtor, created pursuant to section 541 of the Bankruptcy Code.

**1.88.** "**Pottsville General Unsecured Claim**" shall mean any unsecured Claim against a Pottsville Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, not to be: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Priority Unsecured Non-Tax Claim.

**1.89.** "**Pottsville Insider Avoidance Action**" shall mean shall mean that certain Cause of Action to be commenced by the Creditors' Committee or the Liquidating Trustee, as applicable, against the Non-Released Parties, and any other to be named defendant, as deemed appropriate or necessary.

**1.90.** "**Pottsville Insured Claim**" means a medical malpractice or tort claim against any of the Pottsville Debtors, their respective Estates, assets, or properties arising from any incident or occurrence that is covered by an applicable and available Insurance Policy. For the avoidance of doubt, no medical malpractice or tort claim against any of the Debtors, their respective Estates,

assets, or properties arising as a matter of applicable law following the Pottsville Petition Date shall be a Pottsville Insured Claim.

1.91.    "**Pottsville Intercompany Claim**" shall mean any Claim held by a Pottsville Debtor against another Pottsville Debtor.

1.92.    "**Pottsville Interests**" shall mean the equity or equivalent ownership interests of any Person or Entity in a Pottsville Debtor.

1.93.    "**Pottsville Liquidating Trust**" shall mean the liquidating trust established under this Plan and the Pottsville Liquidating Trust Agreement.

1.94.    "**Pottsville Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Pottsville Liquidating Trust and governs the powers, duties, and responsibilities of the Pottsville Liquidating Trustee, which shall be in substantially the form as attached hereto as **Exhibit B**.

1.95.    "**Pottsville Liquidating Trust Assets**" means all assets of the Pottsville Debtors that (i) exist immediately prior to the Effective Date and are not otherwise used by the Pottsville Debtors to make Distributions on the Effective Date to or for the benefit of Holders of Allowed Administrative Claims, Pottsville Priority Unsecured Non-Tax Claims, Professional Claims and Pottsville Secured Lender's Claims against the Pottsville Debtors, and (ii) are not Pottsville Purchased Assets. The Pottsville Liquidating Trust Assets also include, without limitation, to the extent not otherwise expressly excluded by this definition: (i) the Pottsville Remaining Cash; (iii) all Causes of Action the Pottsville Debtors hold or may hold against any Person or Entity as of the Effective Date (except to the extent they are the subject of any of the Releases set forth in the Plan), including the Pottsville Insider Avoidance Action; (iv) all Claims and rights of the Pottsville Debtors under any Insurance Policies; (v) any and all other non-Cash assets, interests, rights, claims and defenses of the Pottsville Debtors or the Pottsville Estates, including, without limitation, all rights under any order of the Bankruptcy Court; (vi) any and all tax refunds to which the Pottsville Debtors may be entitled; (vii) the Pottsville Buyers Note; and (viii) any and all proceeds of any of the foregoing.

1.96.    "**Pottsville Liquidating Trust Beneficiaries**" shall mean Holders of Pottsville General Unsecured Claims entitled to receive a Distribution pursuant to the terms of the Plan and the Pottsville Liquidating Trust Agreement, whether or not such Claims are Allowed as of the Effective Date; provided that the Holder of a Pottsville General Unsecured Claim shall cease being a Pottsville Liquidating Trust Beneficiary upon its Claim becoming a Disallowed Claim.

1.97.    "**Pottsville Liquidating Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Pottsville Liquidating Trust (including, but not limited to, payment of statutory fees, compensation of the Pottsville Liquidating Trustee, and the reasonable fees and expenses of professionals or other persons retained by the Pottsville Liquidating Trustee) in connection with carrying out the duties and responsibilities set forth in the Pottsville Liquidating Trust Agreement and the Plan, which duties and responsibilities shall be funded solely from the Pottsville Liquidating Trust Assets.

129262223\V-9

**1.98.** "**Pottsville Liquidating Trust Interests**" means the uncertificated beneficial interests in the Pottsville Liquidating Trust, which represent the right of the Pottsville Liquidating Trust Beneficiaries to receive Distributions from the Pottsville Liquidating Trust in accordance with the Plan and the Pottsville Liquidating Trust Agreement.

**1.99.** "**Pottsville Net Cash Proceeds**" means the aggregate cash consideration paid to or retained by the Pottsville Debtors at closing of the Pottsville Sale.

**1.100.** "**Pottsville Notice of Commencement**" shall mean that certain Notice of Commencement [Docket No. 367], which established, inter alia, April 16, 2025 as the deadline for filing proofs of claim against the Pottsville Debtors.

**1.101.** "**Pottsville Other Secured Claim**" shall mean any Secured Claim against a Pottsville Debtor, other than the Secured Claim of the Pottsville Secured Lenders, including any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Pottsville Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code. For the avoidance of doubt, each and every Pottsville Other Secured Claim shall be a Disputed Claim, and no Pottsville Other Secured Claim shall be Allowed other than pursuant to a Final Order of the Bankruptcy Court.

**1.102.** "**Pottsville Petition Date**" shall mean October 15, 2024, the date on which the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

**1.103.** "**Pottsville Pre-Petition Assessment Claim**" shall mean any monetary assessments or other amounts asserted by or owed to the Pennsylvania Department of Human Services, or any other governmental unit, pursuant to 62 P.S. Sections 801-A, et seq., with respect to any of the Pottsville Debtors or their respective Estates prior to the Pottsville Petition Date.

**1.104.** "**Pottsville Post-Petition Assessment Claim**" shall mean any monetary assessments or other amounts asserted by or owed to the Pennsylvania Department of Human Services, or any other governmental unit, pursuant to 62 P.S. Sections 801-A, et seq. after the Pottsville Petition Date, with respect to any of the Pottsville Debtors or their respective Estates.

**1.105.** "**Pottsville Priority Tax Claim**" shall mean the Pottsville Pre-Petition Assessment Claim.

**1.106.** "**Pottsville Priority Unsecured Non-Tax Claim**" shall mean any and all Claims against the Pottsville Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.107.** "**Pottsville Purchased Assets**" shall mean those certain assets of a Pottsville Debtor purchased by the Pottsville Buyers pursuant to the Pottsville Sale Order and the Pottsville Asset Purchase Agreement.

**1.108.** "**Pottsville Remaining Cash**" means the actual sum of Cash that constitutes Pottsville Liquidating Trust Assets after: (i) the payment of Cash necessary to satisfy all Allowed Unclassified Claims that are Allowed against the Pottsville Debtors on or prior to the Effective

Date; (ii) the funding of reserves for disputed Unclassified Claims against the Pottsville Debtors to the extent required by the Bankruptcy Court on or prior to the Effective Date; and (iii) the payment of all Allowed Claims against the Pottsville Debtors payable on the Effective Date as set forth in Classes 1P-2P.

**1.109.** "**Pottsville Remaining Estate Funds**" means the actual sum of Cash held by the Pottsville Debtors on the Effective Date.

**1.110.** "**Pottsville Sale**" shall mean the sale of the Pottsville Purchased Assets to the Pottsville Buyers pursuant to the Pottsville Asset Purchase Agreement and Pottsville Sale Order, which closed on February 1, 2025.

**1.111.** "**Pottsville Sale Order**" shall mean the *Order (A) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 557].

**1.112.** "**Pottsville Secured Lender**" shall mean Oxford Finance LLC.

**1.113.** "**Pottsville Secured Lender's Claim**" shall mean the Secured Claim of Oxford Finance LLC.

**1.114.** "**Priority Tax Claims**" shall mean a Claim, or a portion of a Claim, accorded priority under section 507(a)(8) of the Bankruptcy Code.

