**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>POTTSVILLE OPERATIONS, LLC, *et al.*,[1]<br><br>Debtors. | Case No.: 24-70418-JAD<br><br>Chapter 11<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF POTTSVILLE OPERATIONS, LLC, *et al.*,<br><br>Movant,<br><br>-vs-<br><br>NO RESPONDENTS. | Document No. ____<br><br>Related Docket No: 1549, 1550, 1551<br><br>Hearing Date: October 22, 2025 at 10:00 a.m.<br>Response Date: October 6, 2025 |

**MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT, (II) SCHEDULING A COMBINED HEARING ON THE PLAN AND DISCLOSURE STATEMENT, (III) APPROVING THE SOLICITATION AND VOTING PROCEDURES AND DATES, DEADLINES, AND NOTICES RELATED THERETO, AND (IV) GRANTING RELATED RELIEF**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

The Official Committee of Unsecured Creditors of Pottsville Operations, LLC *et al.*, (the "Creditors' Committee") files this motion (the "Motion") and states the following in support thereof:[2]

**INTRODUCTION AND SUMMARY OF RELIEF REQUESTED**

1. The Creditors' Committee seeks the entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (a) conditionally approving the *Disclosure Statement Submitted by the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code* [Docket No. 1550] (as amended, supplemented, or otherwise modified from time to time, the ("Disclosure Statement"), (b) scheduling a combined hearing on confirmation of the *Plan of Liquidation Submitted by the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code* [Docket No. 1549] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and final approval of the adequacy of the information contained in the Disclosure Statement under section 1125 of the Bankruptcy Code (the "Combined Hearing"), (c) establishing a deadline for objections to confirmation of the Plan (the "Plan Objection Deadline") and approving related procedures, (d) approving the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation and Voting Procedures"), (e) approving the form and manner of the Solicitation Materials in connection with solicitation of the Plan, as set forth below, and (f) granting related relief.

2. In connection with the foregoing, the Creditors' Committee requests that the Court approve the following schedule of proposed dates (the "Confirmation Schedule"):

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Plan.

| Event | Date[3] |
|---|---|
| Deadline to Object to this Motion | October 6, 2025 |
| Voting Record Date | October 22, 2025 (or date of entry of the Proposed Order) |
| Solicitation Deadline | October 31, 2025, or as soon as reasonably practicable after entry of the Proposed Order |
| Plan Supplement Filing Deadline | November 25, 2025 |
| Plan Objection Deadline | December 2, 2025, at 4:00 pm |
| Deadline to File 3018 Motion | November 25, 2025, at 4:00 pm |
| Voting Deadline | November 28, 2025, at 4:00 pm |
| Deadline to File Confirmation Brief | December 12, 2025 |
| Plan Objections Response Deadline | December 12, 2025 |
| Deadline to File Ballot Report | December 12, 2025 |
| Combined Hearing | December 16, 2025, at: 10:00 a.m. |

3. By this Motion, the Creditors' Committee further seeks approval of the form and manner of various notices and materials in connection with solicitation of the Plan, as follows (collectively, the "Solicitation Materials"):

[3] All times are prevailing Eastern Time.

| Solicitation Material | Purpose | Schedule to Proposed Order |
|---|---|---|
| Combined Hearing Notice | Notice of the hearing to be held by the Court to consider Confirmation of the Plan, the adequacy of the information contained in the Disclosure Statement, and the notice thereof, the ("Combined Hearing Notice") pursuant to sections 1125 and 1129 of the Bankruptcy Code. | Exhibit 1 |
| Ballots | Ballots for Classes 1CP, 3P, 3CP, 5P, 5CP, 6P, and 6CP to vote to approve or reject the Plan (collectively, the "Ballots"). | Exhibit 2 |
| Notice of Non-Voting Status | Notice to holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (a "Notice of Non-Voting Status"). | Exhibit 3 |

4. As the ultimate goal of the Plan is to quickly and efficiently liquidate the Debtors' remaining assets and to maximize the recovery of creditors, it is critical that the Plan approval process go forward in a timely manner. By this Motion, the Creditors' Committee requests authority to proceed on the expedited Confirmation Schedule set forth herein, which will allow the Creditors' Committee to move these Chapter 11 Cases to the expeditious resolution contemplated by the Plan. The Creditors' Committee, therefore, submits that confirming the Plan on the Confirmation Schedule is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.

5. Further, the Disclosure Statement and Solicitation Materials provide clear and concise information regarding the Plan and the Solicitation and Voting Procedures. The Creditors' Committee, therefore, submits that conditional approval of this Disclosure Statement and the

approval of the Solicitation Materials is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Creditors' Committee confirms their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The basis for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3017, 3018, 3020, and 9006, and Rules 3016-1, 3017-1, and 3018-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules").

