# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |
| ARGNT HOLDINGS, LLC, | |
| Movant, | |
| v. | |
| POTTSVILLE OPERATIONS, LLC, *et al.*, | |
| Respondents. | |

## MOTION TO DISMISS CARE PAVILION CASES

Argnt Holdings, LLC ("**Argnt**") hereby files this *Motion to Dismiss Care Pavilion Cases*:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789. References to the Debtors and Chapter 11 Cases shall refer to the Care Pavilion Debtors and Care Pavilion Cases.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested is 11 U.S.C. §§ 1112(b) and § 1182(1).

## BACKGROUND

4. Pottsville Operations, LLC and twenty affiliated debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("**Bankruptcy Code**") on October 15, 2024, and on November 18, 2024.

5. The Debtors' bankruptcy cases are jointly administered under Case No. 24-70418 ("**Bankruptcy Case**") in the United States Bankruptcy Court for the Western District of Pennsylvania ("**Bankruptcy Court**").

6. On September 15, 2025, the Official Committee of Unsecured Creditors of Pottsville Operations, LLC *et al.* ("**Creditors' Committee**") filed a Chapter 11 Plan of Liquidation ("**Plan**") [ECF No. 1549], Disclosure Statement ("**Disclosure Statement**") [ECF No. 1500], and Plan Summary ("**Plan Summary**") [ECF No. 1551].

7. The terms of the Disclosure Statement and Plan show that the Care Pavilion Debtors are unable to fund a plan which would pay administrative claimants in full upon the effective date of any confirmed plan, as required under the Bankruptcy Code.

8. Because the Committee is unable to propose a confirmable plan for the Care Pavilion Debtors, and because there is a substantial continuing loss to or diminution of the bankruptcy estates, cause exists to dismiss the Care Pavilion Cases.

TADMS:21024230-1:041925-203636

**RELIEF REQUESTED**

9. The Care Pavilion Cases should be dismissed for cause.

10. Section 1112(b)(1) of the Bankruptcy Code provides that a court "shall convert a case under this chapter [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1).

11. Here, the Care Pavilion Cases should be dismissed because (a) there is a substantial continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and (b) the Care Pavilion Debtors are unable to propose a confirmable plan.

    A. **Cause exists to dismiss the Care Pavilion Cases because there is a substantial continuing loss to or diminution of the estates and the absence of a reasonable likelihood of rehabilitation.**

12. Section 1112(b)(4) provides an illustrative, non-exhaustive list of 16 examples of what shall constitute "cause" under 11 U.S.C. § 1112(b) including, inter alia, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §§ 1112(b)(4)(A); *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 562 (Bankr. M.D. Pa.).

13. To determine whether a debtor is causing substantial or continuing loss to or diminution of estate assets, the Court must consider "the track record of the Debtor to determine if [the estate] is suffering losses or making gains" and "whether rehabilitation is likely . . . ." *Gateway Access*, 374 B.R. at 562.

14. "Negative cash and an inability to pay current expenses as they come due can satisfy the continuing loss and diminution of the estate standard for purposes of § 1112(b)." *Gateway Access*, 374 B.R. at 564 (citing *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *In re Motel Properties, Inc.*, 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004); *In re Route 202 Corp. t/a Lionti's Villa*, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984); *In re Galvin*, 49 B.R. 665, 669 (Bankr. D.N.D. 1985)).

15. The Care Pavilion Debtors are no longer operating. Substantially all of the Care Pavilion Debtors assets were sold to the Buyers (as defined in the *Order (A) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "**Sale Order**") [ECF No. 906])[2] pursuant to the aforementioned Sale Order. The only remaining asset of the Care Pavilion Debtors is pre-sale accounts receivable, which the Buyers are continuing to collect. Collection of accounts receivable can continue without a Bankruptcy Case and the automatic stay. Pursuant to the *Final DIP Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* ("**DIP Order**") [ECF No. 438], Argnt holds a superpriority lien on the Care Pavilion Debtors' remaining accounts receivable.

---

[2] The "Buyers" include MI Operating, LLC, PA Operating LLC, WA Operating, LLC, CP Operating, LLC, CL Operating LLC, MA Operating LLC, TH Operating LLC, and YO Operating, LLC, each a Pennsylvania limited liability company.

16. With no continued business operations, remaining in bankruptcy is wasting the remaining assets of the bankruptcy estates as the Debtors continue to accumulate administrative costs (including professional fees and US Trustee Fees) that the Care Pavilion Debtors are unable to pay in full. *See, e.g., Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1)") (cited with approval in *In re Alston*, 756 Fed. Appx. 160 (3d Cir. 2019)).

