**<u>Exhibit A</u>**
**Second Amended Disclosure Statement**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No.: 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED DISCLOSURE STATEMENT SUBMITTED BY
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**By and through**:

Andrew C. Helman
**DENTONS BINGHAM
GREENEBAUM LLP**
One City Center, Suite 11100
Portland, ME 04101
andrew.helman@dentons.com

Lauren M. Macksoud
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
lauren.macksoud@dentons.com

Thomas D. Maxson
**DENTONS COHEN & GRIGSBY, P.C.**
625 Liberty Avenue
Pittsburgh, PA 15222-3152
thomas.maxson@dentons.com

*Counsel to the Official Committee of Unsecured
Creditors of Pottsville Operations, LLC, et. al.*

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785); Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.  This Plan applies to the Pottsville Debtors, as defined in the Plan, and does not provide for resolution of claims as to other debtors in these jointly administered chapter 11 cases.

# TABLE OF CONTENTS

ARTICLE I: BACKGROUND ON THE DEBTORS .................................................................. 3

    1.1    General Overview of the Debtors ................................................................. 3
    1.2    Summary of the Debtors' Prepetition Debt Structure ............................................. 4

ARTICLE II: KEY EVENTS IN THE CHAPTER 11 CASES ................................................ 4

    2.1    Formation of the Creditors' Committee ........................................................ 4
    2.2    Employment of Professionals ................................................................. 5
    2.3    Use of Cash Collateral and Post-Petition Borrowing ........................................... 5
    2.4    The Sales of Substantially All of the Debtors' Assets ........................................... 6
    2.5    Establishment of Bar Dates (Other Than Bar Dates Established in the Plan) .................................................................................... 6
    2.6    Potential Avoidance Causes of Action ......................................................... 6

ARTICLE III: SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS .................................................................. 7

    3.1    Confirmation Hearing; Voting Requirements; Objection Deadline ..................... 7
    3.2    Deemed Consolidation for Limited Purposes of the Plan ................................... 9
    3.3    Parties in Interest Entitled to Vote; Voting on Consolidated Basis ..................... 10
    3.4    Requirements for Confirmation; Voting ...................................................... 10
    3.5    Impairment ................................................................................. 11
    3.6    Confirmation without Necessary Acceptances; Cramdown .............................. 11
    3.7    Feasibility ................................................................................. 11
    3.8    Best Interests Test and Liquidation Analysis .............................................. 12
    3.9    Other Requirements of § 1129 of the Bankruptcy Code ................................. 12
    3.10   Classification and Treatment of Claims and Interests Under the Plan ................ 12
    3.11   Plan Bar Dates ............................................................................. 17
    3.12   Establishment of Liquidating Trust and Appointment of Liquidating Trustee ................................................................................... 18
    3.13   Treatment of Executory Contracts and Unexpired Leases ............................... 18
    3.14   No Admissions ............................................................................. 19
    3.15   EXCULPATION, RELEASE, INJUNCTION ............................................ 19

ARTICLE IV: CERTAIN FEDERAL TAX CONSEQUENCES AND OTHER DISCLOSURES .................................................................. 21

ARTICLE V: RISK FACTORS IN CONNECTION WITH THE PLAN ............................. 22

ARTICLE VI: RECOMMENDATION AND CONCLUSION ........................................... 23

## <u>TABLE OF EXHIBITS</u>

| <u>Exhibit</u> | <u>Description</u> |
|---|---|
| 1 | **Plan of Liquidation** |
| 2 | **Pottsville Feasibility/Liquidation Analysis**[2] |

---

[2] The Pottsville Liquidation Analysis is a hypothetical exercise that has been prepared for the sole purpose of presenting a reasonable good faith estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with Chapter 7 of the Bankruptcy Code as of the Plan Effective Date. The Pottsville Liquidation Analysis is not intended and should not be used for any other purpose.  The Pottsville Liquidation Analysis has been prepared by the Creditors' Committee without access to all of the Debtors' books and records.

ii

## DISCLAIMER

THIS DISCLOSURE STATEMENT, THE PLAN,[3] AND THE ACCOMPANYING BALLOTS AND RELATED MATERIALS DELIVERED HEREWITH, ARE BEING PROVIDED BY THE CREDITORS' COMMITTEE, TO KNOWN HOLDERS OF CLAIMS AND INTERESTS OF THE DEBTORS PURSUANT TO § 1125 OF THE BANKRUPTCY CODE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN IN THE CHAPTER 11 CASES.

EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND § 1125 OF THE BANKRUPTCY CODE.  NO HOLDER OF A CLAIM OR INTEREST SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTORS, THEIR PROPERTY, OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THEN THE PLAN SHALL CONTROL.

HOLDERS OF CLAIMS, INTERESTS, AND OTHER PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS EXCULPATION, RELEASE, INJUNCTION, AND OTHER PROVISIONS DISALLOWING OR MODIFYING CLAIMS AND INTERESTS THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

HOLDERS OF CLAIMS, INTERESTS, AND OTHER PARTIES SHOULD BE AWARE THAT THE PLAN PROPOSES DEEMED CONSOLIDATION OF THE ESTATES FOR PURPOSES OF DISTRIBUTIONS AND VOTING.  ALL PARTIES ARE ADVISED THAT THE DEEMED CONSOLIDATION MAY ALTER THEIR RIGHTS.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN ACCORDANCE WITH APPLICABLE LAW, THE CREDITORS' COMMITTEE IS UNDER NO DUTY TO UPDATE OR SUPPLEMENT THIS DISCLOSURE STATEMENT.  THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE MERITS OF THE PLAN BY THE BANKRUPTCY COURT.  THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE.  ANY ENTITIES DESIRING ANY SUCH ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.**

---

[3] Capitalized terms, not otherwise specifically defined in this Disclosure Statement, shall have the meanings attributed to such terms in the substantially contemporaneously filed Plan of Liquidation (the "Plan").  A copy of the Plan is attached hereto as **Exhibit 1**.

**THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT IS UNAUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE. ANY FINANCIAL ANALYSIS OR PROJECTIONS ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND BEYOND THE CONTROL OF THE CREDITORS' COMMITTEE AND THE DEBTORS' MANAGEMENT. THE CREDITORS' COMMITTEE AND THE DEBTORS CAUTION THAT NO REPRESENTATIONS ARE MADE AS TO THE ACCURACY OF THESE PROJECTIONS. THEREFORE, DO NOT RELY ON THE FINANCIAL PROJECTIONS AS A GUARANTEE OR OTHER ASSURANCE THAT THE ACTUAL RESULTS WILL OCCUR. THE CREDITORS' COMMITTEE SHALL SUPPLEMENT THIS DISCLOSURE STATEMENT TO ADVISE OF ANY MATERIAL CHANGES OR TO CORRECT ANY MATERIAL MISSTATEMENTS.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016 AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH EACH WAS PREPARED. ONE SHOULD NOT CONSTRUE THIS DISCLOSURE STATEMENT AS ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE LIQUIDATION OF THE DEBTORS, AS TO HOLDERS OF CLAIMS AGAINST THE DEBTORS.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATIONS OR OTHER ACTIONS, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER BY THE DEBTORS OR ANY OTHER PARTY, BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS IN ACCORDANCE WITH FED. R. EVID. 408. AS SUCH, THIS DISCLOSURE STATEMENT IS NOT ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE CREDITORS' COMMITTEE, THE DEBTORS OR ANY OTHER PARTY IN INTEREST, NOR SHOULD ONE CONSTRUE IT AS CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL, OR OTHER EFFECTS OF THE PLAN TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS OR ANY OTHER PARTY IN INTEREST.**

## INTRODUCTION

The Creditors' Committee submits this Disclosure Statement under § 1125 of the Bankruptcy Code for the solicitation of votes to accept or reject the Plan. The Plan has been filed contemporaneously herewith. The Bankruptcy Court will hold hearings on: (i) the adequacy of this Disclosure Statement; and (ii) confirmation of the Plan. The Creditors' Committee will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information," in accordance with § 1125(b) of the Bankruptcy Code, to enable a hypothetical, reasonable investor, typical of claimholders entitled to vote on the Plan, to make an informed judgment about whether to accept or reject the Plan.

This Disclosure State describes, in Article III below, the potential recoveries that may result from approval and implementation of the Plan. The Creditors' Committee projects that approval of the Plan will result in a recovery of approximately 33.1% - 47.1% for Holders of Allowed Pottsville General Unsecured Claims in Class 5. This projection is a mere estimate and is subject to variation based on a number of factors, including the amount of Allowed Administrative Claims, the amount of Allowed Rejection Damages Claims, the outcome of Claim Objections, and recovery on Causes of Action and the amount of the Liquidating Trust Expenses to be incurred in connection with implementing and administering the Plan. The actual recovery for Holders of Allowed Pottsville General Unsecured Claims in Class 5 may be higher or lower than projected.

## ARTICLE I:
## BACKGROUND ON THE DEBTORS

### 1.1   General Overview of the Debtors[4]

The Pottsville Debtors and debtors in possession in the above-captioned chapter 11 cases are Pottsville Operations, LLC; Pottsville Propco, LLC; Hampton House Operations, LLC; Hampton House Propco, LLC; Kingston Operations, LLC; Kingston Propco, LLC; Williamsport North Operations, LLC; Williamsport Propco, LLC; Williamsport South Operations, LLC; Yeadon Operations, LLC; and Yeadon Propco, LLC; (collectively, the "Pottsville Debtors").

Hampton House Operations, LLC; Kingston Operations, LLC; Pottsville Operations, LLC; Williamsport North Operations, LLC; Williamsport South Operations, LLC; and Yeadon Operations, LLC (the "Pottsville OpCos") own and operate six skilled nursing facilities in Pennsylvania (the "Pottsville Facilities"). Collectively, the Pottsville Debtors have approximately 925 beds and 759 residents currently residing at the six Pottsville Facilities as of the Pottsville Petition Date. The Pottsville Debtors acquired the Pottsville Facilities in May of 2021. The Pottsville OpCos operate the Pottsville Facilities pursuant to a master lease. The Pottsville OpCos are all wholly owned by LZ PA Holdings LLC. The Pottsville OpCos contract with Eden East

---

[4] Additional details regarding the Pottsville Debtors' operations and financial structure are set forth in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* [Case No 24-70418, Docket No. 4] (the "Pottsville First Day Declaration").

Healthcare Management, LLC ("Eden Management") to provide administrative services to the Facilities, including assistance with the general management of the Pottsville Facilities.

Hampton House Propco, LLC; Kingston Propco, LLC; Pottsville Propco, LLC Williamsport Propco, LLC and Yeadon Propco, LLC (together, the "Pottsville PropCos") own the real property where the Pottsville OpCos operate the Pottsville Facilities. Because of the overlapping, but not identical, indirect ownership interests among the Pottsville Debtors, such debtors are affiliated, Pennsylvania limited liability companies. The Pottsville PropCos are all wholly owned by PAMC Realty, LLC.

### 1.2     Summary of the Debtors' Prepetition Debt Structure

As of the Pottsville Petition Date, the Pottsville Debtors' combined liabilities aggregate approximately $127.3 million.  Prior to the Pottsville Petition Date, Oxford Finance LLC (the "Pottsville Secured Lender") provided (i) the Pottsville ProCo Debtors with a $66 million term loan (as amended, modified, renewed, restated, or supplemented, the "Oxford Term Loan") and (ii) the Pottsville OpCo Debtors with a $13 million revolving loan (as amended, modified, renewed, restated, or supplemented, the "Oxford Revolver Loan"). The Oxford Revolver Loan has been paid down to a balance of $0.  The outstanding amount of the Oxford Term Loan is approximately $49 million.

Each of the Pottsville OpCo Debtors owes significant sums to vendors and other creditors for goods and services provided. The total number of known unsecured creditors is estimated to be approximately 530, and the total amount of unsecured debt owed by all Pottsville Debtors is approximately $78.2 million. This consists of accounts payable, notes payable, other unsecured loans, taxes, and assessments.

Each of the Pottsville OpCo Debtors also have potential obligations for the Pottsville Pre-Petition Assessment Claims held by the Commonwealth of Pennsylvania's Department of Human Services (the "Department"). The estimated potential total obligations for the Pottsville Pre-Petition Assessment Claims are approximately $16 million through the quarter ending June 30, 2024, and such obligations continue to accrue. The Department has not recorded a lien against any of the Pottsville Debtors with respect to the Pottsville Pre-Petition Assessment Claims.

### ARTICLE II:
### KEY EVENTS IN THE CHAPTER 11 CASES

On October 15, 2024, the Pottsville Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania.

The bankruptcy cases of the Debtors are being jointly administered, for procedural purposes only, in the Chapter 11 Cases.  The following is a brief summary of several key events during the Chapter 11 Cases.

### 2.1     Formation of the Creditors' Committee

On October 25, 2024, the Office of the United States Trustee appointed the Creditors' Committee in relation to the Pottsville Debtors Chapter 11 cases. The members of the Creditors' Committee are as follows: (i) Reliant Pro Rehab, LLC; (ii) Trans-Med Ambulance, Inc.; and (iii) Dedicated Nursing Associates, Inc.

### 2.2    Employment of Professionals

During the Chapter 11 Cases, the Bankruptcy Court approved the employment of the following Professionals:

- Baker Hostetler LLP, as general bankruptcy counsel to the Debtors;

- Solic Capital Advisors, LLC, as financial advisor to the Debtors[5];

- Neil Luria, as Chief Restructuring Officer of the Debtors;

- Margaret Barajas, as Patient Care Ombudsman;

- Dentons (including Dentons Cohen & Grigsby, P.C., Dentons US LLP and Dentons Bingham Greenebaum LLP), as counsel to the Creditors' Committee;

- FTI Consulting, Inc., as financial advisor to the Creditors' Committee;

- Meridian Capital Group, LLC, as broker to the Debtors; and

- Stretto, Inc., as claims and noticing/voting agent.

### 2.3    Use of Cash Collateral and Post-Petition Borrowing

The Debtors relied on Cash, collections of accounts receivable, and other payments that convert to Cash for their operations and to service their debt obligations. Together, these types of property are referred to as "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral"). To fund and support the Debtors' operations during the chapter 11 process, the Debtors received Bankruptcy Court authorization to use Cash Collateral.

The Debtors also relied on post-petition financing to support operations during the Chapter 11 Cases. Details of the Pottsville Debtors' post-petition financing, along with the use of Cash Collateral, can be found in the *Final Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 216].

---

[5] On or about June 26, 2025, GBH Solic Holdco, LLC, a wholly-owned subsidiary of Gordon Brothers Group, LLC, acquired the assets of SOLIC Capital Advisors, LLC.

## 2.4    The Sales of Substantially All of the Debtors' Assets

After exploring various options, the Pottsville Debtors determined to pursue in the Chapter 11 Cases an asset sale (the "Pottsville Sale").  Additional information regarding the Pottsville Debtors' post-petition marketing efforts, discussions with interested parties, negotiations with the stalking horse bidder, and the Pottsville Sale are set forth in the *Order (A) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 557] (the "Pottsville Sale Order").  The Pottsville Debtors received no qualified bids other than the stalking horse bid described in the Pottsville Sale Order. Accordingly, on January 13, 2025, the Pottsville Debtors filed the *Notice of Successful Bid and Cancellation of Auction* [Docket No. 542], indicating that the Pottsville Debtors selected the stalking horse bid as the highest and best bid for the Pottsville Purchased Assets.  The purchase price for the Pottsville Purchased Assets is defined in the Pottsville Sale Order and includes the Buyers Note, as such term is defined in the Plan.

On January 15, 2025, the Bankruptcy Court authorized the Pottsville Sale to the Pottsville Buyers through its entry of the Pottsville Sale Order.  The Pottsville Buyers are affiliates of Eden East Healthcare Management, LLC, an entity that provided pre-petition consulting and managerial services to the Pottsville Debtors pursuant to that certain Administrative Services Agreement dated September 1, 2024, and Eden Health Care LLC, the entity who served as the Pottsville Debtors' DIP lender.

