# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | |
| **POTTSVILLE OPERATIONS, LLC, et al,**[1] | Bankruptcy No. 24-70418-JAD |
| | Chapter 11 |
| Debtor. | |
| | Jointly Administered |
| **POTTSVILLE OPERATIONS, LLC, et al,** | |
| | Related to Doc. Nos. 1710, 1711, and 1715 |
| Movants, | |
| | Hearing Date and Time: |
| v. | January 13, 2026, at 11:00 a.m. |
| **PAMC REALTY, LLC,** | |
| Objecting Party. | |

## OBJECTION TO CONFIRMATION OF
## SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

AND NOW, PAMC Realty, LLC, by its attorneys, Ryan J. Cooney, Paul R. Toigo and James R. Cooney, files the within Objection to Confirmation of Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code dated November 14, 2025 (the "Second Amended Plan"):

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); Yeadon Propco, LLC (5785); Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating LLC (6546); MAPA Operating LLC (3750); Maplewood Operating LLC (0850); Milton Operating LLC (5523); Parkhouse Operating LLC (0140); Tucker Operating LLC (4305); Watsontown Operating LLC (0236); York Operating (2751).

1

**Background:**

1. On October 15, 2024, Pottsville Operations, LLC, along with Pottsville Propco, LLC, Hampton House Operations, LLC, Hampton House Propco, LLC, Kingston Operations, LLC, Kingston Propco, LLC, Williamsport North Operations, LLC, Williamsport Propco, LLC, Williamsport South Operations, LLC, Yeadon Operations, LLC, and Yeadon Propco, LLC (collectively, the "Pottsville Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States District Court for the Western District of Pennsylvania.

2. The bankruptcy cases of the Pottsville Debtors are being jointly administered by this Honorable Court.

3. At the time of filing, the Pottsville Debtors owned and operated six (6) skilled nursing facilities in Pennsylvania as follows:

    A. Pottsville Nursing and Rehabilitation Center located in Pottsville, PA: Pottsville Propco, LLC owned the real estate and Pottsville Operations, LLC operated the business.

    B. Hampton House Rehabilitation and Nursing Center, located in Wilkes Barre, PA: Hampton House Propco, LLC owned the real estate and Hampton House Operations, LLC operated the business.

    C. Kingston Nursing and Rehabilitation Center located in Kingston, PA: Kingston Propco, LLC owned the real estate and Kingston Operations, LLC operated the business.

  D. Williamsport North Rehabilitation Center located in Williamsport, PA: Williamsport Propco, LLC owned the real estate and Williamsport North Operations, LLC operated the business.

  E. Williamsport South Rehabilitation and Nursing Center located in Williamsport, PA: Williamsport Propco, LLC owned the real estate and Williamsport South Operations, LLC operated the business.

  F. Yeadon South Rehabilitation and Nursing Center located in Yeadon, PA: Yeadon Propco, LLC owned the real estate and Yeadon Operations, LLC operated the business.

  4. Although all of the Pottsville Debtors are affiliated, they each had their own bank accounts, employees, managers, assets, operating licenses and unique creditors.

  5. The objecting party, PAMC Realty, LLC ("PAMC Realty"), owns a majority interest in the property companies: Pottsville Propco, LLC, Hampton House Propco, LLC, Kingston Propco, LLC, Williamsport Propco, LLC and Yeadon Propco, LLC.

**The debt to Oxford Finance, LLC:**

  6. Pottsville Propco, LLC, Hampton House Propco, LLC, Kingston Propco, LLC, Williamsport Propco, LLC and Yeadon Propco, LLC (collectively, the "Propcos") were indebted to Oxford Finance, LLC ("Oxford") on a $66 million term loan (the "Oxford Loan"). The Oxford Loan was secured by mortgages recorded against the real estate owned by the Propcos. At the time of filing, there was a remaining balance due of $49,368,523.63 on the Oxford Loan.

3

7. Pottsville Operations, LLC, Hampton House Operations, LLC, Kingston Operations, LLC, Williamsport North Operations, LLC, Williamsport South Operations, LLC, and Yeadon Operations, LLC (collectively, the "Opcos") were indebted to Oxford on a $13 million revolving loan. The revolving loan was secured by UCC financing statements filed against the assets of the Opcos. At the time of filing, the revolving loan had been paid in full but the recorded liens remained in place.

