**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:**<br><br>**POTTSVILLE OPERATIONS, LLC, *et al.*,**[1]<br><br>**Debtors.** | **Case No.: 24-70418-JAD**<br><br>**Chapter 11**<br>***Jointly Administered***<br><br>**Doc. No.:** |
| **POTTSVILLE OPERATIONS, LLC, *et al.*,**[2]<br><br>**Movants,**<br><br>**-vs-**<br><br>**NO RESPONDENTS.** | **Related to Document No.:**<br><br>**Hearing Date: September 29, 2026**<br><br>**Hearing Time: 10:00 a.m. (EST)**<br><br>**Response Deadline: September 21, 2026** |

**JOINT MOTION OF CARE PAVILION DEBTORS AND COMMITTEE FOR ENTRY OF AN ORDER (I) DISMISSING THE CARE PAVILION CASES; (II) APPROVING ALLOCATION OF SETTLEMENT PAYMENT; (III) EXCULPATING CERTAIN PARTIES FROM LIABILITY IN CONNECTION WITH THE CARE PAVILION CASES; (IV) TERMINATING ENGAGEMENT OF CLAIMS AGENT; AND (V) GRANTING RELATED RELIEF**

The Care Pavilion Debtors in the Care Pavilion Cases, by and through their undersigned counsel, and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Care Pavilion Debtors, the "Parties") of the Care Pavilion Debtors, file this joint motion (the "Motion") seeking entry of the proposed order substantially in the form attached hereto as **Exhibit**

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

[2] The applicable Debtors in the Motion are the Care Pavilion Debtors.

**A** (the "Proposed Order"): (i) dismissing the Care Pavilion Cases; (ii) approving allocation of Settlement Payment; (iii) exculpating certain parties in connection with the Care Pavilion Cases; (iv) terminating the services of Stretto, Inc. as claims and noticing agent (the "Claims Agent") in the Care Pavilion Cases; and (v) granting related relief. In support of this motion, the Parties submit the Declaration of Narendra Ganti (the "Ganti Declaration") and the Declaration of Monte Green (the "Green Declaration") attached hereto as **Exhibits B** and **C**. In further support of this Motion, the Parties respectfully state as follows:

## Preliminary Statement[3]

1. The Care Pavilion Debtors filed the Care Pavilion Cases due, in large part, to the economic challenges facing skilled nursing facilities caused by the COVID-19 pandemic. The circumstances leading to the filing of the Care Pavilion Cases are more fully discussed in the *Declaration of Neil Luria, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (Doc. No. 3).[4] The Care Pavilion Debtors entered bankruptcy with two key objectives: (a) obtain new liquidity through the DIP Financing Motion to satisfy operational obligations to avoid the need for an immediate shutdown of the Care Pavilion Debtors' facilities; and (b) sell the Care Pavilion Debtors' operations under section 363 of the Bankruptcy Code to a new operating group to continue the business as a going concern.

2. Both objectives were accomplished. As explained below, the Care Pavilion Debtors obtained financing through the DIP Facility. Thereafter, the Care Pavilion Debtors successfully sold substantially all of their assets pursuant to the Sale Order. Following the closure on the Sale

[3] Capitalized terms used in the Preliminary Statement that are undefined shall have the meanings ascribed to them in the Background section of the Motion.

[4] Citations to "Doc. No. __" refer to docket entries filed in Case No. 24-70473 (JAD).

on June 1, 2025, the Care Pavilion Debtors' only remaining assets were their accounts receivables. The DIP Lender holds an allowed superpriority administrative expense claim against those receivables and the DIP Lender's claim exceeds the projected value of the receivables. The Care Pavilion Debtors have no remaining unencumbered property to liquidate.

3. The Parties and their professional advisors, officers, directors, and members met several times and have consistently exercised their sound business judgment, in accordance with the fiduciary duties owed to the Care Pavilion Debtors' estates and stakeholders, in taking the necessary steps to maximize the value of the Care Pavilion Debtors' estates and to make decisions on how best to wind down the estates. The Parties have explored several options to bring the Care Pavilion Cases to their conclusion. At this time, the Parties believe that dismissal is the most expeditious and cost-effective mechanism to fully and finally wind down the Care Pavilion Cases.

4. On August 13, 2026, the Committee met to vote on how to proceed with the Care Pavilion Cases. The Committee heard from FTI on the size and nature of the claims remaining against the Care Pavilion Debtors' estates. FTI also provided a summary of the potential avoidance actions and likely recoveries thereon held by the Care Pavilion Debtors' estates. FTI's analysis is described in more detail in the Ganti Declaration attached hereto as Exhibit B and demonstrates that in a Chapter 7 scenario, creditors would recover a mere 0.7% to 1.9%.

5. After hearing from FTI and Committee counsel, and discussing all potential paths forward, the Committee voted to support dismissal of the Care Pavilion Cases. The Declaration of Monte Green is attached hereto as Exhibit C.

