**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:**<br><br>**POTTSVILLE OPERATIONS, LLC, *et al.*,**[1]<br><br>**Debtors.** | **Case No.: 24-70418-JAD**<br><br>**Chapter 11**<br>***Jointly Administered***<br><br>**Doc. No.:** |
| **CLAIM WATCHER, LLC**<br><br>**Movant,**<br><br>**-vs-**<br><br>**POTTSVILLE OPERATIONS, LLC,**<br><br>**Respondent.** | **Related to Document Nos.: 2374 & 2408** |

**REQUEST OF CLAIM WATCHER, LLC FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Claim Watcher, LLC ("Claim Watcher") hereby files this request (the "Request") for allowance and payment of Claim Watcher's administrative expense claim against Pottsville Operations, LLC (the "Lead Debtor"). In support of this Request, Claim Watcher respectfully states as follows:

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively, the "Pottsville Debtors" and the Pottsville Debtors' chapter 11 cases are collectively referred to as the "Pottsville Cases") and Bedrock Care, LLC (9115); Care Pavilion Operating, LLC (7149); Cliveden Operating, LLC (6546); MAPA Operating, LLC (3750); Maplewood Operating, LLC (0850); Milton Operating, LLC (5523); Parkhouse Operating, LLC (0140); Tucker Operating, LLC (4305); Watsontown Operating, LLC (0236); and York Operating, LLC (2571) (collectively the "Care Pavilion Debtors" and the Care Pavilion Debtors' chapter 11 cases are collectively referred to as the "Care Pavilion Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

**JURISDICTION**

1. This Court has jurisdiction over this Request, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

2. Venue of this proceeding and this Request is proper in this district, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief sought herein are Sections 105 and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

**BACKGROUND**

4. Claim Watcher's business consists of helping employers administer health plans to their employees by extensively auditing charges for accuracy and appropriateness.

5. Prior to the Petition Dates (as defined below), Claim Watcher entered into that certain Agreement for Claims Review, Audit, and Negotiation Services (the "Initial Services Agreement") with UHP Management ("UHP"), pursuant to which, Claim Watcher agreed to perform claim review services for members covered by selected plans that UHP was administering. A copy of the Initial Services Agreement is attached hereto as **Exhibit 1** and incorporated fully herein.

6. On or about January 1, 2024, Debtor Bedrock Care, LLC ("Bedrock") entered into that certain Joinder Agreement with Claim Watcher and UHP (the "Joinder Agreement"), for purposes of having access to Claim Watcher's claims auditing and repricing services. A copy of the Joinder Agreement is attached hereto as **Exhibit 2** and incorporated fully herein. The Joinder Agreement also included an obligation for Claim Watcher to provide full balance bill protection for covered members if a provider ever decided not to accept a discounted payment made by the

Debtors (as defined below). In other words, Claim Watcher is responsible for legally defending against balance bills that are sent to employees following their treatments.

7. Since entering into the Joinder Agreement, Claim Watcher helped the Debtors, including the Lead Debtor, realize significant savings by reducing the amounts paid by the Debtors' health benefit plans on employee claims for medical services. Indeed, Claim Watcher estimates that its services helped the Debtors save over sixty (60) million dollars since 2020.

8. On October 15, 2024 (the "Pottsville Petition Date"), each of the Pottsville Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court"). On November 18, 2024 (the "Care Pavilion Petition Date", together with the Pottsville Petition Date, the "Petition Dates"), each of the Care Pavilion Debtors (collectively with the Pottsville Debtors, the "Debtors"), including Bedrock, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

9. On February 18, 2025, Claim Watcher timely filed a Proof of Claim against the Lead Debtor at Claim No. 27-1 (No. 377 on Stretto) (the "Claim").

10. Claim Watcher continued to perform under the Joinder Agreement post-petition, and no payments have been made by the Debtors since the Petition Dates.

11. Accordingly, on December 17, 2024, Claim Watcher filed its *Motion to (I) Compel Assumption of Rejection of Executory Contract and (II) Compel Payment of Administrative Claims* [Doc. No. 417] (the "Motion to Compel"), seeking, among other things: (i) to compel assumption or rejection of the Joinder Agreement, and (ii) allowance and payment of an asserted administrative expense claim arising thereunder. On January 9, 2025, the Debtors filed a response to the Motion to Compel [Doc. No. 517].

12. Subsequently, Claim Watcher and the Debtors entered into an agreement to resolve the Motion to Compel (the "Stipulation"), which was approved by the Court on May 5, 2025 [Doc. No. 1070]. Pursuant to the Stipulation, the Joinder Agreement was deemed rejected as of May 5, 2025 (the "Rejection Date"), and all parties reserved their rights with respect to any administrative expense claims asserted by Claim Watcher.