**1.115.** "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

**1.116.** "**Professional**" shall mean any professional employed in the Chapter 11 Cases by a Final Order pursuant to Bankruptcy Code sections 327, 328, or 1103, which shall include, but not be limited to, Baker Hostetler LLP; Raines Feldman Littrell LLP; Dentons, including Dentons Cohen & Grigsby, P.C., Dentons US LLP and Dentons Bingham Greenebaum LLP; FTI Consulting, Inc.; Meridian Capital Group, LLC; Solic Capital Advisors, LLC; and Stretto, Inc.

**1.117.** "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for allowance of Professional Fee Claims, which deadline shall be forty-five (45) days after the Effective Date.

**1.118.** "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.119.** "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract rejected by a Debtor must File a Proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate Final Order of the

Bankruptcy Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a Claim arising from such rejection, thirty (30) days after the Effective Date of the Plan.

**1.120.** "**Rejection Damages Claim**" shall mean any timely Filed Claim for amounts due as a result of the rejection by the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

**1.121.** "**Related Persons**" shall mean, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's current and former, employees, agents, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

**1.122.** "**Released Parties**" shall mean, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the current and former employees of the Debtors (other than Non-Released Parties); (c) the Liquidating Trustee; (d) the Creditors' Committee and the members of the Creditors' Committee; (e) each of such Entities' Related Persons; and (f) the Post-Petition Officers. *For the avoidance of doubt*, the Non-Released Parties are not included within the definition of Released Parties.

**1.123.** "**Releasing Parties**" shall mean collectively, and in each case, solely in their respective capacities as such: (a) the Released Parties (other than the Debtors and the Liquidating Trustee); and (b) with respect to any Person or Entity solely in their capacity as such (provided that with respect to any Related Persons identified herein, each such Person constitutes a Releasing Party under this clause solely with respect to derivative claims that such Related Person could have properly asserted on behalf of a Person identified in clause (a) of the definition of Releasing Parties).

**1.124.** "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts, and Statements of Financial Affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were Filed in the Chapter 11 Cases.

**1.125.** "**Secured Claim**" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.126.** "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto. For the avoidance of doubt, no Pottsville Pre-Petition Assessment Claims nor any Care Pavilion Assessment Claims shall constitute, or be deemed to constitute, a Tax or a Priority Tax Claim until and unless, and then only to the extent (if any) that, such Assessment Claims are determined to constitute a tax that is entitled to priority under section 507(a)(8) of the Bankruptcy Court in a Final Order of the

14

Bankruptcy Court or in a written agreement between the Holder of any such Assessment Claims and the Creditors' Committee, or the Liquidating Trustee, as applicable.

1.127. "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

1.128. "**Unclassified Claims**" shall mean the Claims that are not placed in a Class, as set forth in Article IV of the Plan.

1.129. "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.130. "**U.S. Trustee**" shall mean the Office of the United States Trustee for the Western District of Pennsylvania.

1.131. "**U.S. Trustee Fees**" shall mean the fees payable pursuant to 28 U.S.C. § 1930.

1.132. "**Voting Deadline**" shall have the meaning ascribed in Article 3.3.

## ARTICLE II:
## DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN COMPROMISES

### 2.1.    Deemed Consolidation for Limited Purposes under the Plan

Immediately upon the Effective Date, the Care Pavilion Debtors and their Estates shall be deemed consolidated *solely* for the following purposes: (i) all Care Pavilion Liquidating Trust Assets shall be treated as "pooled" as if they were merged solely for purposes of Distributions under the Plan, including for distribution by the Care Pavilion Debtors and/or the Liquidating Trustee; (ii) all Care Pavilion Intercompany Claims shall be eliminated; (iii) each Claim or Interest Schedule, Filed, or to be Filed against a Care Pavilion Debtor shall be deemed a single, non-aggregated Claim against, and a single non-aggregated obligation of, the Care Pavilion Debtors solely for purposes of Distributions under the Plan; (iv) all guarantees of a Care Pavilion Debtor of the payment, performance, or collection of obligations of another Care Pavilion Debtor shall be eliminated and canceled; (v) all transfers and Distributions on account of Claims made by or on behalf of any of the Care Pavilion Debtors' Estates shall be deemed to be made by or on behalf of all of the Care Pavilion Debtors' Estates; (vi) Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to Distributions in accordance with the terms of the Plan on account of such Claim without regard to which Care Pavilion Debtor was originally liable for such Claim; (vii) the deemed consolidation of the Care Pavilion Liquidating Trust Assets and Claims against the Care Pavilion Debtors under this Plan, by itself, shall not constitute impairment of a Class of Claims or Interests in the Plan for purposes of section 1124 of the Bankruptcy Code; and (viii) voting on the Plan shall occur on a consolidated basis by each Class entitled to vote, including as to calculating acceptance or rejection by a Class pursuant to section 1126 of the Bankruptcy Code.

Similarly, immediately upon the Effective Date, the Pottsville Debtors and their Estates shall be deemed consolidated *solely* for the following purposes: (i) all Pottsville Liquidating Trust Assets shall be treated as "pooled" as if they were merged solely for purposes of Distributions under the Plan, including for distribution by the Pottsville Debtors and/or the Liquidating Trustee;

(ii) all Pottsville Intercompany Claims shall be eliminated; (iii) each Claim or Interest Schedule, Filed, or to be Filed against a Pottsville Debtor shall be deemed a single, non-aggregated Claim against, and a single non-aggregated obligation of, the Pottsville Debtors solely for purposes of Distributions under the Plan; (iv) all guarantees of a Pottsville Debtor of the payment, performance, or collection of obligations of another Pottsville Debtor shall be eliminated and canceled; (v) all transfers and Distributions on account of Claims made by or on behalf of any of the Pottsville Debtors' Estates shall be deemed to be made by or on behalf of all of the Pottsville Debtors' Estates; (vi) Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to Distributions in accordance with the terms of the Plan on account of such Claim without regard to which Pottsville Debtor was originally liable for such Claim; (vii) the deemed consolidation of the Pottsville Liquidating Trust Assets and Claims against the Pottsville Debtors under this Plan, by itself, shall not constitute impairment of a Class of Claims or Interests in the Plan for purposes of section 1124 of the Bankruptcy Code; and (viii) voting on the Plan shall occur on a consolidated basis by each Class entitled to vote, including as to calculating acceptance or rejection by a Class pursuant to section 1126 of the Bankruptcy Code.

### 2.2.    No Substantive Consolidation; Reservation of Rights

For the avoidance of doubt, the deemed consolidation of this Plan shall not (other than solely for the purposes stated in this Plan) affect the legal and corporate structures of the Debtors, including, without limitation, the title to the Care Pavilion Liquidating Trust Assets, Pottsville Liquidating Trust Assets or the obligors on Claims. For further avoidance of doubt, in the event that the Plan is not confirmed, or the Effective Date does not occur, nothing in this Plan shall constitute an admission by any Entity or Person, including, without limitation, the Debtors, and/or the Creditors' Committee, regarding substantive consolidation or any other form of consolidation of the Debtors or their Estates, and all such rights are specifically reserved.