## BACKGROUND

9. On October 15, 2024 (the "Pottsville Petition Date"), the Pottsville Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

10. On November 18, 2024 (the "Care Pavilion Petition Date"), the Care Pavilion Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 the Bankruptcy Code with this Court.

11. On October 25, 2024, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") filed the Notice of Appointment of Committee of Unsecured Creditors [Docket No. 108]. The Committee members are: (i) Reliant Pro Rehab, LLC; (ii) Trans-Med Ambulance,

Inc.; and (iii) Dedicated Nursing Associates, Inc.

12. On December 4, 2024, the U.S. Trustee filed an amended notice of appointment of an official committee of unsecured creditors [Docket No. 330] (the "Amended Notice of Appointment") appointing the members of the pre-existing Creditors' Committee (appointed as the official statutory creditors' committee in the Pottsville Cases) to serve as an official committee for the Care Pavilion Cases as well as the Pottsville Cases.

13. More information about the Pottsville Debtors, Care Pavilion Debtors, and the events leading up to their respective chapter 11 filings can be found in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* [Case No. 24-70418-JAD, Docket No. 4] and the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* [Case No. 24-70473-JAD, Docket No. 3] (collectively, the "Luria Declarations").

14. Contemporaneously with the filing of this Motion, the Creditors' Committee filed its Plan and Disclosure Statement as discussed in more detail herein.

**THE SOLICITATION AND VOTING PROCEDURES**

15. The Plan filed by the Creditors' Committee represents the best and most efficient path to liquidate the Debtors' remaining assets.

16. The Plan provides for the following distributions to be made to the Debtors' creditors:

| Class | Claims | Treatment of Claims |
|---|---|---|
| Class 1P | Pottsville Secured Lender's Claim | The Holder of the Pottsville Secured Lender's Claim has received, out of the proceeds of the Pottsville Sale closing, and in full and final satisfaction of such Allowed Class 1P Claim, payment in full in Cash of its Allowed Pottsville Secured Lender's Claim. |

| | | |
|---|---|---|
| Class 1CP | Care Pavilion Secured Lenders' Claim | The Holder of the Care Pavilion Secured Lenders' Claim has received, out of the proceeds of the Care Pavilion Sale closing, and in full and final satisfaction of such Allowed Class 1CP Claim, including any deficiency claim, payment in full in Cash of its Allowed Care Pavilion Secured Lenders' Claim. |
| Class 2P | Pottsville Other Secured Claims | Each Holder of an Allowed Pottsville Other Secured Claim or Care Pavilion Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Pottsville Other Secured Claim or Allowed Care Pavilion Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) (ii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Allowed Pottsville Other Secured Claim and/or Care Pavilion Allowed Other Secured Claim shall not exceed the value of the relevant creditors' collateral. |
| Class 2CP | Care Pavilion Other Secured Claims | Each Holder of an Allowed Pottsville Other Secured Claim or Care Pavilion Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Pottsville Other Secured Claim or Allowed Care Pavilion Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) (ii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Allowed Pottsville Other Secured Claim and/or Care Pavilion Allowed Other Secured Claim shall not exceed the value of the relevant creditors' collateral. |
| Class 3P | Pottsville Priority Tax Claims | On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Creditors' Committee or the Liquidating Trustee, as applicable, agree to a less favorable treatment, each Holder of an Allowed Pottsville Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Pottsville Liquidating Trust Interests. |
| Class 3CP | Care Pavilion Priority Tax Claims | On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Creditors' Committee or the Liquidating Trustee, as applicable, agree to a less favorable treatment, each Holder of an Allowed Care Pavilion Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Care Pavilion Liquidating Trust Interests. |
| Class 4P | Pottsville Priority Unsecured Non-Tax Claims | Each Holder of an Allowed Pottsville Priority Unsecured Non-Tax Claim or a Care Pavilion Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) Cash equal to the unpaid amount of such Allowed Claim; or (ii) such other treatment as the Creditors' Committee or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim shall have agreed. |

| | | |
|---|---|---|
| Class 4CP | Care Pavilion Priority Unsecured Non-Tax Claims | Each Holder of an Allowed Pottsville Priority Unsecured Non-Tax Claim or a Care Pavilion Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) Cash equal to the unpaid amount of such Allowed Claim; or (ii) such other treatment as the Creditors' Committee or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim shall have agreed. |
| Class 5P | Pottsville General Unsecured Claims | On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville General Unsecured Claim or Care Pavilion General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Care Pavilion Liquidating Trust Interests. |
| Class 5CP | Care Pavilion General Unsecured Claims | On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville General Unsecured Claim or Care Pavilion General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Care Pavilion Liquidating Trust Interests. |
| Class 6P | Pottsville Insured Claim | Any amount of an Allowed Insured Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this paragraph. |