17. As of October 2025, the Debtors' outstanding professional fees alone, excluding trustee fees, are approaching $550,000.00 (including approximately $350,000 in professional fees and $228,000 in Transition Services Agreement service fees), with only just over $1.5 million in available cash. If the Care Pavilion Cases continue through February 2026, additional professional fees can be expected to exceed $2 million (including $1.1 million in professional fees and $914,000 in Transition Services Agreement service fees). These additional expenses will erode Argnt's collateral for no benefit to Argnt.

18. As the Care Pavilion Cases continue in chapter 11, the value of the estates will continue diminishing to the detriment of the Care Pavilion Debtors' creditors, especially since confirmation is unlikely. *See,* Section C, *infra*; *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162–63 (3d Cir. 2012) (internal quotation marks omitted) ("repeatedly unsuccessful attempts at confirmation are likely to generate enormous administrative costs, often without increasing the likelihood of success[.]").

TADMS:21024230-1:041925-203636

19. Additionally, as the Care Pavilion Debtors are liquidated, there is no business left to reorganize. *See, e.g., In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985) ("Rehabilitation as used in 11 U.S.C. Section 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis.").

20. Accordingly, cause exists here to dismiss the Care Pavilion Cases pursuant to 11 U.S.C. § 1112(b)(4)(A), because there is a substantial continuing loss to or diminution of the estates and the absence of a reasonable likelihood of rehabilitation.

**B. Dismissal of the Care Pavilion Cases is favored over conversion.**

21. If a bankruptcy or district court finds "cause" for dismissal or conversion, the next step requires the court to determine which action, conversion or dismissal, is appropriate. *See In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999).

22. The decision whether to dismiss or convert a bankruptcy case lies with the sound discretion of the Court. *SGL Carbon Corp.*, 200 F.3d at 159; *Anderson v. Commonwealth Renewable Energy, Inc. (In re Commonwealth Renewable Energy, Inc.)*, 550 B.R. 279, 283 (Bankr. W.D. Pa. 2016).

23. Dismissal is appropriate where a debtor is unable to effectuate a chapter 11 plan because "neither creditors nor the estate could conceivably benefit" from the continued adjudication of the chapter 11 proceedings. *In re American Capital Equipment, LLC*, 688 F. 3d 145, 163 (3d Cir. 2012) (finding that the "best interest of creditors and the estate" warranted relief under section 1112(b) where "it is clear that…no future plan would be able to be effectuated under Chapter 11"); *Monsour Medical Center, Inc. v. Stein (In re Monsour Medical Center, Inc.)*, 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (holding that dismissal of the debtor's chapter 11 case was in the best interests of the creditors and debtor's estate

because it was "highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy."); *In re Commonwealth Renewable Energy, Inc.*, 550 B.R. at 284-85 (Bankr. W.D. Pa. 2016) (concluding "interests of third party creditors will neither be impaired by dismissal of the case, nor benefitted in the foreseeable future by the continuation of the bankruptcy proceedings.").

24. Under the Bankruptcy Code's "best interests of creditors" test, every creditor to a Chapter 11 reorganization plan must receive at least the liquidation value of its claim under the plan as it would in a Chapter 7 proceeding against the debtor for the court to find the plan is in the creditors' best interests. 11 U.S.C. § 1129(a)(7); *In re Brown*, 498 B.R. 486, 506 (Bankr. E.D. Pa. 2013).

25. Here, the remaining proceeds left in the Care Pavilion Debtors' estates is insufficient to satisfy the Care Pavilion Debtors' outstanding obligations to Argnt, and prolonging the Chapter 11 Cases would "only burden the estate with mounting attorney and administrative fees." *In re Monsour Medical Center, Inc.*, 154 B.R. at 207. *See also* Section C, *infra*.

26. Given (a) the lack of assets to be administered and distributed; (b) the difficulties a chapter 7 trustee would encounter in the collection of health care receivables; and (c) the fact that conversion would impose additional administrative costs with no corresponding benefit to the Care Pavilion Debtors' creditors or their estates, dismissal is in the best interest of the Care Pavilion Debtors' estates and creditors.

27. Accordingly, dismissal of the Care Pavilion Cases is the proper remedy under 11 U.S.C. § 1112(b), rather than conversion.