As set forth in the *Notice of Closing of Sale Transaction for Substantially All of the Debtors Assets and Assumption and Assignment of Assumed Contracts* [Docket No. 655], the Pottsville Sale closing occurred, effective February 1, 2025, in accordance with the terms of the Pottsville Sale Order.  The Pottsville Buyers assumed operations of the Pottsville Facilities on February 1, 2025.

## 2.5    Establishment of Bar Dates (Other Than Bar Dates Established in the Plan)

The *Notice of Commencement*, entered by the Bankruptcy Court on December 11, 2024 [Docket No. 367], established April 16, 2025, as the General Bar Date for the Pottsville Debtors.

## 2.6    Potential Avoidance Causes of Action

In the 90 days prior to the Pottsville Petition Date, the Debtors made disbursements to trade creditors, lenders, and other parties, as identified in their respective Schedule 3.1 to the Statement of Financial Affairs [Docket No. 318, filed in Case No. 24-70418].  Under the Plan, all Causes of Action, including avoidance actions arising under § 547 of the Bankruptcy Code based on transfers in the 90 days before the Pottsville Petition Date are preserved and vested in the Pottsville Liquidating Trust upon the Effective Date.  Further, under § 502(d) of the Bankruptcy Code, the Bankruptcy Court must disallow any Claim of any Entity that is a transferee of an avoidance Cause of Action.  **All Holders of Claims are hereby on notice that their Claim, if any, may be Disallowed or subject to objection on the basis of § 502(d).**

6

The Creditors' Committee has analyzed possible avoidance actions and other Causes of Action.  With respect to the Pottsville Insider Avoidance Action, the Creditors' Committee has, and continues to, investigate claims for breaches of fiduciary duty and fraudulent transfers arising from insufficiently documented payments and transfers by the Pottsville Debtors to related party entities and third party vendors, potentially in excess of $23 million. The Creditors' Committee's investigation indicates that the Pottsville Debtors did not properly authorize, document, or track such transfers and that the Pottsville Debtors may not have received reasonably equivalent value in return for many of these payments and transfers. The Creditors' Committee's investigation is ongoing and its tentative estimated recovery ranges between $8 million and $12 million.

Additionally, as part of their analysis of Causes of Action, the Creditors' Committee reviewed and analyzed possible preference actions.  The Creditors' Committee first eliminated potential preference actions against parties that received, in aggregate, less than $7,575 in the 90-day period before the Pottsville Petition Date on the basis that such Causes of Action likely are not economical to pursue in light of litigation fees and costs.  Next, the Creditors' Committee, in consultation with the Debtors considered the historic business relationship with each recipient and analyzed payment and invoicing data to identify certain potential defenses to the claims.  Based on these steps, the Creditors' Committee identified avoidance actions in the Pottsville Cases with potential recoveries totaling approximately $4.7 million.  Parties may present additional defenses that further reduce the anticipated recovery.  All Causes of Actions will vest in the Liquidating Trust at the time of confirmation.

## ARTICLE III:
## SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS

**THIS SECTION PROVIDES A SUMMARY OF THE PLAN.  THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.  ALL PARTIES ARE ADVISED TO READ THE PLAN IN ITS ENTIRETY.**

### 3.1   Confirmation Hearing; Voting Requirements; Objection Deadline

On October 22, 2025 the Court entered the Conditional Approval and Procedures Order conditionally approving the Disclosure Statement for solicitation purposes only and authorizing the Creditors' Committee to solicit the Plan.  The Confirmation Hearing has been scheduled for **January 13, 2026 at 10:00 a.m.** (prevailing Eastern Time) at the Bankruptcy Court, U.S. Bankruptcy Court, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 (or via telephone or Zoom upon instructions to be provided) to consider final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to final approval of the Disclosure Statement and/or Confirmation of the Plan must be: (i) made in writing; and (ii) filed with the Bankruptcy Court and served on the Debtors, the Creditors' Committee, and the U.S. Trustee so as to be actually received on or before

7

**December 19, 2025, at 4:00 p.m.** (prevailing Eastern time).  **UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

For your vote to be counted, this Ballot must be properly completed, signed, and returned so that it is actually received by the Voting Agent, Stretto, Inc. ("Stretto"), by no later than **December 19, 2025 at 4:00 p.m.** (prevailing Eastern Time) **(the "Voting Deadline")**, unless such time is extended in writing by the Creditors' Committee.  Please submit a Ballot with your vote in the envelope provided or by one of the following methods:

### If Submitting Your Vote through the E-Balloting Portal

Stretto will accept Ballots if properly completed through the E-Balloting Portal.  To submit your Ballot via the E-Balloting Portal, visit https://cases.stretto.com/pottsville/, click on "E-Ballot" under the Case Actions section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:_____

Stretto's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

If your Ballot is not received by Stretto on or before the Voting Deadline, and such Voting Deadline is not extended by the Creditors' Committee as noted above, your vote will not be counted.

If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or:

| **By first class mail to**: | **Via overnight courier or hand delivery to**: |
|---|---|
| Pottsville Operations, LLC, et al., Ballot Processing<br>c/o Stretto<br>410 Exchange, Suite 100<br>Irvine, CA 92602 | Pottsville Operations, LLC, et al., Ballot Processing<br>c/o Stretto<br>410 Exchange, Suite 100<br>Irvine, CA 92602 |

**ALL BALLOTS MUST BE SIGNED BY AN AUTHORIZED PARTY AND FULLY COMPLETED.   INCOMPLETE BALLOTS OR BALLOTS NOT ACTUALLY**

8

**RECEIVED BY THE VOTING DEADLINE SHALL NOT BE COUNTED, AND BALLOTS THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL NOT BE COUNTED. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL <u>NOT</u> BE COUNTED. EVEN IF YOU DO NOT VOTE TO ACCEPT THE PLAN, YOU MAY STILL BE BOUND BY THE PLAN IF IT IS ACCEPTED BY THE REQUISITE HOLDERS OF CLAIMS AND CONFIRMED BY THE BANKRUPTCY COURT.**

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR UPLOAD THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE VOTING AGENT BY EMAIL AT POTTSVILLEINQUIRIES@STRETTO.COM AND REFERENCE "POTTSVILLE" IN THE SUBJECT LINE. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### 3.2    Deemed Consolidation for Limited Purposes of the Plan

**Immediately upon the Effective Date, the Pottsville Debtors and their Estates shall be deemed consolidated solely for the following purposes: (i) all Pottsville Liquidating Trust Assets shall be treated as "pooled" as if they were merged solely for purposes of Distributions under the Plan, including for distribution by the Pottsville Debtors and/or the Liquidating Trustee; (ii) all Pottsville Intercompany Claims shall be eliminated; (iii) each Claim Filed or to be Filed against a Pottsville Debtor shall be deemed a single, non-aggregated Claim against, and a single non-aggregated obligation of, the Pottsville Debtors solely for purposes of Distributions under the Plan; (iv) all guarantees of a Pottsville Debtor of the payment, performance, or collection of obligations of another Pottsville Debtor shall be eliminated and canceled; (v) all transfers and Distributions on account of Claims made by or on behalf of any of the Pottsville Debtors' Estates shall be deemed to be made by or on behalf of all of the Pottsville Debtors' Estates; (vi) Holders of Allowed Claims against the Pottsville Debtors entitled to Distributions under this Plan shall be entitled to Distributions from the Pottsville Liquidating Trust Assets in accordance with the terms of the Plan on account of such Claim without regard to which Pottsville Debtor was originally liable for such Claim; (vii) the deemed consolidation of the Pottsville Liquidating Trust Assets, and Claims under this Plan, by itself, shall not constitute impairment of a Class of Claims or Interests in the Plan for purposes of § 1124 of the Bankruptcy Code; and (viii) voting on the Plan shall occur on a consolidated basis by each Class entitled to vote, including as to calculating acceptance or rejection by a Class pursuant to § 1126 of the Bankruptcy Code.**

**All parties are advised that deemed consolidation of the Pottsville Estates may alter their rights and recoveries under the Plan, including as compared to unconsolidated, separate Distributions and Claims for each Pottsville Debtor**. However, each of the Pottsville

9

Estates and Pottsville Liquidating Trust will incur reduced administrative costs through consolidated Disbursements and Claims, as opposed to administering multiple, separate Claims registers and multiple Distributions on account of Claims under the Plan. Deemed consolidation amongst the Pottsville Debtors also eliminates the need to allocate — or reallocate, as the case may be — Claims among the respective Debtors, either through the Plan or post-confirmation Objections to Claims.

The Creditors' Committee has analyzed closely the implications of deemed consolidation on its constituents. After careful deliberation, the Creditors' Committee has determined that providing Pro Rata Distributions to all Holders of Pottsville General Unsecured Claims in Class 5 of the Plan is an equitable approach to allocating the Pottsville Liquidating Trust Assets, including among Creditors of the Pottsville Debtors that may have done business with multiple Pottsville Debtors or been unaware with which Pottsville Debtor they were transacting. Creditors of certain Debtors could fare better under a plan that did not provide for deemed consolidation.

Parties are directed to Article II of the Plan for a further discussion of deemed consolidation. Notwithstanding any provision herein, nothing shall be deemed or construed as effecting a substantive consolidation or as permitting the filing of consolidated monthly operating reports or postconfirmation reports.

### 3.3    Parties in Interest Entitled to Vote; Voting on Consolidated Basis

Pursuant to the Bankruptcy Code, only Holders of Allowed Claims in Classes of Claims that are Impaired are entitled to vote to accept or reject the Plan. Any Claim to which an Objection has been Filed is not entitled to vote unless the Bankruptcy Court, upon timely application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. **Any such application to temporarily allow a Claim for voting purposes must be heard and determined by the Bankruptcy Court on or before the Voting Deadline**. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or made in good faith or in accordance with the provisions of the Bankruptcy Code. **Pursuant to Article II of the Plan, voting on the Plan will occur on a consolidated basis, such that Holders of Claims against a single Debtor will have their votes combined with Holders of Claims against another Debtor in the same Class.**

### 3.4    Requirements for Confirmation; Voting

The Bankruptcy Court will confirm a plan only if it meets all of the applicable requirements under § 1129 of the Bankruptcy Code, which includes that a plan: (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class or Classes, must not "discriminate unfairly" against, and be "fair and equitable" to, such Class or Classes; and (b) must be feasible. The Bankruptcy Court must also find, among other things, that: (i) a plan has classified Claims and Interests in a permissible manner; (ii) a plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) a plan was proposed in good faith.

For the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one voting class, excluding the votes of Insiders, must vote to accept a Plan.

10

### 3.5     Impairment

Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" (as defined in § 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Under § 1124 of the Bankruptcy Code, a Class of Claims is "impaired" under a plan unless, among other things, with respect to each Claim of such Class, the plan leaves unaltered the legal, equitable, and contractual rights of the Holder of the Claim or Interests.

### 3.6     Confirmation without Necessary Acceptances; Cramdown

A plan may be confirmed, even if it is not accepted by all Impaired Classes, if a plan has been accepted by at least one impaired Class of Claims, and the plan meets the "cramdown" requirements in § 1129(b) of the Bankruptcy Code. Section 1129(b) requires that a court find that a plan "does not discriminate unfairly," and is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. A plan does not "discriminate unfairly" if: (a) the legal rights of a non-accepting Class are treated in a manner that is consistent with the treatment of other Classes whose legal rights are similar to those of the non-accepting Class; and (b) no Class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Creditors' Committee believes that the Plan is fair and equitable, and does not discriminate unfairly, against any Holder of a Claim or Interest.

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE CREDITORS' COMMITTEE MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.**

### 3.7     Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors (unless such liquidation or reorganization is proposed in the plan). Considerable assets have been liquidated and converted to Cash in the Chapter 11 Cases, and the Plan provides for the liquidation and distribution of the Liquidating Trust Assets to Holders of Allowed Claims in accordance with the Plan.

The Feasibility/Liquidation Analysis prepared by the Creditors' Committee is attached hereto as **Exhibit 2**. For purposes of determining feasibility, the Creditors' Committee has analyzed the ability of the Liquidating Trust to meet its obligations under the Plan. Based on the analysis, which includes, without limitation, consideration of the value of the Pottsville Liquidating Trust Assets, Causes of Action, Allowed Claims, and anticipated Pottsville Liquidating Trust Expenses, the Creditors' Committee believes that the Pottsville Liquidating Trust, along with their respective Pottsville Liquidating Trust Assets are sufficient to accomplish the required tasks under the Plan. Specifically, the Creditors' Committee projects that the Pottsville Liquidating Trust will have sufficient Cash to pay Allowed Pottsville Other Secured Claims, Allowed Administrative Claims (including Allowed Professional Fee Claims and U.S. Trustee Fees), Allowed Priority Tax Claims, Allowed Pottsville Priority Unsecured Non-Tax Claims, and Pottsville Liquidating Trust Expenses, each to the extent required by the Plan. The Plan, therefore, is feasible.

11

### 3.8     Best Interests Test and Liquidation Analysis

Even if a plan is accepted by each Class of Claims and Interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all Holders of Claims or Interests that are Impaired by that plan and that have not accepted the plan.  The "best interests" test, as set forth in § 1129(a)(7) of the Bankruptcy Code, requires the Bankruptcy Court to find either that all members of an Impaired Class of Claims or Interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such Holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.  The Creditors' Committee believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating in chapter 7, including the expenses of the chapter 7 trustee and his or her professionals, which include attorneys and accountants.  Such expenses would be avoided if the Plan is confirmed.  Further, although a chapter 7 trustee may be entitled to bring Causes of Action to recover Cash for the chapter 7 estates, the Creditors' Committee, based on their investigations and information presently available to them, do not believe a chapter 7 trustee is likely to recover significant additional Cash for the Estates through such Causes of Action, net of fees and expenses incurred to bring such Causes of Action.  Accordingly, the Creditors' Committee submits that Holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Cases were converted to chapter 7 cases, and, therefore, to the extent an Impaired Class does not accept the Plan, the classification and treatment of such Claims and Interests in the Plan satisfy § 1129(a)(7) of the Bankruptcy Code.

### 3.9     Other Requirements of § 1129 of the Bankruptcy Code

The Creditors' Committee submits that the Plan meets, or will meet, all the other requirements of § 1129 of the Bankruptcy Code, including that the Plan was proposed in good faith.  To the extent required, the Creditors' Committee will submit an evidentiary record in advance of the Confirmation Hearing to support any required findings.

### 3.10    Classification and Treatment of Claims and Interests Under the Plan

Section 1123 of the Bankruptcy Code provides that a plan must classify the Claims and Interests of a debtor's Creditors and equity Interest Holders.  In accordance with § 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those Unclassified Claims that, pursuant to § 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified).

Under § 1122 of the Bankruptcy Code, a plan also must classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.  The Creditors' Committee submits that the Plan's classifications provide for the substantially similar placement of Claims in the same Class—on a consolidated basis—and, thus, meet the requirements of § 1122 of the Bankruptcy Code.

12

The following is a chart summarizing the Unclassified and Classified Claims in the Plan, with a further discussion below:[6]

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Claims, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1: Pottsville Secured Lender's Claim | Unimpaired | No | 100% |
| Class 2: Pottsville Other Secured Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 3: Pottsville Priority Tax Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 4: Pottsville Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 5: Pottsville General Unsecured Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 6: Pottsville Insured Claim | Impaired | Yes | N/A[7] |
| Class 7: Pottsville Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 8: Pottsville Interests | Impaired | No (deemed to reject Plan) | 0% |

1.      **Unclassified Claims**

---

[6] This summary is qualified in its entirety by the terms of the Plan.

[7] Paid from proceeds of available Insurance Policies.