8. At the time of filing, the Oxford Loan was in default, and Oxford had intercepted the Opcos' accounts receivable to pay down the Oxford Loan.

**Other debts:**

9. Other than their debt to Oxford, the Propcos had no substantial debts.

10. By contrast, the Opcos had substantial debts, including:

A. Significant sums owed to vendors and other creditors for goods and services provided.

B. Liability for claims by current and former residents of the nursing centers for negligence, wrongful death and professional liability claims.

C. Nursing Facility Assessments imposed by the Commonwealth of Pennsylvania Department of Human Services.

**The 363 (f) Asset Sale:**

11. On October 15, 2024, the Propcos entered into an Asset Purchase Agreement with six (6) limited liability companies (hereinafter the "Buyers")[2] to

---

[2] The Buyers are affiliates of Eden East Healthcare Management, LLC an entity that provided pre-petition consulting and management services to the Debtors.

4

sell all assets of the Propcos for the sum of $53 million at closing, plus a $10 million Promissory Note payable to the Propcos (the "Pottsville Buyers Note").[3]

12. This Honorable Court approved the Asset Purchase Agreement by its Order entered on January 15, 2025.

13. The Order provided that the sale would be free of all liens and encumbrances pursuant to *11 U.S.C. 363 (f),* and that all claims would attach to the proceeds.

14. A closing on the sale occurred on February 1, 2025.

15. At the closing, the majority of the proceeds were paid to Oxford Finance, LLC to satisfy the Propcos' obligations under the Oxford Loan, and $1,276,741.68 was paid to the Propcos.

**The Disclosure Statement:**

16. On September 15, 2025, the Official Committee of Unsecured Creditors (the "Committee") submitted a Disclosure Statement in connection with a proposed Chapter 11 Plan (Docket No. 1550).

17. On October 20, 2025, the Committee filed an Amended Disclosure Statement (Docket No. 1658).[4]

18. On November 14, 2025, the Committee filed a Second Amended Disclosure Statement (Docket No. 1711).

---

[3] At the same time, the Opcos entered into an Operations Transfer Agreement with the Buyers.
[4] By its Order entered on October 22, 2025, this Honorable Court granted conditional approval of the Amended Disclosure Statement.

5

19. Section 3.2 of the Second Amended Disclosure Statement provides for "Deemed Consolidation" as follows:

(i) All Pottsville Liquidating Trust Assets shall be treated "as pooled."

(ii) All Pottsville Intercompany Claims shall be eliminated.

(iii) Each Claim filed or to be filed against a Pottsville Debtor shall be deemed a single, non-aggregated Claim against, and a single non-aggregated obligation of the Pottsville Debtors.

(iv) All guarantees of a Pottsville Debtor of the payment, performance or collection of obligations of another Pottsville Debtor shall be eliminated and cancelled.

(v) All transfers and distributions on account of Claims made by or on behalf of the Pottsville Debtors' Estates shall be deemed to be made by or on behalf of all of the Pottsville Debtors' Estates.

(vi) Holders of Allowed Claims against the Pottsville Debtors' Liquidating Trust Assets in accordance with the terms of the Plan shall be entitled to distributions from the Pottsville Liquidating Trust Assets in accordance with the terms of the Plan on account of such Claim without regard to which Pottsville Debtor was originally liable for such Claim.

20. Section 2.1 of the Second Amended Plan contains the same language regarding the proposed "Deemed Consolidation". Additionally, the Second Amended Plan generally provides that all assets of the Pottsville Debtors, including the Pottsville Buyer's Note, will be transferred to a liquidating trust for the benefit of all allowed claims.

6

21. A hearing on Confirmation of the Second Amended Plan and Disclosure Statement is scheduled for January 13, 2026.

## GROUNDS FOR OBJECTIONS

22. PAMC Realty hereby submits the within objections to the Second Amended Plan on the grounds that the "deemed consolidation," as proposed by the Creditor's Committee, in reality, results in a "substantive consolidation."

23. PAMC Realty further objects on the grounds that the proponents of the Plan have failed to satisfy the strict requirements needed for substantive consolidation.

### A. Substantive consolidation:

24. Substantive consolidation is defined in *2 Collier on Bankruptcy, P 105.09* (2025) as follows:

> Courts may consolidate the assets and liabilities of different legal entities so that the assets and liabilities are dealt with as if the assets were held by and the liabilities were owed by a single legal entity. This latter form of consolidation is referred to as substantive consolidation. In the words of the Court of Appeals for the Third Circuit, substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor."