6. The Care Pavilion Debtors have no remaining unencumbered assets of any value available for distribution to unsecured creditors or to support the administrative costs of pursuing anything other than the prompt exit from bankruptcy. Accordingly, the Parties assert that dismissal

of the Care Pavilion Cases is appropriate. A conversion under chapter 7 would not serve a purpose as there are no unencumbered assets to administer in chapter 7 or otherwise provide a recovery to creditors other than the DIP Lender, and any further administration would simply be burdensome to creditors and any chapter 7 trustee. Dismissal best serves the interests of the Care Pavilion Debtors' estates and creditors.

7. The Proposed Order requesting dismissal includes a request to approve allocation of 100% of the Settlement Payment to the Pottsville Liquidating Trust (as such term is defined in the Second Amended Plan) for the benefit of the Pottsville Debtors' general unsecured creditors, exculpation of certain parties in connection with the Care Pavilion Cases, and termination of the Claims Agent's services. The Parties assert that the facts of this case and the relevant case law, as described further below, support this request.

**Jurisdiction and Venue**

8. This Court has jurisdiction over the Care Pavilion Cases pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are sections 105(a), 305(a), 349, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 9019 and 1017(a) (the "Bankruptcy Rules"), and Rule 9014-1 and 1017-2 of the Local Rules for the United States Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules").

**Background**

11. On November 18, 2024 (the "Petition Date"), each of the Care Pavilion Debtors commenced the Care Pavilion Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court. On November 22, 2024, the Care Pavilion Debtors filed an application to among other things employ Neil F. Luria as chief restructuring officer. [Doc. No.

296]. On June 1, 2025, the Care Pavilion Debtors closed on the sale of substantially all of their assets.

12. On December 4, 2024, the Office of the United States Trustee appointed the Committee in the Care Pavilion Cases. *See* Doc. No. 330. The Committee appointed in the Care Pavilion Cases is identical to the Committee appointed in the Pottsville Cases. *Compare* Doc. Nos. 108 with 330.

**A. The Case Professionals**

13. The Care Pavilion Debtors retained and employed the following professionals (the "Care Pavilion Debtor Professionals") for purposes of advising them on all matters arising from or relating to the Care Pavilion Cases: (i) Baker & Hostetler LLP ("Baker"), as lead counsel; (ii) Raines Feldman Littrell, LLP ("Raines"), as local counsel; and (iii) SOLIC Capital Advisors, LLC ("SOLIC"), to provide chief restructuring officer and additional personnel.

14. The Committee retained and employed the following professionals (the "Committee Professionals" and, together with the Care Pavilion Debtor Professionals, the "Professionals") for purposes of advising the Committee on all matters arising from or relating to the Care Pavilion Cases: (i) Dentons ("Dentons"), as counsel; and (ii) FTI Consulting, Inc. ("FTI"), as financial advisor.

**B. DIP Financing**

15. As noted above, the Care Pavilion Debtors obtained DIP financing through the interim and final DIP Orders [Doc. Nos. 246 and 438] (together, the "DIP Orders"). Pursuant to and in accordance with the DIP Orders, the Care Pavilion Debtors secured access to senior secured post-petition financing facility on a super priority basis, as funded by Argnt Holdings LLC (the "DIP Lender") in the aggregate principal amount of up to $9,700,000 (the "DIP Facility"). As of the date hereof, the DIP Lender is owed approximately $14.5 million.

16. The Care Pavilion Debtors utilized the DIP Facility to avert a cessation of their operations and enable them to advance an orderly sale process to maximize recoveries for all stakeholders in the Care Pavilion Cases.

17. Among other things, the DIP Lender holds an allowed superpriority administrative expense claim against the Care Pavilion Debtors' accounts receivable (the "Allowed Admin Expense Claim"), which as explained below, is the Care Pavilion Debtors' only remaining asset. The Allowed Admin Expense Claim greatly exceeds the value of the accounts receivable.

**C. The Sale Process**

18. On December 10, 2024, the Care Pavilion Debtors filed the *Motion for Entry of Orders (A) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Approving Bidding Procedures for Sale of Substantially All of the Care Pavilion Debtors' Assets, Other than Accounts, (C) Approving Stalking Horse Bid Protections, (D) Scheduling Auction for and Hearing to Approve the Sale of the Care Pavilion Debtors' Assets, (E) Approving Form and Manner of Notice of Sale, Auction, and Sale Order Hearing, (F) Approving Assumption and Assignment Procedures, (G) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (H) Granting Related Relief* (Doc. No. 357).

19. On April 3, 2025, the Court entered the *Order (A) Approving Sale of Substantially All of the Care Pavilion Debtors' Assets, Other than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Doc. No. 906) (the "Sale Order").

20. In accordance with the Sale Order, the Care Pavilion Debtors sold substantially all of their assets to the Buyers (the "Sale").[5] The Sale Order assigned "any and all causes of action" to the party or person to be identified by the Committee for the benefit of general unsecured creditors. Sale Order at ¶ 40. The only remaining asset of the Care Pavilion Debtors is pre-sale accounts receivable, which is subject to the DIP Lender's Allowed Admin Expense Claim.