13. After the Rejection Date, on June 4, 2025, Claim Watcher amended the Claim at Claim No. 27-2 (No. 759 on Stretto) (the "Amended Claim"), which includes the assertion of an administrative expense claim in the amount of $1,228,072.90.

14. On August 13, 2026, the Court entered an Order (the "Confirmation Order") confirming the Pottsville Debtors' Chapter 11 plan (the "Plan") [Doc. No. 2374].[2] On August 27, 2026 (the "Effective Date"), the Pottsville Debtors filed a notice stating that the Plan had gone effective as of the same date [Doc. No. 2408] (the "Effective Date Notice"). Pursuant to the Effective Date Notice, the deadline for parties to file requests for payment of administrative expense claims is September 28, 2026 (the "Bar Date"); "*provided, however*, that Persons that asserted administrative claims with a timely filed Proof of Claim for prepetition Claims or Rejection Claims do not need to file additional requests for payment of such Administrative Claims." *See* Effective Date Notice, ¶ 3.

15. Claim Watcher believes its previous filing of the Amended Claim constitutes a valid request for payment of its administrative expense claim; nevertheless, out of an abundance of caution, Claim Watcher submits this Request.

---

[2] The Plan states that the Care Pavilion Debtors' Chapter 11 cases—which presumably includes Bedrock—will be converted to Chapter 7 cases. Claim Watcher expressly reserves all rights to assert additional claims, including administrative expense claims, against Bedrock or any other applicable Care Pavilion Debtor upon conversion.

**RELIEF REQUESTED**

16. By and through this Request, Claim Watcher seeks the entry of an Order allowing Claim Watcher an administrative expense claim against the Lead Debtor for post-petition services provided by Claim Watcher through the Rejection Date (the "Administrative Expense Claim"), in an amount not less than $1,228,072.90, and requiring the Lead Debtor to pay the same.

**BASIS FOR RELIEF**

17. Pursuant to Section 503(b)(1), parties that render services which are "actual, necessary costs and expenses of preserving the estate" are entitled to priority administrative expense claims. 11 U.S.C. § 503(b)(1). Courts apply the following two-part analysis in assessing whether a party is entitled to an administrative expense claim: (i) there must be a post-petition transaction between creditor and the debtor; and (ii) the estate must receive a benefit from such transaction. *See, e.g.*, *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environment Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999).

18. Where the debtor and its estate actually uses or receives the benefit of third parties' goods and services while waiting to decide whether to assume or reject the contract with that third party, the third party is entitled to both (i) hold an allowed administrative expense for the value of the goods and services and (ii) to be paid in accordance with the terms of the underlying contract. *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) (noting that "administrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection" and that "there is a presumption that the contract rate is reasonable"); *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) ("Pending the decision to reject, the non-debtor entity to the contract is entitled to payment as an administrative expense for goods and services provided during the period of time before the debtor

assumes or rejects the contract.”).

19. Claim Watcher continued to render necessary and beneficial services to the estates following the Petition Dates while the Debtors evaluated whether to assume or reject the Joinder Agreement. During this time frame, Claim Watcher’s services resulted in substantial savings for the Debtors and their estates during these Chapter 11 cases, thereby conferring meaningful value and a benefit on the estates. Accordingly, Claim Watcher is entitled to administrative priority for the value of its services rendered between the Petition Dates and the Rejection Date.

**RESERVATION OF RIGHTS**

20. Claim Watcher reserves the right to amend and/or supplement this Request or the Amended Claim at any time, including after the Bar Date or any other deadline set by the Court, in any manner, including for purposes of fixing the amount of the Administrative Expense Claim described above, together with any interest, fees, or other expenses that may be recoverable under applicable law. Furthermore, Claim Watcher reserves all rights to assert additional claims with respect to the Care Pavilion Debtors, including Bedrock, to the extent their cases are converted to cases under Chapter 7 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Claim Watcher respectfully requests that this Court enter an Order (i) allowing the Administrative Expense Claim against the Lead Debtor in an amount not less than $1,228,072.90; and (ii) requiring the Lead Debtor to pay the Administrative Expense Claim.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: *<u>/s/ John R. Gotaskie, Jr.</u>*
John R. Gotaskie, Jr., Esquire (No. 81143)
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Phone (412) 391-1334/Fax (412) 391-6984
jgotaskie@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire (No. 60412)
Matthew A. Skolnick, Esquire (No. 333936)
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
mskolnick@foxrothschild.com

Dated: September 28, 2026

*Counsel for Claim Watcher, LLC*