### ARTICLE III:
### CONFIRMATION PROCEDURES

### 3.1.    Confirmation Procedures

The Confirmation Hearing shall occur on **[_____] [ ], 2025 at [ ]:00 a.m.** (prevailing Eastern Time) at the Bankruptcy Court, United States Courthouse, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 (or via telephone or Zoom upon instructions to be timely provided). The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.2.    Procedure for Objections; Objection Deadline

Any objection to confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Bankruptcy Court and served on counsel for the Debtors, the Creditors' Committee, and the U.S. Trustee so as to be actually received on or before **[_____] [ ], 2025 at [ ]:00 p.m. (prevailing Eastern Time)**. **Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing**. The addresses for the Debtors, the Creditors' Committee, and the Bankruptcy Court are as follows:

<u>To the Debtors</u>:

By Mail:    Baker Hostetler LLP
Attn: Elizabeth A. Green, Esq.
    Andrew V. Layden, Esq.
200 S. Orange Ave.
Ste 2300
Orlando, FL 32801

By Email:    egreen@bakerlaw.com
alayden@bakerlaw.com

<u>To the Creditors' Committee</u>:

By Mail:    Dentons Bingham Greenebaum LLP
Attn: Andrew C. Helman, Esq.
101 Federal Street, #1900
Boston, Massachusetts 02108

Dentons US LLP
Attn: Lauren Macksoud, Esq.
1221 Avenue of the Americas
25th Floor
New York, NY 10020

Dentons Cohen & Grigsby, P.C.
Attn: Thomas D. Maxson, Esq.
625 Liberty Avenue
Pittsburgh, PA 15222-3152

By Email:    andrew.helman@dentons.com
lauren.macksoud@dentons.com
thomas.maxson@dentons.com

<u>To the Bankruptcy Court</u>:

By Mail:    United States Bankruptcy Court
Attn: Clerk's Office
600 Grant Street
Pittsburgh, PA 15219

### 3.3.    Procedures for Voting; Voting Deadline

For a vote to be counted, the Ballot must be properly completed, signed, and returned so that it is actually received by the Claims and Noticing Agent by no later than **[_____] [__], 2025 at [__]:00 p.m. prevailing Eastern Time (the "<u>Voting Deadline</u>"**), unless such time is extended in writing by the Debtors.

17

### 3.4. Cramdown Confirmation

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTORS MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE.**

### ARTICLE IV:
### CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1. Summary of Claims, Classes, Voting, and Projected Recoveries for the Pottsville Debtors

The following chart summarizes the categories and treatment of Claims and Interests under this Plan, as well as describing whether Holders of Claims and Interests are entitled to vote on this Plan, and the projected recovery for each under this Plan.  All parties are advised to read this Plan in its entirety and not to rely exclusively on this summary.

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Claims, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1P: Pottsville Secured Lender's Claim | Unimpaired | No | 100% |
| Class 1CP: Care Pavilion Secured Lenders' Claim | Impaired | Yes | 29.5% - 43% |
| Class 2P: Pottsville Other Secured Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 2CP: Care Pavilion Other Secured Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 3P: Pottsville Priority Tax Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 3CP: Care Pavilion Priority Tax Claims | Impaired | Yes | 13.4% - 20.3% |

18

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Class 4P: Pottsville Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 4CP: Care Pavilion Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 5P: Pottsville General Unsecured Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 5CP: Care Pavilion General Unsecured Claims | Impaired | Yes | 13.4% - 20.3% |
| Class 6P: Pottsville Insured Claim | Impaired | Yes | N/A[3] |
| Class 6CP: Care Pavilion Insured Claim | Impaired | Yes | N/A[4] |
| Class 7P: Pottsville Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 7CP: Care Pavilion Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 8P: Pottsville Interests | Impaired | No (deemed to reject Plan) | 0% |
| Class 8CP: Care Pavilion Interests | Impaired | No (deemed to reject Plan) | 0% |

## 4.2.    Identification and Treatment of Unclassified Claims

The following Claims shall be Unclassified Claims under the Plan:

a)    Administrative Claims.  Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with this Plan, in full and final satisfaction

---

[3] Paid from proceeds of available Insurance Policies.
[4] Paid from proceeds of available Insurance Policies.

129262223\V-9

of, and in exchange for, such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.  Holders of Disallowed Administrative Claims shall not receive any Distribution under this Plan.  For the avoidance of doubt, and pursuant to the Care Pavilion Sale Order, no Holder of an Allowed Administrative Claim is entitled to a distribution from any Causes of Actions.

i.    Final Administrative Claim Bar Date.  Holders of Administrative Claims accruing from either the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors and the Creditors' Committee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  The Liquidating Trustee shall pay all Allowed Administrative Claims (other than Professional Fee Claims) not later than ten (10) business days after such Claims become Allowed, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Administrative Claim.  **Any Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the Bankruptcy Court by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Final Administrative Claim Bar Date is the date that is thirty (30) days after the Effective Date of the Plan.**

ii.    Professional Fee Bar Date.  Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  The Liquidating Trustee shall pay all Allowed Professional Fee Claims not later than five (5) business days after entry of an Order by the Bankruptcy Court allowing such Claim, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Professional Fee Claim. Notwithstanding any interim distributions on compensation that have occurred to date, all Professional Fee Claims shall be paid ratably.  If the Debtors are unable to pay Professional Fee Claims, such claim shall be paid first from any future recoveries on the Pottsville Insider Avoidance Action and/or the Care Pavilion Insider Avoidance Action.  **If an application for a Professional Fee Claim is not Filed with the Bankruptcy Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.  The Professional Fee Bar Date is forty-five (45) days after the Effective Date of the Plan.**

b)    The Pottsville Post-Petition Assessment Claim.  The Pottsville Post-Petition Assessment constitutes an Allowed Administrative Claim.  Upon final payment in full of Allowed Administrative Claims, the Holder of the Allowed Pottsville Post-Petition Assessment Claim will receive, in full satisfaction of such claim its pro rata share of 25 percent (25%) from the proceeds of the Pottsville Insider Avoidance Action, after payment of the reasonable compensation of the Pottsville Liquidating Trustee pursuant to Section 6.3 of the Plan, up to the full amount of any such Allowed Claim.  The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type

20

specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Post-Petition Assessment Claim. The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property.

        c)     U.S. Trustee Fees. All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtors when due in the ordinary course under applicable law. After the Effective Date, the Liquidating Trustee shall pay any and all U.S. Trustee Fees when due and payable. The deemed consolidation under this Plan shall not modify any obligation to pay U.S. Trustee Fees, provided that the Debtors and Liquidating Trustee (as applicable) shall, in their business judgment, be entitled to allocate Distributions under this Plan to the appropriate Debtor for purposes of operating reports and calculating U.S. Trustee Fees.

        d)     Disputed Unclassified Claims. Except as otherwise set forth in this Article 4.2, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article VI of the Plan.

### 4.3. Identification of Classes of Claims and Interests

The following shall constitute the Classes of Claims and Interests under this Plan:

        a)     **Class 1P**: Class 1P shall contain the Pottsville Secured Lender's Claim

        b)     **Class 1CP**: Class 1CP shall contain the Care Pavilion Secured Lenders' Claim

        c)     **Class 2P**: Class 2P shall contain Pottsville Other Secured Claims

        d)     **Class 2CP**: Class 2CP shall contain Care Pavilion Other Secured Claims

        e)     **Class 3P**: Class 3P shall contain Pottsville Priority Tax Claims

        f)     **Class 3CP**: Class 3CP shall contain Care Pavilion Priority Tax Claims

        g)     **Class 4P**: Class 4P shall contain the Pottsville Priority Unsecured Non-Tax Claims

        h)     **Class 4CP**: Class 4CP shall contain the Care Pavilion Priority Unsecured Non-Tax Claims

        i)     **Class 5P**: Class 5P shall contain Pottsville General Unsecured Claims

        j)     **Class 5CP**: Class 5CP shall contain Care Pavilion General Unsecured Claims

        k)     **Class 6P**: Class 6P shall contain the Pottsville Insured Claim

        l)     **Class 6CP**: Class 6CP shall contain the Care Pavilion Insured Claim

21

m)   **Class 7P**: Class 7P shall contain the Pottsville Intercompany Claims

n)   **Class 7CP**: Class 7CP shall contain the Care Pavilion Intercompany Claims

o)   **Class 8P**: Class 8P shall contain the Pottsville Interests of each of the Debtors

p)   **Class 8CP**: Class 8CP shall contain the Care Pavilion Interests of each of the Debtors