| Class 6CP | Care Pavilion Insured Claim | Any amount of an Allowed Insured Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this |
|---|---|---|
| Class 7P | Pottsville Intercompany Claims | There shall be no Distribution on account of either the Pottsville Intercompany Claims or Care Pavilion Intercompany Claims. Upon the Effective Date, all Pottsville Intercompany Claims and Care Pavilion Intercompany Claims will be deemed cancelled and will cease to exist. |
| Class 7CP | Care Pavilion Intercompany Claims | There shall be no Distribution on account of either the Pottsville Intercompany Claims or Care Pavilion Intercompany Claims. Upon the Effective Date, all Pottsville Intercompany Claims and Care Pavilion Intercompany Claims will be deemed cancelled and will cease to exist. |
| Class 8P | Pottsville Interests of each of the Debtors | The Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP are Impaired. The Holders of the Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Care Pavilion Liquidating Trust and Pottsville Liquidating Trust, or at the direction of the Liquidating Trustee), and the Holders of the Pottsville Interests and the Care Pavilion Interests shall take nothing under the Plan, provided, however, that all powers and authorities vested in the Pottsville Interests and the Care Pavilion Interests shall be transferred to the Pottsville Liquidating Trust and the Care Pavilion Liquidating Trust, as applicable, and be exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder. |
| Class 8CP | Care Pavilion Interests of each of the Debtors | The Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP are Impaired. The Holders of the Pottsville Interests in Class 8P and the Care Pavilion Interests in Class 8CP shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Care Pavilion Liquidating Trust and Pottsville Liquidating Trust, or at the direction of the Liquidating Trustee), and the Holders of the Pottsville Interests and the Care Pavilion Interests shall take nothing under the Plan, provided, however, that all powers and authorities vested in the Pottsville Interests and the Care Pavilion Interests shall be transferred to the Pottsville Liquidating Trust and the Care Pavilion Liquidating Trust, as applicable, and be exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder. |

17. The classification of Claims against the Debtors pursuant to the Plan is as follows:

| **Category of Claim or Interest** | **Impaired or Unimpaired** | **Entitled to Vote on Plan (yes/no)** | **Projected Recovery** |
|---|---|---|---|
| Unclassified Claims (including Administrative Claims, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1P: Pottsville Secured Lender's Claim | Unimpaired | No | 100% |
| Class 1CP: Care Pavilion Secured Lenders' Claim | Impaired | Yes | 29.5% - 43% |
| Class 2P: Pottsville Other Secured Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 2CP: Care Pavilion Other Secured Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 3P: Pottsville Priority Tax Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 3CP: Care Pavilion Priority Tax Claims | Impaired | Yes | 13.4% - 20.3% |
| Class 4P: Pottsville Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 4CP: Care Pavilion Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 5P: Pottsville General Unsecured Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 5CP: Care Pavilion General Unsecured Claims | Impaired | Yes | 13.4% - 20.3% |

| **Category of Claim or Interest** | **Impaired or Unimpaired** | **Entitled to Vote on Plan (yes/no)** | **Projected Recovery** |
|---|---|---|---|
| Class 6P: Pottsville Insured Claim | Impaired | Yes | N/A[4] |
| Class 6CP: Care Pavilion Insured Claim | Impaired | Yes | N/A[5] |
| Class 7P: Pottsville Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 7CP: Care Pavilion Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 8P: Pottsville Interests | Impaired | No (deemed to reject Plan) | 0% |
| Class 8CP: Care Pavilion Interests | Impaired | No (deemed to reject Plan) | 0% |

18. Based on the foregoing, the Creditors' Committee is proposing to solicit votes to accept or reject the Plan from Holders of Claims in Classes 1CP, 3P, 3CP, 5P, 5CP, 6P, and 6CP (each, a "Voting Class" and collectively, the "Voting Classes"). The Creditors' Committee is not proposing to solicit votes from Holders of Claims in Classes 1P, 2P, 2CP, 4P, 4CP, 7P, 7CP, 8P, and 8CP (each a "Non-Voting Class" and collectively, the "Non-Voting Classes"), as further described below.

19. **Solicitation Package to Voting Classes**. In accordance with Bankruptcy Rule 3017(d), the Creditors' Committee proposes to distribute, by first-class U.S. mail, the Solicitation

[4] Paid from proceeds of available Insurance Policies.
[5] Paid from proceeds of available Insurance Policies.

Package (defined below) to the Holders of Claims in each of the Voting Classes, on or before the Solicitation Deadline. Each Solicitation Package will include the following materials:

a) A Ballot, together with detailed voting instructions;

b) the Disclosure Statement (and exhibits thereto, including the Plan);

c) the Proposed Order (without exhibits);

d) the Combined Hearing Notice; and

e) such other materials as the Court may direct (the foregoing, collectively, the "Solicitation Package").