### C. The Care Pavilion Cases should be dismissed because the Care Pavilion Debtors cannot propose a feasible plan.

28. Further, "dismissal of a Chapter 11 bankruptcy case is appropriate where the court finds that the proposed plan is not feasible and that a feasible plan is not possible." *In re 3 Ram, Inc.*, 343 B.R. 113, 118 (Bankr. E.D. Pa. 2006) (citing *Michigan National Bank v. Charfoos (In re Charfoos)*, 979 F.2d 390, 395 (6th Cir. 1992) (quoting *Toibb v. Radloff*, 501 U.S. 157, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991) ("it is recognized that generally 'bankruptcy courts [have] substantial discretion to dismiss . . . [where] the debtor files an untenable plan of reorganization.'")); *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (quoting *United Sav. Assoc. v. Timbers of Inwood Forest, Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (discussing § 1112(b) and stating that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'")).

29. "If the [c]hapter 11 case cannot achieve a reorganization within the statutory requirements of the [Bankruptcy] Code, then there is no point expending estate assets on administrative expenses, or delaying creditors in their exercise of other nonbankruptcy law rights." *In re 3 Ram, Inc.*, 343 B.R. at 118 (citing *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)).

30. As evidenced by the terms of the Disclosure Statement and Plan, and as stated in Argnt's *Objection to Motion for Entry of an Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling a Combined Hearing on the Plan and Disclosure Statement, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [ECF No. 1598], the Committee cannot confirm a confirm a plan that complies with section 1129 of the Bankruptcy Code.

8

31. Section 1129(a) provides:

[t]he court shall confirm a plan only if all of the following requirements are met: . . . (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that— (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim[.]

11. U.S.C. § 1129.

32. The Care Pavilion Debtors are unable to fund a plan that would pay Argnt's superpriority administrative claim in full in violation of 11 U.S.C. § 1129.

33. Pursuant to the terms of the DIP Order, Argnt is the holder of "an allowed superpriority administrative expense claim status in each of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases . . . ." ("**Claim**") [ECF No. 438, p. 3].

34. Specifically, upon entry of the DIP Order, "in addition to the DIP Liens granted [therein]," Argnt was granted:

an allowed superpriority administrative expense claim in each of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases for any of the Care Pavilion Debtors (collectively, the "DIP Superpriority Claim(s)") for all DIP Obligations: (a) subject only to the Carve-Out, having priority over any and all administrative expense claims and unsecured claims against the Care Pavilion Debtors or their estates in any of the Care Pavilion Cases of the Care Pavilion Debtors and any Successor Cases for any of the Care Pavilion Debtors, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of a Final DIP Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code . . . .

[ECF No. 438, ¶ 7, p. 26].

35. The Creditors' Committee acknowledges in the Disclosure Statement that, "[a]s of August 15, 2025, [Argnt] holds a "super priority claim in the amount of $12,907,558.00." [ECF No. 1550-3, p. 7].

36. Argnt's Claim is "of a kind specified in section 507(a)(2) or 507(a)(3)." 11 U.S.C. § 1129(a).

37. Argnt does not consent to less than full recovery on its Claim at confirmation.

38. Accordingly, in order for the Plan to be confirmed, section 1129(a) requires that Argnt's Claim be paid in full at confirmation. *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 238 (3d Cir. 2021) ("[T]he Bankruptcy Code requires any plan to pay valid administrative expense claims in full.").

39. Because the Plan does not provide for full payment of Argnt's Claim, the proposed Plan cannot be confirmed. *Former Emples. of Builders Square Retail Stores v. Hechinger Inv. Co. (In re Hechinger Inv. Co.)*, 298 F.3d 219, 224 (3d Cir. 2002) ("In a Chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment.") (citing 11 U.S.C. §§ 943 (b)(5), 1129(a)(9)(A)).

40. Pursuant to Article 2.1 of the Plan, all the assets of the debtors' estates are to be "deemed consolidated" into two liquidating trusts: the Care Pavilion Liquidating Trust and the Pottsville Liquidating Trust. [ECF No. 1549, Art. II].

41. The terms of the Plan require Argnt, as a creditor of the Care Pavilion Debtors, to only seek distributions on its Claim from the Care Pavilion Liquidating Trust, which is insufficiently funded to pay Argnt's superpriority administrative Claim in full.

42. The assets that will be pooled into the Pottsville Liquidating Trust include primarily the proceeds of the sale of the Pottsville Debtors (which included a $63,000,000 purchase price), along with the cash and cash equivalents of the Pottsville debtor and accounts receivable (approximately $4,000,000), and anticipated litigation recoveries (estimated to be worth between $8,000,000 and $12,000,000). [ECF No. 1549, Section 1.95].