13

Under the Plan, certain Claims are not placed into Classes. Instead, such Claims are Unclassified Claims. Unclassified Claims are Unimpaired, and Holders of Unclassified Claims do not vote on the Plan because they are automatically entitled to the specific treatment provided for the Unclassified Claims in the Bankruptcy Code or the Claim treatment has been agreed upon by the Creditors' Committee and a particular Creditor. The Plan provides for the following regarding Unclassified Claims:

          a)     <u>Administrative Claims</u>. Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with this Plan, in full and final satisfaction of, and in exchange for, such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing. Holders of Disallowed Administrative Claims shall not receive any Distribution under this Plan.

          b)     <u>The Pottsville Post-Petition Assessment Claim</u>. The Pottsville Post-Petition Assessment constitutes an Allowed Administrative Claim. Upon final payment in full of Allowed Administrative Claims, the Holder of the Allowed Pottsville Post-Petition Assessment Claim will receive, in full satisfaction of such claim its pro rata share of 25 percent (%) from the proceeds of the Pottsville Insider Avoidance Action, after payment of the reasonable compensation of the Pottsville Liquidating Trustee pursuant to Section 6.3 of the Plan, up to the full amount of any such Allowed Claim. The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Post-Petition Assessment Claim. The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property.

          c)     <u>U.S. Trustee Fees</u>. All fees under 28 U.S.C. § 1930(a) and any interest thereon under 31 U.S.C. § 3717 (together, "<u>Statutory Fees</u>") payable on or before the Effective Date shall be paid by the Debtors in full in cash on the Effective Date. On and after the Effective Date, the post-Effective Date Debtors, the Liquidating Trustee, and the Liquidating Trust shall remain jointly and severally liable for paying any and all Statutory Fees in full in cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the post-Effective Date Debtors, the Liquidating Trustee, and/or the Liquidating Trust shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the United States Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the United States Trustee shall not be treated as providing any release under the Plan.

14

d)      <u>Disputed Unclassified Claims</u>.  Except as otherwise set forth in this Article 4.2, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article VI of the Plan.

### 2.      **Classified Claims and Interests**

The Bankruptcy Code requires certain types of Claims and Interests to be placed into Classes.  The Plan provides for the following regarding Claims in Classes:

(a)      <u>Treatment of the Pottsville Secured Lender's Claim (Class 1)</u>: The Holder of the Pottsville Secured Lender's Claim has received, out of the proceeds of the Pottsville Sale closing, and in full and final satisfaction of such Allowed Class 1 Claim, payment in full in Cash of its Allowed Pottsville Secured Lender's Claim.  **Such Claim in Class 1 is, therefore, Unimpaired and not entitled to vote on the Plan**.

(b)      <u>Treatment of Pottsville Other Secured Claims (Class 2)</u>: Each Holder of an Allowed Pottsville Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Pottsville Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Allowed Pottsville Other Secured Claim shall not exceed the value of the relevant creditors' collateral. **Such Claims in Class 2 are, therefore, Unimpaired and not entitled to vote the Plan.**

(c)      <u>Treatment of Pottsville Priority Tax Claims (Class 3)</u>: On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Pottsville Liquidating Trust Interests. **Such Claims in Class 3 are, therefore, Impaired and entitled to vote on the Plan.**

The Holders of an Allowed Pottsville Priority Tax Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Priority Tax Claim. The Holder of an Allowed Pottsville Priority Tax Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property. For the avoidance of doubt, nothing in this Plan, Disclosure Statement, or Confirmation Order shall be a determination that any Pottsville Pre-Petition Assessment Claim does or does not constitute or be deemed to constitute, a Tax or a Priority Tax Claim under section 507(a)(8) of the Bankruptcy Court."

(d)      <u>Treatment of Pottsville Priority Unsecured Non-Tax Claims (Class 4)</u>: Each Holder of an Allowed Pottsville Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) Cash equal to the unpaid amount of such Allowed Claim; or (ii) such other treatment as the Liquidating Trustee and the Holder of such

15

Allowed Claim shall have agreed.  The Union has filed various proofs of claim alleging priority status.  The Union and the Creditors' Committee, along with assistance from the Debtors, are reviewing such claim and will endeavor to resolve treatment of such claim prior to the Confirmation Hearing. **Such Claims in Class 4 are, therefore, Unimpaired and not entitled to vote on the Plan.**

(e)      Treatment of Pottsville General Unsecured Claim, including Rejection Damages Claim (Class 5): On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Pottsville Liquidating Trust Interests. **Such Claims in Class 5 are, therefore, Impaired and entitled to vote on the Plan.**

(f)      Treatment of Pottsville Insured Claim (Class 6):  Except to the extent that a Holder of a Pottsville Insured Claim agrees to different treatment, or unless otherwise provided by an order of the Bankruptcy Court directing such Holder's participation in any alternative dispute resolution process, on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of a Pottsville Insured Claim will have received or shall receive on account of its Claim relief from the automatic stay under section 362 of the Bankruptcy Code and the injunctions provided under this Plan for the sole and limited purpose of permitting such Holder to seek recovery, if any, as determined and Allowed by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim from the applicable and available Insurance Policies maintained by or for the benefit of any of the Debtors.  A Holder's recovery of insurance proceeds under the applicable Insurance Policy(ies) shall be the sole and exclusive recovery on a Pottsville Insured Claim, subject to any recovery of an Insured Deficiency Claim, as described in the next paragraph. Any settlement of a Pottsville Insured Claim within a self-insured retention or deductible must be approved by the Debtors or Liquidating Trustee, as applicable.

In the event the applicable Insurer denies the tender of defense or there are no applicable or available insurance policies, or proceeds from applicable and available insurance policies have been exhausted or are otherwise insufficient to pay in full a Holder's recovery, if any, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim, on account of such Claim, then such Holder shall be entitled to its Pro Rata share of Pottsville Liquidating Trust Interests, as applicable, based on the amount of an Allowed Claim equal to the amount of the Allowed Pottsville Insured Claim less the amount of available proceeds paid on account of such Allowed Claim from the applicable and available Insurance Policies (the "Insured Deficiency Claim").  In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed Amount of their respective Allowed Insured Deficiency Claim. In no event shall any Holder of an Allowed Insured Deficiency Claim receive payment on account of such Allowed Insured Deficiency Claim in an amount that, when summed with payment to such Holder from any policy of insurance with respect to the Allowed Insured Claim, exceeds the Pro Rata share Pottsville Liquidating Trust Interests such Holder would have received had the Holder's Claim been classified in Class 5.

16

Any amount of an Allowed Insured Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this paragraph. **Such Claims in Class 6 are, therefore, Impaired and entitled to vote on the Plan. Unless otherwise ordered by the Bankruptcy Court, each Holder of a Class 6 Claim shall have a $1.00 vote for each such filed Claim.**

(g)     Treatment of Pottsville Intercompany Claims (Class 7): There shall be no Distribution on account of either the Pottsville Intercompany Claims. Upon the Effective Date, all Pottsville Intercompany Claims will be deemed cancelled and will cease to exist. **Such Claims in Classes 7are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

(h)     Treatment of Pottsville Interests in each of the Debtors (Class 8): The Pottsville Interests in Class 8are Impaired. The Holders of the Pottsville Interests in Class 8shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of Pottsville Liquidating Trust, or at the direction of the Liquidating Trustee), and the Holders of the Pottsville Interests shall take nothing under the Plan, provided, however, that all powers and authorities vested in the Pottsville Interests shall be transferred to the Pottsville Liquidating Trust and be exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder. **Such Pottsville Interests in Class 8 are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

### 3.11   Plan Bar Dates

The Plan establishes certain bar dates, including the following:

a)     Final Administrative Claim Bar Date. Holders of Administrative Claims accruing from either the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors and the Creditors' Committee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date. The Liquidating Trustee shall pay all Allowed Administrative Claims (other than Professional Fee Claims) not later than ten (10) business days after such Claims become Allowed, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Administrative Claim. **Any Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the**

17

**Bankruptcy Court by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Final Administrative Claim Bar Date is the date that is thirty (30) days after the Effective Date of the Plan.**

b) <u>Professional Fee Bar Date</u>. Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. The Liquidating Trustee shall pay all Allowed Professional Fee Claims not later than five (5) business days after entry of an Order by the Bankruptcy Court allowing such Claim, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Professional Fee Claim. Notwithstanding any interim distributions on compensation that have occurred to date, all Professional Fee Claims shall be paid ratably. If the Debtors are unable to pay Professional Fee Claims, such claim shall be paid first from any future recoveries on the Pottsville Insider Avoidance Action. **If an application for a Professional Fee Claim is not Filed with the Bankruptcy Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Professional Fee Bar Date is forty-five (45) days after the Effective Date of the Plan.**

### 3.12   Establishment of Liquidating Trust and Appointment of Liquidating Trustee

The Plan provides for the establishment of the Pottsville Liquidating Trust. Upon the Effective Date, all Pottsville Liquidating Trust Assets will vest in the Pottsville Liquidating Trust and be administered by the Liquidating Trustee, subject to the terms and conditions in the Plan, the Confirmation Order, and the Pottsville Liquidating Trust Agreement. The Plan further provides that Ronald Winters of Gibbins Advisors will be the initial Liquidating Trustee. Mr. Winters is familiar with the Debtors' accounting and financial records, the key events before and after the Pottsville Petition Date, the Pottsville Liquidating Trust Assets, the Claims, and many of facts underlying the Causes of Action. Mr. Winters is not an owner (directly or indirectly) of any Debtor. The Creditors' Committee believes that Mr. Winters is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner, and her knowledge and experience will be beneficial to all Creditors in ensuring an efficient, orderly winddown, and maximizing the value of the Pottsville Liquidating Trust Assets. Finally, the Plan provides, among other things, that Mr. Winters shall be compensated as set forth in the Pottsville Liquidating Trust Agreement.

### 3.13   Treatment of Executory Contracts and Unexpired Leases

Pursuant to the Pottsville Sale Order, all contracts and leases of the Pottsville Debtors other than the Assumed Contracts (as defined therein) were deemed rejected by the Pottsville Debtors effective as of the Pottsville Sale closing, which occurred on February 1, 2025 [*see* Docket No. 655].

Article VII of the Plan provides that if the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, and/or

18

the Pottsville Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.

### 3.14    No Admissions

Except as specifically provided in the Plan, nothing contained in the Plan or this Disclosure Statement shall be deemed or construed in any way as an admission by the Debtors, their Estates, or the Creditors' Committee with respect to any matter set forth in the Plan or the Disclosure Statement (or the exhibits thereto), including the amount or allowability of any Claim, or the value of any of the Pottsville Liquidating Trust Assets.

### 3.15    EXCULPATION, RELEASE, INJUNCTION

**THE PLAN CONTAINS EXCULPATION, RELEASE, AND INUNCTION PROVISIONS THAT MAY AFFECT YOUR RIGHTS.  ALL PARTIES ARE ADVISED TO CAREFULLY REVIEW THE PLAN**.

A summary of the exculpation, release, and injunction provisions in the Plan is provided below.

## EXCULPATION AND LIMITATION OF LIABILITY

(a)    **Effective as of the Effective Date, to the extent permitted under sections 1103(c) and 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Exculpated Parties, to the extent of such Exculpated Party's involvement in the Chapter 11 Cases, shall neither have nor incur any liability to any Entity or Person for any claims or causes of action arising on or after either the Pottsville Petition Date and before the Effective Date for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or (iii) the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; provided, further, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.**

(b)    **The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the**

19

Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

(c)       **None of the Non-Released Parties shall be Exculpated Parties.**

## INJUNCTION

a)       FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES WHOSE CLAIMS HAVE BEEN RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THIS PLAN SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED, DISALLOWED, EXCULPATED, OR SETTLED, OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

b)       B)       FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATION GRANTED IN ARTICLE 9.1 OF THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED, DISALLOWED, EXCULPATED, OR SETTLED OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THE PLAN.

A)       EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY

20

**SUCH CLAIMS OR INTERESTS RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

## ARTICLE IV:
## CERTAIN FEDERAL TAX CONSEQUENCES AND OTHER DISCLOSURES

This discussion is intended only as a summary of certain tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. This discussion is for informational purposes only and is not tax advice. The tax consequences of the Plan may be uncertain or vary depending on particular facts and circumstances.

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE LIQUIDATION OF THE DEBTORS.**

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION, NOR ANY STATE AUTHORITY, HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT, NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.**

**THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON, OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS**.

**HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE.  EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY**.

## ARTICLE V:
## RISK FACTORS IN CONNECTION WITH THE PLAN

**THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN AND PROVIDED WITH THE PLAN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THE FOLLOWING FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION**.

The following constitute a non-exhaustive list of risk factors associated with the Plan and its implementation:

- The Plan contains certain releases, exculpations, and injunction language.  Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan and Disclosure Statement will affect any Claim, interest, right, or action with regard to the Debtor.

- The Creditors' Committee can make no assurances that the requisite acceptances to the Plan will be received, and the Creditors' Committee may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

22

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Liquidating Trust Assets and that will be available to pay Allowed Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation of the Plan and for certain other conditions that must be satisfied prior to the Effective Date.  As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

- There can be no assurance that the exculpation, as provided in Article IX of the Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- There is no assurance regarding whether the Bankruptcy Court will order deemed consolidation for purposes of Distributions under the Plan.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI:
## RECOMMENDATION AND CONCLUSION

The Creditors' Committee believes that the Plan provides the best available alternative for maximizing the recoveries that Creditors may receive from the Estates.  The Creditors' Committee recommends that all Creditors that are entitled to vote on the Plan, vote to accept the Plan.

*[intentionally left blank; signature page to follow]*

23

Respectfully submitted,                    Dated: November 14, 2025

                                           __/s/ Lauren M. Macksoud__
                                           Lauren M. Macksoud
                                           **DENTONS US LLP**
                                           1221 Avenue of the Americas
                                           25th Floor
                                           New York, NY 10020
                                           lauren.macksoud@dentons.com

                                           Andrew C. Helman
                                           **DENTONS  BINGHAM  GREENEBAUM  LLP**
                                           One City Center, Suite 11100
                                           Portland, ME 04101
                                           andrew.helman@dentons.com

                                           Thomas D. Maxson
                                           **DENTONS COHEN & GRIGSBY, P.C.**
                                           625 Liberty Avenue
                                           Pittsburgh, PA 15222-3152
                                           thomas.maxson@dentons.com

                                           *Counsel to the Official Committee of Unsecured
                                           Creditors of Pottsville Operations, LLC, et. al.*

**Exhibit 1**

**Plan of Liquidation**

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No.: 24-70418-JAD |
| POTTSVILLE OPERATIONS, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED PLAN OF LIQUIDATION SUBMITTED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**By and through**:

Andrew C. Helman
**DENTONS BINGHAM GREENEBAUM LLP**
One City Center, Suite 11100
Portland, ME 04101
andrew.helman@dentons.com

Lauren M. Macksoud
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
lauren.macksoud@dentons.com

Thomas D. Maxson
**DENTONS COHEN & GRIGSBY, P.C.**
625 Liberty Avenue
Pittsburgh, PA 15222-3152
thomas.maxson@dentons.com

*Counsel to the Official Committee of Unsecured Creditors of Pottsville Operations, LLC, et. al.*

---

[1]      Certain Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115). The remaining debtors, are Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Care Pavilion Cases will be converted to a chapter 7. The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

## TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND CONSTRUCTION OF TERMS .......................................... 1

ARTICLE II: DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN
        COMPROMISES ........................................................................... 11

    2.1.    Deemed Consolidation for Limited Purposes under the Plan .............................. 11
    2.2.    No Substantive Consolidation; Reservation of Rights ......................................... 12

ARTICLE III: CONFIRMATION PROCEDURES ......................................................... 12

    3.1.    Confirmation Procedures .................................................... 12
    3.2.    Procedure for Objections; Objection Deadline ................................................. 13
    3.3.    Procedures for Voting; Voting Deadline ..................................................... 14
    3.4.    Cramdown Confirmation .................................................... 14

ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 14

    4.1.    Summary of Claims, Classes, Voting, and Projected Recoveries for the
           Pottsville Debtors ........................................................... 14
    4.2.    Identification and Treatment of Unclassified Claims .......................................... 15
    4.3.    Identification of Classes of Claims and Interests ............................................. 17
    4.4.    Treatment of Classified Claims and Interests ................................................. 17
    4.5.    Reservation of Rights; No Allowance of Claims ............................................. 20
    4.6.    Elimination of Vacant Classes .............................................. 20