See also, *In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005); *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.),* 402 F.3d 416 (3d Cir. 2005).

25. There is nothing in the Bankruptcy Code which provides for substantive consolidation. To the contrary, substantive consolidation is "a

construct of federal common law," that "emanates from equity." *In re Owens Corning,* 419 F.3d 195, 205 (3d Cir. 2005).

### B.  The *Owens Corning* case:

26. The leading case regarding substantive consolidation in the Third Circuit is *In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005).

27. In *Owens Corning,* the United States Court of Appeals for the Third Circuit held that substantive consolidation can result in severe prejudice to both creditors and equity holders. Accordingly*, substantive consolidation should be used sparingly and only as a last resort*. As stated by the Court:

> … because substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this "rough justice" remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).

*In re Owens Corning,* 419 F.3d 195, 211 (3d Cir. 2005).[5]

28. Accordingly, the *Owens Corning* Court held that substantive consolidation is appropriate, **only when** the proponent can establish either that (1) the entities significantly disregarded their separateness or (2) the assets are

---

[5] See also, *Wells Fargo Bank of Texas, N.A. v. Sommers (In re AMCO Insurance),* 444 F.3d 690, 697 (5th Cir. 2006): "Without deciding whether the bankruptcy court has the power to order substantive consolidation, we do note that those jurisdictions that have allowed it emphasize that substantive consolidation should be used "sparingly." See also, *2 Collier on Bankruptcy P 105.09[1][d]* (15th ed. rev. 2025): "[T]here appears to be nearly unanimous consensus that it is a remedy to be used sparingly;" *In re Introgen Therapeutics,* 429 B.R. 570, 581 (Bankr. W.D. Tex. 2010): holding that substantive consolidation is "an extreme and unusual remedy."

8

so scrambled that separating them will hurt all of the creditors. As stated by the Court:

> The upshot is this. In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

*In re Owens Corning,* 419 F.3d 195, 211 (3d Cir. 2005).

29. The *Owens Corning* Court went on to hold that:

> Creditor opponents of consolidation can nonetheless defeat a prima facie showing under the first rationale if they can prove they are adversely affected and actually relied on debtors' separate existence.

*In re Owens Corning,* 419 F.3d 195, 212 (3d Cir. 2005).

30. Significantly, the *Owens Corning* case has been universally followed by the Courts in the Third Circuit. See, *LTL Management, LLC v. Those Parties Listed on Exhibit A (In re LTL Management, LLC),* 64 F.4th 84 (2023):

> That is because the Bankruptcy Code is an amalgam of creditor-debtor tradeoffs balanced by a Congress that assumed courts applying it would respect the separateness of legal entities (and their respective assets and liabilities). "[T]he general expectation of state law and of the Bankruptcy Code . . . is that courts respect entity separateness absent compelling circumstances calling equity . . . into play." *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005). Put differently, as separateness is foundational to corporate law, which in turn is a predicate to bankruptcy law, it is not easily ignored.

*Teleglobe Communications Corp. v. BCE, Inc. (In re Teleglobe Communications Corp.),* 493 F.3d 345, 371 (3d Cir. 2007):

> It is a bedrock principle of corporate law in Delaware and elsewhere that courts must respect entity separateness unless doing so would work inordinate inequity. *Pauley Petroleum, Inc. v. Cont'l*

9

*Oil Co.*, 43 Del. Ch. 516, 239 A.2d 629, 633 (Del. 1968); *see also In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (concluding that courts must "respect entity separateness absent compelling circumstances calling equity . . . into play").

*Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings, Inc.),* 4007 B.R. 576, 592 (D. Del. 2009):

> Thus, these differences are not sufficient to place the aggregation in this case outside the definition of substantive consolidation. The bankruptcy court erred, then, in concluding that the plan did not effect a substantive consolidation and, as the record does not show that substantive consolidation is warranted in this case consistent with *Owens Corning,* the plan confirmation must be reversed.

See also, *In re Worth Collection,* 666 B.R. 726 (Bankr. Del. 2024); *Miller v. Fallas (In re J & M Sales, Inc.),* 2021 Bankr. LEXIS 2268 (Bankr. Del. 2021); *Knight v. Caribbean Auto Mart (In re Carribean Auto Mart),* 2021 Bankr. LEXIS 1577 (Bankr. V.I. 2021); *In re S B Bldg. Associates Ltd. P'Ship,* 621 B.R. 330 (Bankr. N.J. 2020); *Goldstein v. Wilmington Savings Fund Society, FSB (In re Universal Marketing,* 541 B.R. 259 (Bank.E.D. Pa. 2015).