21. The Sale closed on June 1, 2025. *See* Doc. No. 1244.[6]

**D. Rejection of Executory Contracts and Unexpired Leases**

22. In connection with the Sale, the Care Pavilion Debtors assumed and assigned certain executory contracts and unexpired leases to the Buyers. *See* Doc. No. 532.

23. On May 21, 2025, the Court entered an order authorizing the Care Pavilion Cases to reject certain unexpired leases. *See* Doc. No. 1123.

**E. Additional Case History**

24. On September 15, 2025, the Committee filed the original plan (the "Original Plan") (*see* Doc. No. 1549) and the original disclosure statement (the "Original Disclosure Statement") (*see* Doc. No. 1550), which sought confirmation for both the Pottsville Debtors and the Care Pavilion Debtors. The Committee also filed the *Motion for Entry of an Order (I) Conditionally Approving The Disclosure Statement, (II) scheduling a Combined Hearing on the Plan and Disclosure Statement, (III) Approving the Solicitation and Voting Procedures and Dates,*

[5] The "Buyers" include MI Operating, LLC, PA Operating LLC, WA Operating, LLC, CP Operating LLC, CL Operating LLC, MA Operating LLC, TH Operating LLC, and YO Operating LLC.

[6] As a result of the closing, Dentons also holds approximately $500,000 in its trust account for the benefit of the Care Pavilion Debtors' general unsecured creditors. These funds were paid to the Committee as part of a settlement negotiated between the Committee, the Care Pavilion Debtors, and the Buyers. *See* Doc. No. 906, ¶40(a). The Committee has elected to use these funds to satisfy its outstanding professional fee claims performed for the benefit of general unsecured creditors, and then transfer the balance to the Pottsville Liquidating Trust for distribution to its beneficiaries.

*Deadlines, and Notices related thereto, and (IV) Granting Related Relief* [Doc. No. 1552] (the "Conditional Approval Motion").

25. On October 9, 2025, the DIP Lender filed an objection to the Committee's Conditional Approval Motion. [Doc. No. 1606]. The DIP Lender argued that the Original Plan violated Section 1129 of the Bankruptcy Code.

26. On October 22, 2025, the Court held a hearing on the Conditional Approval Motion. In response to the DIP Lender's objection to the Conditional Approval Motion and in order to address the issues raised therein, the Court authorized the Committee to take various depositions.

27. Following the October 22nd hearing, and after reflecting on the issues raised by the DIP Lender and the Court, the Committee determined it would be a better use of time and estate resources to move forward only with confirmation of a plan addressing the Pottsville Debtor estates. To that end, the Committee revised the Original Plan and Original Disclosure Statement to strip out any reference to the Care Pavilion Debtors and their estates.

28. On November 14, 2025, the Committee filed the Second Amended Chapter 11 Plan of Liquidation (the "Second Amended Plan") [Doc. No. 1710] (the "Second Amended Plan") and the Second Amended Disclosure Statement [Doc. No. 1711] (the "Second Amended Disclosure Statement"), which address only the Pottsville Debtors.

29. On December 16, 2025, PAMC Realty, LLC filed its *Objection to Confirmation of Second Amended Chapter 11 Plan of Liquidation* [Doc. No. 1793] (the "Objection"), and on January 6, 2026, Benjamin Landa filed the *Joinder of Benjamin Landa to PAMC Realty, LLC's Objection to Confirmation of Second Amended Chapter 11 Plan of Liquidation and Additional Objection* [Doc. No. 1852] (the "Joinder").

30. Following settlement discussions between the parties, on July 10, 2026, the Pottsville Debtors, the Committee, PAMC Realty, LLC, and Benjamin Landa filed the *Expedited Joint Motion of the Debtors, Committee, PAMC Realty, LLC and Benjamin Landa for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019* [Doc. No. 2280] (the "Settlement Motion") seeking approval of the Settlement Agreement. The Settlement Agreement resolved the Objection and Joinder and resulted in, among other things, an uncontested plan confirmation process. It provided, in relevant part, that various claims held by the Pottsville Debtors and the Care Pavilion Debtors against PAMC Realty, Benjamin Landa and other estate insiders would be resolved in exchange for a cash payment of $750,000 (the "Settlement Payment"). It further provided that the Settlement Payment would be apportioned as between the Pottsville Debtors' general unsecured creditors and the Care Pavilion Debtors' general unsecured creditors as the Committee may elect. *See* Doc. No. 2280-1, ¶ 1(c)(i).

31. On August 11, 2026, the Court conducted the confirmation hearing. On August 12, 2026, the Court entered the order confirming the Second Amended Plan [Doc. No. 2374] (the "Confirmation Order"). As discussed at the confirmation hearing, the Confirmation Order provides that the Committee must file a motion seeking approval of the proposed allocation to be made as between the creditors of the Pottsville Debtors and the Care Pavilion Debtors. *See id.*, ¶ 30. Though this Motion, the Committee seeks approval of its proposal to allocate 100% of the Settlement Payment to the general unsecured creditors of the Pottsville Debtors.