### 4.4.   Treatment of Classified Claims and Interests

a)   <u>Treatment of the Pottsville Secured Lender's Claim (Class 1P)</u>: The Holder of the Pottsville Secured Lender's Claim has received, out of the proceeds of the Pottsville Sale closing, and in full and final satisfaction of such Allowed Class 1P Claim, payment in full in Cash of its Allowed Pottsville Secured Lender's Claim.  **Such Claim in Class 1P is, therefore, Unimpaired and entitled to vote on the Plan.**

b)   <u>Treatment of the Care Pavilion Secured Lenders' Claim (Class 1CP)</u>: The Holder of the Care Pavilion Secured Lenders' Claim has received, out of the proceeds of the Care Pavilion Sale closing, and in full and final satisfaction of such Allowed Class 1CP Claim, including any deficiency claim, payment in full in Cash of its Allowed Care Pavilion Secured Lenders' Claim.  **Such Claim in Class 1CP is, therefore, Impaired and entitled to vote on the Plan.**

c)   <u>Treatment of Pottsville Other Secured Claims Class 2P</u>: Each Holder of an Allowed Pottsville Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Pottsville Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Allowed Pottsville Other Secured Claim shall not exceed the value of the relevant creditors' collateral. **Such Claims in Class 2P are, therefore, Unimpaired and not entitled to vote the Plan.**

d)   <u>Treatment of Care Pavilion Other Secured Claims (Class 2CP)</u>: Each Holder of an Allowed Care Pavilion Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Care Pavilion Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Care Pavilion Allowed Other Secured Claim shall not exceed the value of the relevant creditors' collateral. **Such Claims in Class 2CP are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

e)   <u>Treatment of Pottsville Priority Tax Claims (Class 3P)</u>: On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction,

22

compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Pottsville Liquidating Trust Interests. **Such Claims in Class 3P are, therefore, Impaired and entitled to vote on the Plan.**

The Holders of an Allowed Pottsville Priority Tax Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Priority Tax Claim. The Holder of an Allowed Pottsville Priority Tax Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property. No Pottsville Pre-Petition Assessment Claim shall constitute, or be deemed to constitute, a Tax or a Priority Tax Claim until and unless, and then only to the extent (if any) that, such Assessment Claim is determined to constitute a tax that is entitled to priority under section 507(a)(8) of the Bankruptcy Court in a Final Order of the Bankruptcy Court or in a written agreement between the Holder of the Pottsville Pre-Petition Assessment Claims and the Liquidating Trustee.

f)    Treatment of Care Pavilion Priority Tax Claims (Class 3CP): On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee, as applicable, agree to a less favorable treatment, each Holder of an Allowed Care Pavilion Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Care Pavilion Liquidating Trust Interests. **Such Claims in Class 3CP are, therefore, Impaired and entitled to vote on the Plan.**

The Holders of an Allowed Care Pavilion Priority Tax Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Care Pavilion Priority Tax Claim. The Holder of an Allowed Care Pavilion Priority Tax Claim will not assess or attempt to collect such penalty from the either the Care Pavilion Debtors, the Care Pavilion Liquidating Trust, or their respective property. No Care Pavilion Assessment Claim shall constitute, or be deemed to constitute, a Tax or a Priority Tax Claim until and unless, and then only to the extent (if any) that, such Assessment Claim is determined to constitute a tax that is entitled to priority under section 507(a)(8) of the Bankruptcy Court in a Final Order of the Bankruptcy Court or in a written agreement between the Holder of the Care Pavilion Assessment Claim and the Liquidating Trustee.

g)    Treatment of Pottsville Priority Unsecured Non-Tax Claims and Care Pavilion Priority Unsecured Non-Tax Claims (Class 4P and Class 4CP): Each Holder of an Allowed Pottsville Priority Unsecured Non-Tax Claim or a Care Pavilion Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) Cash equal to the unpaid amount of such Allowed Claim; or (ii) such other treatment as the Liquidating Trustee and the Holder of such Allowed Claim shall have agreed. **Such Claims in Class 4P and Class 4CP are, therefore, Unimpaired and not entitled to vote on the Plan.**

h)    Treatment of Pottsville General Unsecured Claim and Care Pavilion General Unsecured Claim, including Rejection Damages Claim (Class 5P and Class 5CP): On, or

as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville General Unsecured Claim or Care Pavilion General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of the Pottsville Liquidating Trust Interests or the Care Pavilion Liquidating Trust Interests, as applicable. **Such Claims in Class 5P and Class 5CP are, therefore, Impaired and entitled to vote on the Plan.**

        i)      <u>Treatment of Pottsville Insured Claim and Care Pavilion Insured Claim (Class 6P and Class 6CP)</u>:  Except to the extent that a Holder of a Pottsville Insured Claim or a Care Pavilion Insured Claim agrees to different treatment, or unless otherwise provided by an order of the Bankruptcy Court directing such Holder's participation in any alternative dispute resolution process, on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of a Pottsville Insured Claim or Care Pavilion Insured Claim will have received or shall receive on account of its Claim relief from the automatic stay under section 362 of the Bankruptcy Code and the injunctions provided under this Plan for the sole and limited purpose of permitting such Holder to seek recovery, if any, as determined and Allowed by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim or Care Pavilion Insured Claim from the applicable and available Insurance Policies maintained by or for the benefit of any of the Debtors. A Holder's recovery of insurance proceeds under the applicable Insurance Policy(ies) shall be the sole and exclusive recovery on a Pottsville Insured Claim or Care Pavilion Insured Claim, subject to any recovery of an Insured Deficiency Claim, as described in the next paragraph. Any settlement of a Pottsville Insured Claim or Care Pavilion Insured Claim within a self-insured retention or deductible must be approved by the Debtors or Liquidating Trustee, as applicable.

        In the event the applicable Insurer denies the tender of defense or there are no applicable or available insurance policies, or proceeds from applicable and available insurance policies have been exhausted or are otherwise insufficient to pay in full a Holder's recovery, if any, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim or Care Pavilion Insured Claim, on account of such Claim, then such Holder shall be entitled to its Pro Rata share of Care Pavilion Liquidating Trust Interests or Pottsville Liquidating Trust Interests, as applicable, based on the amount of an Allowed Claim equal to the amount of the Allowed Pottsville Insured Claim or Allowed Care Pavilion Insured Claim, as applicable, less the amount of available proceeds paid on account of such Allowed Claim from the applicable and available Insurance Policies (the "<u>Insured Deficiency Claim</u>").  In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed Amount of their respective Allowed Insured Deficiency Claim. In no event shall any Holder of an Allowed Insured Deficiency Claim receive payment on account of such Allowed Insured Deficiency Claim in an amount that, when summed with payment to such Holder from any policy of insurance with respect to the Allowed Insured Claim, exceeds the Pro Rata share of Care Pavilion Liquidating Trust Interests or Pottsville Liquidating Trust Interests such Holder would have received had the Holder's Claim been classified in Class 5P or Class 5CP.