20. The Creditors' Committee requests that it be authorized, but not required, to refer Holders of Claims in Voting Classes to the Stretto website for links to copies of the Plan, the Disclosure Statement, and the Proposed Order, in lieu of distributing paper copies of such documents to Holders of Claims in Voting Classes. The Ballots and the Combined Hearing Notice will be provided in paper format. Distribution in this manner will translate into significant monetary savings for the Debtors' estates, by reducing printing and postage costs, as the Plan, the Disclosure Statement, and the Proposed Order, collectively, total hundreds of pages.

21. Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g., In re South Hills Operations, LLC et. al.*, Case No. 24-21217-CMB (Bankr. W.D. Pa. June 19, 2024) [Docket No. 1484] (authorizing plan proponents to transmit solicitation documents in CD-ROM or flash drive format); *In re Tilden Marcellus, LLC*, Case No. 22-20212-GLT (Bankr. W.D. Pa. June 14, 2022) [Docket No. 464] (authorizing plan proponents to transmit solicitation documents in CD-ROM or flash drive format).

22. Holders of Claims in the Voting Classes will be directed in the Disclosure Statement and Ballot to follow the instructions contained in the Ballot (and described in the Disclosure Statement) to complete and submit a Ballot to cast a vote to accept or reject the Plan. The Disclosure Statement and applicable Ballot expressly provide that a Holder of a Claim seeking to vote on the Plan needs to submit its Ballot so that it is actually received by the Creditors' Committee on or before the Voting Deadline of November 28, 2025, to be counted.

23. In addition, by the Solicitation Deadline, the Creditors' Committee will provide notice of the Combined Hearing as well as links to the Solicitation Materials (excluding Ballots) via the case website at https://cases.stretto.com/pottsville.

24. **Notice to Non-Voting Classes**. Holders of Claims in Non-Voting Classes that are Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code (Classes 1P, 2P, 2CP, 4P, 4CP, 7P, 7CP, 8P, and 8CP) will not be provided a Solicitation Package. Instead, by the Solicitation Deadline, such Holders will be provided a Notice of Non-Voting Status, which will include: (a) instructions as to how to view or obtain copies of the Solicitation Materials (excluding Ballots) from the case website at https://cases.stretto.com/pottsville free of charge and/or the Court's website via PACER; (b) the Combined Hearing Notice, which includes notice of the Plan Objection Deadline and Combined Hearing; and (c) information related thereto.

25. **No Notice to Class 7P and Class 7CP**. The Creditors' Committee will not provide the Holders of Class 7P and Class 7CP Intercompany Claims with a Solicitation Package or any other type of notice in connection with solicitation. Intercompany Claims will be cancelled, with no distribution made on account of the Intercompany Claims. Thus, Holders of Intercompany Claims will not be entitled to vote to accept or reject the Plan. Further, in light of the fact that the

Intercompany Claims are all held by the Debtors, the Creditors' Committee requests a waiver from any requirement to serve such Holders of Intercompany Claims.

26. **Ballot Tabulation**. Solely for purposes of voting to accept or reject the Plan, and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Creditors' Committee's rights in any other context, the following procedures shall be utilized for determining the amount of each Claim within a Class of Claims that is entitled to vote to accept or reject the Plan:

- if a Claim is deemed Allowed under the Plan or a stipulated agreement between the parties, such Claim will be temporarily Allowed for voting purposes in the deemed Allowed amount set forth therein;

- if a Claim for which a proof of claim was timely filed by the Voting Record Date or was listed in the Debtors' Schedules in an amount that is liquidated, non-contingent, and undisputed, such Claim is Allowed for voting in the amount set forth on the proof of claim or the Debtors' Schedules;

- if a Claim for which a proof of claim has been timely filed by the Voting Record Date for unknown or undetermined amounts, or is wholly unliquidated, or contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Creditors' Committee's counsel) and such Claim has not been Allowed, such Claim shall be temporarily Allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

- if a Claim is listed on a proof of claim timely filed by the Voting Record Date as contingent, unliquidated, or disputed in part, such Claim is temporarily Allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

- if a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

- if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not filed by the Voting Record Date, such Claim shall not be Allowed for voting;

- proofs of claim filed for $0.00 are not entitled to vote;

- if the Creditors' Committee has served an objection or request for estimation as to a Claim at least ten (10) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;

- notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the Voting Classes shall be provided with only one Solicitation Package and one ballot for voting a single Claim in such Voting Class, regardless of whether the Debtor or Creditors' Committee has objected to such duplicate Claims; and

- if a proof of claim has been amended by a later filed proof of claim, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtors have objected to such earlier filed claim.