43. In contrast, the Plan proposes to fund the Care Pavilion Liquidating Trust with only the Care Pavilion Debtors' Cash and Cash Equivalents, accounts receivable, and anticipated litigation recoveries. [ECF No. 1549, Section 1.22]. The accounts receivable and cash are subject to Argnt's superpriority lien.

44. Moreover, the Disclosure Statement specifically states that the Plan provides an estimated recovery on "DIP Claims" of only between 29.5% to 43% on its total claim, including $3 million which has already been paid, leaving at best an additional 13.1% to 29.8% repayment on Argnt's remaining superpriority administrative Claim. [ECF No. 1550-3, p. 5].

45. Not only does such proposed distribution violate section 1129 of the Bankruptcy Code, but it also contradicts other terms of the Plan which incorrectly state that administrative claims are unimpaired and have a 100% projected recovery. [ECF No. 1549, Art. IV, p. 22].

46. The Plan and Disclosure Statement are rife with similar contradictions, including the Creditors' Committee's assertion that the Plan is "feasible" because "the Pottsville Liquidating Trust and the Care Pavilion Liquidating Trust will have sufficient Cash to pay . . . Allowed Administrative Claims" [ECF No. 1550, Section 3.7, p. 18], which

directly conflicts with the proposed 29.5% to 43% estimated recovery on Argnt's Claim [ECF No. 1550-3, p. 5].

47. The Care Pavilion Debtors cannot propose a feasible plan, as the Care Pavilion Liquidating Trust does not have sufficient Cash to pay claims as required under the Bankruptcy Code.

48. Because a feasible plan is not possible for the Care Pavilion Debtors, the Care Pavilion Cases should be dismissed forthwith.

49. If the Care Pavilion cases are not dismissed promptly, continued administrative expenses of the Care Pavilion Debtors' estates will continue to harm Argnt by eroding its recovery while the Committee seeks confirmation of an unconfirmable plan with fees that exceed the fees budgeted for the Committee in this case.[3]

**D. Funds held in escrow from the Care Pavilion Sale should be paid back to the Care Pavilion Debtors.**

50. Pursuant to the *Order (A) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [ECF No. 906], the Creditors' Committee received $700,000, "for the benefit of general unsecured creditors . . . payable as follows: (i) upon this Sale Order becoming final and non-appealable, three

---

[3] The DIP Order provides for a budget of $650,000.00 for the Creditors' Committee's counsel and financial advisor, which, upon information and belief, has already been exceeded. *See, e.g., Monthly Fee Statement of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors in Relation to the Care Pavilion Debtors for the Period for July 1, 2025, through July 31, 2025* (most recent application for payment of Creditors' Committee's financial advisors' fees, requesting $27,575.60 in compensation) [ECF No. 1498]; *Second Interim Application for Compensation and Reimbursement of Expenses of Dentons as Counsel to the Official Committee of Unsecured Creditors for the Period February 1, 2025, through May 31, 2025* (most recent application for payment of Creditors' Committee's counsel fees, requesting payment of $504,178.51).

hundred and fifty thousand ($350,000) from an advance under the post-petition financing authorized under the Final DIP Order; and (ii) upon Closing, three hundred and fifty thousand ($350,000) from the Property Purchasers." [ECF No. 906, ¶ 40(a)].

51. Upon dismissal of the Care Pavilion Cases, Argnt respectfully requests the $700,000 being held by the Creditors' Committee be paid back to the Care Pavilion Debtors to be used for the benefit of the estate.

## CONCLUSION

52. Cause exists under 11 U.S.C. § 1112(b) to dismiss the Care Pavilion Cases.

53. Accordingly, Argnt respectfully request that this Court enter an Order dismissing the Care Pavilion Cases.

WHEREFORE, Argnt respectfully requests that this Honorable Court issue an Order dismissing the Care Pavilion Cases and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 9, 2025

TUCKER ARENSBERG, P.C.

*/s/ Michael A. Shiner*
Michael A. Shiner, Esq.
PA ID No. 78088
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
mshiner@tuckerlaw.com

*Counsel for Argnt Holdings, LLC*

TADMS:21024230-1:041925-203636

**CERTIFICATE OF SERVICE**

    I certify under penalty of perjury that on October 9, 2025, a true and correct copy of the *Motion to Dismiss Care Pavilion Cases* filed by Argnt Holdings, LLC, was served on all parties requesting electronic notice via the Court's CM/ECF System.

                                              */s/ Michael A. Shiner*
                                              Michael A. Shiner, Esquire

TADMS:21024230-1:041925-203636