ARTICLE V: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....... 20

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 21

    6.1.    Plan Funding ............................................................. 21
    6.2.    Vesting and Sale or Other Disposition of Liquidating Trust Assets;
           Liquidating Trust Expenses ................................................ 21
    6.3.    Liquidating Trustee ........................................................ 23
    6.4.    Liquidating Trustee's Counsel .............................................. 23
    6.5.    Dissolution .............................................................. 23
    6.6.    Release of Liens and Security Instruments ................................... 23
    6.7.    Cancellation of Notes and Instruments ..................................... 23
    6.8.    Purpose of Liquidating Trust ............................................... 24
    6.9.    Preservation of All Causes of Action and Standing .......................... 24
    6.10.   Effectuating Documents and Further Transactions ........................... 24
    6.11.   D&O Insurance Policies; Employment Practice Liability Policies; Similar
           Policies. ................................................................. 25
    6.12.   Dissolution of Creditors' Committee ....................................... 25
    6.13.   Reserved. ................................................................ 25
    6.14.   Records ................................................................. 25
    6.15.   Final Decree ............................................................. 25
    6.16.   Interim Distributions; Disputed Claim Reserve .............................. 25

6.17.    Intercompany Claims ................................................................................. 26

ARTICLE VII: EXECUTORY CONTRACTS ................................................................ 26

7.1.    Rejection of Executory Contracts and Unexpired Leases ......................... 26
7.2.    Bar Date for Rejection Damages Claims .................................................. 26
7.3.    Insurance Policies ..................................................................................... 26

ARTICLE VIII: PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
         DISTRIBUTION OF LIQUIDATING TRUST ASSETS.................................. 27

8.1.    Right to Object to Claims .......................................................................... 27
8.2.    Disallowance of Claims. ........................................................................... 27
8.3.    Distribution Provisions ............................................................................. 28

ARTICLE IX: EXCULPATION, RELEASES AND INJUNCTION ......................................... 29

9.1.    Exculpation and Limitation of Liability .................................................... 29
9.2.    [Reserved] ................................................................................................. 30
9.3.    Injunction ................................................................................................. 30

ARTICLE X: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE...................... 31

10.1.   Conditions Precedent to Confirmation....................................................... 31
10.2.   Conditions Precedent to the Effective Date .............................................. 31
10.3.   Effect of Failure of Conditions ................................................................. 32
10.4.   Filing of Notice of the Effective Date ....................................................... 32

ARTICLE XI: MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN .............. 32

11.1.   Modification and Amendments................................................................... 32
11.2.   Effect of Confirmation on Modifications .................................................. 32
11.3.   Revocation or Withdrawal of the Plan....................................................... 32

ARTICLE XII: JURISDICTION .................................................................................. 33

ARTICLE XIII: MISCELLANEOUS ............................................................................ 34

13.1.   Exemption from Taxes................................................................................ 34
13.2.   Compliance with Tax Requirements .......................................................... 34
13.3.   Defenses and Setoff ................................................................................... 34
13.4.   Governing Law .......................................................................................... 35
13.5.   Successors and Assigns.............................................................................. 35
13.6.   Debtors' Post-Confirmation Management ................................................. 35
13.7.   Immediate Binding Effect.......................................................................... 35
13.8.   Severability of Plan Provisions ................................................................. 35
13.9.   Exhibits ..................................................................................................... 36
13.10.  No Admissions ........................................................................................... 36
13.11.  Conflicts Among Plan Documents............................................................. 36
13.12.  Recommendation ....................................................................................... 36

ii

## TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| A | Pottsville Liquidating Trust Agreement |

#131673501v3<US_ACTIVE> - Pottsville - Plan of Liquidation
131673501\V-3

**INTRODUCTION**

The Official Committee of Unsecured Creditors hereby proposes this Plan of Liquidation, to all of the Pottsville Debtors'[2] known Holders of Claims and Interests, as authorized by section 1121(a) of the Bankruptcy Code.

**ARTICLE I:**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

As used in this Plan, the following terms have the following meanings:

**1.1.** "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Cases as it relates to a Debtor under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under sections 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtor's Estate under section 1930 title 28 of the United States Code, all taxes that arose after the Petition Date, and all other Claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court.

**1.2.** "**Allowed**" shall mean, with respect to any Claim, the amount of such Claim against a Debtor or an Interest in a Debtor: (a) that has been listed by a Debtor in its Schedules as liquidated in amount and not "Disputed" or "Contingent;" (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection deadline under this Plan; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed: (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors prior to the Effective Date, or the Liquidating Trustee after the Effective Date, or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as otherwise expressly set forth in this Plan.

**1.3.** "**Ballot**" shall mean the Ballot accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.4.** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.5.** "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Western District of Pennsylvania.

**1.6.** "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United

---

[2]    Capitalized terms used, but not defined at the time of initial use, shall have the meaning set forth in Article I of the Plan.

1

States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court and/or the District Court associated with the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.7.    "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

1.8.    "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

1.9.    "**Causes of Action**" shall mean all Claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other similar state law claims and causes of action, Liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law.  For the avoidance of doubt, Causes of Action shall also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.10.    "**Chapter 11 Cases**" shall mean the Pottsville Debtors' chapter 11 cases, which are jointly administered under Case No. 24-70418 in the Bankruptcy Court.  All citations herein to the docket shall refer to the Chapter 11 Cases, unless otherwise stated.

1.11.    "**Claim(s)**" shall mean a claim or claims against a Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

1.12.    "**Claims and Noticing Agent**" shall mean Stretto, Inc., the claims and noticing agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

1.13.    "**Claims Register**" means the official register of Claims maintained by the Claims and Noticing Agent.

1.14.    "**Claims Objection Deadline**" shall mean ninety (90) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee or the Debtors may File one or more motions with the Bankruptcy Court to extend the Claims Objection Deadline.  The Claims Objection Deadline shall also constitute the deadline for the Debtors or Liquidating Trustee to object to Priority Claims and Administrative Claims (other than Professional Fee Claims).

2

**1.15.** "**Class**" shall mean a class of Claims or Interests as set forth in Article IV hereof pursuant to section 1122(a) of the Bankruptcy Code.

**1.16.** "**Conditional Approval and Procedures Order**" means the Order (I) Granting Motion for Entry of an Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling a Combined Hearing on the Plan and Disclosure Statement, (III) Approving the Solicitation and Voting Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief [Docket. No. 1664].

**1.17.** "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article X of the Plan having been satisfied.

**1.18.** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, unless otherwise stated in the Confirmation Order.

**1.19.** "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.20.** "**Confirmation Order**" shall mean the Final Order of the Bankruptcy Court confirming the Plan.

**1.21.** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.22.** "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.23.** "**Creditors' Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, pursuant to the *Notice of Appointment of Creditors' Committee* [Docket No. 108] and the *Second Amended Appointment of Official Committee of Unsecured Creditors* [Docket No. 330].

**1.24.** "**Debtors**" shall mean the Pottsville Debtors including each in its capacities prior to the Pottsville Petition Date, as a debtor in possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

**1.25.** "**Dentons**" shall mean Dentons Bingham Greenebaum, LLP; Dentons US LLP; Dentons Cohen & Grigsby, P.C. and any other business unit of or within Dentons Group.

**1.26.** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor that: (i) has been disallowed, waived, or released, in whole or part, by a Final Order (including, but not limited to, the Confirmation Order); (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and a Debtor or the Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if identified in the Schedules and listed as zero or as Disputed, Contingent, and/or

3

unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order or other applicable law or as otherwise agreed; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest; or (vi) is not listed in the Schedules and as to which no timely and proper Proof of Claim or Proof of Interest has been Filed in accordance with the Pottsville Notice of Commencement or any other applicable Final Order establishing a bar date in the Chapter 11 Cases, including as to any Rejection Damages Claim.

1.27.    "**Disclosure Statement**" shall mean that certain disclosure statement Filed by the Creditors' Committee with respect to this Plan, as the same may be amended, supplemented, revised, or modified from time to time, and approved as containing adequate information pursuant to a Final Order, including, without limitation, all exhibits, appendices, and schedules attached thereto.

1.28.    "**Disputed**" shall mean any Claim or Interest that has not yet been Allowed or Disallowed.

1.29.    "**Distribution**" shall mean any distribution made pursuant to the Plan by the Liquidating Trustee or the Debtors to the Holder of an Allowed Claim or Allowed Interest.

1.30.    "**Effective Date**" shall mean the first Business Day after the Confirmation Order becomes a Final Order.  If the Confirmation Order has been stayed and that stay remains in place after the Effective Date would have occurred, the Effective Date shall mean the first Business Day following the date upon which any stay of the Confirmation Order is no longer effective.

1.31.    "**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.32.    "**Exculpated Parties**" shall mean collectively, and in each case, solely in their fiduciary capacities as such: (a) the Debtors; (b) the Creditors' Committee and the members of the Creditors' Committee; (c) with respect to each of the foregoing Entities, all Professionals who acted on their behalf in connection with the matters as to which exculpation is provided herein; and (d) the Post-Petition Officers.

1.33.    "**Executory Contract**" shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.34.    "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases; *provided, however*, that with respect to Proofs of Claim and Proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by and consistent with the Pottsville Notice of Commencement or as otherwise established by a Final Order.

1.35.    "**Final Administrative Claim Bar Date**" shall mean the date that is thirty (30) days after the Effective Date, which shall also be the deadline for Filing requests for payment of

Administrative Claims (other than Professional Fee Claims) that: (i) arose after the Petition Date; and (ii) were not paid as of the Effective Date.

1.36.   "**Final Order**" shall mean an unstayed order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, re-argument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidating Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

1.37.   "**Governmental Unit**" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

1.38.   "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

1.39.   "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.40.   "**Insider**" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

1.41.   "**Insurance Policy**" shall mean any insurance policy maintained by or for the benefit of any of the Pottsville Debtors or for the benefit of their directors and officers or employees (with respect to the latter, solely related to their employment), as of the Pottsville Petition Date and all agreements, documents, or instruments relating thereto not sold or otherwise transferred pursuant to the Pottsville Sale Order.

1.42.   '**Insured Deficiency Claim**" has the definition set forth in Article 4.4(d).

1.43.   "**Insurer**" shall mean any Entity (and its successors) that is an issuer of an Insurance Policy.

1.44.   "**IRS**" shall mean the Internal Revenue Service and/or assigns.

1.45.   "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code.

**1.46.** "**Liquidating Trustee**" means the person appointed, by the Committee in consultation with the Debtors, to administer the Pottsville Liquidating Trust with such rights, duties, and obligations as set forth herein and in the Pottsville Liquidating Trust Agreement.

**1.47.** "**Local Rules**" shall mean the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania.

**1.48.** "**Non-Released Parties**" shall mean any and all past or present members of the Debtors, any past or present officers of the Debtors (excluding the Post-Petition Officers), past or present affiliates of the Debtors, or past or present Insiders of the Debtors. For the avoidance of doubt, the Post-Petition Officers are excluded from the definition of Non-Released Parties.

**1.49.** "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any Filing seeking payment of any Administrative Claim).

**1.50.** "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.51.** "**Plan**" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, and including all exhibits and schedules hereto.

**1.52.** "**Post-Petition Officers**" shall mean, collectively, Neil Luria as Chief Restructuring Officer of the Debtors, Matthew Rubin as Assistant Chief Restructuring Officer of the Debtors, and all employees of SOLIC Capital Advisors LLC who performed work on behalf of the Debtors.

**1.53.** "**Pottsville Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement dated as of October 15, 2024, by and among the Pottsville Debtors, as sellers, and the Pottsville Buyers (defined below), as buyers. A true and correct copy of the Pottsville Asset Purchase Agreement is attached as Exhibit 1 to the Pottsville Sale Order at Docket No. 557.

**1.54.** "**Pottsville Buyers**" shall mean Hampton SNF Realty, LLC, Kingston SNF Realty, LLC, Pottsville Realty, LLC, Williamsport North SNF Realty, LLC, Williamsport South SNF Realty, LLC, Yeadon SNF Realty, LLC, Hampton Operations, LLC, Kingston SNF Operations, LLC, Pottsville SNF Operations, LLC, Williamsport North SNF Operations, LLC, Williamsport South SNF Operations, LLC, and Yeadon SNF Operations, LLC, each a Pennsylvania limited liability company pursuant to the Pottsville Asset Purchase Agreement and the Pottsville Sale Order.

**1.55.** "**Pottsville Buyers Note**" shall mean the promissory note of Buyers attached as Exhibit C to the Asset Purchase Agreement in the initial principal amount of Ten Million Dollars ($10,000,000), which has a term of two (2) years, bearing 0% interest, and provides for the

payment of $3,000,000 on the first anniversary of the closing date, and the remaining balance of the note shall be paid at maturity.

1.56. "**Pottsville Debtors**" shall mean, collectively, Pottsville Operations, LLC; Pottsville Propco, LLC; Hampton House Operations, LLC; Hampton House Propco, LLC; Kingston Operations, LLC; Kingston Propco, LLC; Williamsport North Operations, LLC; Williamsport Propco, LLC; Williamsport South Operations, LLC; Yeadon Operations, LLC; Yeadon Propco, LLC, including each in its capacities prior to the Pottsville Petition Date, as a debtor in possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

1.57. "**Pottsville DIP/Cash Collateral Order**" shall mean the *Final Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors' Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 216].

1.58. "**Pottsville Estate(s)**" shall mean, singularly or collectively, the estates of the Pottsville Debtors, or an estate of a Pottsville Debtor, created pursuant to section 541 of the Bankruptcy Code.

1.59. "**Pottsville General Unsecured Claim**" shall mean any unsecured Claim against a Pottsville Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, not to be: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Priority Unsecured Non-Tax Claim.

1.60. "**Pottsville Insider Avoidance Action**" shall mean shall mean that certain Cause of Action to be commenced by the Creditors' Committee or the Liquidating Trustee, as applicable, against the Non-Released Parties, and any other to be named defendant, as deemed appropriate or necessary.

1.61. "**Pottsville Insured Claim**" means a medical malpractice or tort claim against any of the Pottsville Debtors, their respective Estates, assets, or properties arising from any incident or occurrence that is covered by an applicable and available Insurance Policy. For the avoidance of doubt, no medical malpractice or tort claim against any of the Debtors, their respective Estates, assets, or properties arising as a matter of applicable law following the Pottsville Petition Date shall be a Pottsville Insured Claim.

1.62. "**Pottsville Intercompany Claim**" shall mean any Claim held by a Pottsville Debtor against another Pottsville Debtor.

1.63. "**Pottsville Interests**" shall mean the equity or equivalent ownership interests of any Person or Entity in a Pottsville Debtor.

1.64. "**Pottsville Liquidating Trust**" shall mean the liquidating trust established under this Plan and the Pottsville Liquidating Trust Agreement.

1.65.   "**Pottsville Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Pottsville Liquidating Trust and governs the powers, duties, and responsibilities of the Pottsville Liquidating Trustee, which shall be in substantially the form as attached hereto as **Exhibit B**.

1.66.   "**Pottsville Liquidating Trust Assets**" means all assets of the Pottsville Debtors that (i) exist immediately prior to the Effective Date and are not otherwise used by the Pottsville Debtors to make Distributions on the Effective Date to or for the benefit of Holders of Allowed Administrative Claims, Pottsville Priority Unsecured Non-Tax Claims, Professional Claims and Pottsville Secured Lender's Claims against the Pottsville Debtors, and (ii) are not Pottsville Purchased Assets. The Pottsville Liquidating Trust Assets also include, without limitation, to the extent not otherwise expressly excluded by this definition: (i) the Pottsville Remaining Cash; (iii) all Causes of Action the Pottsville Debtors hold or may hold against any Person or Entity as of the Effective Date (except to the extent they are the subject of any of the Releases set forth in the Plan), including the Pottsville Insider Avoidance Action; (iv) all Claims and rights of the Pottsville Debtors under any Insurance Policies; (v) any and all other non-Cash assets, interests, rights, claims and defenses of the Pottsville Debtors or the Pottsville Estates, including, without limitation, all rights under any order of the Bankruptcy Court; (vi) any and all tax refunds to which the Pottsville Debtors may be entitled; (vii) the Pottsville Buyers Note; and (viii) any and all proceeds of any of the foregoing.