     **C.**    **The Committee cannot meet the strict requirements for substantive consolidation:**

     31.    As the proponent of substantive consolidation, the Committee clearly has the burden to establish the strict requirements set forth in *In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005). See, *2 Collier on Bankruptcy, P 105.09* (2025). See also, *In re Introgen Therapeutics,* 429 B.R. 570 (Bankr. W.D. Tex. 2010).

     32.    A review of the Second Amended Disclosure Statement readily reveals that the Committee cannot meet its strict burden.

10

33. In fact, the Second Amended Disclosure Statement fails to set forth *any* compelling facts which would justify a substantive consolidation.

34. In Section 3.2 of the Second Amended Disclosure Statement, the Committee asserts that consolidation will result in "reduced administrative costs." However, this is not a valid consideration. To the contrary, the law is clear that:

> Mere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make postpetition accounting more convenient) is hardly a harm calling substantive consolidation into play.

*In re Owens Corning,* 419 F.3d 195, 214 (3d Cir. 2005).

35. The Committee has failed to allege that the Pottsville Debtors disregarded their corporate separateness pre-petition.

36. In fact, as indicated by the record in this case, each of the Pottsville Debtors were treated separately as follows:

   A. Each of the Pottsville Debtors filed its own Petition.

   B. Each of the Pottsville Debtors owned or operated its own Skilled Nursing Facility (Declaration of Neil Luria, paragraph 16, Docket No. 4).

   C. Each of the Pottsville Debtors maintained one or more separate bank accounts (Declaration of Neil Luria, paragraph 18, Docket No. 4; See also, Debtors Motion For Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Maintain their Cash Management System and Pay Bank Fees, (II) and Business Forms, and (B) Authorizing and Directing the Debtors Bank to Honor All Employee Related Payment Requests (the "Cash Management Motion"), paragraph 9, Docket No. 5),

    D.    Each of the Pottsville Debtors had its own separate creditors. In fact, there is a separate Claims Register for each Debtor.

    E.    Each of the Pottsville Debtors filed its own Schedule of Assets and Liabilities and Statement of Financial Affairs.

    F.    Each of the Pottsville Debtors maintained its own accounting controls for each of its bank accounts (Cash Management Motion, paragraph 7, Docket No. 5).

    G.    Each of the Pottsville Debtors had its own accounts receivable (Cash Management Motion, paragraph 12, Docket No. 5).

    H.    Each of the Pottsville Debtors employed its own Business Forms (Cash Management Motion, paragraph 20, Docket No. 5).

37.    In *In re Eagle Creek Subdivision, LLC,* 407 B.R. 206 (Bankr. E.D. N.C. 2008), the Court held that substantive consolidation was not appropriate where the debtors had separate bank accounts and separate creditors. In *In re Convalescent Center of Roanoke Rapids, Inc.,* 2006 Bankr. LEXIS 4484, (Bankr. E.D.N.C. 2006), the Court denied a request for substantive consolidation where:

> … each entity received a separate bank statement, a separate tax identification number, and a separate administrator for conducting daily operations at the facilities. Moreover, each entity maintained separate financial records.

See also, *Lim v. Miller Parking Co,* 560 B.R. 688 (E.D. Mich. 2016); *Spradlin v. Beads & Steeds Inns, LLC (In re Howland),* 518 B.R. 408 (E.D. Ky. 2014).

The same principles clearly apply in the present case.

38.    Moreover, PAMC Realty will be prejudiced by a substantive consolidation.

12

39. Part of the consideration for the 363 (f) Asset Sale was the $10 million Pottsville Buyer's Note, which is payable to the Propcos.

40. As an equity holder in the Propcos, PAMC Realty stands to benefit from the payments due under the note.

41. However, if the cases are substantively consolidated, the payments under the Pottsville Buyer's Note that are due along with the $1,276,741.68 in cash received from the sale will go to creditors of the Opcos who were never intended to receive those assets.

42. Accordingly, substantive consolidation will result in extreme prejudice to PAMC Realty as an equity holder of the Propcos.