**F. <u>U.S. Trustee Fees</u>**

32. In connection with the dismissal of these Care Pavilion Cases, the Care Pavilion Debtors have budgeted for and will pay all remaining U.S. Trustee fees. The Care Pavilion Debtors do not anticipate any further fees being due to the U.S. Trustee if this Motion is granted.

## G. Post-Dismissal Administration

33. While the Care Pavilion Debtors do not contemplate a significant amount of post-dismissal administration, the Care Pavilion Debtors may have some post-dismissal issues to attend to, such as the completion of tax returns and addressing creditor inquiries.

## Relief Requested

34. By this Motion, the Parties request entry of the Proposed Order that: (a) dismisses the Care Pavilion Cases, (b) allocates the Settlement Payment to the Pottsville Liquidating Trust for the benefit of the unsecured creditors of the Pottsville Debtors, (c) exculpates certain parties from liability in connection with the Care Pavilion Cases, (d) terminates the services of the Claims Agent in these Care Pavilion Cases, and (e) grants related relief.

## Basis for Relief Requested

## I. Dismissal of the Care Pavilion Cases Is Warranted and Any Outstanding Value Should Be Allocated to the Pottsville Liquidating Trust for Distribution.

### A. The Care Pavilion Cases Should Be Dismissed Under Section 1112(b)(1) of the Bankruptcy Code.

35. Upon the request of a party in interest, Section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court "shall" dismiss a Chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause." *See* 11 U.S.C. § 1112(b)(1). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") changed the statutory language with respect to conversion or dismissal from permissive to mandatory.[7] *See* H.R. Rep. No. 109-31(I), at 442, reprinted in 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests

---

[7] Prior to the enactment of the BAPCPA, a bankruptcy court had the discretion, pursuant to its broad equitable powers, to dispose of a debtor's case, including by means of dismissal. However, a court was not mandated to dismiss a case upon the showing of cause. H.R. Rep. No. 95-595, at 405 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787.

of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); *see also Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

36. The amendments to section 1112 of the Bankruptcy Code thus limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *See In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D. S.C. 2007) (finding cause under section 1112(b) existed to either dismiss case or convert chapter 7 case to one under chapter 11). For reasons more fully explained below, the Court should dismiss the Care Pavilion Cases because cause exists. Dismissal (and not conversion) is in the best interests of the Care Pavilion Debtors, their creditors, and their estates because a dismissal allows the Care Pavilion Debtors to exit bankruptcy as efficiently as possible (and minimizes further impairment to creditors).

**B. Cause Exists Under Section 1112(b)(4) of the Bankruptcy Code.**

37. Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of 16 grounds for dismissal for cause. 11 U.S.C. § 1112(b)(4)(A)-(P). *See In re Gateway Access Sols.*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*,

951 F.2d 564, 572 (3d Cir. 1991)); *In re Commonwealth Renewable Energy, Inc.*, 550 B.R. 279, 282-83 (Bankr. W.D. Pa. 2016) (referencing section 1112(b) of the Bankruptcy Code's non-exclusive list of facts to assist in determining whether cause exists for dismissal of chapter 11 cases); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not.") (citation omitted).[8]

38. One such ground is where a party-in-interest shows that (i) there has been a "loss" or "diminution" of value of the estate and (ii) the debtor does not have a "reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A); *see also In re Commonwealth Renewable Energy, Inc.*, 550 B.R. at 282-83 (dismissing chapter 11 case where there was no reasonable likelihood of the debtor's reorganization in the foreseeable future). Another such ground is a debtor's inability to effectuate a successful plan of reorganization. *See* 11 U.S.C. § 1112(b)(4)(M); *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 162 n.10 (3d Cir. 2012) ("the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause [in section 1112(b)] are not exhaustive"). Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." *See Monsour Medical Center, Inc. v. Stein* (*In re Monsour Medical Center, Inc.*), 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (holding that dismissal of the debtor's chapter 11 case was in the best interests of the creditors and debtor's estate because it was highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy.") *Preferred Door*, 990

[8] In *In re TCR of Denver*, the court recognized the apparent typographical error in section 1112(b)(4) of the Bankruptcy Code. 338 B.R. at 498. The sixteen illustrative examples of "cause" set forth in that section are linked by the word "and" after subsection (O). *Id*. Accordingly, strict construction of the statute would require that a debtor establish all of the items constituting "cause" before a case can be dismissed by the court. *Id.* The TCR Court held that Congress could not have intended to require a "perfect storm" of all sixteen circumstances listed before a case may be dismissed. *Id.*

F.2d 547, 549 (10th Cir. 1993) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out) (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)); *In re Blunt*, 236 B.R. 861, 865 (Bankr. M.D Fla. 1999) (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent).