        Any amount of an Allowed Insured Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance

Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this paragraph. **Such Claims in Class 6P and 6CP are, therefore, Impaired and entitled to vote on the Plan. Unless otherwise ordered by the Bankruptcy Court, each Holder of a Class 6P or Class 6CP Claim shall have a $1.00 vote for each such filed Claim.**

j)      Treatment of Pottsville Intercompany Claims and Care Pavilion Intercompany Claims (Class 7P and Class 7CP): There shall be no Distribution on account of either the Pottsville Intercompany Claims or Care Pavilion Intercompany Claims.  Upon the Effective Date, all Pottsville Intercompany Claims and Care Pavilion Intercompany Claims will be deemed cancelled and will cease to exist.  **Such Claims in Classes 7P and 7CP are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

k)      Treatment of Pottsville Interests and Care Pavilion Interests in each of the Debtors (Class 8P and Class 8CP): The Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP are Impaired.  The Holders of the Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Care Pavilion Liquidating Trust and Pottsville Liquidating Trust, or at the direction of the Liquidating Trustee), and the Holders of the Pottsville Interests and the Care Pavilion Interests shall take nothing under the Plan, provided, however, that all powers and authorities vested in the Pottsville Interests and the Care Pavilion Interests shall be transferred to the Pottsville Liquidating Trust and the Care Pavilion Liquidating Trust, as applicable, and be exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder. **Such Pottsville Interests in Class 8P and Care Pavilion Interests Class 8CP are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

**4.5.    Reservation of Rights; No Allowance of Claims**

For the avoidance of doubt, notwithstanding the deemed consolidation under this Plan, the Debtors and the Liquidating Trustee reserve all rights to object to any Claim on any basis, and nothing herein shall Allow or be deemed to Allow any Claim, except to the extent a Claim is explicitly Allowed under the Plan by agreement of the Creditors' Committee or the Liquidating Trustee, as applicable.

**4.6.    Elimination of Vacant Classes**

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**4.7.    Voting Classes, Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims in such Class shall be deemed to have accepted the Plan.

**ARTICLE V:**
**CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan and Disclosure Statement will affect any Claim, interest, right, or action with regard to the Debtors.

- The Creditors' Committee can make no assurances that the requisite acceptances to the Plan will be received, and the Creditors' Committee may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Care Pavilion Liquidating Trust Assets and the Pottsville Liquidating Trust Assets and that will be available to pay to Holders of Allowed Care Pavilion General Unsecured Claims and Allowed Pottsville General Unsecured Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation of the Plan and for certain other conditions that must be satisfied prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

- There can be no assurance that exculpation, as provided in Article IX of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

129262223\V-9

- There is no assurance regarding whether the Bankruptcy Court will order substantive consolidation of the Debtors and their Estates as proposed.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1.    Plan Funding

This Plan will be funded from the following sources: (i) the Care Pavilion Remaining Estate Funds and the Pottsville Remaining Estate Funds; (ii) the Care Pavilion Remaining Cash and the Pottsville Remaining Cash; (iii) the Care Pavilion Net Cash Proceeds and the Pottsville Net Cash Proceeds; (iv) any refunds, deposits, or other monies owing to the Debtors which were not sold to the Care Pavilion Buyers or the Pottsville Buyers; (v) any other monetary recoveries obtained by the Debtors prior to the Effective Date; and (vi) any other monetary recoveries obtained by the Liquidating Trustee after the Effective Date that do not constitute Care Pavilion Purchased Assets or Pottsville Purchased Assets.

### 6.2.    Vesting and Sale or Other Disposition of Liquidating Trust Assets; Liquidating Trust Expenses

(a)    On the Effective Date, the Care Pavilion Liquidating Trust and the Pottsville Liquidating Trust shall be established in accordance with the Care Pavilion Liquidating Trust Agreement and the Pottsville Liquidating Trust Agreement, as applicable, for the exclusive benefit of the holders of Allowed Claims in Class 3P, Class 3CP, Class 5P, Class 5CP, Class 6P and Class 6CP, in each case as applicable. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. The Liquidating Trustee shall have and perform all the duties, responsibilities, rights, and obligations set forth in the Plan, the Care Pavilion Liquidating Trust Agreement and the Pottsville Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(b)    On the Effective Date, and periodically thereafter if additional Care Pavilion Liquidating Trust Assets or Pottsville Liquidating Trust Assets become available, the Debtors shall transfer and assign to the Care Pavilion Liquidating Trust or the Pottsville Liquidating Trust, as applicable, all of their right, title, and interest in and to all of such assets and, in accordance with section 1141 of the Bankruptcy Code, all the Care Pavilion Liquidating Trust Assets and Pottsville Liquidating Trust Assets shall vest in the Care Pavilion Liquidating Trust and Pottsville Liquidating Trust, as applicable, free and clear of all Claims, Liens, charges, other encumbrances, or Interests, except for the interests of any of the respective Holders of the beneficial interests in either the Care Pavilion Liquidating Trustee Assets or the Pottsville Liquidating Trust Assets, and

subject to Care Pavilion Liquidating Trust Expenses and Pottsville Liquidating Trust Expenses. Thereafter, the Debtors shall have no interest in or with respect to the Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets.

(c)     On and after the Effective Date, the Liquidating Trustee may use, acquire, sell, liquidate, dispose, and distribute the Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets or the proceeds thereof, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan, the Confirmation Order, the Care Pavilion Liquidating Trust Agreement or the Pottsville Liquidating Trust Agreement.

(d)     On and after the Effective Date, the Liquidating Trustee shall also be and shall enjoy the powers of the Debtors' authorized representative for all purposes relating to the Care Pavilion Liquidating Trust Assets and the Pottsville Liquidating Trust Assets, including, without limitation, under section 1123 of the Bankruptcy Code as well as all administrative functions of the Chapter 11 Cases with respect to the Care Pavilion Liquidating Trust Assets and the Pottsville Liquidating Trust Assets.  The Liquidating Trustee shall hold the attorney-client privilege of the Debtors with respect to any Care Pavilion Liquidating Trust Assets or Pottsville Liquidating Trust Assets.  The Liquidating Trustee shall also have all rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code as well as Bankruptcy Rule 2004, in addition to any powers granted by law or conferred to it by any other provision of the Plan.

(e)     On and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to compromise or settle any Claims, Objections, or Causes of Action, provided that any such compromise or settlement with an aggregate monetary value to the Liquidating Trust that exceeds $50,000 shall be subject to entry of an order from the Bankruptcy Court approving the compromise or settlement upon a motion by the Liquidating Trustee, which such motion shall be considered under the standards applicable to Bankruptcy Rule 9019.

(f)     On and after the Effective Date, the Liquidating Trustee shall be authorized to pay the Care Pavilion Liquidating Trust Expenses and the Pottsville Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, without further order or notice except as set forth herein, provided that nothing in this Plan shall relieve the Debtors or the Liquidating Trustee of any obligation to File post-confirmation operating reports pursuant to applicable law.

(g)     After the Effective Date, the Liquidating Trustee and any professionals retained by the Liquidating Trustee or the Debtors shall File in the Chapter 11 Cases for any period after the Effective Date, no more than monthly, a fee statement (each, a "Fee Statement") setting forth a request for payment and the billing detail for services rendered and actual expenses incurred in that month.  No party may File a Fee Statement more frequently than once a month, and no service of a Fee Statement shall be required except CM/ECF service by Filing on the docket in the Chapter 11 Cases.  The U.S. Trustee and any Holder of a Class 5P Pottsville General Unsecured Claim or a Class 5CP Care Pavilion General Unsecured Claim, notwithstanding whether such Claim has been Allowed, shall have the right to object to payment of any amount sought in a Fee Statement by Filing a written objection no later than fourteen (14) days after the Filing of the Fee Statement (a "Fee Objection"), which shall set forth, with specificity as to any particular amounts requested, any objections to a Fee Statement.  In the event that no Fee Objection is timely Filed, the

Liquidating Trustee shall be authorized to pay 100% of the amount sought in the Fee Statement without further notice or order of the Bankruptcy Court.  In the event of a timely Filed Fee Objection, the Bankruptcy Court shall set a hearing on the Fee Objection, and the Bankruptcy Court shall determine whether to sustain or overrule the Fee Objection, provided that the Liquidating Trustee shall be authorized to pay without further notice or order of the Bankruptcy Court any amounts requested in such Fee Statement that was not subject to the Fee Objection.