27. The Creditors' Committee's Claims and Balloting Agent (defined below) will not count any Ballots:

- that are illegible or contains insufficient information to permit the identification of the Holder of the Claim;

- any Ballot that is not actually received by counsel to the Creditors' Committee by the Voting Deadline (unless the Creditors' Committee determines otherwise or as permitted by the Court);

- any Ballot that partially rejects and partially accepts the Plan or attempts to split the vote among Claims in the same class, except as to Holders of Claims in two different classes, who are permitted to vote their claims in each class separately;

- any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan;

- any Ballot superseded by a later, timely submitted valid Ballot;

- any improperly submitted Ballot (unless the Creditors' Committee determines otherwise or as permitted by the Court); and

- any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote on the Plan.

## RELIEF REQUESTED AND BASIS FOR RELIEF

### A. Conditional Approval of the Disclosure Statement

28. Pursuant to this Motion, the Creditors' Committee requests the Court's conditional approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3017. The Disclosure Statement contains "adequate information" and complies with all aspects of section 1125 of the Bankruptcy Code. However, at the hearing on the Motion, the Creditors' Committee will seek only conditional approval of the Disclosure Statement for solicitation purposes. At the Combined Hearing, the Creditors' Committee will, among other things, demonstrate on a final basis that the information set forth in the Disclosure Statement contained adequate information within the meaning of section 1125 of the Bankruptcy Code.

29. Pursuant to section 1125 of the Bankruptcy Code, the solicitation of votes on a plan from holders of claims and equity interests entitled to vote on the plan may not commence until a court-approved disclosure statement has been transmitted to such holders. The standard for approval of such a disclosure statement is whether the disclosure statement contains "adequate information." "Adequate information" is defined within section 1125 of the Bankruptcy Code as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

30. Given the numerous factors and qualifications set forth within the above definition, the "adequacy" of information contained in a disclosure statement is largely dependent upon the particular circumstances of the case and the nature of the plan proposed, and therefore, the determination is left to the discretion of the courts.[6] However, the following list of factors have been identified as relevant in considering the adequacy of information:

a) the circumstances that gave rise to the filing of the chapter 11 petition;

b) a complete description of the available assets and their value;

c) the anticipated future of the debtor;

d) the source of information provided in the disclosure statement;

e) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f) the condition and performance of the debtor while in chapter 11;

g) information regarding claims against the estate;

h) a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

i) the accounting and valuation methods used to produce the financial information in the disclosure statement;

j) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

k) a summary of the plan;

l) an estimate of all administrative expenses, including attorneys' fees and accountant's fees;

m) the collectability of accounts receivable;

n) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

---

6 *See In re Texas Extrusion Corp*., 844 F.2d 1142, 1156-57 (5th Cir.), cert. denied, 488 U.S. 926 (1988); *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998); *In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991); *In re Eastern Maine Elec. Coop., Inc.*, 125 B.R. 329, 334 (Bankr. D. Maine 1991).

o) information relevant to the risks being taken by the creditors and interest holders;

p) the actual or projected value that can be obtained from avoidable transfers;

q) the existence, likelihood and possible success of non-bankruptcy litigation;

r) the tax consequences of the plan; and

s) the relationship of the debtor with affiliates.[7]

31. Here, the Disclosure Statement contains adequate information because it is extensive and comprehensive. For instance, the Disclosure Statement contains descriptions and summaries of, among other things: (a) both the Plan and the liquidation of the Debtors; (b) certain events and relevant negotiations preceding and following the commencement of these Chapter 11 Cases; (c) the key terms of the liquidation; (d) risk factors affecting consummation of the Plan; (e) a liquidation analysis setting forth the estimated recovery that Holders of Claims would receive in a hypothetical chapter 7 case; (f) financial information that is relevant in determining whether to accept or reject the Plan; and (g) federal tax law consequences of the Plan.

32. Moreover, the Disclosure Statement provides sufficient notice of the Plan's provisions concerning releases, injunctions, and exculpations. Bankruptcy Rule 3016(c) provides that, "[i]f a plan provides for an injunction against conduct [that is] not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure statement must describe in specific and conspicuous language . . . all acts to be enjoined and identify the entities that would be subject to the injunction." Article IX of the Plan and Article III of the Disclosure Statement detail all acts to be enjoined and identify the entities that would be subject to the Plan's injunctions, releases, and exculpations. The language in these sections is in bold print and is conspicuous. This language has

7 *In re U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996); *Ferretti*, 128 B.R. at 18-19; see also *In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 414 (Bankr. D.P.R. 2006).

also been reflected in certain exhibits sought to be approved by this Motion, including the Combined Hearing Notice.