1.67.   "**Pottsville Liquidating Trust Beneficiaries**" shall mean Holders of Pottsville General Unsecured Claims entitled to receive a Distribution pursuant to the terms of the Plan and the Pottsville Liquidating Trust Agreement, whether or not such Claims are Allowed as of the Effective Date; provided that the Holder of a Pottsville General Unsecured Claim shall cease being a Pottsville Liquidating Trust Beneficiary upon its Claim becoming a Disallowed Claim.

1.68.   "**Pottsville Liquidating Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Pottsville Liquidating Trust (including, but not limited to, payment of statutory fees, compensation of the Pottsville Liquidating Trustee, and the reasonable fees and expenses of professionals or other persons retained by the Pottsville Liquidating Trustee) in connection with carrying out the duties and responsibilities set forth in the Pottsville Liquidating Trust Agreement and the Plan, which duties and responsibilities shall be funded solely from the Pottsville Liquidating Trust Assets.

1.69.   "**Pottsville Liquidating Trust Interests**" means the uncertificated beneficial interests in the Pottsville Liquidating Trust, which represent the right of the Pottsville Liquidating Trust Beneficiaries to receive Distributions from the Pottsville Liquidating Trust in accordance with the Plan and the Pottsville Liquidating Trust Agreement.

1.70.   "**Pottsville Net Cash Proceeds**" means the aggregate cash consideration paid to or retained by the Pottsville Debtors at closing of the Pottsville Sale.

1.71.   "**Pottsville Notice of Commencement**" shall mean that certain Notice of Commencement [Docket No. 367], which established, inter alia, April 16, 2025 as the deadline for filing proofs of claim against the Pottsville Debtors.

1.72. "**Pottsville Other Secured Claim**" shall mean any Secured Claim against a Pottsville Debtor, other than the Secured Claim of the Pottsville Secured Lenders, including any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more Pottsville Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code. For the avoidance of doubt, each and every Pottsville Other Secured Claim shall be a Disputed Claim, and no Pottsville Other Secured Claim shall be Allowed other than pursuant to a Final Order of the Bankruptcy Court.

1.73. "**Pottsville Petition Date**" shall mean October 15, 2024, the date on which the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

1.74. "**Pottsville Pre-Petition Assessment Claim**" shall mean any monetary assessments or other amounts asserted by or owed to the Pennsylvania Department of Human Services, or any other governmental unit, pursuant to 62 P.S. Sections 801-A, et seq., with respect to any of the Pottsville Debtors or their respective Estates prior to the Pottsville Petition Date.

1.75. "**Pottsville Post-Petition Assessment Claim**" shall mean any monetary assessments or other amounts asserted by or owed to the Pennsylvania Department of Human Services, or any other governmental unit, pursuant to 62 P.S. Sections 801-A, et seq. after the Pottsville Petition Date, with respect to any of the Pottsville Debtors or their respective Estates.

1.76. "**Pottsville Priority Tax Claim**" shall mean the Pottsville Pre-Petition Assessment Claim.

1.77. "**Pottsville Priority Unsecured Non-Tax Claim**" shall mean any and all Claims against the Pottsville Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.78. "**Pottsville Purchased Assets**" shall mean those certain assets of a Pottsville Debtor purchased by the Pottsville Buyers pursuant to the Pottsville Sale Order and the Pottsville Asset Purchase Agreement.

1.79. "**Pottsville Remaining Cash**" means the actual sum of Cash that constitutes Pottsville Liquidating Trust Assets after: (i) the payment of Cash necessary to satisfy all Allowed Unclassified Claims that are Allowed against the Pottsville Debtors on or prior to the Effective Date; (ii) the funding of reserves for disputed Unclassified Claims against the Pottsville Debtors to the extent required by the Bankruptcy Court on or prior to the Effective Date; and (iii) the payment of all Allowed Claims against the Pottsville Debtors payable on the Effective Date as set forth in Classes 1-2.

1.80. "**Pottsville Remaining Estate Funds**" means the actual sum of Cash held by the Pottsville Debtors on the Effective Date.

1.81. "**Pottsville Sale**" shall mean the sale of the Pottsville Purchased Assets to the Pottsville Buyers pursuant to the Pottsville Asset Purchase Agreement and Pottsville Sale Order, which closed on February 1, 2025.

**1.82.**   "**Pottsville Sale Order**" shall mean the *Order (A) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 557].

**1.83.**   "**Pottsville Secured Lender**" shall mean Oxford Finance LLC.

**1.84.**   "**Pottsville Secured Lender's Claim**" shall mean the Secured Claim of Oxford Finance LLC.

**1.85.**   "**Priority Tax Claims**" shall mean a Claim, or a portion of a Claim, accorded priority under section 507(a)(8) of the Bankruptcy Code.

**1.86.**   "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

**1.87.**   "**Professional**" shall mean any professional employed in the Chapter 11 Cases by a Final Order pursuant to Bankruptcy Code sections 327, 328, or 1103, which shall include, but not be limited to, Baker Hostetler LLP; Raines Feldman Littrell LLP; Dentons, including Dentons Cohen & Grigsby, P.C., Dentons US LLP and Dentons Bingham Greenebaum LLP; FTI Consulting, Inc.; Meridian Capital Group, LLC; Solic Capital Advisors, LLC; and Stretto, Inc.

**1.88.**   "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for allowance of Professional Fee Claims, which deadline shall be forty-five (45) days after the Effective Date.

**1.89.**   "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.90.**   "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract rejected by a Debtor must File a Proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate Final Order of the Bankruptcy Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a Claim arising from such rejection, thirty (30) days after the Effective Date of the Plan.

**1.91.**   "**Rejection Damages Claim**" shall mean any timely Filed Claim for amounts due as a result of the rejection by the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

**1.92.**   "**Related Persons**" shall mean, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's current and former, employees, agents, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

131673501\V-3

**1.93.** "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts, and Statements of Financial Affairs Filed by each Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were Filed in the Chapter 11 Cases.

**1.94.** "**Secured Claim**" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.95.** "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto. For the avoidance of doubt, nothing in this Plan, Disclosure Statement, or Confirmation Order shall be a determination that any Pottsville Pre-Petition Assessment Claim does or does not constitute or be deemed to constitute, a Tax or a Priority Tax Claim under section 507(a)(8) of the Bankruptcy Court."

**1.96.** "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

**1.97.** "**Unclassified Claims**" shall mean the Claims that are not placed in a Class, as set forth in Article IV of the Plan.

**1.98.** "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.99.** "**Union**" shall mean (1) Local 262, Retail, Wholesale and Department Store Union, United Food and Commercial Workers International Union and (2) Retail, Wholesale and Department Store Union, United Food and Commercial Workers International Union.

**1.100.** "**U.S. Trustee**" shall mean the Office of the United States Trustee for the Western District of Pennsylvania.

**1.101.** "**U.S. Trustee Fees**" shall mean the fees payable pursuant to 28 U.S.C. § 1930.

**1.102.** "**Voting Deadline**" shall have the meaning ascribed in Article 3.3.

**ARTICLE II:**
**DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN COMPROMISES**

**2.1.    Deemed Consolidation for Limited Purposes under the Plan**

Immediately upon the Effective Date, the Pottsville Debtors and their Estates shall be deemed consolidated *solely* for the following purposes: (i) all Pottsville Liquidating Trust Assets shall be treated as "pooled" as if they were merged solely for purposes of Distributions under the

Plan, including for distribution by the Pottsville Debtors and/or the Liquidating Trustee; (ii) all Pottsville Intercompany Claims shall be eliminated; (iii) each Claim or Interest Schedule, Filed, or to be Filed against a Pottsville Debtor shall be deemed a single, non-aggregated Claim against, and a single non-aggregated obligation of, the Pottsville Debtors solely for purposes of Distributions under the Plan; (iv) all guarantees of a Pottsville Debtor of the payment, performance, or collection of obligations of another Pottsville Debtor shall be eliminated and canceled; (v) all transfers and Distributions on account of Claims made by or on behalf of any of the Pottsville Debtors' Estates shall be deemed to be made by or on behalf of all of the Pottsville Debtors' Estates; (vi) Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to Distributions in accordance with the terms of the Plan on account of such Claim without regard to which Pottsville Debtor was originally liable for such Claim; (vii) the deemed consolidation of the Pottsville Liquidating Trust Assets and Claims against the Pottsville Debtors under this Plan, by itself, shall not constitute impairment of a Class of Claims or Interests in the Plan for purposes of section 1124 of the Bankruptcy Code; and (viii) voting on the Plan shall occur on a consolidated basis by each Class entitled to vote, including as to calculating acceptance or rejection by a Class pursuant to section 1126 of the Bankruptcy Code.  Notwithstanding any provision herein, nothing shall be deemed or construed as effecting a substantive consolidation or as permitting the filing of consolidated monthly operating reports or postconfirmation reports.

### 2.2.    No Substantive Consolidation; Reservation of Rights

For the avoidance of doubt, the deemed consolidation of this Plan shall not (other than solely for the purposes stated in this Plan) affect the legal and corporate structures of the Debtors, including, without limitation, the title to the Pottsville Liquidating Trust Assets or the obligors on Claims.  For further avoidance of doubt, in the event that the Plan is not confirmed, or the Effective Date does not occur, nothing in this Plan shall constitute an admission by any Entity or Person, including, without limitation, the Debtors, and/or the Creditors' Committee, regarding substantive consolidation or any other form of consolidation of the Debtors or their Estates, and all such rights are specifically reserved.

### ARTICLE III:
### CONFIRMATION PROCEDURES

### 3.1.    Confirmation Procedures

On October 22, 2025 the Court entered the Conditional Approval and Procedures Order conditionally approving the Disclosure Statement for solicitation purposes only and authorizing the Creditors' Committee to solicit the Plan.  The Confirmation Hearing shall occur on **January 13, 2026 at 10:00 a.m.** (prevailing Eastern Time) at the Bankruptcy Court, United States Courthouse, 5414 U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 (or via telephone or Zoom upon instructions to be timely provided) to consider final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.2.    Procedure for Objections; Objection Deadline

Any objection to final approval of the Disclosure Statement and/or confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Bankruptcy Court and served on counsel for the Debtors, the Creditors' Committee, and the U.S. Trustee so as to be actually received on or before **December 19, 2025 at 4:00 p.m.** (prevailing Eastern Time).  **Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing**.  The addresses for the Debtors, the Creditors' Committee, and the Bankruptcy Court are as follows:

To the Debtors:

|  |  |
|---|---|
| By Mail: | Baker Hostetler LLP<br>Attn: Elizabeth A. Green, Esq.<br>Andrew V. Layden, Esq.<br>200 S. Orange Ave.<br>Ste 2300<br>Orlando, FL 32801 |
| By Email: | egreen@bakerlaw.com<br>alayden@bakerlaw.com |

To the Creditors' Committee:

|  |  |
|---|---|
| By Mail: | Dentons Bingham Greenebaum LLP<br>Attn: Andrew C. Helman, Esq.<br>101 Federal Street, #1900<br>Boston, Massachusetts 02108<br><br>Dentons US LLP<br>Attn: Lauren Macksoud, Esq.<br>1221 Avenue of the Americas<br>25th Floor<br>New York, NY 10020<br><br>Dentons Cohen & Grigsby, P.C.<br>Attn: Thomas D. Maxson, Esq.<br>625 Liberty Avenue<br>Pittsburgh, PA 15222-3152 |
| By Email: | andrew.helman@dentons.com<br>lauren.macksoud@dentons.com<br>thomas.maxson@dentons.com |

To the Bankruptcy Court:

|  |  |
|---|---|
| By Mail: | United States Bankruptcy Court<br>Attn: Clerk's Office |

600 Grant Street
Pittsburgh, PA 15219

### 3.3. Procedures for Voting; Voting Deadline

For a vote to be counted, the Ballot must be properly completed, signed, and returned so that it is actually received by the Claims and Noticing Agent by no later than **December 19, 2025, at 4:00 p.m.** (prevailing Eastern time) **(the "Voting Deadline")**, unless such time is extended in writing by the Debtors.

### 3.4. Cramdown Confirmation

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTORS MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE.**

## ARTICLE IV:
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1. Summary of Claims, Classes, Voting, and Projected Recoveries for the Pottsville Debtors

The following chart summarizes the categories and treatment of Claims and Interests under this Plan, as well as describing whether Holders of Claims and Interests are entitled to vote on this Plan, and the projected recovery for each under this Plan. All parties are advised to read this Plan in its entirety and not to rely exclusively on this summary.

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Claims, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1: Pottsville Secured Lender's Claim | Unimpaired | No | 100% |
| Class 2: Pottsville Other Secured Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 3: Pottsville Priority Tax Claims | Impaired | Yes | 33.1% - 47.1% |

14

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Class 4: Pottsville Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class 5: Pottsville General Unsecured Claims | Impaired | Yes | 33.1% - 47.1% |
| Class 6: Pottsville Insured Claim | Impaired | Yes | N/A[3] |
| Class 7: Pottsville Intercompany Claims | Impaired | No (deemed to reject Plan) | 0% |
| Class 8: Pottsville Interests | Impaired | No (deemed to reject Plan) | 0% |

**4.2.    Identification and Treatment of Unclassified Claims**

The following Claims shall be Unclassified Claims under the Plan:

a)    <u>Administrative Claims</u>.  Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with this Plan, in full and final satisfaction of, and in exchange for, such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.  Holders of Disallowed Administrative Claims shall not receive any Distribution under this Plan.

i.    <u>Final Administrative Claim Bar Date</u>.  Holders of Administrative Claims accruing from either the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors and the Creditors' Committee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  The Liquidating Trustee shall pay all Allowed Administrative Claims (other than Professional Fee Claims) not later than ten (10) business days after such Claims become Allowed, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Administrative Claim.  **Any Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the Bankruptcy Court by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court**

---

[3] Paid from proceeds of available Insurance Policies.

**or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Final Administrative Claim Bar Date is the date that is thirty (30) days after the Effective Date of the Plan.**

ii. <u>Professional Fee Bar Date</u>.   Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.   The Liquidating Trustee shall pay all Allowed Professional Fee Claims not later than five (5) business days after entry of an Order by the Bankruptcy Court allowing such Claim, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Professional Fee Claim. Notwithstanding any interim distributions on compensation that have occurred to date, all Professional Fee Claims shall be paid ratably.  If the Debtors are unable to pay Professional Fee Claims, such claim shall be paid first from any future recoveries on the Pottsville Insider Avoidance Action.  **If an application for a Professional Fee Claim is not Filed with the Bankruptcy Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.  The Professional Fee Bar Date is forty-five (45) days after the Effective Date of the Plan.**

b) <u>The Pottsville Post-Petition Assessment Claim</u>. The Pottsville Post-Petition Assessment constitutes an Allowed Administrative Claim.  Upon final payment in full of Allowed Administrative Claims, the Holder of the Allowed Pottsville Post-Petition Assessment Claim will receive, in full satisfaction of such claim its pro rata share of 25 percent (25%) from the proceeds of the Pottsville Insider Avoidance Action, after payment of the reasonable compensation of the Pottsville Liquidating Trustee pursuant to Section 6.3 of the Plan, up to the full amount of any such Allowed Claim.  The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Post-Petition Assessment Claim.  The Holder of the Allowed Pottsville Post-Petition Assessment Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property.

c) <u>U.S. Trustee Fees</u>.  All fees under 28 U.S.C. § 1930(a) and any interest thereon under 31 U.S.C. § 3717 (together, "<u>Statutory Fees</u>") payable on or before the Effective Date shall be paid by the Debtors in full in cash on the Effective Date.  On and after the Effective Date, the post-Effective Date Debtors, the Liquidating Trustee, and the Liquidating Trust shall remain jointly and severally liable for paying any and all Statutory Fees in full in cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the post-Effective Date Debtors, the Liquidating Trustee, and/or the Liquidating Trust shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR.  Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the United States Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory

Fees; and (iii) the United States Trustee shall not be treated as providing any release under the Plan..

d)    <u>Disputed Unclassified Claims</u>.  Except as otherwise set forth in this Article 4.2, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article VI of the Plan.