43. Such prejudice, standing alone, is reason enough to deny substantive consolidation. See, *In re Owens Corning,* 419 F.3d 195, 212 (3d Cir. 2005):

> Creditor opponents of consolidation can nonetheless defeat a prima facie showing under the first rationale if they can prove they are adversely affected and actually relied on debtors' separate existence.

The Court went on to hold that:

> … commingling justifies consolidation only when separately accounting for the assets and liabilities of the distinct entities will reduce the recovery of *every* creditor--that is, when every creditor will benefit from the consolidation. Moreover, the benefit to creditors should be from cost savings that make assets available rather than from the shifting of assets to benefit one group of creditors at the expense of another. Mere benefit to some creditors, or administrative benefit to the Court, falls far short.

*Id*. at 214. See also, *In re Reserve Capital Corp.,* 2007 Bankr. LEXIS 983 (Bankr. N.D.N.Y. 2007):

> A creditor with a claim against an asset-rich debtor enterprise should not have its recovery substantially reduced when those assets are pooled with those of an asset-poor debtor enterprise.

44. As the Committee cannot meet is burden regarding the proposed consolidation, the Second Amended Plan cannot be confirmed.

WHEREFORE, PAMC Realty respectfully requests this Honorable Court to deny confirmation of the Second Amended Chapter 11 Plan and to grant any further relief that is just and appropriate.

Respectfully Submitted,

Date: <u>December 16, 2025</u>

<u>/s/ Ryan J. Cooney</u>
RYAN J. COONEY
PA I.D. #319213
PAUL R. TOIGO
PA I.D. #326991
JAMES R. COONEY
PA I.D. #32706

THE COONEY LAW OFFICES
Benedum Trees Building
223 Fourth Avenue, 4th Floor
Pittsburgh, PA  15222
(412) 546-1234 (phone)
(412) 546-1235 (facsimile)
*rcooney@cooneylawyers.com*
*ptoigo@cooneylawyers.com*
*jcooney@cooneylawyers.com*

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | |
| **POTTSVILLE OPERATIONS, LLC, et al,**[6] | Bankruptcy No. 24-70418-JAD |
| | Chapter 11 |
| Debtor. | |
| | Jointly Administered |
| **POTTSVILLE OPERATIONS, LLC, et al,** | Related to Doc. Nos. 1710, 1711, and 1715 |
| Movants, | |
| | Hearing Date and Time: |
| v. | January 13, 2026, at 11:00 a.m. |
| **PAMC REALTY, LLC,** | |
| Objecting Party. | |

**CERTIFICATE OF SERVICE**

I, Ryan J. Cooney, hereby certify that on the 16th of December 2025, I served true and correct copies of the foregoing **Objection to Confirmation of Second Amended Chapter 11 Plan of Liquidation** upon all interest parties as follows *(via electronic service)*:

---

[6] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); Yeadon Propco, LLC (5785); Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating LLC (6546); MAPA Operating LLC (3750); Maplewood Operating LLC (0850); Milton Operating LLC (5523); Parkhouse Operating LLC (0140); Tucker Operating LLC (4305); Watsontown Operating LLC (0236); York Operating (2751).

15

Lauren M. Macksoud
Dentons US LLP
1221 Avenue of the Americas
25th Floor
New York, NY 10020
Lauren.maksoud@dentons.com

Andrew C. Hellman
Dentons Bingham Greenebaum LLP
One Center City
Portland, ME 04101
Andrew.helman@dentons.com

Thomas D. Maxson
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
Thomas.maxson@dentons.com

Elizabeth A. Green
Baker Hostetler
200 S. Orange Ave.
Ste 2300
Orlando, FL 32801
egreen@bakerlaw.com

Daniel R. Schimizzi
Raines Feldman Littrell LLP
11 Stanwix Street
Suite 750
Pittsburgh, PA 15222
dschimizzi@raineslaw.com

William M. Buchanan
U.S. Trustee Program/Dept. of Justice
1000 Liberty Avenue
Suite 1316
Pittsburgh, PA 15222
william.buchanan@usdoj.gov

                                                */s/ Ryan J. Cooney*
                                                RYAN J. COONEY
                                                PA I.D. #319213

                                                THE COONEY LAW OFFICES
                                                Benedum Trees Building
                                                223 Fourth Avenue, 4th Floor
                                                Pittsburgh, PA  15222
                                                (412) 546-1234 (phone)
                                                (412) 546-1235 (facsimile)
                                                *rcooney@cooneylawyers.com*