39. As set forth above, the Care Pavilion Debtors have liquidated all or substantially all of their assets through the Sale. The Care Pavilion Debtors no longer operate and exist solely for purposes of winding down these Care Pavilion Cases. In other words, the Care Pavilion Debtors have no business to reorganize and *de minimis* assets. The Care Pavilion Debtors' most meaningful assets are its causes of action. Such claims, however, can only be pursued if adequate funding is available and, even then, offer no assurance of a meaningful recovery. Due to the limited amount of funds remaining in the Care Pavilion Debtors' estates, the lack of operating assets to generate revenue, the size of the claims pool, and the continued diminution in cash from case administration, there is simply no path to constructing and advancing a chapter 11 plan that would result in a meaningful recovery for creditors. The Care Pavilion Debtors' estate and parties in interest should not be further burdened—temporally or financially—by additional bankruptcy proceedings. Accordingly, the Parties respectfully submit that cause exists to dismiss the Care Pavilion Cases pursuant to section 1112(b)(4) of the Bankruptcy Code and related case law.

**C. Dismissal, and Allocation of the Settlement Payment to the Pottsville Liquidating Trust, is in the Best Interests of the Care Pavilion Debtors' Estates and the Creditors thereof.**

40. Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and creditors. *See In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *In re Superior Sliding & Window,*

*Inc.*, 14 F.3d 240, 243 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").

41. As set forth herein, a variety of factors demonstrate that it is in the best interests of the Care Pavilion Debtors, their estates, and their creditors to dismiss the Care Pavilion Cases and authorize the relief sought herein. *First*, dismissal of a debtor's case meets the best interests of creditors test where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage a business which ceased doing business was not feasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). This factor is easily satisfied based on the facts and circumstances surrounding these Care Pavilion Cases.

42. *Second*, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports the dismissal of the debtor's chapter 11 case. *See Camden Ordnance*, 245 B.R. at 799; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7 where debtor and U.S. Trustee both favored dismissal). Here, the Committee supports dismissal.

43. FTI recently prepared the Care Pavilion Liquidation Analysis to help the Committee understand potential recoveries available to the general unsecured creditors of the Care Pavilion Debtors. As set forth in the attached Ganti Declaration, the Care Pavilion Liquidation Analysis shows that the Care Pavilion Debtors' claims pool is between $107 million to $120 million (depending on how the DIP Lender's claim is considered). The amount of money available

to satisfy those claims is estimated at between $875,000 in the low case scenario and $2.07 million in the high case scenario. The high case scenario number mainly represents an estimate of avoidance action proceeds, and thus is highly speculative. These estimates would generate at best, a 1.9% recovery and at worst, less than a 1% recovery for unsecured creditors.

44. As set forth more fully in the Green Declaration, the Committee received the Care Pavilion Liquidation Analysis, had discussions with the Committee Professionals, and assessed all possible options for the Care Pavilion Debtors' estates. Following deliberations, the Committee unanimously voted that the Care Pavilion Cases should be dismissed, and the full amount of the Settlement Payment should be allocated to the Pottsville Liquidating Trust.

45. *Third*, and finally, dismissal is appropriate where, as here, the dismissal of a chapter 11 case will maximize the value of a debtor's estate.[9] Conversion to chapter 7 would impose substantial and unnecessary additional administrative costs upon the Care Pavilion Debtors' estates with no hope or expectation that the estate and unsecured creditors would receive more value. Under the circumstances, a chapter 7 trustee would have no funds to satisfy additional claims arising after conversion of the Care Pavilion Cases to cases under chapter 7 of the Bankruptcy Code and creditors and parties in interest who are monitoring the cases would inevitably be required to incur additional costs and waste valuable time and resources. Furthermore, in light of the confirmation of the Second Amended Plan and the creation of the Pottsville Liquidating Trust, a mechanism already exists to facilitate distributions to many creditors of the Care Pavilion Debtors.

---

[9] One element of the best interest test focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *In re Clark*, 1995 WL 495951, at 5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise. *See id.*

46. Since the closing of the Sale, the Parties have investigated whether other potential sources of recovery exist for the benefit of creditors. None exist. There is no longer a business to reorganize and the only remaining assets of the estate are avoidance actions that would cost money to pursue, but would produce no certain outcome. Any assets recovered would likely be consumed by administrative claims and/or any remaining claim of the DIP Lender. There is no reason—nor are there funds available—to pursue a plan of liquidation. Thus, cause exists to dismiss the Care Pavilion Cases pursuant to section 1112(b)(4) of the Bankruptcy Code and related case law.