### 6.3.    Liquidating Trustee

Ronald Winters of Gibbins Advisors shall be the Liquidating Trustee.  The Creditors' Committee believes that Mr. Winters is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner.  Mr. Winters shall be compensated as set forth the Care Pavilion Liquidating Trust Agreement and the Pottsville Liquidating Trust Agreement.  Any subsequent Liquidating Trustee shall be appointed in accordance with the Care Pavilion Liquidating Agreement and the Pottsville Liquidating Trust Agreement.

### 6.4.    Liquidating Trustee's Counsel

Dentons shall serve as initial counsel to the Liquidating Trustee, _provided_ that nothing herein shall prevent the Liquidating Trustee from retaining alternative counsel and terminating initial counsel, and _provided further_ that Dentons representation of the Liquidating Trustee shall be limited to representation of the Liquidating Trustee in its representative and fiduciary capacity and not in an individual capacity.

### 6.5.    Dissolution

Upon Effective Date, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Debtors and/or the Liquidating Trustee on behalf of the Debtors may take appropriate action to dissolve under applicable law; provided further that the Liquidating Trustee shall be authorized to execute such documents and take such steps as may be necessary and appropriate to implement the final wind down of the Debtors. From and after the Effective Date, the Debtors shall not be required to file any document, or take any action, to withdraw its business operations from Pennsylvania, or any other states where the Debtors previously conducted business.  Upon the Effective Date, the Post-Petition Officers shall have no obligation to take any further action for the Debtors, provided however, that the Post-Petition Officers have the authority to take action for the Debtors at the request of the Liquidating Trustee.

### 6.6.    Release of Liens and Security Instruments

As of the Effective Date, all Liens against any Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets to be distributed under the Plan shall be fully released, and all of the right, title, and interest of any Holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets.  For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets shall be fully released

on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 6.7. Cancellation of Notes and Instruments

As of the Effective Date, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtors, be canceled and terminated, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### 6.8. Purpose of Liquidating Trust

The Liquidating Trusts shall be established for the purpose of liquidating and distributing the Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets and the proceeds thereof, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Holders of Claims, and making Distributions in accordance with the Plan, the Care Pavilion Liquidating Trust Agreement and the Pottsville Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. section 301.7701-4(d). The Care Pavilion Liquidating Trust and the Pottsville Liquidating Trust are intended to qualify as "grantor trusts" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Care Pavilion Liquidating Trust Beneficiaries and Pottsville Liquidating Trust Beneficiaries treated as grantors and owners of the respective trusts.

**All Holders of Claims entitled to Distributions under the Plan, as a condition to receiving any Distribution, shall provide the Liquidating Trustee with a completed and executed Tax Form W-8 or Tax Form W-9, as applicable, or similar form within forty-five (45) days of a written request by the Liquidating Trustee. Failure to return the required form will render any Distribution an Unclaimed Distribution without further order of the Court.**

### 6.9. Preservation of All Causes of Action and Standing

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtors or the Estates may have against any Person or Entity that constitute Causes of Action, subject to the provisions of this Plan. The Liquidating Trustee shall have standing on behalf of the Debtors and the Estates for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Care Pavilion Liquidating Trust Assets or the Pottsville Liquidating Trust Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan.

### 6.10. Effectuating Documents and Further Transactions

On and after the Effective Date, the Liquidating Trustee shall be authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate,

implement, and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors, the Care Pavilion Liquidating Trust and the Pottsville Liquidating Trust, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan.

### 6.11.  D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.

Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any directors and officers insurance policy, employment practices or similar liability insurance policy (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

### 6.12.  Dissolution of Creditors' Committee

Upon and after the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity solely to prepare and prosecute applications for the payment of Professional Fee Claims incurred by the Creditors' Committee's Professionals.  Following the completion of the foregoing, the Creditors' Committee shall be dissolved, and the members of the Creditors' Committee shall be discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

### 6.13.  Reserved.

### 6.14.  Records

Upon the Effective Date, the Liquidating Trustee may retain those documents maintained by the Debtors in the ordinary course of business and which were not otherwise transferred to a third party prior to the Effective Date.  After the Effective Date, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment without further order from the Bankruptcy Court; *provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including, but not limited to, tax documents, that the Care Pavilion Liquidating Trust or Pottsville Liquidating Trust is required to retain under applicable law.

### 6.15.  Final Decree

Notwithstanding anything in the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, at any time following the Effective Date, the Liquidating Trustee shall be authorized to File a motion for entry of a final decree closing the Chapter 11 Cases.

### 6.16.  Interim Distributions; Disputed Claim Reserve

The Liquidating Trustee shall make an initial interim Distribution (the "Initial Care Pavilion Distribution") to Holders of Allowed Care Pavilion Priority Tax Claims in Class 3CP and Allowed Care Pavilion General Unsecured Claims in Class 5CP from available Cash as soon as practicable after the Effective Date. For purposes of the Initial Care Pavilion Distribution, the

31

Liquidating Trustee shall: (i) estimate the amount of each Disputed Claim in Class 5CP at such time; and (ii) reserve: (y) sufficient Cash (the "Care Pavilion Disputed Claim Reserve") to make the Pro Rata Initial Care Pavilion Distribution to the Holders of such Disputed Claims in such Classes if such Disputed Claims become Allowed Claims, and (z) sufficient Cash to fund any remaining Care Pavilion Liquidating Trust Expenses.  Following the Initial Care Pavilion Distribution, the Liquidating Trustee shall make subsequent Distributions on an interim basis to Holders of Allowed Claims with a beneficial interest in the Care Pavilion Liquidating Trust Assets (including disbursing Cash from the Care Pavilion Disputed Claim Reserve to the extent such Cash no longer warrants reservation) on a rolling basis as soon as practicable in the Liquidating Trustee's reasonable discretion.

The Liquidating Trustee shall make an initial interim Distribution (the "Initial Pottsville Distribution") to Holders of Allowed Pottsville Priority Tax Claims in Class 3P and Allowed Pottsville General Unsecured Claims in Class 5P from available Cash as soon as practicable after the Effective Date.  For purposes of the Initial Pottsville Distribution, the Liquidating Trustee shall: (i) estimate the amount of each Disputed Claim in Class 5P at such time; and (ii) reserve: (y) sufficient Cash (the "Pottsville Disputed Claim Reserve") to make the Pro Rata Initial Pottsville Distribution to the Holders of such Disputed Claims in such Classes if such Disputed Claims become Allowed Claims, and (z) sufficient Cash to fund any remaining Pottsville Liquidating Trust Expenses.  Following the Initial Pottsville Distribution, the Liquidating Trustee shall make subsequent Distributions on an interim basis to Holders of Allowed Claims with a beneficial interest in the Pottsville Liquidating Trust Assets (including disbursing Cash from the Pottsville Disputed Claim Reserve to the extent such Cash no longer warrants reservation) on a rolling basis as soon as practicable in the Liquidating Trustee's reasonable discretion.

### 6.17.  Intercompany Claims

Entry of the Confirmation Order shall constitute an order Disallowing all Pottsville Intercompany Claims and Care Pavilion Intercompany Claims in their entirety.

### ARTICLE VII:
### EXECUTORY CONTRACTS

### 7.1.  Rejection of Executory Contracts and Unexpired Leases

**Pursuant to the Pottsville Sale Order, all contracts and leases of the Debtors other than the Assumed Contracts (as defined therein) were deemed rejected by the Debtors, in accordance with section 365 of the Bankruptcy Code, effective as of the date the Pottsville Sale closed, which occurred on February 1, 2025 [see Docket No. 655].  Pursuant to the Care Pavilion Sale Order, all contracts and leases of the Debtors other than the Assumed Contracts (as defined therein) were deemed rejected by the Debtors, in accordance with section 365 of the Bankruptcy Code, effective as of the date the Care Pavilion Sale closed, which occurred on June 1, 2025 [see Docket No. 1244].**

### 7.2.  Bar Date for Rejection Damages Claims

**If the rejection of an Executory Contract pursuant to the Care Pavilion Sale Order or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim**

shall be forever barred and shall not be enforceable against the Care Pavilion Debtors, their Estates, and/or the Care Pavilion Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.  Allowed Rejection Claims against the Care Pavilion Debtors shall be classified as Class 5CP Care Pavilion General Unsecured Claims, as described in Article IV hereof.