33. Accordingly, the Creditors' Committee submits that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and respectfully requests the authority from the Court to use the Disclosure Statement during the solicitation period.

**B. <u>Scheduling the Combined Hearing</u>**

34. The Creditors' Committee respectfully requests that the Court schedule a Combined Hearing on or before December 16, 2025. Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. § 1128(a). Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] at least 28 days . . . by mail of the time to … (2) file an objection to and the time of the hearing to consider confirmation of a chapter 9, or chapter 11 plan…" FED. R. BANKR. P. 2002(b).

35. Section 105 of the Bankruptcy Code expressly authorizes the Court to "issue any order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the Court deems a combined hearing to be appropriate to ensure that the case is handled expeditiously and economically. *See* 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases."); *In re South Hills Operations, LLC et. al.*, Case No. 24-21217-CMB (Bankr. W.D. Pa. June 19, 2024) [Docket

No. 1484]; *In re Tilden Marcellus, LLC*, Case No. 22-20212-GLT (Bankr. W.D. Pa. June 14, 2022) [Docket No. 464].

36. Accordingly, the Creditors' Committee respectfully requests that the Court schedule the Combined Hearing on the approval of the Plan and Disclosure Statement, including the adequacy of disclosures therein, on or before December 16, 2025, and providing that the Combined Hearing may be continued from time to time by the Court or the Creditors' Committee without further notice other than an announcement of the continuance at the Combined Hearing or any continued hearing.

37. The proposed Combined Hearing will streamline and expedite the confirmation process, which will inure directly to the benefit of the Debtors' creditors by hastening the implementation of the Plan and Disclosure Statement. Scheduling the Combined Hearing on or before December 16, 2025, will provide the Creditors' Committee sufficient time to solicit votes on the Plan, to notify the required parties of the deadline to object to the adequacy and confirmation of the Plan and Disclosure Statement, and to give notice of the Combined Hearing date in accordance with Bankruptcy Rule 2002(b). *See* Fed. R. Bankr. P. 2002(b) (requiring twenty-eight (28) days' notice by mail of the time fixed for filing objections and the hearing to consider approval of the disclosure statement and to consider confirmation of a chapter 11 plan). Based on the circumstances of the Chapter 11 Case, the Creditors' Committee believes that the solicitation and hearing process proposed herein is reasonable and does not unfairly prejudice any creditors.

38. Accordingly, the Creditors' Committee submits that the proposed timing for the Combined Hearing is in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and will enable the Creditors' Committee to pursue confirmation on a timely basis.

**D. <u>Plan Objection Deadline and Related Procedures</u>**

39. Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] at least 28 days . . . by mail of the time to … (2) file an objection to and the time of the hearing to consider confirmation of a chapter 9, or chapter 11 plan…" Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within the time set by the court."

40. The Creditors' Committee requests that the Court set the Plan Objection Deadline for December 2, 2025, at 4:00 p.m., prevailing Eastern Time. Additionally, the Creditors' Committee requests that the Court require that objections to the Disclosure Statement or confirmation of the Plan: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined in the Combined Hearing Notice) so as to be actually received by the Plan Objection Deadline.

41. The requested Plan Objection Deadline and the requirements for such objections are warranted under the facts and circumstances of these Chapter 11 Cases. With the Creditors' Committee's requested schedule, parties in interest will have no less than 32 days from the mailing of the Solicitation Packages to file their objections, which is ample time to raise any objections. Requiring written objections to be filed and served in accordance with the Bankruptcy Rules and Court orders will allow the Creditors' Committee to understand and address the issues that are raised in connection with its Plan.

**E. <u>Approval of the Solicitation and Voting Procedures and Solicitation Materials</u>**

42. On or about October 31, 2025 (or as soon as reasonably practicable after entry of the Proposed Order), the Creditors' Committee will distribute the Solicitation Packages to the Holders of Claims in the Voting Classes and solicit votes to accept or reject the Plan in accordance with sections 1125 and 1126 of the Bankruptcy Code. Also on the same date, the Creditors' Committee will distribute the Notices of Non-Voting Status to the Holders of Claims in the Non-Voting Classes (other than to Class 7P and Class 7CP – Intercompany Claims).

43. Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims or interests for the purpose of soliciting their votes to accept or reject a plan of reorganization. Bankruptcy Rule 3017(e) provides that the court must consider and "determine the adequacy of the procedures for sending the documents and information listed in (d)(1) to beneficial holders of stock, bonds, debentures, notes, and other securities."