**4.3.    Identification of Classes of Claims and Interests**

The following shall constitute the Classes of Claims and Interests under this Plan:

a)    **Class 1**: Class 1 shall contain the Pottsville Secured Lender's Claim

b)    **Class 2**: Class 2 shall contain Pottsville Other Secured Claims

c)    **Class 3**: Class 3 shall contain Pottsville Priority Tax Claims

d)    **Class 4**: Class 4 shall contain the Pottsville Priority Unsecured Non-Tax Claims

e)    **Class 5**: Class 5 shall contain Pottsville General Unsecured Claims

f)    **Class 6**: Class 6 shall contain the Pottsville Insured Claim

g)    **Class 7**: Class 7 shall contain the Pottsville Intercompany Claims

h)    **Class 8**: Class 8 shall contain the Pottsville Interests of each of the Debtors

**4.4.    Treatment of Classified Claims and Interests**

a)    <u>Treatment of the Pottsville Secured Lender's Claim (Class 1)</u>: The Holder of the Pottsville Secured Lender's Claim has received, out of the proceeds of the Pottsville Sale closing, and in full and final satisfaction of such Allowed Class 1 Claim, payment in full in Cash of its Allowed Pottsville Secured Lender's Claim. **Such Claim in Class 1 is, therefore, Unimpaired and not entitled to vote on the Plan.**

b)    <u>Treatment of Pottsville Other Secured Claims (Class 2)</u>: Each Holder of an Allowed Pottsville Other Secured Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) payment in full of its Allowed Pottsville Other Secured Claim; (ii) the collateral securing its Allowed Claim; or (iii) such other treatment as the Liquidating Trustee, and the Holder of such Allowed Claim shall have agreed. For the avoidance of doubt, the amount of the Allowed Pottsville Other Secured Claim shall not exceed the value of the relevant creditors' collateral. **Such Claims in Class 2 are, therefore, Unimpaired and not entitled to vote the Plan.**

c)    <u>Treatment of Pottsville Priority Tax Claims (Class 3)</u>: On, or as soon as reasonably practicable after the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville

Priority Tax Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of Pottsville Liquidating Trust Interests. **Such Claims in Class 3 are, therefore, Impaired and entitled to vote on the Plan.**

The Holders of an Allowed Pottsville Priority Tax Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Pottsville Priority Tax Claim. The Holder of an Allowed Pottsville Priority Tax Claim will not assess or attempt to collect such penalty from the Pottsville Debtors, the Pottsville Liquidating Trust, or their respective property. For the avoidance of doubt, nothing in this Plan, Disclosure Statement, or Confirmation Order shall be a determination that any Pottsville Pre-Petition Assessment Claim does or does not constitute or be deemed to constitute, a Tax or a Priority Tax Claim under section 507(a)(8) of the Bankruptcy Court."

d)      Treatment of Pottsville Priority Unsecured Non-Tax Claims (Class 4): Each Holder of an Allowed Pottsville Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Claim, either: (i) Cash equal to the unpaid amount of such Allowed Claim; or (ii) such other treatment as the Liquidating Trustee and the Holder of such Allowed Claim shall have agreed. **Such Claims in Class 4 are, therefore, Unimpaired and not entitled to vote on the Plan.**

e)      Treatment of Pottsville General Unsecured Claim, including Rejection Damages Claim (Class 5): On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Liquidating Trustee agree to a less favorable treatment, each Holder of an Allowed Pottsville General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Claim its Pro Rata share of the Pottsville Liquidating Trust Interests. **Such Claims in Class 5 are, therefore, Impaired and entitled to vote on the Plan.**

f)      Treatment of Pottsville Insured Claim (Class 6):  Except to the extent that a Holder of a Pottsville Insured Claim agrees to different treatment, or unless otherwise provided by an order of the Bankruptcy Court directing such Holder's participation in any alternative dispute resolution process, on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of a Pottsville Insured Claim will have received or shall receive on account of its Claim relief from the automatic stay under section 362 of the Bankruptcy Code and the injunctions provided under this Plan for the sole and limited purpose of permitting such Holder to seek recovery, if any, as determined and Allowed by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim from the applicable and available Insurance Policies maintained by or for the benefit of any of the Debtors. A Holder's recovery of insurance proceeds under the applicable Insurance Policy(ies) shall be the sole and exclusive recovery on a Pottsville Insured Claim, subject to any recovery of an Insured Deficiency Claim, as described in the next paragraph. Any settlement of a Pottsville Insured Claim within a self-insured retention or deductible must be approved by the Debtors or Liquidating Trustee, as applicable.

In the event the applicable Insurer denies the tender of defense or there are no applicable or available insurance policies, or proceeds from applicable and available insurance policies have been exhausted or are otherwise insufficient to pay in full a Holder's recovery, if any, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Pottsville Insured Claim, on account of such Claim, then such Holder shall be entitled to its Pro Rata share of Pottsville Liquidating Trust Interests based on the amount of an Allowed Claim equal to the amount of the Allowed Pottsville Insured Claim less the amount of available proceeds paid on account of such Allowed Claim from the applicable and available Insurance Policies (the "Insured Deficiency Claim").  In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed Amount of their respective Allowed Insured Deficiency Claim. In no event shall any Holder of an Allowed Insured Deficiency Claim receive payment on account of such Allowed Insured Deficiency Claim in an amount that, when summed with payment to such Holder from any policy of insurance with respect to the Allowed Insured Claim, exceeds the Pro Rata share of Pottsville Liquidating Trust Interests such Holder would have received had the Holder's Claim been classified in Class 5.

Any amount of an Allowed Insured Claim within a deductible or self-insured retention shall be paid by the applicable insurance, in accordance with the applicable Insurance Policy, to the Claim Holder and such Insurer shall have a General Unsecured Claim (or Secured Claim, if it holds collateral) for the amount of the deductible or retention paid, provided that it has timely filed an otherwise not objectionable proof of claim encompassing such amounts. For purposes of retentions and deductibles in any Insurance Policy, including, but not limited to, an Insurance Policy insuring officers, directors, consultants or others against claims based upon prepetition occurrences, the Confirmation Order shall constitute a finding that the Debtors are insolvent and unable to advance or indemnify Insured Claims, from Estate or Debtor funds, for any loss, claim, damage, settlement or judgment of Debtors within the applicable retention or deductible amount. However, the foregoing sentence does not modify the Insurer's right to a claim described in the first sentence of this paragraph. **Such Claims in Class 6 are, therefore, Impaired and entitled to vote on the Plan. Unless otherwise ordered by the Bankruptcy Court, each Holder of a Class 6 Claim shall have a $1.00 vote for each such filed Claim.**

g)      Treatment of Pottsville Intercompany Claims Claims (Class 7): There shall be no Distribution on account of either the Pottsville Intercompany Claims.  Upon the Effective Date, all Pottsville Intercompany Claims will be deemed cancelled and will cease to exist. **Such Claims in Classes 7 are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

h)      Treatment of Pottsville Interests in each of the Debtors (Class 8): The Pottsville Interests in Class 8 are Impaired.  The Holders of the Pottsville Interests in Class 8 shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Pottsville Liquidating Trust, or at the direction of the Liquidating Trustee), and the Holders of the Pottsville Interests shall take nothing under the Plan, provided, however, that all powers and authorities vested in the Pottsville Interests shall be transferred to the Pottsville Liquidating Trust and be exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder.  **Such**

**Pottsville Interests in Class 8 are, therefore, Impaired and deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.**

### 4.5.    Reservation of Rights; No Allowance of Claims

For the avoidance of doubt, notwithstanding the deemed consolidation under this Plan, the Debtors and the Liquidating Trustee reserve all rights to object to any Claim on any basis, and nothing herein shall Allow or be deemed to Allow any Claim, except to the extent a Claim is explicitly Allowed under the Plan by agreement of the Creditors' Committee or the Liquidating Trustee, as applicable.

### 4.6.    Elimination of Vacant Classes

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V:
## <u>CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING</u>

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan and Disclosure Statement will affect any Claim, interest, right, or action with regard to the Debtors.

- The Creditors' Committee can make no assurances that the requisite acceptances to the Plan will be received, and the Creditors' Committee may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Pottsville Liquidating Trust Assets and that will be available to pay to Holders of Allowed Pottsville General Unsecured Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation of the Plan and for certain other conditions that must be satisfied prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

131673501\V-3

- There can be no assurance that exculpation, as provided in Article IX of the Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- There is no assurance regarding whether the Bankruptcy Court will order deemed consolidation of the Debtors and their Estates as proposed.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

**ARTICLE VI:**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

### 6.1.    Plan Funding

This Plan will be funded from the following sources: (i) the Pottsville Remaining Estate Funds; (ii) the Pottsville Remaining Cash; (iii) the Pottsville Net Cash Proceeds; (iv) any refunds, deposits, or other monies owing to the Debtors which were not sold to the Pottsville Buyers; (v) any other monetary recoveries obtained by the Debtors prior to the Effective Date; and (vi) any other monetary recoveries obtained by the Liquidating Trustee after the Effective Date that do not constitute Pottsville Purchased Assets.

### 6.2.    Vesting and Sale or Other Disposition of Liquidating Trust Assets; Liquidating Trust Expenses

(a)    On the Effective Date, the Pottsville Liquidating Trust shall be established in accordance with the Pottsville Liquidating Trust Agreement for the exclusive benefit of the holders of Allowed Claims in Class 3, Class 5, and Class 6, in each case as applicable.  The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  The Liquidating Trustee shall have and perform all the duties, responsibilities, rights, and obligations set forth in the Plan, the Pottsville Liquidating Trust Agreement.  The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(b)    On the Effective Date, and periodically thereafter if additional Pottsville Liquidating Trust Assets become available, the Debtors shall transfer and assign to the Pottsville Liquidating Trust all of their right, title, and interest in and to all of such assets and, in accordance with section 1141 of the Bankruptcy Code, all Pottsville Liquidating Trust Assets shall vest in the Pottsville Liquidating Trust free and clear of all Claims, Liens, charges, other encumbrances, or Interests, except for the interests of any of the respective Holders of the beneficial interests in the Pottsville Liquidating Trust Assets, and subject to Pottsville Liquidating Trust Expenses.  Thereafter, the Debtors shall have no interest in or with respect to the Pottsville Liquidating Trust Assets.

131673501\V-3

(c)    On and after the Effective Date, the Liquidating Trustee may use, acquire, sell, liquidate, dispose, and distribute the Pottsville Liquidating Trust Assets or the proceeds thereof, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan, the Confirmation Order, the Pottsville Liquidating Trust Agreement.

(d)    On and after the Effective Date, the Liquidating Trustee shall also be and shall enjoy the powers of the Debtors' authorized representative for all purposes relating to the Pottsville Liquidating Trust Assets, including, without limitation, under section 1123 of the Bankruptcy Code as well as all administrative functions of the Chapter 11 Cases with respect to the Pottsville Liquidating Trust Assets.  The Liquidating Trustee shall hold the attorney-client privilege of the Debtors with respect to any Pottsville Liquidating Trust Assets.  The Liquidating Trustee shall also have all rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code as well as Bankruptcy Rule 2004, in addition to any powers granted by law or conferred to it by any other provision of the Plan.

(e)    On and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to compromise or settle any Claims, Objections, or Causes of Action, provided that any such compromise or settlement with an aggregate monetary value to the Liquidating Trust that exceeds $50,000 or which is a derivative action under F.R.C.P 23.1, shall be subject to entry of an order from the Bankruptcy Court approving the compromise or settlement upon a motion by the Liquidating Trustee, which such motion shall be considered under the standards applicable to Bankruptcy Rule 9019.

(f)    On and after the Effective Date, the Liquidating Trustee shall be authorized to pay the Pottsville Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, without further order or notice except as set forth herein, provided that nothing in this Plan shall relieve the Debtors or the Liquidating Trustee of any obligation to File post-confirmation operating reports pursuant to applicable law.

(g)    After the Effective Date, the Liquidating Trustee and any professionals retained by the Liquidating Trustee or the Debtors shall File in the Chapter 11 Cases for any period after the Effective Date, no more than monthly, a fee statement (each, a "Fee Statement") setting forth a request for payment and the billing detail for services rendered and actual expenses incurred in that month.  No party may File a Fee Statement more frequently than once a month, and no service of a Fee Statement shall be required except CM/ECF service by Filing on the docket in the Chapter 11 Cases.  The U.S. Trustee and any Holder of a Class 5 Pottsville General Unsecured Claim, notwithstanding whether such Claim has been Allowed, shall have the right to object to payment of any amount sought in a Fee Statement by Filing a written objection no later than twenty-one (21) days after the Filing of the Fee Statement (a "Fee Objection"), which shall set forth, with specificity as to any particular amounts requested, any objections to a Fee Statement.  In the event that no Fee Objection is timely Filed, the Liquidating Trustee shall be authorized to pay 100% of the amount sought in the Fee Statement without further notice or order of the Bankruptcy Court. In the event of a timely Filed Fee Objection, the Bankruptcy Court shall set a hearing on the Fee Objection, and the Bankruptcy Court shall determine whether to sustain or overrule the Fee Objection, provided that the Liquidating Trustee shall be authorized to pay without further notice

or order of the Bankruptcy Court any amounts requested in such Fee Statement that was not subject to the Fee Objection.

### 6.3. Liquidating Trustee

Ronald Winters of Gibbins Advisors shall be the Liquidating Trustee. The Creditors' Committee believes that Mr. Winters is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner. Mr. Winters shall be compensated as set forth in the Pottsville Liquidating Trust Agreement. Any subsequent Liquidating Trustee shall be appointed in accordance with the Pottsville Liquidating Trust Agreement.

### 6.4. Liquidating Trustee's Counsel

Dentons shall serve as initial counsel to the Liquidating Trustee, provided that nothing herein shall prevent the Liquidating Trustee from retaining alternative counsel and terminating initial counsel, and *provided further* that Dentons representation of the Liquidating Trustee shall be limited to representation of the Liquidating Trustee in its representative and fiduciary capacity and not in an individual capacity.

### 6.5. Dissolution

Upon Effective Date, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Debtors and/or the Liquidating Trustee on behalf of the Debtors may take appropriate action to dissolve under applicable law; provided further that the Liquidating Trustee shall be authorized to execute such documents and take such steps as may be necessary and appropriate to implement the final wind down of the Debtors. From and after the Effective Date, the Debtors shall not be required to file any document, or take any action, to withdraw its business operations from Pennsylvania, or any other states where the Debtors previously conducted business. Upon the Effective Date, the Post-Petition Officers shall have no obligation to take any further action for the Debtors, provided however, that the Post-Petition Officers have the authority to take action for the Debtors at the request of the Liquidating Trustee.

### 6.6. Release of Liens and Security Instruments

As of the Effective Date, all Liens against any of the Pottsville Liquidating Trust Assets to be distributed under the Plan shall be fully released, and all of the right, title, and interest of any Holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such Pottsville Liquidating Trust Assets. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Pottsville Liquidating Trust Assets shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 6.7. Cancellation of Notes and Instruments

As of the Effective Date, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtors, be canceled and terminated, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### 6.8.    Purpose of Liquidating Trust

The Liquidating Trusts shall be established for the purpose of liquidating and distributing the Pottsville Liquidating Trust Assets and the proceeds thereof, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Holders of Claims, and making Distributions in accordance with the Plan, the Pottsville Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. section 301.7701-4(d).  The Pottsville Liquidating Trust is intended to qualify as "grantor trusts" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Pottsville Liquidating Trust Beneficiaries treated as grantors and owners of the respective trusts.