47. Numerous courts, in this District, the Third Circuit, and throughout the country have approved orderly dismissals under similar circumstances to that of the Care Pavilion Debtors where the debtor lacks the requisite financial wherewithal to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. *See, e.g., In re Claim Jumper Acquisition Company, LLC, et al.*, Case No. 22-21941-GLT, [Doc. No. 337] (Bankr. W.D. Pa. Dec. 23, 2022) (entering the *Modified Order (I) Establishing Procedures With Respect to Final Fee Applications; (II) Authorizing the Debtors to Make Distributions to Claimants Holding Allowed Professional Fee claims; (III) Dismissing Certain of the Debtors' Chapter 11 Cases and Providing Procedures for Dismissal of the Remaining Debtor's Chapter 11 Case; and ([I]V) Granting Related Relief* following approval of a sale that did not provide for recoveries to general unsecured creditors); *The RP Co. Liquidating, LLC, et al.*, Case No. 23-10774, [Doc. No. 700] (BLS) (Bankr. D. Del. Mar. 27, 2024)*; Makeup Liquidating Holdings, LLC (f/b/a BHCosmetics Holdings, LLC)*, Case No. 22-10050, [Doc. No. 415] (Bankr. D. Del. Sept. 23, 2022)*; In re KB Toys, Inc.*, Case No. 08-13269, [Doc. No. 914] (Bankr. D. Del. Dec. 1, 2009); *In re CFM U.S. Corporation, et. al.*, Case No. 08-10668, [Doc. No. 1097] (Bankr. D. Del. 2009); *In re Wickes Holdings, LLC, et al.*, Case No. 08-10212, [Doc. No.

1418] (Bankr. D. Del. June 30, 2009); *In re Bag Liquidation, Ltd*, Case No. 08- 32096, [Doc. No. 688] (Bankr. N.D. Tex. Sept. 30, 2009); *In re Levitz Home Furnishings, Inc.*, Case. No. 05- 45189, [Doc. No. 1167] (Bankr. S.D.N.Y. Mar. 28, 2008); *In re Princeton Ski Shop, Inc., et al*, Case No. 07-26206, [Doc. No. 546] (Bankr. D.N.J. Dec. 23, 2008); *In re Harvey Elecs., Inc.*, Case No. 07-14051, [Doc. No. 177] (Bankr. S.D.N.Y. Dec. 16, 2008).

48. For these reasons, the Parties submit that dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Care Pavilion Debtors' creditors and their estates and any remaining money or value should be allocated to the Pottsville Liquidating Trust for distribution.

**D. Section 305(a) of the Bankruptcy Code Supports Dismissal of the Care Pavilion Cases.**

49. Cause also exists to dismiss the Care Pavilion Cases pursuant to section 305(a) of the Bankruptcy Code, which provides that the "court, after notice and a hearing, may dismiss a case under this title . . . at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." *See* 11 U.S.C. § 305(a). *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009).

50. Whether dismissal is appropriate under this provision is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court. *See In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered when determining the best interests of creditors and the debtor, a few of which include: (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of- court arrangement that better serves all interests in the case. *See AMC Investors*, 406 B.R. at 488.

51. Here, as described above, cause exists for dismissal under section 305(a) of the Bankruptcy Code. The Committee believe that any potential recoveries from pursuit of causes of action that would be inherently speculative and, given the size of the claims pool, would result in only de minis distributions to creditors. Accordingly, the Committee believes that the prospect of such recoveries does not warrant keeping the Care Pavilion Cases open for further administration. Conversion to chapter 7 would impose additional administrative costs and is unlikely to produce a different outcome. Dismissal of the Care Pavilion Cases as set forth in this Motion is thus the most efficient, cost-effective method of effectuating the wind-down of the Care Pavilion Debtors' estates and ensures payment of all U.S. Trustee fees. *See Monsour Medical Center, Inc. v. Stein* (*In re Monsour Medical Center, Inc.*), 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (dismissing a debtor's chapter 11 case under section 305(a) where "it [was] highly unlikely that debtor will put together a confirmable plan of reorganization."). The interests of the Care Pavilion Debtors and their creditors are best served by dismissal.

**E. The Court Should Dismiss the Care Pavilion Cases Pursuant to Section 105(a) of the Bankruptcy Code.**

52. Consistent with the aforementioned standards, the Care Pavilion Cases should be dismissed under Section 1112(b) as soon as possible. Dismissal of these cases will not impair the rights of creditors, as dismissal will simply return such creditors to their relative priority positions immediately prior to filing of the Care Pavilion Debtors' voluntary petitions.

53. Section 105(a) of the Bankruptcy Code provides the Court with supplemental authority to effectuate the overall policy objectives of the Bankruptcy Code in connection with a motion to dismiss a chapter 11 case. *See* 11 U.S.C. § 105(a) ("The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

54. Again, given the circumstances discussed above, dismissal of the Care Pavilion Cases is consistent with the policy objectives of the Bankruptcy Code and this Court should dismiss such cases.

**F. All Orders Entered in the Care Pavilion Cases Should Remain in Effect.**

55. The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. *See* 11 U.S.C. § 349(b). A bankruptcy court may, however, "for cause, order otherwise" *Id*. Courts in the Third Circuit have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g., In re TSAWD Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 23, 2021) [Doc. No. 4833] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases, including sale orders)*; In re RM Wind-Down Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Feb. 18, 2020) [Doc. No. 721] (same); *In re The Bon-Ton Stores, Inc.*, No. 18- 10248 (MFW) (Bankr. D. Del. Feb. 1, 2019) [Doc. No. 1488] (same); *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [Doc. No. 865] (same).