If the rejection of an Executory Contract pursuant to the Pottsville Sale Order or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Pottsville Debtors, their Estates, and/or the Pottsville Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.  Allowed Rejection Claims against the Pottsville Debtors shall be classified as Class 5P Pottsville General Unsecured Claims, as described in Article IV hereof.

### 7.3.  Insurance Policies

For the avoidance of doubt, the Care Pavilion Debtors' rights with respect to all Insurance Policies under which the Care Pavilion Debtors may be an insured beneficiary or assignee (including all Insurance Policies that may have expired prior to the Care Pavilion Petition Date, all Insurance Policies in existence on the Care Pavilion Petition Date, all Insurance Policies entered into by the Care Pavilion Debtors after the Care Pavilion Petition Date, and all Insurance Policies under which the Care Pavilion Debtors hold rights to make, amend, prosecute, and benefit from claims) shall be transferred to the Care Pavilion Liquidating Trust (including, without limitation, for the Care Pavilion Liquidating Trustee to pursue and prosecute any Causes of Action) on the Effective Date, unless any such Insurance Policy is otherwise cancelled by the Care Pavilion Liquidating Trustee in its discretion.

Similarly, the Pottsville Debtors' rights with respect to all Insurance Policies under which the Pottsville Debtors may be an insured beneficiary or assignee (including all Insurance Policies that may have expired prior to the Pottsville Petition Date, all Insurance Policies in existence on the Pottsville Petition Date, all Insurance Policies entered into by the Pottsville Debtors after the Pottsville Petition Date, and all Insurance Policies under which the Pottsville Debtors hold rights to make, amend, prosecute, and benefit from claims) shall be transferred to the Pottsville Liquidating Trust (including, without limitation, for the Pottsville Liquidating Trustee to pursue and prosecute any Causes of Action) on the Effective Date, unless any such Insurance Policy is otherwise cancelled by the Pottsville Liquidating Trustee in its discretion.

Notwithstanding any provision providing for the rejection of Executory Agreements, any Insurance Policy that is deemed to be an Executory Agreement shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee, which shall retain the right to assume or reject any such Executory Agreements pursuant to and subject to the provisions of section 365 following the Effective Date, with all rights of the Insurers to object or otherwise contest such assumption or rejection being expressly reserved provided, that, the Liquidating Trustee may not reject (a) any extended reporting period (tail) coverage purchased by the Debtors and (b) any Insurance Policies assumed by the Care Pavilion

33

Debtors or the Pottsville Debtors pursuant to an order of the Bankruptcy Court. Such motion shall be filed by the Liquidating Trustee as soon as practicable after the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any of the Insurance Policies requiring a cure payment and that nothing in the Care Pavilion Sale Order, the Pottsville Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action.

Nothing in the Plan or in the Confirmation Order shall preclude any Person from asserting in any proceeding any and all Claims, defenses, rights or causes of action that it has or may have under or in connection with any Insurance Policy, and nothing in the Plan or the Confirmation Order shall be deemed to waive any claims, defenses, rights or causes of action that any Person (including any Insurer) has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the subject Insurance Policies. Nothing in this Plan shall diminish, impair or otherwise affect payments from the proceeds or the enforceability of any Insurance Policies that may cover (a) Claims by the Debtor, or (b) Claims against the Debtors or covered Persons.

## ARTICLE VIII:
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTION OF LIQUIDATING TRUST ASSETS

### 8.1.    Right to Object to Claims

The Liquidating Trustee shall have authority, but not the obligation, to do any of the following with respect to any Claims or Interests after the Effective Date and prior to or on the Claims Objection Deadline: (i) File, withdraw, or litigate to judgment, Objections to and requests for estimation of Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, subject to the limitations set forth in this Plan or the Confirmation Order; and (iii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court or any other party.  The Liquidating Trustee shall succeed to any pending Objections to Claims Filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

### 8.2.    Disallowance of Claims.

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to either the Care Pavilion Debtors or the Pottsville Debtors by that Entity have been turned over or paid to the Care Pavilion Debtors, the Pottsville Debtors or the Liquidating Trustee, as applicable.

34

**Except as provided herein, pursuant to a Bankruptcy Court order or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

### 8.3.    Distribution Provisions

a)    **Distributions to be Made and Adequate Reserves**.  The Liquidating Trustee shall be responsible for making Distributions under the Plan, except those required before the Effective Date, which the Debtors shall make.  The Liquidating Trustee shall establish and maintain a reasonable reserve of Cash to satisfy anticipated Care Pavilion Liquidating Trust Expenses and Pottsville Liquidating Trust Expenses until the Care Pavilion Liquidating Trust and the Pottsville Liquidating Trusts are dissolved.

b)    **No Liability**.  The Liquidating Trustee shall only be required to act and make Distributions in accordance with the terms of the Plan, the Care Pavilion Liquidating Trust, the Pottsville Liquidating Trust Agreement, and related documents.  Except on account of gross negligence, fraud, illegality, or willful misconduct, the Liquidating Trustee shall have no: (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to him or her in accordance with the Plan, the Care Pavilion Liquidating Trust Agreement, the Pottsville Liquidating Trust Agreement and related documents; or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan, the Care Pavilion Liquidating Trust Agreement, the Pottsville Liquidating Trust Agreement and related documents.

c)    **Distributions on Account of Disputed Claims**.  Except as otherwise provided in the Plan, a Final Order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidating Trustee at such periodic intervals as the Liquidating Trustee determines to be prudent in his or her discretion.

d)    **No Distributions Pending Disputes**.  (a) No Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim; and (b) unless agreed otherwise by the Liquidating Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and/or the Cause of Action (as applicable) have been resolved by agreement with the Liquidating Trustee or by a Final Order.  Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan, and where such treatment provides for Cash payment on the Effective Date for such Claim, payment shall be made as soon as practicable after becoming an Allowed Claim.

e)    **Unclaimed Distributions**.  Any Person and/or Entity that fails to claim any Cash within forty-five (45) days from the date upon which a Distribution is first made to such

Person and/or Entity or fails to return any required tax forms or information requested by the Liquidating Trustee shall forfeit all rights to all Distributions to such Person and/or Entity under the Plan, and the Liquidating Trustee shall be authorized to cancel any Distribution that is not timely claimed; provided that the Liquidating Trustee shall make reasonable efforts to find an updated address for such Person and/or Entity who has failed to claim the Distribution. Upon forfeiture, the Holder of such Claim or Interest shall be deemed to have irrevocably waived such Claim or Interest and shall be forever barred from recovering on such Claim or Interest against the Debtors, the Estates, the Pottsville Liquidating Trust and/or the Care Pavilion Liquidating Trust.

f) **Delivery of Distributions and Undeliverable Distributions to Holders of Claims**. Distributions to Holders of Allowed Claims shall be made to Holders of record as of the date of a Distribution by the Liquidating Trustee, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtors has not received a written notice of a change of address prior to the Effective Date.

g) **Undeliverable Distributions**. The Liquidating Trustee shall make reasonable efforts to attempt to locate Holders of undeliverable or Unclaimed Distributions to determine an alternative address for such Distributions. Any Distributions returned to the Liquidating Trustee as undeliverable or the like shall remain in the possession of the Liquidating Trust for administration in accordance with this Plan, and the Liquidating Trustee reserves the right not to make further Distributions to such Holder.

h) **De Minimis Distributions**. If any individual Distribution under the Plan to a Holder of an Allowed Claim would be less than $50, the Liquidating Trustee may, but is not required to, cancel such Distribution.

i) **Remainder Amounts after Final Distribution**. After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and undeliverable Distributions is less than $5,000.00, in lieu of making additional Distributions, the Liquidating Trustee may donate such amount to another not for-profit, non-religious organization as determined by the Liquidating Trustee.