44. As set forth herein, the proposed Solicitation and Voting Procedures comply with the Bankruptcy Code and the Bankruptcy Rules, and the Creditors' Committee seeks approval of the (i) Solicitation and Voting Procedures, (ii) the Solicitation Materials, including the Ballot, Combined Hearing Notice, Notice of Non-Voting Status and Assumption Notice, and (iii) the procedures used for tabulations of votes to accept or reject the Plan. Similar procedures have been approved in other chapter 11 cases in this district. *See, e.g., In re South Hills Operations, LLC et. al.*, Case No. 24-21217-CMB (Bankr. W.D. Pa. June 19, 2024) [Docket No. 1484] (authorizing plan proponents to not transmit solicitation documents to non-voting classes); *In re Tilden Marcellus, LLC*, Case No. 22-20212-GLT (Bankr. W.D. Pa. June 14, 2022) [Docket No. 464] (authorizing plan proponents to not transmit solicitation documents to non-voting classes).

***(1) Voting Record Date***

45. In determining the identity of the Holders of Claims entitled to vote on the Plan, Bankruptcy Rule 3018(a) provides that the "date the order approving the disclosure statement is entered or . . . another date the court sets" is the record date for determining the identity of the holders of Claims entitled to vote on the Plan (the "Voting Record Date"). Here, the Creditors' Committee requests that the Court establish the Voting Record Date as October 22, 2025 (or the date on which the Proposed Order is entered by the Court).

***(2) Voting Deadline***

46. In connection with the approval of a disclosure statement, Bankruptcy Rule 3017(c) requires the establishment of a deadline for the submission of votes on the plan. Here, the Creditors' Committee requests that the Voting Deadline (as required by Bankruptcy Rule 3017 and defined in the Plan) be established as 4:00 p.m. (ET) on November 28, 2025 (the "Voting Deadline"). The Creditors' Committee requests that the Voting Deadline be applicable to both Ballots. The Creditors' Committee intends to transmit, on or before the Solicitation Deadline, (i) the Solicitation Package to Holders of Claims in the Voting Classes, and (ii) Notices of Non-Voting Status to Holders of Claims in the Non-Voting Classes (other than Class 7P and Class 7CP - Intercompany Claims).

***(3) The Ballots***

47. Bankruptcy Rule 3017(d)(2) requires the Creditors' Committee to transmit a form of ballot, which substantially conforms to Official Form 314, only to "creditors and equity security holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection must be in writing, identify the plan or plans, be signed by the creditor or equity security holder or an authorized agent, and conform to Form 314." As set forth herein, only Holders of

Claims entitled to vote to accept or reject the Plan will be transmitted a Ballot. The Ballot to be used in the Solicitation Package is based on Official Form 314, and has been modified, as applicable, to address the particular circumstances of these Chapter 11 Cases to include certain information that the Creditors' Committee believes to be relevant and appropriate to vote to accept or reject the Plan. The form of Ballot used in the Solicitation Package is attached as **Exhibit 2** to **Exhibit A** hereto.

(*4) The Notice of Non-Voting Status*

48. As further set forth herein, Holders of Claims in Non-Voting Classes (other than Class 7P and Class 7CP - Intercompany Claims) will be transmitted the Notices of Non-Voting Status and a copy of the Combined Hearing Notice. The Notice of Non-Voting Status to be distributed to Holders of Claims in Non-Voting Classes (Classes 1P, 2P, 2CP, 4P, 4CP, 7P, 7CP, 8P, and 8CP) is attached as **Exhibit 3** to **Exhibit A** hereto.

***(5) Notices to Contract and Lease Counterparties***

49. Article VII of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases, not previously assumed, were deemed rejected pursuant to the Sale Order.

50. If the rejection of an Executory Contract pursuant to the Sale Order or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, and/or the Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court. Allowed Rejection Damages Claims shall be classified as Class 5P and Class 5CP General Unsecured Claims, as described in Article IV of the Plan.

***(6) Administrative Bar Date***

51. The Plan includes the establishment of a Final Administrative Claim Bar Date. Except for Professional Fee Claims and Claims for U.S. Trustee Fees, requests for payment must be Filed and served on the Debtors and Creditors' Committee no later than the Final Administrative Claim Bar Date pursuant to the procedures specified in the Plan, Confirmation Order, and the notice of the occurrence of the Effective Date. Objections to such requests must be Filed and served on the Debtors, the Creditors' Committee, and the requesting party by the later of (1) 21 days after the Effective Date and (2) 21 days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by and satisfied in accordance with an order of the Bankruptcy Court.

52. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Final Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Creditors' Committee or any action by the Bankruptcy Court.