**All Holders of Claims entitled to Distributions under the Plan, as a condition to receiving any Distribution, shall provide the Liquidating Trustee with a completed and executed Tax Form W-8 or Tax Form W-9, as applicable, or similar form within forty-five (45) days of a written request by the Liquidating Trustee.  Failure to return the required form will render any Distribution an Unclaimed Distribution without further order of the Court.**

### 6.9.    Preservation of All Causes of Action and Standing

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtors or the Estates may have against any Person or Entity that constitute Causes of Action, subject to the provisions of this Plan.  The Liquidating Trustee shall have standing on behalf of the Debtors and the Estates for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Pottsville Liquidating Trust Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan.

### 6.10.    Effectuating Documents and Further Transactions

On and after the Effective Date, the Liquidating Trustee shall be authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors, the Pottsville Liquidating Trust, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan.

**6.11.    D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.**

Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any directors and officers insurance policy, employment practices or similar liability insurance policy (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**6.12.    Dissolution of Creditors' Committee**

Upon and after the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity solely to prepare and prosecute applications for the payment of Professional Fee Claims incurred by the Creditors' Committee's Professionals.  Following the completion of the foregoing, the Creditors' Committee shall be dissolved, and the members of the Creditors' Committee shall be discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

**6.13.    Reserved.**

**6.14.    Records**

Upon the Effective Date, the Liquidating Trustee may retain those documents maintained by the Debtors in the ordinary course of business and which were not otherwise transferred to a third party prior to the Effective Date.  After the Effective Date, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment without further order from the Bankruptcy Court; *provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including, but not limited to, tax documents, that the Pottsville Liquidating Trust is required to retain under applicable law.

**6.15.    Final Decree**

At any time following the Effective Date, the Liquidating Trustee shall be authorized to File a motion for entry of a final decree closing the Chapter 11 Cases.

**6.16.    Interim Distributions; Disputed Claim Reserve**

The Liquidating Trustee shall make an initial interim Distribution (the "Initial Pottsville Distribution") to Holders of Allowed Pottsville Priority Tax Claims in Class 3 and Allowed Pottsville General Unsecured Claims in Class 5 from available Cash as soon as practicable after the Effective Date.  For purposes of the Initial Pottsville Distribution, the Liquidating Trustee shall: (i) estimate the amount of each Disputed Claim in Class 5 at such time; and (ii) reserve: (y) sufficient Cash (the "Pottsville Disputed Claim Reserve") to make the Pro Rata Initial Pottsville Distribution to the Holders of such Disputed Claims in such Classes if such Disputed Claims become Allowed Claims, and (z) sufficient Cash to fund any remaining Pottsville Liquidating Trust Expenses.  Following the Initial Pottsville Distribution, the Liquidating Trustee shall make subsequent Distributions on an interim basis to Holders of Allowed Claims with a beneficial interest in the Pottsville Liquidating Trust Assets (including disbursing Cash from the Pottsville

25

Disputed Claim Reserve to the extent such Cash no longer warrants reservation) on a rolling basis as soon as practicable in the Liquidating Trustee's reasonable discretion.

### 6.17.    Intercompany Claims

Entry of the Confirmation Order shall constitute an order Disallowing all Pottsville Intercompany Claims in their entirety.

## ARTICLE VII:
## EXECUTORY CONTRACTS

### 7.1.    Rejection of Executory Contracts and Unexpired Leases

**Pursuant to the Pottsville Sale Order, all contracts and leases of the Debtors other than the Assumed Contracts (as defined therein) were deemed rejected by the Debtors, in accordance with section 365 of the Bankruptcy Code, effective as of the date the Pottsville Sale closed, which occurred on February 1, 2025 [see Docket No. 655].**

### 7.2.    Bar Date for Rejection Damages Claims

**If the rejection of an Executory Contract pursuant to the Pottsville Sale Order or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Pottsville Debtors, their Estates, and/or the Pottsville Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.  Allowed Rejection Claims against the Pottsville Debtors shall be classified as Class 5 Pottsville General Unsecured Claims, as described in Article IV hereof.**

### 7.3.    Insurance Policies

For the avoidance of doubt, the Pottsville Debtors' rights with respect to all Insurance Policies under which the Pottsville Debtors may be an insured beneficiary or assignee (including all Insurance Policies that may have expired prior to the Pottsville Petition Date, all Insurance Policies in existence on the Pottsville Petition Date, all Insurance Policies entered into by the Pottsville Debtors after the Pottsville Petition Date, and all Insurance Policies under which the Pottsville Debtors hold rights to make, amend, prosecute, and benefit from claims) shall be transferred to the Pottsville Liquidating Trust (including, without limitation, for the Pottsville Liquidating Trustee to pursue and prosecute any Causes of Action) on the Effective Date, unless any such Insurance Policy is otherwise cancelled by the Pottsville Liquidating Trustee in its discretion.

Notwithstanding any provision providing for the rejection of Executory Agreements, any Insurance Policy that is deemed to be an Executory Agreement shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee, which shall retain the right to assume or reject any such Executory Agreements pursuant to and subject to the provisions of section 365 following the Effective Date, with all rights of the Insurers to object or otherwise contest such assumption or rejection being expressly reserved

provided, that, the Liquidating Trustee may not reject (a) any extended reporting period (tail) coverage purchased by the Debtors and (b) any Insurance Policies assumed by the Pottsville Debtors pursuant to an order of the Bankruptcy Court. Such motion shall be filed by the Liquidating Trustee as soon as practicable after the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any of the Insurance Policies requiring a cure payment and that nothing in the Pottsville Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action.

Nothing in the Plan or in the Confirmation Order shall preclude any Person from asserting in any proceeding any and all Claims, defenses, rights or causes of action that it has or may have under or in connection with any Insurance Policy, and nothing in the Plan or the Confirmation Order shall be deemed to waive any claims, defenses, rights or causes of action that any Person (including any Insurer) has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the subject Insurance Policies. Nothing in this Plan shall diminish, impair or otherwise affect payments from the proceeds or the enforceability of any Insurance Policies that may cover (a) Claims by the Debtor, or (b) Claims against the Debtors or covered Persons.

### ARTICLE VIII:
### PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTION OF LIQUIDATING TRUST ASSETS

#### 8.1.    Right to Object to Claims

The Liquidating Trustee shall have authority, but not the obligation, to do any of the following with respect to any Claims or Interests after the Effective Date and prior to or on the Claims Objection Deadline: (i) File, withdraw, or litigate to judgment, Objections to and requests for estimation of Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, subject to the limitations set forth in this Plan or the Confirmation Order; and (iii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court or any other party.  The Liquidating Trustee shall succeed to any pending Objections to Claims Filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

#### 8.2.    Disallowance of Claims.

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been

entered and all sums due, if any, to the Pottsville Debtors by that Entity have been turned over or paid to the Pottsville Debtors or the Liquidating Trustee.

**Except as provided herein, pursuant to a Bankruptcy Court order or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

### 8.3. Distribution Provisions

a)   **Distributions to be Made and Adequate Reserves**.   The Liquidating Trustee shall be responsible for making Distributions under the Plan, except those required before the Effective Date, which the Debtors shall make.   The Liquidating Trustee shall establish and maintain a reasonable reserve of Cash to satisfy anticipated Pottsville Liquidating Trust Expenses until the Pottsville Liquidating Trusts are dissolved.

b)   **No Liability**.   The Liquidating Trustee shall only be required to act and make Distributions in accordance with the terms of the Plan, the Pottsville Liquidating Trust Agreement, and related documents.   Except on account of gross negligence, fraud, illegality, or willful misconduct, the Liquidating Trustee shall have no: (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to him or her in accordance with the Plan, the Pottsville Liquidating Trust Agreement and related documents; or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan, the Pottsville Liquidating Trust Agreement and related documents.

c)   **Distributions on Account of Disputed Claims**.   Except as otherwise provided in the Plan, a Final Order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidating Trustee at such periodic intervals as the Liquidating Trustee determines to be prudent in his or her discretion.

d)   **No Distributions Pending Disputes**.   (a) No Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim; and (b) unless agreed otherwise by the Liquidating Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and/or the Cause of Action (as applicable) have been resolved by agreement with the Liquidating Trustee or by a Final Order.   Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan, and where such treatment provides for Cash payment on the Effective Date for such Claim, payment shall be made as soon as practicable after becoming an Allowed Claim.

e)        **Unclaimed Distributions**.  Any Person and/or Entity that fails to claim any Cash within forty-five (45) days from the date upon which a Distribution is first made to such Person and/or Entity or fails to return any required tax forms or information requested by the Liquidating Trustee shall forfeit all rights to all Distributions to such Person and/or Entity under the Plan, and the Liquidating Trustee shall be authorized to cancel any Distribution that is not timely claimed; provided that the Liquidating Trustee shall make reasonable efforts to find an updated address for such Person and/or Entity who has failed to claim the Distribution.  Upon forfeiture, the Holder of such Claim or Interest shall be deemed to have irrevocably waived such Claim or Interest and shall be forever barred from recovering on such Claim or Interest against the Debtors, the Estates, and/or the Pottsville Liquidating Trust.

f)        **Delivery of Distributions and Undeliverable Distributions to Holders of Claims**.  Distributions to Holders of Allowed Claims shall be made to Holders of record as of the date of a Distribution by the Liquidating Trustee, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtors has not received a written notice of a change of address prior to the Effective Date.

g)        **Undeliverable Distributions**.   The Liquidating Trustee shall make reasonable efforts to attempt to locate Holders of undeliverable or Unclaimed Distributions to determine an alternative address for such Distributions.   Any Distributions returned to the Liquidating Trustee as undeliverable or the like shall remain in the possession of the Liquidating Trust for administration in accordance with this Plan, and the Liquidating Trustee reserves the right not to make further Distributions to such Holder.

h)        **De Minimis Distributions**.  If any individual Distribution under the Plan to a Holder of an Allowed Claim would be less than $50, the Liquidating Trustee may, but is not required to, cancel such Distribution.

i)        **Remainder Amounts after Final Distribution**.  After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and undeliverable Distributions is less than $5,000.00, in lieu of making additional Distributions, the Liquidating Trustee may donate such amount to another not for-profit, non-religious organization as determined by the Liquidating Trustee.

## ARTICLE IX:
## EXCULPATION, RELEASES AND INJUNCTION

**9.1.    Exculpation and Limitation of Liability**

(a)        **Effective as of the Effective Date, to the extent permitted under sections 1103(c) and 1125(e) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Exculpated Parties, to the extent of such Exculpated Party's involvement in the Chapter 11 Cases, shall neither have nor incur any liability to any Entity or Person for**

any claims or causes of action arising on or after either the Pottsville Petition Date and before the Effective Date for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or (iii) the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; provided, further, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

(b)    The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

(c)    None of the Non-Released Parties shall be Exculpated Parties.

9.2.    [Reserved]

9.3.    Injunction

A)    FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES WHOSE CLAIMS HAVE BEEN RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THIS PLAN SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED, DISALLOWED, EXCULPATED, OR SETTLED, OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

B)    FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATION GRANTED IN ARTICLE 9.1 OF THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND,

30

**LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED, DISALLOWED, EXCULPATED, OR SETTLED OR TO BE RELEASED, DISALLOWED, EXCULPATED, OR SETTLED UNDER THE PLAN.**

**C)    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLE 9.1, SHALL BE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, DISALLOWED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

### ARTICLE X:
### CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**10.1.    Conditions Precedent to Confirmation**

It shall be a condition to confirmation hereof that the Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Creditors' Committee.

**10.2.    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied:

a)    The Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Creditors' Committee, and the Confirmation Order shall be a Final Order; and

b)    No order of a court of competent jurisdiction shall have been entered and remain in effect restraining the Creditors' Committee from consummating the Plan and the transactions contemplated therein.

31

### 10.3.    Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors or the Estates; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Creditors' Committee, any Creditors or Interest Holders, or any other Entity in any respect.  If the Effective Date does not occur, nothing herein shall prevent the Debtors or the Creditors' Committee from filing a new proposed plan of liquidation.

### 10.4.    Filing of Notice of the Effective Date

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtors shall File a notice of the Effective Date with the Bankruptcy Court.  The Debtors shall not be required to serve the notice of Effective Date on any party other than those parties that receive notice via the Bankruptcy Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

### ARTICLE XI:
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

### 11.1.    Modification and Amendments

Except as otherwise specifically provided herein, the Creditors' Committee reserve the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan.  In addition, prior to the Effective Date, the Creditors' Committee may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.2.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3.    Revocation or Withdrawal of the Plan

The Creditors' Committee reserve the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Creditors' Committee having the ability or right to File another plan in the future.

### ARTICLE XII:
### <u>JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

a)      To allow, disallow, determine, liquidate, classify, or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

b)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

e)      To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee;

g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, or any other related proceedings by the Debtors, and to enter and enforce any default judgment on any of the foregoing;

h)      To decide or resolve any and all applications for Professional Fee Claims;

i)      To issue orders in aid of execution and implementation of the Plan to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

j)      To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan;

k)      To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

l)      To enter an order closing the Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

**ARTICLE XIII:**
**MISCELLANEOUS**

### 13.1.    Exemption from Taxes

To the extent the Plan and the Confirmation Order provide for: (a) the issuance, transfer, or exchange of notes, debt instruments, and equity securities under or in connection with the Plan; and (b) the creation, execution, and delivery of agreements or other documents creating or evidencing the formation of the Pottsville Liquidating Trust and any right or interest in such Liquidating Trusts, pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.2.    Compliance with Tax Requirements

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution.

**The Liquidating Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation, or certification as may be requested by the Liquidating Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W- 9, Form W-8, or other requested tax form within forty-five (45) days after the date of the Liquidating Trustee's initial request, the Liquidating Trustee may reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, rendering such Distribution an Unclaimed Distribution, (ii) any such Distribution shall revert to the source of such Distribution for Distribution on account of other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidating Trustee reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and similar encumbrances.**

### 13.3.    Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim

131673501\V-3

and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose either before the Petition Date that the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee may have against the Holder of such Claim or Interest.

### 13.4.   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof.

### 13.5.   Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 13.6.   Debtors' Post-Confirmation Management

On and after the Effective Date, the Debtors' Post-Petition Officers shall continue to act solely to the limited extent necessary to: (i) facilitate the filing of tax returns; and (ii) complete any other tasks the Post-Petition Officers reasonably determines are necessary to wind down the Debtors and the Estates which are not the responsibility of the Liquidating Trustee.  Fees and expenses related to the foregoing shall be deemed and funded as Pottsville Liquidating Trust Expenses, respectively, subject to the notice, Filing, and objection provisions of Article VI of this Plan prior to payment.

### 13.7.   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  Notwithstanding anything to the contrary herein or in the Plan, the Debtors shall not receive a discharge as set forth in section 1141(d)(3)(a) of the Bankruptcy Code.

### 13.8.   Severability of Plan Provisions

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void, or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or

unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtors.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.**

### 13.9.   Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Creditors' Committee reserve the right to amend the exhibits to the Plan any time prior to confirmation, subject to reasonable notice.

### 13.10.   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee, with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

### 13.11.   Conflicts Among Plan Documents

To the extent of a conflict between the Plan and/or the Disclosure Statement and the Confirmation Order, the Confirmation Order shall govern.

### 13.12.   Recommendation

In the opinion of the Creditors' Committee, the Plan is superior and preferable to the alternatives described in the Disclosure Statement.  Accordingly, the Creditors' Committee recommends that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support confirmation.

131673501\V-3

Dated: November 14, 2025                   Respectfully submitted,
      Pittsburgh, Pennsylvania


**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**


By: _/s/ Monte Green_____
      Monte Green
      Committee Chair

**<u>Exhibit A</u>**

**Pottsville Liquidating Trust Agreement**

## Exhibit 2

**Pottsville Feasibility/Liquidation Analysis**

## Pottsville Liquidation Analysis

## I. INTRODUCTION

The Committee of Unsecured Creditors, with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (the "**Pottsville Liquidation Analysis**") in connection with the Plan pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a chapter 11 plan unless the plan provides each holder of an impaired Claim against or Interest in the Debtors either (i) has accepted the Plan or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code, the following Pottsville Liquidation Analysis was prepared to compare hypothetical recoveries under a chapter 7 liquidation to the estimated recoveries under the chapter 11 liquidation contemplated in the Plan.