56. In these Care Pavilion Cases, the Care Pavilion Debtors secured post-petition financing pursuant to the DIP Orders and sold substantially all of their assets pursuant to the Sale Order. The Care Pavilion Debtors also assumed and assigned certain executory contracts and unexpired leases to the Buyers. As the DIP Orders and Sale Order accomplished substantial goals of these Care Pavilion Cases, the Care Pavilion Debtors believe it is critical that all orders, including without limitation, the DIP Orders and the Sale Order, be given continued effect after dismissal, and that the relief requested is necessary to protect the Care Pavilion Debtors and preserve the authority the Care Pavilion Debtors had to act pursuant to the various orders entered by this Court. Given the facts and circumstances, the Care Pavilion Debtors submit that ample

cause exists to allow all prior orders, releases (including without limitation, all releases granted to the DIP Lender through the Final DIP Order), other stipulations, settlements, rulings, and judgments entered by the Court in connection with these Care Pavilion Cases to be given continued effect, notwithstanding the requested dismissal, unless otherwise provided by a subsequent stipulation with the same party or parties.

**G. The Exculpation Provisions in the Second Amended Plan are Appropriate and Should be Approved in the Care Pavilion Cases.**

57. The Parties request that the Court ratify and make applicable the exculpation provisions in the Second Amended Plan approved by the Court in the Pottsville Cases pursuant to the Confirmation Order. The Proposed Order provides that such exculpation provisions as were approved in the Pottsville Cases are approved and applicable to the Professionals in the Care Pavilion Cases.

58. This relief is appropriate because it is fair, necessary, and supported by the factual record and applies to parties that played significant roles in these Care Pavilion Cases. *See, e.g.*, *In re Great Atlantic & Pacific Tea Co., Inc., et al.*, No. 15-23007 (RDD) 2021 WL 5863393, at *12 (Bankr. S.D.N.Y. May 13, 2021) (approving exculpation of the debtors, creditors' committee and secured lender, among others, in dismissal order). The Parties and their directors, officers, and employees who served during any portion of these Care Pavilion Cases, Baker, Raines, SOLIC, Dentons, and FTI (collectively, the "Exculpated Parties") worked diligently and cooperatively throughout these Care Pavilion Cases to advance a value-maximizing chapter 11 and accomplish an efficient wind-down of the Care Pavilion Debtors' estates. In consideration of these efforts, the Parties seek limited exculpation of the Exculpated Parties.

59. The exculpation provisions included in the Proposed Order will protect the Exculpated Parties from liability for any actions taken (or omitted to be taken) in good faith,

relating to or in connection with these Care Pavilion Cases, including the formulation and implementation of this Motion and the Proposed Order. Courts in the Third Circuit have approved similar relief where, like here, it is warranted. *See, e.g., The RP Co. Liquidating, LLC, et al.,* Case No. 23-10774, [Doc. No. 700] (BLS) (Bankr. D. Del. Mar. 27, 2024)*; Makeup Liquidating Holdings, LLC (f/b/a BHCosmetics Holdings, LLC)*, Case No. 22-10050 (JKS) [Doc. No. 415] (Bankr. D. Del. September 23, 2022); *In re Destination Maternity Corp., et al.,* No. 19-12256 (BLS) [Doc. No. 1229] (Bankr. D. Del. Dec. 29, 2021) (approving release provision in dismissal order that relieved estate fiduciaries of liability related to actions taken in good faith in connection with the chapter 11 proceedings); *In re Great Atlantic & Pacific Tea Co., Inc., et al.*, 2021 WL 5863393, at *12 (approving exculpation of the debtors, creditors' committee, and secured lender, among others, in dismissal order); *In re Real Industry, Inc., et al.*, No. 17-12464 (KJC) [Doc. No. 1165] (Bankr. D. Del. Dec. 18, 2018) (approving exculpation of estate fiduciaries in dismissal order); *In re City Sports, Inc.*, No. 15-12054 (KG) [Doc. No. 647] (Bankr. D. Del. Mar. 4, 2016) (approving broad release provision); *In re Coach Am Grp. Holdings Corp.*, No. 12-10010 (KG) [Doc. No. 1568] (Bankr. D. Del. May 31, 2013) (approving consensual releases and broad exculpation). Further, the proposed exculpation provisions expressly exclude liability for any acts of gross negligence or willful misconduct on the part of the Exculpated Parties. The Parties, therefore, submit that the limited exculpation provisions in the Proposed Order are appropriate and request that they be approved.