## ARTICLE IX:
## EXCULPATION, RELEASES AND INJUNCTION

### 9.1. Exculpation and Limitation of Liability

(a) **Effective as of the Effective Date, to the extent permitted under sections 1103(c) and 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Exculpated Parties, to the extent of such Exculpated Party's involvement in the Chapter 11 Cases, shall neither have nor incur any liability to any Entity or Person for any claims or causes of action arising on or after either the Pottsville Petition Date or the Care Pavilion Petition Date, as applicable, and before the Effective Date for any act taken or**

36

omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or (iii) the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; provided, further, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

(b)    The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

(c)    None of the Non-Released Parties shall be Exculpated Parties.

**9.2.    Debtor Releases**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtors and their Estates, and the Liquating Trust, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Pottsville Effective Date or the Care Pavilion Petition Date, as applicable, from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and the Pottsville Sale process or  the Care Pavilion Sale process, as applicable, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released

37

Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases or arising out of the Pottsville Sale, the Care Pavilion Sale, the Disclosure Statement, the Plan, the Pottsville DIP/Cash Collateral Order, the Care Pavilion DIP/Cash Collateral Order or any related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 9.2 shall be construed to release the Released Parties from gross negligence, willful misconduct, or intentional fraud as determined by a Final Order.  The Debtors and their Estates, and the Care Pavilion Liquidating Trust and Pottsville Liquidating Trust shall be permanently enjoined from prosecuting any of the foregoing Claims, Interests, or Causes of Action released under this Section 9.2 against each of the Released Parties.

The Debtors' releases of the Released Parties, as set forth herein, shall not alter or affect any claim against any Person who may have liability as a subsequent transferee of property of the Debtors, meaning and intending that it shall not be a defense to a fraudulent transfer or preferential transfer claim for a remote transferee of a fraudulent transfer to assert that the Debtors or their estates released claims against a direct or immediate transferee.

For the avoidance of doubt, none of the Non-Released Parties shall be included in the foregoing releases, and neither the Care Pavilion Insider Avoidance Action nor the Pottsville Insider Avoidance Action are released pursuant to the terms of this Plan.

9.3.    Injunction

A)    FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES WHOSE CLAIMS HAVE BEEN RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THIS PLAN SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED, DISALLOWED, EXCULPATED, OR SETTLED, OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

B)    FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATION GRANTED IN ARTICLE 9.1 OF THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED, DISALLOWED, EXCULPATED, OR SETTLED OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THE PLAN.

129262223\V-9

**C)      EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

## ARTICLE X:
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**10.1.   Conditions Precedent to Confirmation**

It shall be a condition to confirmation hereof that the Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Creditors' Committee.

**10.2.   Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied:

a)      The Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Creditors' Committee, and the Confirmation Order shall be a Final Order; and

b)      No order of a court of competent jurisdiction shall have been entered and remain in effect restraining the Creditors' Committee from consummating the Plan and the transactions contemplated therein.

### 10.3. Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors or the Estates; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Creditors' Committee, any Creditors or Interest Holders, or any other Entity in any respect. If the Effective Date does not occur, nothing herein shall prevent the Debtors or the Creditors' Committee from filing a new proposed plan of liquidation.

### 10.4. Filing of Notice of the Effective Date

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtors shall File a notice of the Effective Date with the Bankruptcy Court. The Debtors shall not be required to serve the notice of Effective Date on any party other than those parties that receive notice via the Bankruptcy Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

## ARTICLE XI:
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

### 11.1. Modification and Amendments

Except as otherwise specifically provided herein, the Creditors' Committee reserve the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. In addition, prior to the Effective Date, the Creditors' Committee may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.2. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3. Revocation or Withdrawal of the Plan

The Creditors' Committee reserve the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Creditors' Committee having the ability or right to File another plan in the future.

129262223\V-9

## ARTICLE XII:
## <u>JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

a)      To allow, disallow, determine, liquidate, classify, or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

b)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

e)      To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee;

g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, or any other related proceedings by the Debtors, and to enter and enforce any default judgment on any of the foregoing;

h)      To decide or resolve any and all applications for Professional Fee Claims;

i)      To issue orders in aid of execution and implementation of the Plan to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

j)      To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan;

129262223\V-9

k)     To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

l)     To enter an order closing the Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## ARTICLE XIII:
## MISCELLANEOUS

### 13.1.   Exemption from Taxes

To the extent the Plan and the Confirmation Order provide for: (a) the issuance, transfer, or exchange of notes, debt instruments, and equity securities under or in connection with the Plan; and (b) the creation, execution, and delivery of agreements or other documents creating or evidencing the formation of the Care Pavilion Liquidating Trust, the Pottsville Liquidating Trust and any right or interest in such Liquidating Trusts, pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.2.   Compliance with Tax Requirements

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution.

**The Liquidating Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation, or certification as may be requested by the Liquidating Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W-9, Form W-8, or other requested tax form within forty-five (45) days after the date of the Liquidating Trustee's initial request, the Liquidating Trustee may reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, rendering such Distribution an Unclaimed Distribution, (ii) any such Distribution shall revert to the source of such Distribution for Distribution on account of other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidating Trustee reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and similar encumbrances.**

### 13.3.   Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim

and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose either before the Petition Date that the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee may have against the Holder of such Claim or Interest.

### 13.4.  Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof.

### 13.5.  Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 13.6.  Debtors' Post-Confirmation Management

On and after the Effective Date, the Debtors' existing management (the "Managers") shall continue to act solely to the limited extent necessary to: (i) facilitate the filing of tax returns; and (ii) complete any other tasks the Managers reasonably determines are necessary to wind down the Debtors and the Estates which are not the responsibility of the Liquidating Trustee.  Fees and expenses related to the foregoing shall be deemed and funded  as Care Pavilion Liquidating Trust Expenses and Pottsville Liquidating Trust Expenses, respectively, subject to the notice, Filing, and objection provisions of Article VI of this Plan prior to payment.

### 13.7.  Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  Notwithstanding anything to the contrary herein or in the Plan, the Debtors shall not receive a discharge as set forth in section 1141(d)(3)(a) of the Bankruptcy Code.

### 13.8.  Severability of Plan Provisions

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void, or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or

unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtors.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.**

### 13.9.   Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Creditors' Committee reserve the right to amend the exhibits to the Plan any time prior to confirmation, subject to reasonable notice.

### 13.10.   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee, with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

### 13.11.   Conflicts Among Plan Documents

To the extent of a conflict between the Plan and/or the Disclosure Statement and the Confirmation Order, the Confirmation Order shall govern.

### 13.12.   Recommendation

In the opinion of the Creditors' Committee, the Plan is superior and preferable to the alternatives described in the Disclosure Statement.  Accordingly, the Creditors' Committee recommends that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support confirmation.

Dated: September 15, 2025                        Respectfully submitted,
         Pittsburgh, Pennsylvania

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**


By: _/s/ Monte Green_                  
      Monte Green
      Committee Chair

45

**<u>Exhibit A</u>**

**Care Pavilion Liquidating Trust Agreement**

**<u>Exhibit B</u>**

**Pottsville Liquidating Trust Agreement**