***(7) The Combined Hearing Notice***

53. The Creditors' Committee requests that the Court approve the Combined Hearing Notice, substantially in the form attached as **Exhibit 1** to **Exhibit A** hereto. In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Hearing Notice will: (a) provide a brief summary of the Plan; (b) disclose the date and time of the Combined Hearing; (c) disclose the date

and time of the Plan Objection Deadline and the procedures for objecting to the adequacy of the Disclosure Statement and the Plan; and (d) provide the record date for receiving distributions under the Plan. The Creditors' Committee will serve the Combined Hearing Notice upon the Debtors' creditor matrix by the Solicitation Deadline after entry of the Proposed Order, including all parties on the Debtors' Master Service List filed with the Court and set forth below.

***(8) Parties Entitled to Vote***

54. Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

a) Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) is not the subject of a pending objection; provided that a Holder of a Claim that is either (a) the subject of a pending objection or (b) listed in the Schedules in an amount lower than the amount listed on the Holder's Proof of Claim shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection or Schedules absent a further order of the Court;

b) Holders of Claims that are listed in the Schedules; however, Claims that are scheduled as contingent, unliquidated, and/or disputed (excluding any scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be allowed to vote in the amount of $1.00, unless (i) the Holder of such Claim has filed with the Court at least seven days prior to the Voting Deadline, a motion to estimate

that Claim for voting purposes under Rule 3018, or (ii) if a proof of claim was not filed by the Voting Record Date by the Holder of such a scheduled contingent, unliquidated, and/or disputed Claim, such Claim shall not be Allowed for voting;

c) Holders of Claims that arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

d) Holders of Disputed Claims that have been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e) The assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

***(9) Voting Tabulation***

55. As described above, the Creditors' Committee is using standard tabulation procedures in tabulating votes for the Plan. These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). These tabulation procedures are also consistent with those previously approved in this district.

**F. Claims and Balloting Agent**

56. The Creditors' Committee respectfully requests that Stretto, Inc. (the "Claims and Balloting Agent") be authorized (to the extent not authorized by another order of the Court) to assist the Creditors' Committee in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors, (c) responding to inquiries from Holders of Claims and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

57. In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Creditors' Committee requests authorization to accept Class 1CP, 3P, 3CP, 5P, 5CP, 6P, and 6CP Ballots via electronic, online transmissions, solely through a customized online balloting portal on the case website to be maintained by the Claims and Balloting Agent. Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a Holder to submit an electronic signature). Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**G. Waiver of Certain Solicitation Package Mailings**

58. The Creditors' Committee requests that the Court waive the requirement that it mail a copy of the Solicitation Package to Holders of Claims presumed to accept or deemed to reject

the Plan. Distributing the Solicitation Package to non-voting creditors is costly and administratively burdensome. Further, such Holders will receive proper notice through the Notice of Non-Voting Status, and the Creditors' Committee will make the Solicitation Package (excluding the Ballots) available at no cost on the website maintained in the Chapter 11 Cases: (https://cases.stretto.com/pottsville) and upon request to Creditors' Committee's counsel. Accordingly, the Creditors' Committee submits that creditors' resources should not be depleted by having to satisfy this mailing requirement.

59. Further, the Creditors' Committee will not mail Solicitation Packages or other solicitation materials to Holders of Claims that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

**MODIFICATIONS**

60. The Creditors' Committee requests authorization to make non-substantive changes to the Disclosure Statement, Plan, Solicitation Materials, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any Solicitation Materials before distribution.

**NOTICE**

61. Notice of this Motion has been provided to the parties that have requested notice or otherwise receive notice via CM/ECF. The Creditors' Committee submits that, given the nature of the relief requested herein, no other or further notice is necessary.

62. The pleadings in these Chapter 11 Cases and supporting papers are available at https://cases.stretto.com/pottsville or on the Bankruptcy Court's website at

https://ecf.pawb.uscourts.gov/. You can request any pleading you need from (i) the Claims and Balloting Agent at: Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, 855.316.3719 (toll-free) or 949.620.6343 (international), or (ii) counsel for the Creditors' Committee.

WHEREFORE, the Creditors' Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 15, 2025

By: */s/ Thomas D. Maxson*

Thomas D. Maxson (Pa. ID 63207)
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 297-4706
Email: thomas.maxson@dentons.com

and

Andrew C. Helman (admitted *pro hac vice*)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

and

Lauren M. Macksoud (admitted *pro hac vice*)
Dentons US LLP
1221 Avenue of the Americas
25th Floor
New York, NY 10020
Phone: (212) 768-5347
Email: lauren.macksoud@dentons.com

*Counsel to the Official Committee of Unsecured Creditors of Pottsville Operations, LLC, et. al.*

**CERTIFICATE OF SERVICE**

I, Thomas D. Maxson, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Date: September 15, 2025

/s/ *Thomas D. Maxson*
Thomas D. Maxson (Pa. ID 63207)
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 297-4706
Email: thomas.maxson@dentons.com