**Statement of Limitations**

The determination of the costs of, and potential litigation proceeds from, both the proposed chapter 11 plan of liquidation and a hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Creditors' Committee together with their legal and financial advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Creditors' Committee and their advisors. Inevitably, some assumptions in the Pottsville Liquidation Analysis may not materialize, and unanticipated events and circumstances could materially affect the ultimate results in both scenarios. The Pottsville Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the creditor recoveries that may result under the Plan and under a hypothetical chapter 7 bankruptcy scenario. The Pottsville Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Pottsville Liquidation Analysis was not compiled or examined by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

THE POTTSVILLE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PLAN EFFECTIVE DATE. THE POTTSVILLE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE POTTSVILLE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE POTTSVILLE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION. NOTHING CONTAINED IN THE

POTTSVILLE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM AGAINST THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES ARE CURRENTLY UNKNOWN AND COULD MATERIALLY DIFFER FROM THE AMOUNTS ILLUSTRATED HEREIN. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE POTTSVILLE LIQUIDATION ANALYSIS.

**Basis of Presentation**

The Pottsville Liquidation Analysis is based on an estimate of assets and liabilities as of August 15, 2025 (except as otherwise indicated). As noted above, the actual assets available to the Debtors' Estates and expenses arising under both the Plan scenario and the chapter 7 liquidation scenario may differ from the amounts illustrated in this liquidation analysis.

The Creditors' Committee has neither fully evaluated all claims filed against the Debtors or adjudicated such claims before the Bankruptcy Court. Accordingly, the amount and priority of the final Allowed Claims against the Debtors' Estates may differ materially from the claim amounts used in the Pottsville Liquidation Analysis.

The Pottsville Liquidation Analysis compares the Plan to the hypothetical chapter 7 liquidation under two scenarios: a low recovery scenario (the "**Low**") and a high recovery scenario (the "**High**").

**Appointment of Chapter 7 Trustee**

The Pottsville Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to chapter 7 cases on or about September 30, 2025 (the "**Chapter 7 Conversion Date**"). It is assumed that, on the Chapter 7 Conversion Date, the Bankruptcy Court would appoint a chapter 7 trustee who would oversee the liquidation of the Debtors' Estates, during which time any of the Debtors' remaining assets would be monetized, and all of the Debtors' cash proceeds, net of any liquidation-related costs and other Administrative Expenses and Priority Claims, would be distributed in order to satisfy Allowed Claims and interests in accordance with the priority scheme set forth in the Bankruptcy Code.

**Substantively Consolidated Liquidation**

Consistent with the Plan, the Pottsville Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered process and would be substantively consolidated for distribution purposes. Therefore, claims against multiple Debtors will be disallowed. No distributions are made on account of intercompany claims. In the event that the Debtors were to be liquidated in separately administered chapter 7 cases, the administrative costs to the Debtors in each of the cases, including professional fees, chapter 7 trustee fees, and the Debtors' operational costs would likely be higher than if the cases were consolidated.

**Values**

Both the Plan and a chapter 7 proceeding would result in the complete liquidation of the Debtors. As such, unless otherwise stated, the Pottsville Liquidation Analysis is based on estimated recoveries under the Plan, as adjusted for the impact of liquidating under a chapter 7 process.

The Creditors' Committee believes that a chapter 7 liquidation would in general result in lower recoveries due to a number of factors, including but not limited to higher chapter 7 trustee fees vs. the fees to be charged by the liquidating trustee in a chapter 11 liquidation and higher estimated professional fees under the chapter 7 liquidation. Under a chapter 7 liquidation, the trustee would need to retain legal and financial advisors, requiring additional time and effort to gain case knowledge that would not otherwise be necessary under a chapter 11 liquidation.

**Additional Global Notes and Assumptions**

The Pottsville Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1. *Chapter 7 liquidation costs and length of liquidation process.* The Creditors' Committee has assumed that liquidation would occur over approximately 12 months in order to pursue an orderly monetization of the Estate's remaining assets, including the pursuit of Causes of Action, as well as to reconcile claims, arrange distributions and otherwise administer and close the Estates. In an actual chapter 7 liquidation, the wind-down process and time-period could vary significantly, thereby impacting recoveries. For example, it is possible that it may require a longer period of time to monetize certain assets, including the Causes of Action, and it is possible that certain Priority, Contingent, and other claims, litigation, and delays in the final determination of Allowed Claims could substantially impact both the timing and amount of the distribution of the asset proceeds to creditors. Accordingly, there can be no assurance that the values reflected in the Pottsville Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

2. *Certain exclusions and assumptions.* Priority tax obligations, if any, may not have been factored into this liquidation analysis. Once fully determined and adjudicated, the final amount of Allowed Priority Claims could have a material impact on the potential recoveries illustrated herein.

## II. <u>CONCLUSION</u>

**THE CREDITORS' COMMITTEE HAS DETERMINED, AS SUMMARIZED IN THE FOLLOWING POTTSVILLE LIQUIDATION ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS NOT LESS THAN WHAT THEY MAY OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, AND AS SUCH BELIEVE THAT THE PLAN SATISFIES THE REQUIREMENT OF 1129(A)(7) OF THE BANKRUPTCY CODE.**

# III. LIQUIDATION ANALYSIS

| PA6 - Liquidation Analysis | | | | |
|---|---|---|---|---|
| | Plan of Reorganization | | Chapter 7 Liquidation | |
| *$ in 000s* | LOW | HIGH | LOW | HIGH |
| **Proceeds:** | | | | |
| Cash Proceeds | $ 53,000 | $ 53,000 | $ 53,000 | $ 53,000 |
| Pottsville Buyers Note | 10,000 | 10,000 | - | 5,000 |
| Cash and Cash Equivalents (as of 8/15) | 4,004 | 4,004 | 4,004 | 4,004 |
| **Total Proceeds Available for Distribution** | **$ 67,004** | **$ 67,004** | **$ 57,004** | **$ 62,004** |
| | | | | |
| **Expenses:** | | | | |
| Est. Wind-Down Expenses | (1,134) | (1,134) | (1,134) | (1,134) |
| **Net Proceeds Available After Wind-Down Expenses** | **$ 65,870** | **$ 65,870** | **$ 55,870** | **$ 60,870** |
| | | | | |
| **Administrative Claims:** | | | | |
| Est. Administrative Claims | (1,500) | (1,000) | (2,063) | (1,773) |
| *Recovery %* | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| *Remaining Distributable Value* | *$ 64,370* | *$ 64,870* | *$ 53,807* | *$ 59,097* |
| | | | | |
| **Secured and Priority Claims:** | | | | |
| Est. Secured and Priority Claims | (53,256) | (53,256) | (53,256) | (53,256) |
| *Recovery %* | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| *Remaining Distributable Value* | *$ 11,115* | *$ 11,615* | *$ 551* | *$ 5,841* |
| | | | | |
| **Est. Litigation Recoveries** | **$ 8,000** | **$ 12,000** | **$ 2,000** | **$ 4,000** |
| Est. Postpetition Assessment Claim | (2,519) | (2,519) | (2,519) | (2,519) |
| *Recovery $ (assuming 25% allocation)* | *2,000* | *2,519* | *500* | *1,000* |
| *Recovery %* | *79.4%* | *100.0%* | *19.8%* | *39.7%* |
| | | | | |
| 75% of Est. Litigation Recoveries | $ 6,000 | $ 9,000 | $ 1,500 | $ 3,000 |
| Remain. Est. Litigation Recoveries | - | 481 | - | - |
| Other Distributable Value | 11,115 | 11,615 | 551 | 5,841 |
| **Total Distributable Value for GUCs** | **$ 17,115** | **$ 21,096** | **$ 2,051** | **$ 8,841** |
| | | | | |
| **General Unsecured Claims:** | | | | |
| Est. General Unsecured Claims | (33,675) | (27,214) | (33,675) | (27,214) |
| Priority Assessment Claim (Prepetition) | (17,567) | (17,567) | (17,567) | (17,567) |
| Est. Assessment Deficiency Claim (Postpetition) | (519) | - | (2,019) | (1,519) |
| Est. Insured Claim | - | - | - | - |
| **Total Est. General Unsecured Claims** | **$ (51,762)** | **$ (44,781)** | **$ (53,262)** | **$ (46,300)** |
| *Recovery %* | *33.1%* | *47.1%* | *3.9%* | *19.1%* |
| *Remaining Distributable Value* | *$ -* | *$ -* | *$ -* | *$ -* |
| | | | | |
| **Intercompany and Interest Claims:** | | | | |
| Est. Intercompany Claims | - | - | - | - |
| Est. Pottsville Interest Claims | (33,432) | (33,432) | (33,432) | (33,432) |
| **Total Est. Intercompany and Interest Claims** | **$ (33,432)** | **$ (33,432)** | **$ (33,432)** | **$ (33,432)** |
| *Recovery %* | *-* | *-* | *-* | *-* |
| *Remaining Distributable Value* | *$ -* | *$ -* | *$ -* | *$ -* |

## IV. GENERAL ASSUMPTIONS AND NOTES

**Estimated Proceeds:**

1. **Cash Proceeds -** The purchase price of $63,000,000 for the sale of substantially all of the Pottsville Debtors' assets, other than accounts, claims, encumbrances, and interests, consisted of $53,000,000 in cash and $10,000,000 as a promissory note. The cash proceeds were first remitted to Oxford Finance, LLC for application to its debt in an amount sufficient to pay its debt in full, plus any unpaid attorney fees after application of cash reserves. Any cash proceeds in excess of amounts required to pay Oxford Finance, LLC were paid to the DIP lender in full satisfaction of DIP obligations. Any excess amounts were to be held by the Debtors.

2. **Pottsville Buyers Note -** The Pottsville Buyers Note has an initial principal amount of $10,000,000, which has a term of 2 years, bears 0% interest, and provides for the payment of $3,000,000 on the first anniversary of the sale closing and the remaining balance upon maturity of the note. The purchase price is subject to certain credits and prorations included in the Sale Order and OTA. The Pottsville Liquidation Analysis assumes the full $10,000,000 Holdback Note is collected in a chapter 11 liquidation and assumes a $0 to $5,000,000 recovery in a chapter 7 liquidation.

3. **Cash and Cash Equivalents -** As of August 15, 2025, the Debtors have a cash balance of $4,004,388.04 which is available for wind-down expenses and distribution to creditors.

4. **Estimated Litigation Recoveries -** Estimated Litigation Recoveries includes potential assets available for distribution if any causes of action are pursued. The amounts included in the Liquidation Analysis serve as a placeholder and actual recoveries may vary significantly. There are no assurances that any of the Estates' Causes of Action would be pursued by the chapter 7 trustee or the Liquidating Trustee. The Creditors' Committee estimates a 66.67% to 75% discount in a chapter 7 liquidation as compared to a chapter 11 liquidation.

   The Pottsville Liquidation Analysis assumes 25% of litigation proceeds will be utilized to satisfy the Postpetition Pottsville Assessment Claim, until full satisfaction of the claim, and 75% will be allocated to General Unsecured Creditors. To the extent that the Postpetition Pottsville Assessment Claim is not satisfied in full, the deficiency claim will be paid ratably as a General Unsecured Claim.

**Estimated Wind-Down Expenses:**

5. **Estimated Wind-Down Expenses** - Estimated Wind-Down Expenses consist of $1,133,941.40 of expenses projected to be paid in the wind-down of the Estate. Expenses consist of trailing AP and professional fee payments projected through September 30, 2025.

**Administrative Claims:**

6. **Estimated Administrative Claims -** Under both scenarios we assume a 12-month wind-down period where professional fees and expenses are incurred. A description of the assumptions used to estimate total administrative expenses under the hypothetical chapter 7 liquidation and the chapter 11 liquidation assumed in the Plan are as follows:

   - **Est. Chapter 11 Trustee Fees:** The Creditors' Committee has included an estimate ranging from $1,000,000 to $1,500,000 for chapter 11 trustee professional fees. Actual fees and expenses incurred by the chapter 11 trustee and its supporting professionals may vary.

   - **Est. Chapter 7 Trustee Fees:** The chapter 7 trustee fees are estimated at approximately 3.0% of gross proceeds available for distribution to General Unsecured Creditors.

   - **Est. Chapter 7 Professional Fees:** Assumes chapter 7 professional fees are 33.3% to 50% higher than the amount estimated for chapter 11 professionals. Chapter 7 professional fees include the cost of attorneys, accountants, and other professionals that the chapter 7 trustee would likely retain to assist in the liquidation process. Since the chapter 7 trustee would need to retain professionals who have not already been involved in the case, there would likely be certain inefficiencies. These inefficiencies could increase the costs as compared to the costs anticipated under the Plan.

**Estimated Creditor Recoveries:**

7. **Secured and Priority Claims -** A description of amounts included within Secured and Priority Claims under the hypothetical chapter 7 liquidation and the chapter 11 liquidation assumed in the Plan are as follows:

   - **Oxford Finance, LLC Term Loan:** $49,366,334.76 was owed and repaid through sale proceeds to Oxford Finance, LLC for prepetition debt and associated fees.

   - **DIP Loan:** Prior to the sale of substantially all of the Pottsville Debtors assets, $1,500,000 was drawn on the DIP financing facility. The DIP claims included in the Pottsville Liquidation Analysis also include an estimated $100,000 for related fees. The DIP claims were repaid through utilization of sale proceeds.

   - **Closing Costs:** Includes $2,289,421.91 for costs paid in conjunction with the sale closing as detailed in the closing statement.

8. **Priority Unsecured Non-Tax Claims -** At the time the Pottsville Liquidation Analysis was prepared, the amount of any potential Allowed Priority Non-Tax Claims is uncertain. As such, there is no amount included for these potential claims.

9. **General Unsecured Claims -** The Pottsville Liquidation Analysis reflects the significant categories that comprise the General Unsecured Claims pool. General Unsecured Claims are under review and reconciliation; thus, the ranges illustrated in the Pottsville Liquidation Analysis could vary materially.

- **Est. General Unsecured Claims:** Includes trade payable claims and temporary relief loan claims included in the Debtors' Schedules of Assets and Liabilities as of the Petition Date. Since General Unsecured Claims are under review, the low scenarios of both the chapter 7 liquidation and chapter 11 liquidation include an estimated 25% of incremental trade payable claims.

- **Priority Pottsville Assessment Claim (Prepetition):** The Pottsville Liquidation Analysis assumes prepetition Pottsville Assessment Claims are Pari Passu to General Unsecured Claims. Amounts included herein reflect amounts listed in the Debtors' Schedules of Assets and Liabilities.

- **Est. Pottsville Assessment Deficiency Claim (Postpetition):** To the extent, the Postpetition Pottsville Assessment Claim is not satisfied in full by the 25% allocation of litigation proceeds, the deficiency claim will be treated as a General Unsecured Claim.

- **Est. Insured Claims:** The Pottsville Liquidation Analysis assumes any insurance claims are Pari Passu to General Unsecured Claims. At the time this liquidation analysis was prepared, the amount of any potential insurance claims is unknown. As such, no amount is included for these potential claims.

10. **Intercompany and Interest Claims -** A description of amounts included within Intercompany and Interest Claims under the hypothetical chapter 7 liquidation and the chapter 11 liquidation assumed in the Plan are as follows:

- **Est. Intercompany Claims:** Since the Pottsville Liquidation Analysis assumes deemed consolidation of the Debtor entities, intercompany claims are excluded from the analysis.

- **Pottsville Interests:** Includes Management Fee Claims, Note Payable Claims, and Rent Claims as of the Petition Date. Amounts included represent claims held by affiliated parties and are per the Debtors' Schedules of Assets and Liabilities.