**H. The Care Pavilion Debtors' Authority to Terminate Engagement of Claims Agent.**

60. In connection with the closure of the Care Pavilion Cases, the Parties request claims and noticing services provided by the Claims Agent pursuant to the: (a) *Order Appointing Stretto, Inc. as Claims and Noticing Agent Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and W. Pa.*

*LBR 1002-8* (Doc. No. 289) (the "156(c) Order"); and (b) *Order Authorizing the Employment and Retention of Stretto, Inc. as Administrative Agent, Nunc Pro Tunc to the Relief Date* (Doc. No. 290) (the "327 Order" and together with the 156(c) Order, the "Stretto Retention Orders"), be terminated. Upon termination of the Claims Agent's services, and except as otherwise provided in the Local Rules, the Parties request that the Claims Agent shall have no further obligations under the Stretto Retention Orders to the Care Pavilion Debtors or to any other party in interest with respect to the Claims Agent's services.

61. The Parties respectfully request a waiver of W. PA. LBR 1002-8(e) to the extent it requires a separate application to terminate the Claims Agent. The Parties believe it is an appropriate exercise of their sound business judgment to include the request to terminate the services of the Claims Agent within the instant Motion, as doing so avoids the incurrence of unnecessary administrative expenses through the preparation and filing of a standalone application.

62. The Parties further submit that the Proposed Order incorporates the material terms and conditions of Local Form 54, which is the *Proposed Order Terminating Services of Claims and Noticing Agent*, as modified to reflect these Care Pavilion Cases, thereby accomplishing the goals of the applicable Local Rules.

**I. Final Fee Application Orders.**

63. In order to afford the Professionals an opportunity to file their final applications for allowance and approval of fees and expenses incurred in the Care Pavilion Cases, the Care Pavilion Debtors have advised the Professionals of their intention to incorporate orders entered by this Court in respect of any previously filed interim applications for compensation, as well as forthcoming final applications for allowance and payment of fees and expenses (each, a "Final Fee Application").

64. The Parties propose that all Professionals submit their Final Fee Application on or before October 12, 2026[10], such that this Court can hold hearings on the Final Fee Applications, if any, as expeditiously as possible following the filing of any objections to Final Fee Applications. The Care Pavilion Debtors have included a provision in the proposed Order granting the relief requested herein which holds the dismissal of the Care Pavilion Cases in abeyance, after entry of the proposed Order, pending final resolution of any Final Fee Applications.

65. If and to the extent this Court grants the relief requested in this Motion, the Care Pavilion Debtors also submit that, consistent with the authority set forth above, any orders authorizing and approving fees and expenses for Professionals can, and should, survive dismissal of these Care Pavilion Cases.

## Notice

66. Notice of this Motion shall be provided, in accordance with the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures as Well as Granting Related Relief* (Doc. No. 292), on (a) the Master Service List; (b) the Office of the United States Trustee; (c) counsel for the DIP Lender; and (d) all parties who have requested notice in accordance with Bankruptcy Rule 2002.

## Conclusion

WHEREFORE, the Parties respectfully request entry of the Proposed Order (a) dismissing the Care Pavilion Cases, (b) approving allocation of the Settlement Payment, (c) exculpating certain parties from liability in connection with the Care Pavilion Cases, (d) terminating the services of the Claims Agent in these Care Pavilion Cases, and (e) granting related relief.

[10] This is also the Professional Fee Bar Date as defined in and set by the Second Amended Plan.

Dated: September 4, 2026

**DENTONS US LLP**

*/s/ Lauren M. Macksoud*
Lauren M. Macksoud
1221 Avenue of the Americas, 25th Floor
New York, NY 10020
lauren.macksoud@dentons.com

and

**DENTONS BINGHAM GREENEBAUM LLP**
Andrew C. Helman
One City Center, Suite 11100
Portland, ME 04101
andrew.helman@dentons.com

and

**DENTONS COHEN & GRIGSBY, P.C.**

*/s/ Thomas D. Maxson*
Thomas D. Maxson
625 Liberty Avenue
Pittsburgh, PA 15222-3152
thomas.maxson@dentons.com
*Counsel to the Official Committee of Unsecured Creditors of Pottsville Operations, LLC, et. al.*

**RAINES FELDMAN LITTRELL, LLP**

By: */s/ Daniel R. Schimizzi*
Daniel R. Schimizzi (PA ID No. 311869)
Sarah E. Wenrich (PA ID No. 325834)
Jordan N. Kelly (PA ID No. 328896)
11 Stanwix Street, Suite 1100
Pittsburgh, PA 15222
Telephone: 412-899-6462
Email: dschimizzi@raineslaw.com
swenrich@raineslaw.com
jkelly@raineslaw.com

*Local Counsel to the Debtors And Debtors in Possession*

- and –

**BAKER & HOSTETLER LLP**

Elizabeth A. Green, Esq.
FL Bar No.: 0600547
Email: egreen@bakerlaw.com
Andrew V. Layden, Esq.
FL Bar No.: 86070
E-mail: alayden@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, Florida 32801-3432
Telephone: (407) 540-7920
Facsimile: (407) 841-0168

*Counsel for the Debtors and Debtors in Possession*